# No. 2022-1461

## In the United States Court of Appeals
## For the Federal Circuit

### BAXALTA INCORPORATED, BAXALTA GMBH,
*Plaintiffs - Appellants*

v.

### GENENTECH, INC.,
*Defendant - Appellee*

Appeal from the United States District Court for the District of Delaware
No. 1:17-cv-00509, Hon. Timothy B. Dyk

## BRIEF OF APPELLANTS

MORGAN, LEWIS & BOCKIUS LLP
  Michael J. Abernathy
  Christopher J. Betti
  Maria E. Doukas
  Karon N. Fowler
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
  William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

MORGAN, LEWIS & BOCKIUS LLP
  Julie S. Goldemberg
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095

***Counsel for Appellants***

## CLAIMS 1, 3, 4, AND 19 OF U.S. PATENT NO. 7,033,590

1.      An isolated antibody or antibody fragment thereof that binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa.

3.      The antibody or antibody fragment according to claim 1, wherein the antibody is an IgG, IgM, IgA or IgE antibody.

4.      The antibody or antibody fragment according to claim 1, wherein said antibody or antibody fragment is selected from the group consisting of a monoclonal antibody, a chimeric antibody, a humanized antibody, a single chain antibody, a bispecific antibody, a diabody, and di-, oligo- or multimers thereof.

19.      The antibody or antibody fragment according to claim 4, wherein the antibody is a humanized antibody.

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Numbers** | 2022-1461 |
| **Short Case Caption** | *Baxalta, Inc. v. Genentech* |
| **Filing Party/Entity** | Appellants Baxalta Inc. and Baxalta GmbH |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

/s/ William R. Peterson
William R. Peterson
*Counsel for Appellants,*
*Baxalta Inc. and Baxalta GmbH*

Dated: June 10, 2022

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Baxalta Incorporated | Not Applicable | Takeda Pharmaceutical Company Limited |
| Baxalta GmbH | Not Applicable | Takeda Pharmaceutical Company Limited |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| | | |
|---|---|---|
| Jody C. Barillare (Morgan, Lewis & Bockius LLP) | Wan-Shon Lo (Morgan, Lewis & Bockius LLP) | Jason C. White (Morgan, Lewis & Bockius LLP) |
| Amy M. Dudash (Morgan, Lewis & Bockius LLP) | Maria E. Doukas (Morgan, Lewis & Bockius LLP) | Amanda S. Williamson (Morgan, Lewis & Bockius LLP) |
| Margaret A. McGreal (Morgan, Lewis & Bockius LLP) | Olga Berson (Morgan, Lewis & Bockius LLP) | Caroline Lourgos (Formerly of Morgan, Lewis & Bockius LLP) |
| Colm F. Connolly (Formerly of Morgan, Lewis & Bockius LLP) | Jennifer M. Dienes (Formerly of Morgan, Lewis & Bockius LLP) | Jesse T. Dyer (Formerly of Morgan, Lewis & Bockius LLP) |
| Sanjay K. Murthy (Formerly of Morgan, Lewis & Bockius LLP) | Jessica A. Stow (Formerly of Morgan, Lewis & Bockius LLP) | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

None

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable

## TABLE OF CONTENTS

**Page**

Certificate of Interest.................................................................i

Table of Authorities ..............................................................vi

Statement of Related Cases ....................................................x

Statement of Jurisdiction........................................................1

Statement of the Issues .........................................................2

Introduction ........................................................................3

Statement of the Case............................................................6

Summary of the Argument....................................................23

Argument ..........................................................................26

I.     Standard of Review.....................................................26

    A.    The district court failed to hold Genentech to its burden and to construe the evidence in the light most favorable to Baxalta...............................................................27

    B.    The district court failed to credit Baxalta's evidence.....................28

    C.    The district court's findings about the "true inventor" are irrelevant to the enablement inquiry.............................................29

II.    A Reasonable Jury Could Find Facts Under Which the '590 Patent Satisfies the Enablement Requirement. ................................31

    A.    Skilled artisans could, without undue experimentation, engineer an antibody that binds Factor IX/IXa and increases procoagulant activity into the various claimed isotypes and formats...............................................................32

TABLE OF CONTENTS
(continued)

    a.    The district court failed to credit Baxalta's evidence regarding humanized antibodies...................34

    b.    The district court failed to credit Baxalta's evidence regarding bispecific antibodies. ...................35

  2.    The district court erred by comparing this case to *Amgen*, where the full scope could not be practiced without undue experimentation.........................................37

B.    Following the steps of the specification, skilled artisans can make new embodiments without undue experimentation...............40

  1.    The process taught by Example 1 and Example 2 consistently produces new antibodies within the scope of the claims....................................................................40

  2.    This Court has held, in *Wands*, that routine screening of antibodies does not constitute undue experimentation.................................................................41

  3.    Under the *Wands* factors, taken in the light most favorable to Baxalta, undue experimentation is not required to practice the claims. .........................................43

    a.    Quantity of experimentation necessary and amount of direction or guidance presented.................43

    b.    The presence or absence of working examples............46

    c.    The nature of the invention and the breadth of the claims. ...........................................................47

    d.    The state of the prior art, relative skill of those in the art, and predictability or unpredictability of the art....................................................................48

# TABLE OF CONTENTS
## (continued)

**Page**

      e.    The district court erred by treating this predictable, reliable process as trial and error.............. 49

    4.    There is no evidence that the '590 Patent claims distinct categories of variable regions. ........................................... 52

III.  The District Court Applied the Wrong Legal Standard for Enablement. ....................................................................... 54

    A.    The district court erred by equating "functional scope" with the "degree of procoagulant activity." ......................................... 54

    B.    The district court required Baxalta to enable antibodies that— under its claim construction—are outside the claims. .................... 58

    C.    The district court's focus on enablement of the accused product, emicizumab, is misplaced. ........................................... 59

      1.    An inventor is not required to discover the optimal mode of practicing the claims. ........................................... 59

      2.    The time required to develop emicizumab does not disprove enablement. ......................................................... 61

      3.    Even if the relative effectiveness of emicizumab were relevant, the district court erred in considering the evidence. ....................................................................... 62

Conclusion & Prayer for Relief. .................................................................... 64

Addendum ....................................................................................................... 66

Certificate of Compliance with Rule 32(a)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014) .................................................. 3, 32, 33, 46

*ABS Glob., Inc. v. Inguran, LLC*,
  No. 14-CV-503-WMC, 2019 WL 4276647 (W.D. Wis. Sept. 10, 2019) ......... 56

*Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*,
  No. 1:07-CV-1191, 2015 WL 1472015 (N.D.N.Y. Mar. 31, 2015) ................ 56

*AK Steel Corp. v. Sollac & Ugine*,
  344 F.3d 1234 (Fed. Cir. 2003) .......................................................... 53, 55

*Alcon Research Ltd. v. Barr Labs., Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014) ................................................................ 27

*Amgen Inc. v. Sanofi*,
  872 F.3d 1367 (Fed. Cir. 2017) ................................................................ 41

*Amgen Inc. v. Sanofi*,
  987 F.3d 1080 (Fed. Cir. 2021) ........................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .............................................................................. 26

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
  501 F.3d 1274 (Fed. Cir. 2007) ............................................................... 52

*Baxalta Inc. v. Genentech, Inc.*,
  972 F.3d 1341 (Fed. Cir. 2020) ............................................................... 20

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021) ................................................................ 34

*CFMT, Inc. v. Yieldup Int'l Corp.*,
  349 F.3d 1333 (Fed. Cir. 2003) .............................................. 24, 57, 58, 61

TABLE OF AUTHORITIES
(continued)

Page(s)

*El v. Se. Pa. Transp. Auth.*,
  479 F.3d 232 (3d Cir. 2007)..................................................................26

*Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*,
  928 F.3d 1340 (Fed. Cir. 2019) ............................................................51

*Epistar Corp. v. Lowes Cos., Inc.*,
  No. CV-17-03219-JAK-KSX, 2020 WL 771096 (C.D. Cal. Feb. 11, 2020)....56

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
  93 F.3d 1572 (Fed. Cir. 1996) ..............................................................39

*FastShip, LLC v. United States*,
  892 F.3d 1298 (Fed. Cir. 2018) ............................................................55

*Gillette Co. v. Energizer Holdings, Inc.*,
  405 F.3d 1367 (Fed. Cir. 2005) ............................................................60

*Hormone Rsch. Found., Inc. v. Genentech, Inc.*,
  904 F.2d 1558 (Fed. Cir. 1990) ............................................................60

*Idenix Pharm. LLC v. Gilead Scis. Inc.*,
  941 F.3d 1149 (Fed. Cir. 2019) ....................................................*passim*

*In re Fisher*,
  427 F.2d 833 (C.C.P.A. 1970)........................................................31, 56

*In re Wands*,
  858 F.2d 731 (Fed. Cir. 1988)........................................................*passim*

*Johns Hopkins Univ. v. CellPro, Inc.*,
  152 F.3d 1342 (Fed. Cir. 1998) ............................................................61

*Junker v. Med. Components, Inc.*,
  25 F.4th 1027 (Fed. Cir. 2022) ............................................................26

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  481 F.3d 1371 (Fed. Cir. 2007) ............................................................53

TABLE OF AUTHORITIES
(continued)

Page(s)

*MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*,
　687 F.3d 1377 (Fed. Cir. 2012) ........................................................*passim*

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
　959 F.3d 1091 (Fed. Cir. 2020) ................................................... 31, 32, 34

*Par Pharm., Inc. v. TWi Pharm., Inc.*,
　120 F. Supp. 3d 468 (D. Md. 2015) ......................................................... 56

*Soitec, S.A. v. Silicon Genesis Corp.*,
　81 F. App'x 734 (Fed. Cir. 2003) ................................................ 32, 37, 38

*Spectra-Physics, Inc. v. Coherent, Inc.*,
　827 F.2d 1524 (Fed. Cir. 1987) ...........................................................31, 34

*SRAM Corp. v. AD-II Eng'g, Inc.*,
　465 F.3d 1351 (Fed. Cir. 2006) .............................................................. 30

*TQ Delta, LLC v. CISCO Sys., Inc.*,
　942 F.3d 1352 (Fed. Cir. 2019) .............................................................. 29

*TSI Inc. v. Azbil BioVigilant Inc.*,
　No. CV-12-00083-PHX-DGC, 2014 WL 1604860 (D. Ariz. Apr. 22, 2014)... 56

*U.S. Steel Corp. v. Phillips Petrol. Co.*,
　865 F.2d 1247 (Fed. Cir. 1989) .............................................................. 60

*Wellman, Inc. v. Eastman Chem. Co.*,
　642 F.3d 1355 (Fed. Cir. 2011) .............................................................. 59

*Wyeth & Cordis Corp. v. Abbott Labs.*,
　720 F.3d 1380 (Fed. Cir. 2013) ........................................................*passim*

STATUTES

28 U.S.C. § 1295 ........................................................................................1

28 U.S.C. § 1338 ........................................................................................1

TABLE OF AUTHORITIES
(continued)

**Page(s)**

35 U.S.C. § 112................................................................................59

**RULES**

Fed. R. Civ. P. 56...........................................................................26

**OTHER AUTHORITIES**

Dmitry Karshtedt et al., *The Death of the Genus Claim*, 35 HARV. J.L. & TECH. 1
    (2021)........................................................................................5

## STATEMENT OF RELATED CASES

This case was the subject of a previous appeal to this Court. *Baxalta Inc. v. Genentech, Inc.*, No. 2019-1527. The panel comprised then-Judge Moore and Judges Plager and Wallach. The case was decided on August 27, 2020, and the opinion is reported at 972 F.3d 1341.

Pursuant to Federal Circuit Rule 47.5(b), counsel are not aware of any other cases pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1338(a).  The district court entered a final judgment in favor of Genentech on January 13, 2022.  Appx77.  Baxalta filed a timely notice of appeal on February 8, 2022.  Appx20575.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

This appeal concerns summary judgment of nonenablement of claims covering a small genus of antibodies. The issues presented are:

1.      Whether the district court failed to hold Genentech to its burden to prove by clear-and-convincing evidence the facts underlying nonenablement and to construe the evidence in the light most favorable to Baxalta.

2.      Whether the district court erred in treating the entire field of antibodies as an unpredictable art, despite evidence that skilled artisans could take an antibody that binds Factor IX/IXa and increases the procoagulant activity of Factor IXa and predictably engineer it into the different claimed isotypes and formats.

3.      Whether the district court erred in treating the method of practicing the claims as trial-and-error, despite evidence that skilled artisans could consistently and predictably create and screen new antibodies that bind Factor IX/IXa and increase the procoagulant activity of Factor IXa, using a modification of the decades-old hybridoma-and-screening process held enabled in *Wands*.

4.      Whether the district court applied the wrong legal standard for enablement by (a) requiring a patent claiming a novel quality to enable every possible measurement of that quality; (b) requiring enablement of antibodies outside the scope of the claims; and (c) focusing on development of the accused product, without evidence that its development followed the patent's teachings.

2

**INTRODUCTION**

The district court's grant of summary judgment turned on two factual errors: (1) "The field of antibodies is inherently unpredictable." Appx34; and (2) "The only way to practice the teachings of the patent is by trial-and-error; i.e., by screening tens of thousands, if not millions, of candidate antibodies to determine whether they satisfy the limitations of the asserted claims." Appx34. Neither is supported by the summary judgment record.

Admittedly, certain aspects of the field of antibodies are unpredictable. Skilled artisans cannot, for example, review the amino acid sequence of a variable region and know the antigen to which the antibody will bind or (generally) predict how changes to that sequence would affect it.

But other aspects of the field of antibodies are predictable. A skilled artisan in possession of an antibody that binds Factor IX/IXa and increases procoagulant activity could use well-known antibody engineering techniques to transform this antibody into any desired isotype or format. This is an aspect of the art where results are predictable—the record evidence shows that skilled artisans "could make predictable changes . . . to arrive at other types of antibodies" that also bind Factor IX/IXa and increase procoagulant activity. *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir. 2014).

This fact distinguishes *Amgen Inc. v. Sanofi*, 987 F.3d 1080 (Fed. Cir. 2021), in which the claims were not enabled because they claimed all possible combinations of sixteen different binding sites, but a skilled artisan could not predictably create the claimed combinations. *Id.* at 1087-88 & n.1. Here, in contrast, a skilled artisan could engineer antibodies into the full scope of claimed isotypes and formats—a process involving a predictable aspect of the field of antibodies.

Second, practicing the claims does not involve "trial-and-error" or randomly synthesizing antibodies while hoping to discover one that practices the claims. The specification describes a two-step process to practice the claims, first using hybridoma technology to generate a group of antibodies that bind Factor IX/IXa and second using a chromogenic assay (taught by the specification) to identify which of these antibodies increase the procoagulant activity of Factor IX/IXa. The inventors performed this process four times and created new antibodies that practiced the claims each time. Baxalta's expert explained there is no "maybe I'll find them." Appx19397. This process is reliable, not trial-and-error, and requires no undue experimentation, just like the hybridoma-screening process held enabled in *Wands*.

The reliability of this process distinguishes this case from *Idenix Pharmaceuticals LLC v. Gilead Sciences Inc.*, 941 F.3d 1149 (Fed. Cir. 2019), and *Wyeth & Cordis Corp. v. Abbott Laboratories*, 720 F.3d 1380 (Fed. Cir. 2013), which did not involve any equivalent to the predictable process taught by the '590

Patent, which has consistently generated new embodiments every time it has been followed. In *Idenix* and *Wyeth*, screening was necessary to **determine whether** any synthesized candidates practiced the claims. In the '590 Patent, screening is necessary only to **identify which** of the manufactured antibodies practice the claims.

The district court failed to heed this Court's direction to consider each case, even those involving genus claims, "based on the facts of that case and the evidence presented there." *Amgen*, 987 F.3d at 1088. On the record here, a reasonable jury could find facts establishing that the claims are enabled. The district court's grant of summary judgment was erroneous.

The alternative is to embrace what commentators have already suggested: that this Court has overruled *Wands sub silentio* and announced the "death of genus claims" as a matter of law. Dmitry Karshtedt et al., *The Death of the Genus Claim*, 35 Harv. J.L. & Tech. 1, 4 (2021). But if facts and the record continue to matter, a jury could find facts under which these claims satisfy the test for enablement.

**STATEMENT OF THE CASE**

***Antibodies and the Coagulation Cascade***

Antibodies are proteins that bind to "antigens." Ordinarily, antibodies are "antagonistic" and block or inhibit antigens. Appx16843. Less often, antibodies are "agonistic" and activate or promote antigens. Appx16843. This appeal involves special, agonistic antibodies invented by Baxalta scientists that are valuable in treating Hemophilia A.

Hemophilia A patients lack or have an insufficient amount of a protein known as "Factor VIII," which plays a crucial role in the coagulation cascade—the body's process for causing blood to coagulate or clot. Appx19022. In the coagulation cascade, Factor VIIIa (activated Factor VIII) and Factor IXa (activated Factor IX) activate Factor X, which leads to the formation of a clot. Appx19022; *see also* Appx141 at 1:17-19. If there is insufficient Factor VIII, then Factor X is not activated, the coagulation cascade ceases, and no clot forms. Appx19023.

The conventional treatment is "replacement therapy," artificially replacing the missing Factor VIII. Appx19023. For most patients, this works well, but approximately 25-30% develop "inhibitors," making replacement therapy less effective. Appx19022-19023.

### *Baxalta Discovers an Agonistic Factor IX Antibody*

Baxalta scientist Dr. Friedrich Scheiflinger—a named inventor on the '590 Patent—discovered an alternative means of activating Factor X: agonistic antibodies that bind Factor IX or IXa and increase the procoagulant activity of Factor IXa. Appx141 at 2:29-33. These antibodies permit Factor IXa to activate Factor X in the absence of Factor VIII. Appx141 at 2:39-43.

The specification refers to these antibodies as achieving "Factor VIII-like activity." Appx142 at 3:9. But although the antibodies achieve a "Factor VIII-like" result, their mechanism is different. They do not duplicate Factor VIII.

The '590 Patent's specification teaches how to consistently and predictably generate these novel antibodies. First, it teaches how to produce antibodies that bind Factor IX or Factor IXa. Appx145 at 9:62-10:37. Using hybridoma technology dating back to 1975, the inventors immunized mice to generate anti-Factor IX/IXa antibody-secreting B-cells. Appx19135. The inventors then removed B-cells expressing the anti-Factor IX/IXa antibodies from the spleens of the mice and fused them to specific myeloma cells to create master clones, which were then subcloned to create a single hybridoma secreting a specific antibody. Appx19135. The '590 Patent's Example 1—entitled "Immunization of Immunocompetent Mice and Generation of Anti-FIX/IXa Antibody Secreting Hybridoma Cells"—details this process. Appx145 at 9:62-10:37.

Second, the '590 Patent teaches how to identify which of those antibodies exhibit "Factor VIII-like activity." Appx145-146 at 10:39-12:56. As Dr. Scheiflinger testified, this was uncharted territory, and the inventors "couldn't follow anyone else." Appx16891. Conventional chromogenic assays measured the activity of Factor VIII itself—the concept of "Factor VIII-like activity" did not exist—so the inventors needed to "do the base work" to determine how to measure Factor VIII-like activity. Appx16891.

The results of the inventors' efforts are described in the '590 Patent's Example 2, entitled "Assaying for FVIII-like Activity in Supernatants of Anti-FIX/FIXa Antibody Secreting Hybridoma Cells." Appx145-146 at 10:39-12:56. Example 2 describes modifications to a commercially available test-kit COATEST VIII:C/4® "[t]o allow high throughput screening" in a "downscaled [] microtiter plate format." Appx145 at 10:48. Example 2 details how long to incubate at specific temperatures, when to read absorbance, and how to compare the absorbency of the samples against the absorbency of a diluted Factor VIII reference standard using specific software. Appx145 at 10:43-67.

Developing the means to screen for Factor-VIII-like activity was, in the words of Dr. Scheiflinger, the "fundamental technical problem here." Appx16866. He explained that "you c[ould] have many ideas," but given the state of the art in 1998 and 1999, if you could not screen for them, "you were ending up nowhere."

8

Appx16866. A standard chromogenic assay, which "test[ed] for Factor VIII," Appx16887, could not be used to test for a Factor IXa activating antibody. Appx16890-16891. "[T]here is a fundamental difference" between the two. Appx16887. But by following the guidance of the '590 Patent, skilled artisans can easily screen for and identify these antibodies.

The reliability of the process described in the '590 Patent is crucial. **Every time** the inventors followed this process, they produced new antibodies that bind Factor IX or IXa and increase the procoagulant activity of Factor IXa. Appx145-146.

The inventors performed four hybridoma fusion experiments, numbered 193, 195, 196, and 198. Appx145 at 10:11-13. In each fusion experiment, after screening the hybridoma cells for Factor VIII-like activity (i.e., procoagulant activity), the inventors selected "several (5-15) master clones," which then "were identified and subjected to subcloning." Appx146 at 12:14-16; *see also* Appx146 at 11:16-18. The subcloning was used to make the lines homogenous. Appx146 at 12:16-17.

Figure 1 of the patent shows "[t]he results of a screening for FVIII-like activity" in certain cell lines derived from some of the fusion experiments. Appx146 at 11:1-4.



**FIG. 1**

Appx80. "MLW," the control, shows no Factor VIII-like activity. Appx146 at 11:14-15. Each other column is a cell line exhibiting Factor VIII-like activity.

Amino acid sequences are available for eleven of the antibodies made by the inventors (the "Disclosed Antibodies"). The inventors deposited several cell lines with the European Collection of Cell Cultures, where they remain accessible today. Appx19141-19142; Appx146 at 12:36-48. Others (in the form of scFvs) are disclosed in the '590 Patent by their amino acid sequences. Appx19141.

One of Baxalta's experts testified that by following the process taught by the '590 Patent, procoagulant antibodies were "surprisingly common." Appx19389. "[I]t was somewhat surprising that they could pick them up at that frequency." Appx19390. "[W]hen [the inventors] [went] through the methods . . . they g[o]t a number of monoclonal antibodies that c[a]me out of it." Appx19390. If a person

follows the process, they will find procoagulant antibodies. Appx19396-19397. There is no "maybe I'll find them"—you simply "have to go get them." Appx19397.

Given how easily (and predictably) this process generates new antibodies with the claimed functionality, a patent claiming only specific antibodies described by their amino acid sequences would be worthless. Because every time the process is followed, new antibodies—with distinct amino acid sequences—are made, a skilled artisan could simply follow the process taught by the '590 Patent and would, within weeks, Appx11434, possess a new antibody with the claimed properties.

For this reason, the '590 Patent claims the genus of antibodies with a specific functionality that can be produced using the disclosed process: "An isolated antibody or antibody fragment thereof that binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa." Appx191, Claim 1.

### Antibody Engineering

The hybridoma process described above produces "monoclonal monospecific" antibodies (antibodies produced by a single clone or cell line and that bind to a single antigen). The specification explains that after acquiring an antibody that binds Factor IX/IXa and increases procoagulant activity, a skilled artisan could

11

use well-known antibody engineering techniques to transform the antibody into any claimed isotype[1] or format.[2]

An antibody's "variable region"—specifically, the complementarity-determining regions ("CDRs")—is primarily responsible for its binding and functional properties, i.e., for whether the antibody binds Factor IX/IXa and exhibits procoagulant activity.[3]  Appx19256.  The rest of the antibody—its "constant region"—is "identical in all antibodies of the same isotype."  Appx19256.  "[T]he constant regions of IgG antibodies, for example, are identical but differ from the constant regions of IgA and IgM antibodies."  Appx19256.

The following illustration shows an IgG antibody, with the variable regions in red and the constant regions in gray:

---

[1] Antibodies are grouped into five "classes" or "isotypes": IgM, IgD, IgG, IgE, and IgA.  "Ig" stands for immunoglobulin, and the following letter signifies the specific class.  Some isotypes also have subtypes.

[2] The '590 Patent claims a variety of antibodies, including monoclonal antibodies, chimeric antibodies, humanized antibodies, single chain antibodies (scFvs), bispecific antibodies, and diabodies, as well as dimers, oligomers, and multimers thereof.  This brief refers to all of these as antibody "formats," even though some of them are (or might be) fragments.  References to "antibodies" in the brief include "antibody fragments."

[3] Technically, an antibody has at least two "variable regions"—a heavy chain variable region ($V_H$) and light chain variable region ($V_L$), which are not identical.  Some antibodies have multiple copies of each.  This brief uses the singular "variable region" to refer to the combination of a $V_H$ and $V_L$.



Appx20615. The two arms of the "Y" are identical. Because the antibody has two copies of the same variable region, it binds to a single antigen (i.e., it is "monospecific").

By following the process described in Example 1 and Example 2, a skilled artisan could create an IgM antibody that binds Factor IXa and increases procoagulant activity. The IgM antibody's variable regions could be combined with IgG constant regions to create an IgG antibody that exhibits the same claimed properties. Appx155-156 at 30:11-31:10 (detailing a class switch from IgM to IgG1); *see also* Appx143 at 6:41-48 (discussing "class switching"); Appx19212-19215. Similar class switching could be used to create IgG, IgM, IgA, and IgE antibodies that bind Factor IX/IXa and increase procoagulant activity. *See* Appx143 at 6:41-48 (noting that class switching is "known from the prior art").

13

Skilled artisans could also create "chimeric antibodies" that bind Factor IX/IXa and increase procoagulant activity. A chimeric antibody combines portions of antibodies from two species, such as "variable regions . . . of non-human origin" and human constant regions. Appx143-144 at 6:64-7:3. Combining the variable regions of a murine monoclonal antibody that binds to Factor IX/IXa and increases the procoagulant activity of Factor IXa with human IgG constant regions would create a chimeric IgG antibody that (predictably) binds to Factor IX/IXa and increases the procoagulant activity of Factor IXa:



Appx20617; *see also* Appx19216-19218.

"Humanized antibod[ies]" include less than the entire non-human variable region, such as "complement[arity] determining regions (CDRs) from murine monoclonal antibodies" combined with human "framework regions." Appx143 at 6:49-53. Using "well-known technology" and "without undue experimentation,"

skilled artisans could combine the CDRs from a murine antibody that binds Factor IX/IXa and increases procoagulant activity with human framework regions and thus "make and use humanized antibodies that bind to Factor IX/Factor IXa and increase the procoagulant activity of Factor IXa." Appx19218-19220.

Skilled artisans could also engineer the variable region of an antibody that binds Factor IX/IXa and increases procoagulant activity into a single chain antibody (scFv), a type of antibody fragment that does not have constant regions. Skilled artisans could incorporate the variable region into "one single polypeptide chain," Appx144 at 7:9-10, by connecting its pieces using a "linker sequence," Appx144 at 7:21, 7:30-31.



Appx20620.   Creating scFvs was well known in the art, and the inventors made

several.   *See* Appx19191-19192 (discussing scFvs); Appx19186-19188 (discussing

the examples in the specification).

Skilled artisans could also create "Fab" fragments—which have the variable

region and portions of the constant regions—from antibodies that bind Factor IX/IXa

and increase procoagulant activity.



Appx20619.  "Fab fragments were well known and readily producible by a POSITA

at the time of the invention."  Appx19188; *see also* Appx19188-19191.

Bispecific antibodies have "two different binding specificities within one

single molecule."  Appx144 at 7:32-34.  Skilled artisans "were readily familiar with

bispecific antibodies" by 1999, and methods of producing them were well known.

Appx19691-19693.  To bind multiple antigens, a bispecific antibody needs different

variable regions:

16



Appx20618. A skilled artisan could use the process taught by the '590 Patent to create a monoclonal antibody that binds Factor IX/IXa and increases the procoagulant activity of Factor IXa, replace one copy of its variable region with a variable region that binds a different antigen, and create a bispecific antibody that binds Factor IX/IXa and increases the procoagulant activity of Factor IXa. *See* Appx19677-19723 (Chang expert report discussing bispecific technology).

The same is true of diabodies and multimers. Appx19222-19226.

None of these techniques was discovered by the inventors of the '590 Patent. Skilled artisans were well aware of antibody engineering.

This chart illustrates that skilled artisans could create the claimed isotypes and formats by combining variable regions that bind Factor IX/IXa and increase the procoagulant activity of Factor IXa with constant regions or linkers (and, for bispecific antibodies, a second variable region):



IgG Constant Regions

IgG

IgM Constant Regions

IgM[4]

IgA Constant Regions

IgA[5]

IgE Constant Regions

IgE

Variable Region

Human Constant Regions

Chimeric Antibody

Human Constant Regions and Framework Regions

Humanized Antibody

Artificial Linker Sequence

scFv

Artificially Linked Portions of Constant Regions

Fab

Constant Regions    Variable Region

Bispecific antibody

---

[4] An IgM is a type of "multimer."

[5] An IgA is a type of "dimer."

***Emicizumab and Genentech***

Sometime between 1999 and mid-2000, Chugai Pharmaceutical Co., Ltd.[6] started to investigate the concept of bispecific antibodies to Factor IX/IXa and Factor X/Xa that could substitute for Factor VIII/VIIIa in hemophilia patients. Appx18248; Appx17314.   Chugai began experimental work around May 2002. Appx18248.

Chugai scientists first generated hybridomas making monospecific antibodies against Factor IXa and Factor X.  Appx18248-18249.  They then combined these antibodies to create a bispecific antibody that binds Factor IXa with one arm and Factor X with another.  Appx18249-18250.  They then screened these antibodies for procoagulant activity, Appx18250, and humanized the lead antibody candidate. Appx18251.

After making a humanized bispecific antibody that bound Factor IXa and exhibited procoagulant activity, Chugai then "engaged in extraordinary antibody engineering to refine and further refine the candidate antibody."   Appx16230. Chugai called the resulting antibody "emicizumab," which is now sold under the brand name "HEMLIBRA."  Genentech received the rights to sell HEMLIBRA in the United States.  Appx19021.

---

[6] Chugai and Genentech are both Roche subsidiaries.  Appx394; Appx397.

In 2017, Baxalta sued Genentech and Chugai, alleging infringement of claims 1, 4, 17, and 19 of the '590 Patent.[7] Appx242.

### *Claim Construction and the Prior Appeal*

In December 2018, the district court issued a claim construction order, construing, *inter alia*, "antibody" and "antibody fragment." Appx16160-16190. Based on the claim construction, the parties stipulated to non-infringement, Appx16195-16197, and the district court entered judgment, Appx16199-16202. Baxalta appealed.

This Court vacated the judgment of non-infringement and remanded, holding that the district court erred in construing "antibody" and "antibody fragment." *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1343 (Fed. Cir. 2020). This Court construed "antibody" as "an immunoglobulin molecule having a specific amino acid sequence comprising two heavy chains (H chains) and two light chains (L chains)." *Id.* at 1349. And it construed "antibody fragment" as "a portion of an immunoglobulin molecule having a specific amino acid sequence comprising two heavy chains (H chains) and two light chains (L chains)." *Id.*

---

[7] Chugai was later voluntarily dismissed. Appx16033.

### *The District Court Grants Summary Judgment of Nonenablement*

On remand, Genentech moved for summary judgment of invalidity for lack of written description and nonenablement.[8]  Appx16215.  Although written description and enablement are separate requirements, Genentech addressed them together.  Appx16242; Appx16249-16252.  In its enablement arguments, Genentech failed to discuss—or even cite—*In re Wands*, 858 F.2d 731 (Fed. Cir. 1988), or the *Wands* factors.  Appx16217-16219.

In contrast, Baxalta's opposition cleanly separated written description and enablement and, in discussing enablement, addressed each of the *Wands* factors (including the factual disputes underlying these factors).    Appx18861-18875.  Baxalta supported its opposition with the testimony of two experts: Dr. Wayne Marasco and Dr. Sriram Krishnaswamy.  Dr. Marasco holds a Ph.D. in Immunology and heads a research laboratory in cancer and infectious disease immunotherapy.  Appx19121.  He has worked in the antibody field since before 2000 and founded the National Foundation of Cancer Research Center for Therapeutic Antibody Engineering "to expand the use of human monoclonal antibodies in the treatment of cancer."  Appx19122.

---

[8]  Genentech also moved for summary judgment of non-infringement under a doctrine-of-equivalents theory and no willful infringement.  Appx16211.  The district court did not address written description or these other arguments and denied Genentech's motion on these grounds as moot.  Appx76.

Dr. Krishnaswamy holds a Ph.D. in Biochemistry. Appx4344. At the University of Pennsylvania, he serves as Professor in the Department of Pediatrics, Professor (Secondary) in Systems Pharmacology and Translational Therapeutics, and Professor (Secondary) in the Department of Biochemistry and Biophysics as a Member of the Structural Biology Group. Appx4346. His primary research area concerns blood coagulation. Appx4346

After analyzing the *Wands* factors, Baxalta's experts concluded that skilled artisans would "not need to engage in undue experimentation to make and use the [claimed] antibodies or antibody fragments." Appx19530-19531 (Krishnaswamy); Appx19545; *see also* Appx19176 (Marasco: "[T]he '590 patent would have taught a POSITA how to make and use the claimed invention without undue experimentation.").[9]

Following a hearing, the district court granted Genentech's motion for summary judgment of invalidity for nonenablement. Appx30. The district court found that "Genentech has shown by clear and convincing evidence that the asserted claims of the '590 patent are not enabled." Appx32.

This appeal followed. Appx20575.

---

[9] In addition to these experts, Dr. Chien-Hsing Chang testified regarding bispecific antibodies. Appx19670-19723.

## SUMMARY OF THE ARGUMENT

The district court erred in granting summary judgment of nonenablement because Genentech did not meet its burden of establishing invalidity by clear-and-convincing evidence in view of the summary judgment record of this case and the precedent of this Court.

The scope of the claims covers (1) isotypes and formats of antibodies with (2) variable regions that cause them to bind Factor IX/IXa and increase procoagulant activity. Practicing the claims thus involves two steps: (1) obtaining the variable region through the (a) hybridoma and (b) chromogenic assay process; and (2) engineering it into the desired isotype or format. The district court should have considered these two steps—which involve different technologies—separately.

Viewing the evidence in the light most favorable to Baxalta, skilled artisans would have been able to apply predictable antibody engineering techniques to generate antibodies in the claimed isotypes and formats that bind Factor IX/IXa and increase procoagulant activity. The inventors of the '590 Patent did not invent these engineering techniques and did not need to teach them in the specification.

The hybridoma–screening process taught by the '590 Patent to acquire new variable regions is reliable, requiring, at most, routine experimentation. Each time the inventors performed a hybridoma fusion experiment, they identified new

23

procoagulant antibodies.    Appx20571-20572.    Viewing the evidence in the light most favorable to Baxalta, the '590 Patent enables the claims' full scope.

The district court erroneously treated screening as undue experimentation as a matter of law, an approach inconsistent with the *Wands* factors and *Wands*'s holding.    The district court made no attempt to harmonize its decision with this governing precedent.

The district court also erroneously imported an enablement requirement from *MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*, 687 F.3d 1377 (Fed. Cir. 2012), which applies to claims for an improved measurement of a known quality. Here, the claims concern a new effect ("increasing procoagulant effect"), not any measurement of that effect.    But the district court treated the '590 Patent claims as implicitly claiming any measured increase from zero to infinity and required enablement of every hypothetical measurement.    This Court has rejected such a test, and few, if any, patents could survive it.    *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003).

The district court's enablement analysis also conflicts with its claim construction.    The district court rejected Baxalta's explanation—calling it "convoluted"—that a bispecific antibody would be outside the scope of the claims if its procoagulant effect arose only from the non-Factor IX/IXa arm.    Appx75.    But the claim construction requires binding to Factor IX/IXa to "pla[y] a role in causing

an increase in procoagulant activity." Appx16186-16188. The district court erred by requiring Baxalta to enable unclaimed antibodies.

Finally, the district court erred by focusing on the accused product, emicizumab. Contrary to the district court's holding, an inventor is not required to discover and enable the best possible mode of practicing the claims. Emicizumab also cannot be relied on as post-priority evidence because Genentech contends that Chugai developed emicizumab using an approach "nowhere mentioned" in the '590 Patent, Appx19807, and emicizumab's development time was due, in part, to optimization steps to assist in its manufacturing. In any event, contrary to the district court's decision, an apples-to-apples comparison shows that emicizumab generates less activity (on a molar basis) than one of the Disclosed Antibodies.

**ARGUMENT**

## I.    Standard of Review

This Court reviews summary judgment *de novo*, applying the same standard as the district court. *Junker v. Med. Components, Inc.*, 25 F.4th 1027, 1032 (Fed. Cir. 2022). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must credit the non-movant's evidence and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007). "[I]f there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.* This standard is even higher where, as here, the burden is clear-and-convincing evidence. *Anderson*, 477 U.S. at 255.

Enablement is a question of law based on underlying factual findings. *Amgen*, 987 F.3d at 1084. "To prove that a claim is invalid for lack of enablement, a challenger must show by clear and convincing evidence that a person of ordinary skill in the art would not be able to practice the claimed invention without 'undue

experimentation.'" *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188 (Fed. Cir. 2014).[10]

### A.   The district court failed to hold Genentech to its burden and to construe the evidence in the light most favorable to Baxalta.

The district court failed to follow the summary judgment standard.  Although the opinion recites the correct legal standard, its analysis does not address what a reasonable jury could (or must) find, refer to Genentech's burden of proof, or apply the clear-and-convincing-evidence standard.

At one point, the district court misstates the legal standard: "For the reasons described in detail below, the court **finds** that Genentech **has shown by clear and convincing evidence** that the asserted claims of the '590 patent are not enabled." Appx32 (emphasis added).  Although the opinion later recites the correct standard— whether "no reasonable jury could find the full scope of the asserted claims of the '590 patent are enabled," Appx36—aside from a passing reference in the section discussing the dependent claims, Appx73, its analysis does not address what any reasonable juror must find that Genentech has proven by clear-and-convincing evidence.

---

[10] While acknowledging that they are presently foreclosed by this Court's precedent, Baxalta adopts the arguments raised in the pending petition for writ of certiorari in *Amgen v. Sanofi*, No. 21-757.  Any change of the law of enablement by the Supreme Court in *Amgen* should apply in this case as well.

**B.    The district court failed to credit Baxalta's evidence.**

The district court failed to view the evidence and draw all inferences in Baxalta's favor.   These factual disputes are detailed below, but key examples include:

**Guidance.**   The district court characterized the guidance as minimal and the process taught in the '590 Patent as "trial-and-error," Appx34, the equivalent of randomly generating antibodies and hoping to uncover one that would practice the claims.

To the contrary, Dr. Marasco testified that there is a "profoun[d]" difference between (i) following the process of the '590 Patent that reliably makes the claimed antibodies versus (ii) applying a random trial-and-error approach.  Appx16451.

Nor did the district court credit the testimony of Dr. Krishnaswamy (and Dr. Scheiflinger) regarding the importance of the modifications to the chromogenic assay detailed in Example 2 of the specification, Appx19531-19532, Appx19539-19541, which solved the "fundamental technical problem" necessary to practice the claims.  Appx16866.

**Predictability of the Field**.   The district court found "[t]his area of art is inherently unpredictable," and "[t]he field of antibodies is itself unpredictable." Appx59; Appx34.   But the district court cited no evidence for this proposition, Appx59, and it conflicts with the testimony of Baxalta's experts that the field is not

wholly unpredictable and a skilled artisan in possession of an antibody that binds Factor IX/IXa and increases procoagulant activity could, predictably, engineer that antibody into other isotypes and formats.   Appx19207-19209; Appx19542-19543; Appx19722.

**Number of Potential Candidates.**   The district court adopted the opinion of Genentech's expert Dr. Garcia that "the number of candidate antibodies or antibody fragments within the scope of claim 1 is high, 'encompassing millions of different structural formats, binding epitopes, binding affinities, and mechanisms of action.'" Appx49 (quoting Appx19337).

But Dr. Garcia never explained the basis for his assertion. Appx19337.   He merely recited "millions" without providing any evidence or analysis in support. Appx19337.   There is no reason that every reasonable juror would be required to credit this unsupported *ipse dixit*.   *See TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1362 (Fed. Cir. 2019).

C.    **The district court's findings about the "true inventor" are irrelevant to the enablement inquiry.**

Other findings both violate the summary judgment standard and are irrelevant. The last two pages of the opinion characterize "the situation" as Genentech doing "the hard work to invent a useful compound" and Baxalta as "some earlier inventor who may have conceived of such a theory or made the first step in research, but did not enable its ultimate production."   Appx76; *see also* Appx75-76 (indicating that

Genentech is the "true inventor" and Baxalta is not). The district court announced that it "cannot allow Baxalta to provide a starting point for further research and then claim [Genentech's] solution to the problem." Appx76 (internal quotation marks omitted).

Enablement must be evaluated under the test prescribed by this Court—whether, under the *Wands* factors, practicing the claims requires undue experimentation—not under freestanding equitable considerations about the "true inventor" who "did the hard work," whether someone is trying to claim someone else's solution, and what the court "ca[n] allow." Appx76.

Even if they were relevant, these extraneous findings conflict with the summary judgment standard. There is no basis to conclude that every reasonable juror must find, by clear-and-convincing evidence, that Genentech was the "true inventor" who "did the hard work." The district court's views should not have affected its summary judgment ruling.

*    *    *

Summary judgment would be permissible only if Genentech presented "such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). Genentech fell short. The parties' experts contested whether the

experimentation required to practice the '590 Patent is "undue," and the district court committed reversible error in resolving these disputes in Genentech's favor.

## II.    A Reasonable Jury Could Find Facts Under Which the '590 Patent Satisfies the Enablement Requirement.

Practicing the full scope of the claims involves two steps: First, obtaining a variable region that binds Factor IX/IXa and increases procoagulant activity. Second, engineering the variable region into the desired isotype or format.

Enablement, including an artisan's ability to extrapolate beyond disclosed embodiments, "depend[s] upon the predictability of the art[.]" *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1102 (Fed. Cir. 2020).  "If an invention pertains to an art where the results are predictable, . . . a broad claim can be enabled by disclosure of a single embodiment[.]" *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987).  In a predictable art, once a skilled artisan possesses a single enablement, "other embodiments can be made without difficulty and their performance characteristics predicted by resort to known scientific laws." *In re Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970).

The district court overgeneralized in stating—without citation to any evidence—that "[t]he field of antibodies is inherently unpredictable." Appx34. True, some aspects are unpredictable: skilled artisans cannot predict how altering the amino acid sequence of an antibody's CDR (part of its variable region) will affect its binding. Appx17279-17280. But, taking the evidence in the light most favorable

to Baxalta, engineering an antibody that binds Factor IX/IXa and increases procoagulant activity into different isotypes and formats is a predictable art, in which a skilled artisan "could make predictable changes . . . to arrive at other types of antibodies" that also bind Factor IX/IXa and increase procoagulant activity. *AbbVie*, 759 F.3d at 1301.

Steps involving a predictable art and those involving an unpredictable art should be considered separately in evaluating enablement. The district court erred by characterizing the entire field as unpredictable and ignoring these differences.

### A.    Skilled artisans could, without undue experimentation, engineer an antibody that binds Factor IX/IXa and increases procoagulant activity into the various claimed isotypes and formats.

A patent must enable "the full scope of embodiments of the invention claimed." *McRO,* 959 F.3d at 1100. "When a patentee chooses to claim 'A or B,' . . . the specification must fully enable 'B' as well as 'A' when the differences between 'A' and 'B' substantially affect the practice of the invention." *Soitec, S.A. v. Silicon Genesis Corp.*, 81 F. App'x 734, 738 (Fed. Cir. 2003).

Here, the breadth of the claims—the "A or B"—is the Markush groups listed in Dependent Claims 3 and 20—IgG, IgM, IgA or IgE isotypes—and Dependent Claims 4 and 19—monoclonal antibodies, chimeric antibodies, humanized antibodies, single chain antibodies (scFvs), bispecific antibodies, and diabodies, as

well as dimers, oligomers, and multimers thereof.[11]  A skilled artisan in possession of an antibody that binds Factor IX/IXa and increases procoagulant activity could, using known techniques and without undue experimentation, engineer that antibody into each of the claimed isotypes and formats.

By definition, antibody engineering involves making changes to an antibody to arrive at other embodiments with predictable performance characteristics.  For example, combining the variable region of an antibody that binds Factor IX/IXa and increases procoagulant activity with the constant regions of a different isotype is a "predictable chang[e] . . . to arrive at [another] typ[e] of antibod[y]" that also binds Factor IX/IXa and increase procoagulant activity.  *See AbbVie*, 759 F.3d at 1301.

In discussing antibody engineering, the district court found that there is "no assurance that, once the modifications are made, the antibody will retain the same functional qualities."  Appx72.  If by "no assurance," the district court meant "no guarantee," this statement is irrelevant to the enablement inquiry.  What matters is that engineering the claimed antibodies is predictable and does not require undue experimentation, not that a skilled artisan is guaranteed to succeed.  If by "no assurance," the district court meant "unlikely," this statement fails to view the summary judgment evidence in the light most favorable to Baxalta.

---

[11]  Enablement of Dependent Claim 19 requires enablement only of humanized antibodies.  Appx192.

The inventors of the '590 Patent did not invent these antibody engineering techniques and did not need to explain them: "A 'patent need not teach, and preferably omits, what is well known in the art.'" *McRO*, 959 F.3d at 1102 (quoting *Spectra-Physics,* 827 F.2d at 1534). A court must consider "the knowledge of an ordinarily skilled artisan to determine whether undue experimentation would have been required to practice the invention." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 982 (Fed. Cir. 2021). The '590 Patent did not need to teach—and properly omitted—the details of these well-known antibody engineering techniques. For example, as Dr. Scheiflinger asked rhetorically, "Bispecifics have been known for a long time, why would we put anything here in this patent[?]" Appx16838.

In considering the full scope of the claims (at Appx71-Appx73), the district court did not specifically find that engineering any format or isotype would require undue experimentation.

### a. The district court failed to credit Baxalta's evidence regarding humanized antibodies.

Viewing in the light most favorable to Baxalta, the evidence shows that the experimentation involved in making a humanized antibody that binds Factor IX/IXa and increases procoagulant activity would not be "undue." According to Dr. Marasco, a skilled artisan "would not need guidance or direction in the specification on the making of a humanized antibody using well-known techniques." Appx19218.

34

The district court appeared to assume that the confirmatory test required undue experimentation. *See* Appx72 (citing Appx57-58). But the portion of the expert report cited by the district court opines that "such confirmation testing would **not** constitute undue experimentation." Appx19211-19212 (cited by Appx58) (emphasis added).

Quoting Dr. Marasco's deposition, the district court stated that a humanized antibody "frequently does not have the same effectiveness as the original murine antibody." Appx57 (quoting Appx16432). But on the same page of the deposition, Dr. Marasco clarified that by performing "modifications within known parameters," a skilled artisan can "get [humanization] to work precisely if you want to absolutely transfer equal activity from murine to human." Appx16432.

The district court erred by failing to take the evidence regarding humanization in the light most favorable to Baxalta and holding that the specification provided inadequate guidance regarding humanized antibodies. Appx72.

### b. The district court failed to credit Baxalta's evidence regarding bispecific antibodies.

The district court also erred in concluding that the specification provided insufficient guidance regarding bispecific antibodies. Appx72; *see also* Appx74-75. The '590 Patent directs a skilled artisan to *Bispecific Antibodies as Novel Bioconjugates* (1998), which discloses a variety of techniques for making them, Appx144 at 7:2-36, and Genentech's expert admitted that, "[p]rior to September 14,

35

1999, multiple approaches had been described in the literature to make bispecific antibodies." Appx19776.

Using standard antibody engineering techniques, a skilled artisan could, without undue experimentation, take an antibody that binds Factor IX/IXa and exhibits procoagulant activity, combine its variable region with constant regions and the variable regions of a different antibody, and produce a bispecific antibody that practices the claims. *See generally* Appx19671-19723. The claims do not require any particular target for the second binding arm or any functionality resulting from that second binding arm.

The district court failed to consider the evidence regarding bispecific antibodies in the light most favorable to Baxalta. Genentech's experts opined that to enable a bispecific antibody, the '590 Patent needed to teach the identity of the second binding arm. *E.g.*, Appx18215-18217; Appx18418-18426. Although not perfectly clear, Genentech's experts appear to assume that only certain binding arms could be used to create a bispecific antibody. But Baxalta's experts testified that a skilled artisan could practice the claims—generate a bispecific antibody that binds Factor IXa and has a procoagulant effect—and identify a binding specificity for the second binding arm without needing to be taught by the '590 Patent. Appx19691; Appx19694; Appx19711-19712; Appx19717-19718. In finding that skilled artisans

36

needed to be taught the target of the second binding arm, the district court failed to credit the testimony of Baxalta's experts.

*    *    *

Taking the evidence in the light most favorable to Baxalta, if skilled artisans possess an antibody with a variable region that binds Factor IXa and exhibits a procoagulant effect as claimed by the '590 Patent, they could use well-known and predictable antibody engineering techniques to transform this antibody into any of the claimed isotypes and formats.

> **2.  The district court erred by comparing this case to *Amgen*, where the full scope could not be practiced without undue experimentation.**

The district court erred in comparing this case to *Amgen Inc. v. Sanofi*, in which the claims recited a Markush group of binding sites: "wherein . . . the monoclonal antibody binds to at least one of the following residues: S153, I154, P155, R194, D238, A239, I369, S372, D374, C375, T377, C378, F379, V380, or S381." 987 F.3d at 1083.  Unlike the isotypes and formats claimed in the '590 Patent, antibodies targeting these binding residues could not be generated using predictable techniques.

Because Amgen "ch[ose] to claim 'A or B,'" the specification had to enable antibodies binding to each combination of these binding residues without undue experimentation. *Soitec*, 81 F. App'x at 738. "[T]he specification must fully enable

37

'B' as well as 'A' when the differences between 'A' and 'B' substantially affect the practice of the invention." *Id.*

*Amgen* held that "[t]he binding limitation ... require[s] undue experimentation." 987 F.3d at 1087. The broad "functional diversity" of the claims covered all sixteen binding residues.

> For example, there are three claimed residues to which not one disclosed example binds. And although the claims include antibodies that bind up to sixteen residues, none of Amgen's examples binds more than nine.

*Id.* & n.1. Whether "the full scope of the[se] functional limitations" could be achieved was "unpredictable." *Id.* This Court noted "the conspicuous absence of nonconclusory evidence that the full scope of the broad claims [i.e., all combinations of sixteen residues] can predictably be generated by the described methods." *Id.* at 1087-88. That is, although the *Amgen* patent described a method of generating antibodies, there was no evidence that this method could generate antibodies within the full scope (including antibodies that bound to all sixteen residues or antibodies that bound to S372, C375, or C378). *See* Brief of Defendants-Appellees in *Amgen Inc. v. Sanofi*, 2020 WL 3046260 (cited at 987 F.3d at 1087 n.1).[12]

---

[12] Nor was there any evidence that skilled artisans could select a particular binding residue and, without undue experimentation, generate a new embodiment that would bind to the selected residue.

As Appellee Sanofi explained in its brief, Amgen's patent defined the "range of claimed antibodies" "by where they bind to PCSK9." *Id.* at 51-52. Having defined the range in this manner, Amgen was required to—but failed to—enable the entire range of binding sites without undue experimentation. 987 F.3d at 1087.[13]

In contrast, the '590 Patent defines the claimed antibodies in terms of isotypes and formats. And the evidence, discussed above, shows that the '590 Patent enables this full range without undue experimentation. A skilled artisan in possession of an antibody that binds Factor IX/IXa and increases procoagulant activity could, applying a predictable art, engineer the antibody into any desired isotype or format. In contrast, a skilled artisan in possession of an antibody claimed by the *Amgen* patents that bound to certain residues could not make predictable changes to create an antibody that bound to different residues.

The district court rejected this argument by erroneously focusing on "working examples." *See* Appx66 n.14 ("[S]imilar to *Amgen*, there are various categories of

---

[13] Unlike obviousness and anticipation, a broader claim is not necessarily less likely to be enabled than a narrower claim. A "car powered by electricity" is broader than a "car powered by electricity generated by a cold-fusion reactor," but the broader claim might well be enabled where the narrower is not. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582 n.7 (Fed. Cir. 1996) (holding that even though claim based on a specific location of a "lockout" was not "supported by [the] disclosure," a broader claim might still be viable: "If [the inventor] did not consider the precise location of the lockout to be an element of his invention, he was free to draft claim 24 broadly . . . to exclude the lockout's exact location as a limitation of the claimed invention.").

antibodies that are identified in the claims that are not represented by working examples."). But "working examples" is only one part of the enablement inquiry. The key in *Amgen* was the "absence of nonconclusory evidence that the full scope of the broad claims"—the full range of binding sites—"c[ould] predictably be generated by the described methods." 987 F.3d at 1087-88. Baxalta, in contrast, presented evidence that the full scope of its claims—the different antibodies and formats of antibodies that bind Factor IX/IXa and increase procoagulant activity— could predictably be generated by well-known antibody engineering techniques

> **B.    Following the steps of the specification, skilled artisans can make new embodiments without undue experimentation.**

Nor did Genentech establish that "the amount of effort needed to obtain embodiments outside the scope of the disclosed examples and guidance"—to obtain new antibodies (with new variable regions) that bind Factor IX/IXa and increase procoagulant activity—involved undue experimentation. *Amgen*, 987 F.3d at 1088.

> **1.    The process taught by Example 1 and Example 2 consistently produces new antibodies within the scope of the claims.**

A skilled artisan following the teachings of Example 1 and Example 2 will reliably and consistently—with, at most, routine experimentation—obtain new embodiments (i.e., new antibodies with new variable regions). The specification recites that the inventors conducted four hybridoma fusion experiments and, each time, successfully made new antibodies that bound Factor IX/IXa and exhibited

procoagulant activity.   Appx20571; Appx146 at 11:1-12:56; *see also* Appx19396-19397.

> **2.      This Court has held, in *Wands*, that routine screening of antibodies does not constitute undue experimentation.**

"Enablement is not precluded by the necessity for some experimentation such as routine screening" of antibodies. *Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1379 (Fed. Cir. 2017) (quoting *Wands*, at 736-37).   The district court erroneously held that the routine screening required to practice the '590 Patent demonstrated nonenablement. Appx60-66.

The district court's decision cannot be harmonized with *Wands*, and the decision makes no attempt to do so.   *Wands* involved hybridoma technology and commercial screening assays used to make and identify antibodies to a herpes virus. "This process entails immunizing animals, fusing lymphocytes from the immunized animals with myeloma cells to make hybridomas, cloning the hybridomas, and screening the antibodies produced by the hybridomas for the desired characteristics." 858 F.2d at 740.

This Court agreed that the "written specification fully enables the practice of their claimed invention because the monoclonal antibodies needed to perform the immunoassays can be made from readily available starting materials **using methods that are well known** in the monoclonal antibody art." *Id.* at 736 (emphasis added); *see also id.* at 740 ("The nature of monoclonal antibody technology is that it involves

screening hybridomas to determine which ones secrete antibody with desired characteristics. Practitioners of this art are prepared to screen negative hybridomas in order to find one that makes the desired antibody.").

Similarly, the '590 Patent teaches the skilled artisan both (1) how to make antibodies using conventional hybridoma technology and (2) how to screen to detect Factor VIII-like activity. As in *Wands*, skilled artisans carrying out the disclosed process successfully made new antibodies that satisfied the claim limitations. *See id.* ("Wands carried out this entire procedure three times, and was successful each time in making at least one antibody that satisfied all of the claim limitations."). As in *Wands*, skilled artisans know how to make antibodies and detect Factor VIII-like activity to produce the claimed antibodies. And as in *Wands*, the specification enables the claims. The district court did not distinguish *Wands* because there is no principled basis to do so.

The district court's focus on the number of antibodies that would need to be screened, Appx64, conflicts with *Wands*, which correctly recognized that "[i]n the monoclonal antibody art it appears that an 'experiment' is not simply the screening of a single hybridoma, but is rather the entire attempt to make a monoclonal antibody against a particular antigen." 858 F.3d at 740. Similarly, here, an "experiment" is not simply the screening of a single hybridoma or antibody, but is rather the process of making a monoclonal antibody against Factor IX/IXa that increases the

42

procoagulant activity of Factor IXa.  *See* Appx146 at 12:14-15 (describing a "[hybridoma] fusion experiment"); Appx146 at 11:9-10 (describing a "screening experiment" involving a group of antibodies).  The "experiment" required to make these antibodies entails no more experimentation than the enabled hybridoma-screening process in *Wands* itself.

> **3.     Under the *Wands* factors, taken in the light most favorable to Baxalta, undue experimentation is not required to practice the claims.**

When considered under the *Wands* factors and in the light most favorable to Baxalta, obtaining new embodiments from Example 1 and Example 2 of the '590 Patent does not require undue experimentation.  In its motion for summary judgment, Genentech failed to cite *Wands* or address the *Wands* factors.

> **a.     Quantity of experimentation necessary and amount of direction or guidance presented.**

Dr. Marasco opined that "Examples 1 and 2 in the specification explain how to efficiently produce antibodies binding to Factor IX/Factor IXa and how to screen those antibodies for an increase in procoagulant activity of Factor IXa using conventional techniques with modifications specific to the claimed invention." Appx19176.

Following the '590 Patent's teachings, skilled artisans would "feel confident that they could . . . immunize an animal . . . with Factor IX/IXa and get antibodies out that have procoagulant return."  Appx16450; *see also* Appx16421.  "The

specification instructs a POSITA to use well-known, inexpensive, and efficient means of producing an antibody or fragment thereof that binds to Factor IX or Factor IXa and identifying those that increase the procoagulant activity of Factor IXa," and it would not require "substantial time and effort" to make and use the claimed invention. Appx19197-19198. And "a POSITA could conduct the chromogenic assay as disclosed in the specification with little time or effort." Appx19540-19541; Appx19543. As Dr. Marasco observed, "[I]t's the simplicity of it that's really elegant." Appx16451.

The specification's guidance "pave[s] the way" for a skilled artisan and eliminates the uncertainty in whether they would be found. Appx16451. The teachings do not remove the need for a skilled artisan to "go get them," but "it takes the unknown out of [it]." Appx16451. There would be no "trial and error." **Each time the steps of Examples 1 and 2, which require only routine experimentation, have been followed, new embodiments of the '590 Patent have been produced**.

Dr. Krishnaswamy similarly opined that screening "the antibodies or antibody fragments of claim 1 that bind to Factor IX or Factor IXa . . . for an increase in procoagulant activity of Factor IXa . . . would be routine with predictable results." Appx19530-19531. Example 2 offers "a detailed explanation of using chromogenic assays to measure for factor VIII-like activity in supernatants of hybridomas that secrete anti-Factor IX/Factor IXa antibodies." Appx19531-19532.

With the specification's guidance, "the POSITA need not experiment to determine any necessary modifications in the first instance." Appx19539; *see also* Appx19532; Appx19539-19540.   In developing the chromogenic assay to detect Factor IXa-activating antibodies, the inventors solved the "fundamental technical problem" that made identification of these antibodies possible.  Appx16866-16891. Without these discoveries, claimed antibodies could not be identified.  Appx16890-16891.  The district court erred by failing to credit the importance of this guidance.

And according to Dr. Krishnaswamy, only a focused number of potential antibodies would need to be screened.  Appx19541-19542.  In his view, a skilled artisan "would be able to implement the specification's direction, guidance, and working examples to make and use antibodies or antibody fragments thereof that increase procoagulant activity of Factor IXa using routine screening."  Appx19531; *see also* Appx19531-19533; Appx19539-19540; Appx17340 (the patent "lays out a strategy" for "high throughput screening of antibodies that enhance the procoagulant activity of Factor IXa").

When properly taken in the light most favorable to Baxalta, the evidence shows that the quantity of experimentation required to practice the invention is low and the level of instruction is high.

**b.    The presence or absence of working examples.**

By following the process of Example 1 and Example 2 of the specification, the inventors generated between 30 to 50 working examples of antibodies exhibiting procoagulant activity. *See* Appx146 at 12:14-15 (explaining that for each of the four fusion experiments, "several (5-15) master clones . . . were identified and subjected to subcloning"); Appx146 at 11:35-39 (explaining that subcloning was based on detecting "FVIII-like activity"). The investors also disclosed the amino acid sequences of eleven of these antibodies. Appx19147-19148. Dr. Marasco analyzed their variable regions—including their (i) amino acid sequences; (ii) CDRH3 lengths; (iii) binding domains; and (iv) canonical structures of CDRH1 and CDRH2—and determined that they demonstrated significant diversity. Appx19132. This was the same method of analyzing antibody diversity that was employed in *AbbVie*, 759 F.3d at 1285.

From his analysis, Dr. Marasco concluded that the Disclosed Antibodies' variable regions "reflect the structural diversity of the claimed genus." Appx19151. After performing a similar analysis on emicizumab, Dr. Marasco determined that some Disclosed Antibodies have a higher sequence identity (and thus are more structurally similar) to emicizumab than to other Disclosed Antibodies. Appx19163.

The eleven Disclosed Antibodies are representative of the diversity of variable regions within the (small) claimed genus. The presence of working examples favors enablement.

### c. The nature of the invention and the breadth of the claims.

The '590 Patent is directed to antibodies that bind Factor IX or Factor IXa and increase the procoagulant activity of Factor IXa. These two functional requirements limit the number of possible embodiments. Appx19205-19206 (Dr. Marasco explaining that "claim 1's two functional requirements . . . would necessarily limit the number of possible embodiments from the outset"); Appx19337 (Dr. Garcia acknowledging that the "functional limitation—increases the procoagulant activity of Factor IXa—does decrease the number of antibodies and antibody fragments within the scope of the claims").

The parties agree that the breadth of the claims is "focused and small." Dr. Garcia opined that the number of antibodies "that would activate Factor IXa such that there is an increase in procoagulant activity, is a very, very minor sub-fraction." Appx19321-19322; *see also* Appx19134; Appx19206-19207. Dr. Marasco agreed: "[T]he genus is actually pretty small. I mean, I think it's focused and small[.]" Appx16417.

**d.    The state of the prior art, relative skill of those in the art, and predictability or unpredictability of the art.**

Dr. Marasco opined that "the state of the prior art at the time of the invention, a POSITA's relative skill, and the art's predictability confirm that a POSITA would know how to make and use the invention without undue experimentation." Appx19207.  He characterized the level of skill as "high," where a skilled artisan "would be readily familiar with the technology discussed in the patent and the technology known in the prior art," such as "technology and techniques for producing antibodies using hybridoma or phage technology, and using chromogenic or aPTT assays." Appx19207.

Dr. Krishnaswamy agreed that "[t]he relative skill of those in the art was significant." Appx19542-19543. "A person having this level of ordinary skill in the art would have a ready, working knowledge of using chromogenic and aPTT assays," and the inventors' modifications to the assays as described in the patent "would be easily implemented and understood by a POSITA without substantial time or effort." Appx19543. Thus, in Dr. Krishnaswamy's opinion, "undue experimentation would not be required." Appx19543.

Although the art is unpredictable in the sense that one cannot predict—solely from reviewing its amino acid structure—which antigen a variable region will bind or how all changes to a variable region will affect its functionality, the process detailed in the '590 Patent for producing these antibodies is reliable and predictable.

Every time this process has been followed, new antibodies within the scope of the claims have been created.

Considering the evidence in the light most favor to Baxalta under the *Wands* factors, the '590 Patent teaches how to create new (undisclosed) embodiments without undue experimentation.

### e.     The district court erred by treating this predictable, reliable process as trial and error.

Following the process in Examples 1 and 2 does not involve "trial-and-error," but instead, as Baxalta's evidence shows, predictably and reliably generates new antibodies that practice the claimed invention.  There is no uncertainty about whether following the process will create a new antibody within the scope of the claims.

The district court analogized the '590 Patent's teachings to those of the patent in *Wyeth*.  Appx65-66; Appx71. But in *Wyeth*, practicing the claims truly required trial and error in "an unpredictable and poorly understood field."  720 F.3d at 1386. There were "tens of thousands of candidate compounds" and no way to identify a new embodiment of the claimed genus short of randomly "synthesiz[ing] . . . each candidate compound" and then testing "to determine whether it has immunosuppressive and antirestenotic effects," *id.* at 1385, requiring "complicated and lengthy series of experiments in synthetic organic chemistry." *Id.*  This approach provided no certainty regarding when—or whether—one would uncover a compound within the claimed genus.

*Wyeth* did not involve any equivalent to the predictable, reliable process taught by the '590 Patent, which has generated new embodiments (i.e., new antibodies with new variable regions) every time it has been followed.[14] This process begins with hybridoma technology, introduced in 1975, which generates monoclonal antibodies with predefined specificities. Appx19179.[15] Genentech's expert conceded that "people have been using that [technology] to generate antibodies for decades." Appx19179 n.132.

The specification describes how to use hybridoma technology to produce monoclonal antibodies that bind Factor IX or Factor IXa. Appx145 at 9:62-10:31. It is undisputed that hybridoma technology is reliable and deterministic.

And when applied to Factor IX/IXa, the hybridoma process does more than just produce antibodies that bind to Factor IX or Factor IXa. Every time the process has been followed, it has produced antibodies that increase the procoagulant effect of Factor IXa. Appx146 at 12:14-16.

---

[14] There is no suggestion that following this process generates only a subset of the variable regions that exhibit the claimed functionality. *Cf. Idenix*, 941 F.3d at 1162 (rejecting the argument that enablement could be based on "the subset of the claim that a POSA might practice").

[15] The title of Kohler & Milstein's seminal publication on hybridoma technology emphasizes the deterministic outcome of that process: "*Continuous cultures of fused cells secreting antibody of **predefined specificity**.*" Appx19179 n.132 (emphasis added).

Example 2 teaches how to modify a high-throughput screening process to identify these antibodies with procoagulant effect. Dr. Scheiflinger described the screening as "relatively easily done, very fast, not problematic at all." Appx16842. These steps generated new embodiments—new antibodies with new variable regions—every time they were followed. *See supra* pp. 9-11, 40-43.

In *Idenix*, there were "at least 'many, many thousands' of candidate compounds" and no way to determine which, if any, of these candidates practiced the claims, short of synthesizing them at random and screening them. 941 F.3d at 1157; *see also id.* ("enormous quantities of 2'-methyl-up nucleosides"); *id.* at 1158 ("billions of possible candidates").[16]

But the '590 Patent does not suggest synthesizing antibodies at random. It teaches a straightforward and predictable process to generate a small group of antibodies, which (every time it has been followed) includes novel antibodies within the claimed genus, and then a detailed screening method to identify which antibodies increase procoagulant activity.

The district court was wrong to call this process "a search for a needle in a haystack," Appx63, implying that success is uncertain and unlikely. If these

---

[16] The same is true of *Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*, 928 F.3d 1340, 1349 (Fed. Cir. 2019), which involved somewhere between "tens of thousands" and "millions" of embodiments, with no way to identify them other than synthesizing at random and screening candidates.

antibodies are needles in a haystack, the '590 Patent teaches a process that easily locates a needle every time.

Put another way, in *Idenix* and *Wyeth*, screening was necessary to **determine whether** any synthesized candidates practiced the claims. In the '590 Patent, screening is necessary only to **identify which** antibodies practice the claims. The former was uncertain and nonenabled; the latter is reliable and enabled.

### 4.    There is no evidence that the '590 Patent claims distinct categories of variable regions.

This Court also requires that a patent enable any distinct categories within the claims. For example, in *Automotive Technologies International, Inc. v. BMW of North America, Inc.*, the claims covered both electronic and mechanical sensors. 501 F.3d 1274, 1281 (Fed. Cir. 2007). To enable the full scope, the patent was required to enable both categories. *Id.* at 1285. "Disclosure of only mechanical side impact sensors does not permit one skilled in the art to make and use the invention as broadly as it was claimed, which includes electronic side impact sensors." *Id.* "Electronic side impact sensors are not just another known species of a genus consisting of sensors, but are a distinctly different sensor compared with the well-enabled mechanical side impact sensor that is fully discussed in the specification." *Id.* A patent must enable any "distinctly different" category of claimed embodiments. *Id.*

Similarly, in *AK Steel Corp. v. Sollac & Ugine*, the full scope of the claims covered both "Type 1" and "Type 2" aluminum coating, but the patent enabled only Type 2. 344 F.3d 1234, 1244 (Fed. Cir. 2003). And in *Liebel-Flarsheim Co. v. Medrad, Inc.*, the full scope of the claims included injector systems with and without pressure jackets, but the patent enabled only systems with pressure jackets. 481 F.3d 1371, 1380 (Fed. Cir. 2007).

There is no suggestion here that claimed antibodies include any "distinctly different" categories of variable regions. That is, there is no evidence that any variable regions within the antibodies covered by the claims were anything other than species within a single genus.

The district court focused on "therapeutic antibodies," but no evidence suggests that "therapeutic antibodies" are a "distinctly different" category of antibodies or anything other than species within the overall genus of antibodies that bind Factor IX/IXa and increase procoagulant activity, all of which are enabled through following the process taught in Examples 1 and 2 of the '590 Patent.

\*    \*    \*

Genentech did not even argue the *Wands* factors in its motion for summary judgment. Taking the evidence in the light most favorable to Baxalta, generating a new antibody outside the disclosed examples in the '590 Patent does not require undue experimentation under *Wands*. And taking the evidence in the light most

favorable to Baxalta, a skilled artisan could use well-known (and predictable) antibody engineering techniques to transform an antibody that binds Factor IX/IXa and exhibits a procoagulant effect into any desired isotype or format that would exhibit the same functionality without undue experimentation under *Wands*.

## III.  The District Court Applied the Wrong Legal Standard for Enablement.

The district court also erred by equating "functional scope" with the "degree of procoagulant activity," requiring Baxalta to enable antibodies that fall outside the scope of the claims, and focusing on the accused product, emicizumab, in its enablement analysis.

### A.  The district court erred by equating "functional scope" with the "degree of procoagulant activity."

The inventors' contribution to the art was the invention of Factor IX/IXa antibodies with procoagulant activity, not antibodies with a greater degree of procoagulant activity than was previously known. The claims concern antibodies with a particular function, not a particular measurement of that function.

At Genentech's invitation, the district court erroneously treated the '590 Patent as claiming a range of function from zero to infinity and requiring enablement of every possible measurement of functionality. If this were the law, no patent

reciting a function could survive an enablement challenge, unless it claimed an explicit and narrow range of measurement.[17]

Unsurprisingly, no case supports the district court's extraordinary approach to enablement. *MagSil Corp. v. Hitachi Global Storage Technologies, Inc.*, on which the district court relies (Appx38-39), involved a marginal quantitative improvement: a change in resistance at room temperature of at least 10%. 687 F.3d at 1379. The patentees distinguished the prior art based on the increased degree of change, while expressly claiming a range that covered "resistive changes of . . . 1000%." *Id.* at 1382. In these circumstances, the *MagSil* patentees needed to enable the full range that they claimed.

"[W]hen a range is claimed, there must be reasonable enablement of the scope of the range." *AK Steel Corp.*, 344 F.3d at 1244. When an inventor's contribution to the art is a minor improvement in a known measurement, for example, a composition with a potency greater than 1.0, the inventor should not be permitted to "to dominate all such compositions having potencies greater than 1.0, including

---

[17] Consider the patent at issue in *FastShip, LLC v. United States*, which claimed a vessel with a waterjet that "increase[d] efficiency of the hull." 892 F.3d 1298, 1301 (Fed. Cir. 2018). Under the district court's reasoning, the *FastShip* patent implicitly claims the entire range of hull efficiency increase from zero to infinity and, to be valid, must enable every measurement of efficiency increase within that range, an impossible requirement.

future compositions having potencies far in excess of those obtainable from his teachings plus ordinary skill." *In re Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970).

But this principle has never previously been applied outside of circumstances where a patent expressly claims a quantitative range as its improvement over the prior art. *See, e.g.*, *Epistar Corp. v. Lowes Cos., Inc.*, No. CV-17-03219-JAK-KSX, 2020 WL 771096, at *5 (C.D. Cal. Feb. 11, 2020) ("wherein the light-emitting structure has a light output power of **more than** 4 mW at 20 mA current"); *Par Pharm., Inc. v. TWi Pharm., Inc.*, 120 F. Supp. 3d 468, 476 (D. Md. 2015), *aff'd*, 624 F. App'x 756 (Fed. Cir. 2015) ("claimed particle size range"); *TSI Inc. v. Azbil BioVigilant Inc.*, No. CV-12-00083-PHX-DGC, 2014 WL 1604860, at *4 (D. Ariz. Apr. 22, 2014) (involving "specific, numerical wavelengths" of lasers that were claimed but not enabled).

This is not a distinction based on the significance of the claimed improvements, as the district court suggested at Appx70. It is a difference based on the claims. Courts regularly distinguish *Magsil* on the basis that no range is claimed. A decision from the Western District of Wisconsin provides a thoughtful analysis of *MagSil* (and its predecessor, *In re Fisher*, 427 F.2d 833 (C.C.P.A. 1970)), explaining why these decisions apply only to patents that claim "a specific range." *ABS Glob., Inc. v. Inguran, LLC,* No. 14-CV-503-WMC, 2019 WL 4276647, at *1 (W.D. Wis. Sept. 10, 2019); *see also Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs.,*

56

*Inc.*, No. 1:07-CV-1191, 2015 WL 1472015, at *17 (N.D.N.Y. Mar. 31, 2015) (distinguishing *MagSil* on the same basis).

Indeed, the district court's analysis conflicts with this Court's holding in *CFMT*, which involved claims for "a general system to improve the cleaning process for semiconductor wafers." 349 F.3d at 1338. This Court held that "if a patent claimed a system that achieved cleanliness up to a specified numerical particle-free range, then enablement would require disclosure of a method that enables one of ordinary skill to achieve that range without undue experimentation." *Id.* at 1338. But if the patent claimed an "improvement" without claiming a specified numerical range, then "the disclosure enables that invention by showing improvements in the overall system." *Id.*

The claims-at-issue in *CFMT* "state[d] no standard of cleaning," so this Court declined to require enablement of "removal of all contaminants." *Id.* Instead, "any meaningful 'cleaning' would satisfy the claimed goal of 'cleaning semiconductor wafers." *Id.* at 1340 (reversing district court invalidity conclusion "because the district court misapplied the law of enablement").

*CFMT* is directly on point. Here, the claims cover an antibody that increases the procoagulant activity of Factor IXa, without claiming the amount of that improvement. To paraphrase *CFMT*, "[a]ny meaningful [increase in procoagulant

activity] would satisfy the claims," and as in *CFMT*, enablement by increasing the procoagulant activity to a particular level (much less an infinite level) is not required.

**B.    The district court required Baxalta to enable antibodies that—under its claim construction—are outside the claims.**

As a bispecific antibody, emicizumab binds to two antigens: Factor IXa and Factor X. The claims of the '590 Patent concern only the procoagulant effect from its Factor IXa arm. If the procoagulant activity arose only from emicizumab's Factor X arm, there would be no infringement.

The district court called this a "convoluted argument" that Baxalta "offered for the first time at the Summary Judgment hearing." Appx75. It accused Baxalta of "arguing that one bispecific antibody is perhaps not within the scope of the claims if its procoagulant activity results from its bispecific nature." Appx75.

As an initial matter, Baxalta was not making an argument; counsel was merely answering questions posed by the district court: "So there would be no infringement if the procoagulant activity came from the binding to Factor 10?" Appx20407.

And in any event, Baxalta's answers echoed the claim construction. The claim construction dispute was whether the increase in procoagulant activity must be caused entirely (Genentech's position) or partially (Baxalta's position) by the binding to Factor IX/IXa. Appx16187. In its *Markman* order, the district court held that although "binding to Factor IX/IXa [must] pla[y] a role in causing an increase

in procoagulant activity," it "need not be the **sole cause** of the increase." Appx16186-16188 (emphasis added).

Under the claim construction, Baxalta's explanation at the hearing was plainly correct. The district court erred by requiring enablement of antibodies that, under its own construction, fall outside the claims.

## C.   The district court's focus on enablement of the accused product, emicizumab, is misplaced.

The district court also erroneously found it "significant that the patent does not remotely enable the accused antibody, emicizumab." Appx73.

### 1.   An inventor is not required to discover the optimal mode of practicing the claims.

The district court's reasoning resembles a heightened best mode requirement: Because (it concluded) a humanized bispecific antibody binding Factor X and Factor IXa (like emicizumab) is the best possible form of the antibody claimed in the '590 Patent, enablement required the inventors to identify and teach this form. But the statute required only that the specification "set forth the best mode **contemplated by the inventor** . . . of carrying out the invention." 35 U.S.C. § 112(a) (emphasis added). Thus, the question was whether, at the time of patent filing, the inventor subjectively "possessed a best mode of practicing the claimed invention," based on "the inventor's personal preferences." *Wellman, Inc. v. Eastman Chem. Co.*, 642

F.3d 1355, 1360 (Fed. Cir. 2011). There is no requirement for the inventor to discover and teach the best possible mode, much less as part of enablement.

Patent law recognizes that inventions can provide a springboard for future innovation. *See, e.g.*, *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1568 (Fed. Cir. 1990) ("Merely because purer and more potent forms . . . might be produced using later-discovered technology does not necessarily mean that the '833 patent specification did not provide sufficient enabling disclosures[.]"); *U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1251 (Fed. Cir. 1989) ("That the '851 claim may cover a later version of the claimed composition . . . relates to infringement, not to patentability."); *see also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371 (Fed. Cir. 2005) ("[T]he open language of claim 1 embraces technology that may add features to devices otherwise within the claim definition.").

The relevant enablement inquiry is whether the '590 Patent enabled a skilled artisan, without undue experimentation, to make a bispecific antibody binding Factor X and Factor IXa and exhibiting procoagulant activity. According to Baxalta's experts, it did. Appx19221-19222; Appx19670-19723. The district court erred by holding that the inventors were required to identify and disclose the (supposed) optimal binding specificity for the second arm.

### 2.    The time required to develop emicizumab does not disprove enablement.

The district court also found it "[s]ignificant" that it "took Chugai over ten years of multi-phased experimentation and the screening of tens of thousands of candidate compounds to discover emicizumab." Appx74. But the time and effort it took **Chugai** to develop emicizumab cannot show nonenablement because emicizumab has additional unclaimed features.

 "Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace." *CFMT,* 349 F.3d at 1338. "Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect." *Id.* "[M]ost inventions require further development to achieve commercial success" and "additional inventive work does not alone show nonenablement." *Id.* at 1340.

Nor is there evidence that Chugai developed emicizumab by following the teachings of the '590 Patent. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1360-61 & n.29 (Fed. Cir. 1998) (rejecting post-priority evidence concerning the amount of experimentation required because the expert "did not copy the protocol described" in the specification). To the contrary, Genentech contends Chugai took an approach that was "nowhere mentioned" in the '590 Patent. Appx19807. That it took ten years for Chugai to develop emicizumab because it

included, *inter alia*, unclaimed optimization steps intended to assist in its manufacturing is irrelevant to enablement of the '590 Patents' claims.

### 3. Even if the relative effectiveness of emicizumab were relevant, the district court erred in considering the evidence.

The district court also erred in analyzing evidence of emicizumab's effectiveness. The district court found that emicizumab's procoagulant activity is "approximately 10%" of normal FVIII and far exceeds the procoagulant activity of "the 11 disclosed antibodies in the specification," which the district court found not to exceed "3.75%." Appx68-69.[18]

But the district court failed to consider Dr. Krishnaswamy's testimony that correctly analyzing emicizumab's activity requires considering the amount tested because emicizumab's activity is concentration-dependent, not absolute. *See* Appx19519 ("[I]t is not true . . . that emicizumab has 'about 10% of normal Factor VIII levels' generally."). The district court cited these portions of the report but either failed to credit them or misunderstood them. Appx74 & n.20 (citing Appx19519);[19] *see also* Appx51 (citing Appx19524-19525).

---

[18] *See also* Appx47 (noting "10%" for emicizumab); Appx51 (noting "3.75%" for the Disclosed Antibodies); Appx59 (stating that the Disclosed Antibodies "increase the procoagulant activity of Factor IXa by a small amount").

[19] Footnote 20 appears to reject Dr. Krishnaswamy's opinion, but it also appears to (correctly) acknowledge that the differences between testing emicizumab "at a diluted concentration level" and "at the treatment concentration level." Appx74 n.20. This confirms that emicizumab's effectiveness depends on its concentration.

The test measuring the activity of the 198/A1 involved **roughly 1/30th** the amount used in the test measuring activity of emicizumab at 10% normal Factor VIII. Taking the quantity into account (and thus making an apples-to-apples comparison on a molar basis), 198/A1 showed **greater** activity:

| Test | Quantity | Activity | Activity on a Molar Basis |
|---|---|---|---|
| Emicizumab (Sampei/Uchida) | 300nM | 10% Factor VIII | $\frac{1}{3000}$ Factor VIII |
| 198/A1 ('590 Patent, Fig. 25) | 10.8nM | 3.75% Factor VIII | $\frac{1}{288}$ Factor VIII |
| Emicizumab (Sampei) | 30nM | 1% Factor VIII | $\frac{1}{3000}$ Factor VIII |

Appx19519-19520 (Factor VIII had "3000-fold differential" compared to emicizumab on a molar basis); Appx19525 (Factor VIII had "only a 288-fold differential" compared to 198/A1 on a molar basis).

Even if emicizumab's activity were relevant, taken in the light most favorable to Baxalta, emicizumab's procoagulant activity falls squarely within the range of procoagulant activity exhibited by antibodies described in the '590 Patent's specification.

\*       \*       \*

---

And accounting for concentration, at least one Disclosed Antibody measures greater effectiveness. Appx19525.

The district court applied the wrong legal standard for enablement in numerous ways. It treated the hybridoma-and-screening process as undue experimentation as a matter of law; it misapplied *MagSil* by equating "functional scope" with the "degree of procoagulant activity"; and it placed undue emphasis on the accused product. These errors—along with the district court's failures to hold Genentech to its burden; credit Baxalta's evidence; and properly analyze the *Wands* factors—mandate reversal.

## CONCLUSION & PRAYER FOR RELIEF

Using the decades-old hybridoma process and the screening taught in the '590 Patent, skilled artisans could, without undue experimentation, make and identify new variable regions that bind Factor IX/IXa and increase procoagulant activity of Factor IXa. They could then, without undue experimentation, engineer these variable regions into an antibody of any claimed isotype and format that binds Factor IX/IXa and increases the procoagulant activity of Factor IXa.

Summary judgment should be reversed and the case remanded.

64

Dated:  June 10, 2022                    Respectfully submitted,

                                          MORGAN, LEWIS & BOCKIUS LLP

                                          By:    */s/ William R. Peterson*
                                                 William R. Peterson
                                          1000 Louisiana St., Ste. 4000
                                          Houston, TX 77002

                                                 Michael J. Abernathy
                                                 Christopher J. Betti
                                                 Maria E. Doukas
                                                 Karon N. Fowler
                                          110 North Wacker Drive
                                          Chicago, IL 60606

                                                 Julie S. Goldemberg
                                          1701 Market Street
                                          Philadelphia, PA 19103

*Counsel for Appellants, Baxalta Inc. and Baxalta GmbH*

**ADDENDUM**

| ECF No. | Docket Text | Date Filed | Appx Page No(s). |
|---|---|---|---|
| 573 | [UNSEALED] MEMORANDUM OPINION. Signed by Judge Timothy Belcher Dyk on 1/13/2022. This order has been emailed to local counsel. (myr) (Entered: 01/13/2022) | 1/13/2022 | Appx30-76 |
| 574 | ORDER granting 407 Genentech Inc.'s Motion for Summary Judgment. See the accompanying Memorandum Opinion for additional details. The parties shall meet and confer and propose any redactions to the Memorandum Opinion on or before January 18, 2022. Signed by Judge Timothy Belcher Dyk on 1/13/2022. (myr) (Entered: 01/13/2022) | 1/13/2022 | Appx77 |
| — | United States Patent No. US 7,033,590 B1 | 04/25/2006 | Appx78-192 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BAXALTA INCORPORATED and
BAXALTA GMBH,

        Plaintiffs,

    v.

GENENTECH, INC. and CHUGAI
PHARMACEUTICAL CO., LTD.,

        Defendants.

Civil Action No. 17-509-TBD

### MEMORANDUM OPINION

Pending before the court is Genentech's motion for summary judgment.  Genentech moves for summary judgment of 1) invalidity of claims 1–4, 19, and 20 of the '590 patent for lack of written description and enablement, 2) non-infringement under a doctrine-of-equivalents theory, and 3) no willful infringement.  For the reasons stated below, the court GRANTS Genentech's motion for summary judgment of invalidity for lack of enablement and need not address Genentech's motion in all other respects.

## I.  PROCEDURAL HISTORY

On May 4, 2017, Baxalta Inc. and Baxalta GmbH (together, "Baxalta") brought suit against Genentech, Inc. and Chugai Pharmaceutical Co., Ltd., alleging infringement of U.S. Patent No. 7,033,590 ("the '590 patent") by the manufacture, use, sale, offer to sell, and importation of an antibody used to treat hemophilia A and known as emicizumab or ACE910, marketed under the brand name Hemlibra.  Compl., ECF No. 1, ¶¶ 37–51.  Chugai was subsequently dismissed from

the case.[1]  Genentech answered on June 30, denying Baxalta's allegations and counterclaiming for declaratory judgment of noninfringement and invalidity on grounds of lack of enablement and written description support.  Answer & Countercl., ECF No. 9, ¶¶ 37–51, 120–49.

On December 14, 2017, Baxalta moved for a preliminary injunction against Genentech.  *See* Mot. for Prelim. Inj., ECF No. 41.  On August 7, 2018, the court denied Baxalta's motion, finding that it had not proven a likelihood of success with respect to infringement and invalidity, and that even if it had, "given the ample evidence of medical need, the public interest weigh[ed] strongly against issuing a preliminary injunction since Hemlibra has unique medical benefits not available from Baxalta's competing products."  Prelim. Inj. Order, ECF No. 262, at 24; *id.* at 28–29.

On December 3, 2018, following a Markman hearing, the court issued a claim construction decision in which it construed the term "antibody" to exclude bispecific antibodies.   *See* Claim Construction Order, ECF No. 330, at 22–23.  Thereafter, the parties stipulated to non-infringement of the asserted claims under the court's claim construction.  *See* Stipulations, ECF Nos. 331–332.  The court entered judgment in Genentech's favor on February 1, 2019.  *See* Stip. & Final J., ECF No. 337.  Baxalta appealed, and on August 27, 2020, the Federal Circuit issued a decision rejecting this court's construction of the terms "antibody" and "antibody fragment," determining that the term antibody included bispecific antibodies, and vacating the judgment of non-infringement and remanding for further proceedings.  *See Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1343, 1349 (Fed. Cir. 2020) (construing antibody to mean "an immunoglobulin molecule having a

---

[1]      Chugai is a Japanese company that invented and manufactures the accused product, Hemlibra, in Japan.  *See, e.g.*, Yamaguchi Decl., ECF No. 20, ¶¶ 2, 5.  Hemlibra is shipped to the United States where it is sold by Genentech.  *See id.* ¶¶ 7, 10.  The parties stipulated to the dismissal of Chugai as a defendant in this case in June 2018.  *See* Stip. & Prop. Order, ECF No. 220; July 2, 2018, Min. Entry.

specific amino acid sequence comprising two heavy chains (H chains) and two light chains (L chains)" and "antibody fragment" to mean "a portion of an antibody"). Upon remand, the case proceeded with fact and expert discovery.

On September 3, 2021, Genentech filed a motion for summary judgment of 1) invalidity of claims 1–4, 19, and 20 of the '590 patent for lack of written description and enablement, 2) non-infringement under a doctrine-of-equivalents theory, and 3) no willful infringement. *See* Opening Br. in Supp. of Genentech's Mot. for Summ. J., ECF No. 416 (Def.'s Mot.), at 1, 15–16. Baxalta thereafter filed its opposition to Genentech's motion, *see* Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 424 (Pl.'s Opp'n), and Genentech filed its reply on October 15, 2021, *see* Reply Br. in Supp. of Genentech, Inc's Mot. for Summ. J., ECF No. 425. The parties have submitted expert declarations and exhibits, as well as a Joint Stipulation of Fact. *See* Joint Stip. of Fact Regarding Hybridoma Tech. & the Number of Anti-Factor IX/IXa Antibodies Disclosed in the '590 Patent, ECF No. 437 (Joint Stip.). The court heard oral argument on the motion on November 19, 2021. *See* Nov. 22, 2021, Min. Entry.

## II.    SUMMARY OF DECISION

For the reasons described in detail below, the court finds that Genentech has shown by clear and convincing evidence that the asserted claims of the '590 patent are not enabled. There are millions of candidate antibodies within the genus and a dearth of working examples of those that satisfy the claim limitations. There are only eleven working examples disclosed in the patent. The examples are all murine, monospecific antibodies of the IgG and IgM isotypes, or fragments thereof. The genus of independent claim 1 is functionally and structurally broad. And in many respects there are no examples in the specification for the covered classes of antibodies. For example:

1.   Claim 1 covers an antibody that increases the procoagulant activity of Factor IXa by an amount ranging from barely perceptible to an amount capable of use in "a preparation for the treatment of blood coagulation disorders which has particular advantages for factor VIII inhibitor patients." '590 patent, col. 2, ll. 25–28.  Claim 1 thus covers an antibody or antibody fragment that increases the procoagulant activity of Factor IXa in the presence of Factor VIII inhibitors.[2] There is no working example of an antibody that increases the procoagulant activity of Factor IXa by more than a marginal amount in the presence of Factor VIII inhibitors.  And for the non-inhibitor population, there is no working example of an antibody that increases the procoagulant activity of Factor IXa by an amount capable of moving a patient with a severe hemophilia A condition (comprising over 60% of hemophilia A patients) to a mild condition.  Baxalta's expert concedes that the patent's assertions that antibodies of the invention have therapeutic utility is merely "aspirational."

2.   Claim 1 covers humanized and chimeric antibodies.  There are no working examples of humanized or chimeric antibodies disclosed in the specification.

3.   Claim 1 covers bispecific antibodies such as the accused product emicizumab. There are no working examples of bispecific antibodies disclosed in the specification.

4.   Claim 1 covers antibodies of the IgE isotype.  There are no working examples of IgE antibodies disclosed in the specification.

---

[2]      As discussed below, an "inhibitor patient" is someone who has developed an immune response to traditional Factor VIII replacement therapies.

4

Appx33

5.      Claim 1 covers antibodies of the IgA isotype.  There are no working examples
of IgA antibodies disclosed in the specification.

6.      Claim 1 covers antibodies of the IgD isotype.  There are no working examples
of IgD antibodies disclosed in the specification.

7.      Claim 1 covers diabodies and dimers, oligomers, and multimers of the claimed
antibodies.  There are no working examples of diabodies or dimers, oligomers,
or multimers of antibodies in the specification.

The specification also provides no guidance as to how to identify which antibodies will satisfy the claim limitations, nor does it describe what structural or other features of the disclosed antibodies cause them to bind to Factor IX/IXa or to increase the procoagulant activity of Factor IXa.  The field of antibodies is inherently unpredictable.  The only way to practice the teachings of the patent is by trial-and-error; *i.e.*, by screening tens of thousands, if not millions, of candidate antibodies to determine whether they satisfy the limitations of the asserted claims.

The same deficiencies exist as to dependent claims 3–4, 19, and 20, which include the same functional limitations as claim 1 but also specify structural limitations.

This is not adequate enablement under Federal Circuit precedent, including *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988), and the cases that have followed, because it requires undue experimentation to practice the full scope of what is claimed.

III.    LEGAL STANDARD

A.    Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

5

demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the nonmovant must then "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## B.    35 U.S.C. § 112

One of the statutory conditions for patentability under the Patent Act is adequate disclosure of the invention. Section 112 provides, in pertinent part, that:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. Section 112 imposes two separate requirements. The first is the written description requirement, found in the first sentence of Section 112, which requires that the specification contain an adequate "written description of the invention." 35 U.S.C. § 112; *see also Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1346 (Fed. Cir. 2010) (en banc) ("[A] separate requirement to describe one's invention is basic to patent law . . . It is part of the *quid pro quo* of a patent; one describes an invention, and, if the law's other requirements are met, one obtains a patent."). The inquiry into written description is a question of fact but it is "amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-

6

moving party." *Bos. Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011) (internal quotation marks and citation omitted).

The second requirement is enablement. "Whether a claim satisfies the enablement requirement of 35 U.S.C. § 112 is a question of law." *Amgen Inc. v. Sanofi, Aventisub LLC*, 987 F.3d 1080, 1084 (Fed. Cir. 2021). An enabling disclosure is the "*quid pro quo* of the right to exclude." *J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Intern., Inc.*, 534 U.S. 124, 142 (2001). To be enabling, "the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without undue experimentation." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)); *see In re Fisher*, 427 F.2d 833, 839 (C.C.P.A. 1970) ("[T]he scope of the claims must bear a reasonable correlation to the scope of enablement provided by the specification to persons of ordinary skill in the art."). Although it is not necessary to disclose every species within a genus, *see In re Angstadt*, 537 F.2d 498, 502–03 (C.C.P.A. 1976), "there must be sufficient disclosure, either through illustrative examples or terminology, to teach those of ordinary skill how to make and how to use the invention as broadly as it is claimed," *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991).

To be valid, a patent must satisfy both the written description and enablement requirements. *See Ariad*, 598 F.3d at 1351. Because, for the reasons discussed below, the court finds that no reasonable jury could find the full scope of the asserted claims of the '590 patent are enabled, it need not separately address written description, though the claims may also be invalid for lack of written description support.

## IV.    FACTUAL BACKGROUND

The '590 patent is directed to an antibody or antibody derivative that binds to a protein important for blood coagulation known as Factor IX (or Factor IXa) and increases the procoagulant activity of Factor IXa, for use in treatment of hemophilia A patients, particularly those who have developed Factor VIII inhibitors.  '590 patent, col. 2, ll. 25–33.  Asserted here are independent claim 1 and dependent claims 2–4, 19 and 20, which recite:

> 1. An isolated antibody or antibody fragment thereof that binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa.
>
> 2. The antibody or antibody fragment according to claim 1 that increases the procoagulant activity of Factor IXa in the presence of Factor VIII inhibitors.
>
> 3. The antibody or antibody fragment according to claim 1 wherein the antibody is an IgG, IgM, IgA or IgE antibody.
>
> 4. The antibody or antibody fragment according to claim 1, wherein said antibody or antibody fragment is selected from the group consisting of a monoclonal antibody, a chimeric antibody, a humanized antibody, a single chain antibody, a bispecific antibody, a diabody, and di-, oligo- or multimers thereof.
>
> 19. The antibody or antibody fragment according to claim 4, wherein the antibody is a humanized antibody.
>
> 20. The antibody or antibody fragment according to claim 2, wherein the antibody is selected from the group consisting of an IgG, IgM, IgA, or IgE antibody.

Some background on antibodies and hemophilia A as well as its prior-art treatment based on the parties' agreed-upon views is necessary.

### A.    Hemophilia A and Its Prior-Art Treatment

The body stops bleeding by relying on blood coagulation, also known as clotting, which is accomplished through a cascade of reactions between proteins.  *See* Sheehan Decl., ECF No. 411,

8

Appx37

Ex. 1, Opening Rpt. ¶¶ 23–24  (Sheehan Rpt.); Pl.'s Opp'n, Ex. 8, ECF No. 424-9, Krishnaswamy

Rebuttal Rpt. ¶ 25 (Krishnaswamy Rpt.).  The individual coagulation proteins are referred to as

coagulation "Factors," with respective assigned Roman numerals (*e.g.*, Factor VIII and Factor IX).

Sheehan Rpt. ¶ 23; Krishnaswamy Rpt. ¶ 25.  These Factors normally circulate in the blood in

inactive forms until triggered by a vascular injury, which causes a coagulation cascade.  *See*

Sheehan Rpt. ¶ 23.  Factors in their activated form are identified with an appended "a" (*e.g.*, Factor

IXa).  *See id.*; Opp'n Br., Ex. 2, Malackowski Opening Rpt. (Malackowski Rpt.), at 20.  The

relevant steps in the clotting cascade for present purposes are the coming together of Factor VIIIa

and Factor IXa.  *See* Sheehan Rpt. ¶ 25; Krishnaswamy Rpt. ¶ 26.  In a healthy person, activated

Factor VIII (Factor VIIIa) "complexes with" activated Factor IX (Factor IXa) and Factor X,

causing Factors IXa to activate Factor X to Factor Xa, which is essential for clot formation.  *See*

Sheehan Rpt. ¶ 25; Krishnaswamy Rpt. ¶ 26.

Hemophilia A is a genetic disorder in which patients lack sufficient functional Factor VIII.

Young Decl., ECF No. 414, Rebuttal Report ¶ 14 (Young Decl.); Krishnaswamy Rpt. ¶ 27.  This

amounts to a roadblock in the clotting cascade, and hemophilia A patients therefore suffer from a

reduced ability to form quick and effective blood clots.  Without Factor VIII, and without

treatment, hemophilia A patients are at risk of bleeding episodes not only from external trauma,

but internally into joints and other spaces in the body.  Young Decl. ¶ 14.  Hemophilia A can be

classified as mild, moderate, or severe, depending on the relative level of Factor VIII present.

Sheehan Rpt. ¶¶ 31–32; Malackowski Rpt. at 21.  There are approximately 23,000–25,000 males

with hemophilia A living in the United States.  Young Decl. ¶ 16.  About half of them have been

diagnosed with a severe form of the disorder.  *Id.*    Females are less likely to have severe

hemophilia A because the genetic mutation associated with hemophilia A is "X-linked recessive." Young Decl. ¶ 15.

Historically, the only treatment for hemophilia A patients was infusion (intravenous) with a Factor VIII replacement, either as needed when bleeding episodes occur (on-demand) or in a preventative matter (prophylaxis). *Id.* ¶ 17; Krishnaswamy Rpt. ¶ 28. The problem with that treatment, however, was that 25–30% of patients with severe hemophilia who were treated with Factor VIII replacement therapies developed an immune response to Factor VIII. Young Decl. ¶ 22; Malackowski Rpt. at 21. This immune response is known as an "inhibitor," and the patients exhibiting this response are known as the "inhibitor population." Young Decl. ¶ 22. As a result, Factor VIII replacement therapy is usually not effective in the inhibitor population. *Id.* ¶ 23; Krishnaswamy Rpt. ¶ 29.

Before the introduction of Hemlibra, the inhibitor population had few effective treatment options. *See* Young Decl. ¶¶ 22–27; Malackowski Rpt. at 21. One option was a therapy called "Immune Tolerance Induction (ITI)." Young Decl. ¶ 24; Malackowski Rpt. at 21. But that treatment is costly, complicated, and prolonged, requiring daily intravenous infusions of high concentrations of Factor VIII over the course of months or even years until the body's immune system begins to tolerate it, if ever. *See* Young Decl. ¶ 24; Malackowski Rpt. at 21.

As of 2018, inhibitor patients could also take one of two "bypass agents" (BPAs), including Baxalta's product FEIBA ("Factor Eight Inhibitor Bypassing Activity"). *See* Young Decl. ¶ 25; Malackowski Rpt. at 21. BPAs work by bypassing the Factor VIII step in the clotting cascade. *See* Young Decl. ¶ 25; Malackowski Rpt. at 21. Like Factor VIII replacement therapy, BPAs can be used in two ways: on-demand when a bleeding episode occurs and/or on a regular schedule as prophylaxis. Young Decl. ¶ 26; Malackowski Rpt. at 25. But they too must be infused, which

may impose a substantial treatment burden on patients and their families.  In particular, the infusion can take up to an hour as often as every other day in order to achieve the desired prophylactic effect.  *See* Young Decl. ¶ 27; Malackowski Rpt. at 34.

> B.    Baxalta's Search for an Antibody-Based Hemophilia A Treatment

Recognizing the drawbacks with all the existing treatment options, in 1998, scientists working for Baxalta's predecessor began experimenting with ideas for new, better hemophilia A treatments, particularly for inhibitor patients.  Dr. Friedrich Scheiflinger, one of the '590 patent's named inventors, had the idea of using an antibody against Factor IX/IXa to increase the procoagulant activity of Factor IXa even in the absence of Factor VIII.  *See* '590 patent, col. 2, ll. 29–44; Cole Decl. vol. 1, Ex. 11, Scheiflinger Dep. Tr. at 98:8–99:20, 101:02–12.

> 1.    Antibody Structure and Genetic Modification

Antibodies are a key component of the immune system.  Strohl Decl., ECF No. 413, Ex. 1, Opening Rpt., ¶ 35 (Strohl Rpt.).  When confronted with a foreign molecule, or "antigen," the immune system's "B cells" (a type of white blood cell) generate antibodies that attack the antigen by binding to them.  *See id.* ¶¶ 35, 41; Garcia Decl., ECF No. 415, Ex. 1, ECF No. 415-1, Opening Rpt. (Garcia Rpt.), ¶ 58.  Each unique B-cell produces multiple copies of one specific antibody— meaning, the secreted antibody can bind to only one antigen.  Garcia Rpt. ¶ 59.  The binding of an antigen to the B-cell surface stimulates the B-cell to divide and mature into identical cells, secreting millions of antibodies into the bloodstream and lymphatic system.  *See id.* ¶ 57.  An antibody, as that term has been construed in the '590 patent, is "an immunoglobulin molecule having a specific amino acid sequence comprising two heavy chains (H chains) and two light chains (L chains)."  *Baxalta*, 972 F.3d at 1349.

Antibodies can be visualized as forming a "Y" shape, with two arms connected by disulfide bonds. Strohl Rpt. ¶ 35. Each arm of the Y shape contains two polypeptides known as the heavy (H) chain and the light (L) chain. *See id.* Each of its heavy and light chains consist of two regions. *See id.* ¶ 36. The portions of the heavy and light chains that vary from antibody to antibody depending on the antigen are called the "variable domains," designated VH and VL, respectively. *Id.* ¶¶ 36–37. Variable regions include (i) complementarity-determining regions ("CDRs"), which are amino acid sequences that play a key role in the antibody's binding to an antigen, and (ii) framework regions, which serve as "scaffolds for the CDRs." *Id.* ¶¶ 36, 39. The remaining portions are called Constant (C) regions of each chain. *See id.* ¶ 36. This is a schematic of an antibody:



*Id.* ¶ 35 (Figure 1).

Based on the structure of the constant regions, antibodies are grouped into five classes—IgA, IgD, IgE, IgG, and IgM—each with closely related but different functions. *Id.* ¶ 37.[3] The constant region of all antibodies of the same isotype are identical (*e.g.*, all IgG antibodies have the same constant region and that constant region differs from that of IgA antibodies). *Id.* Because

---

[3] "Ig" stands for immunoglobulin, and each letter signifies the specific class, which may change depending on the stage of the immune response. *See* Marasco Rpt. ¶ 71. The various antibody isotypes "differ from one another in biological properties, functional locations, and ability to deal with different antigens." Marasco Rpt. ¶ 278. IgGs are the most prevalent class, whereas IgDs are the least prevalent. *See* Strohl Rpt. ¶ 37.

each arm of a naturally occurring antibody is identical, each arm targets the same antigen. *Id.* ¶ 38. Naturally occurring antibodies are thus said to be "monospecific." *Id.*

Scientists have developed various genetic engineering techniques for altering natural antibodies to make a wide variety of molecules. Some are of different sizes than natural antibodies, whereas others have different binding specificities or different constant-region functions. For example, scientists have used protein-cleaving enzymes to cut antibodies into "antibody fragments." *Id.* ¶¶ 46–47. These include the Fab, Fc, and F(ab')₂ fragments, shown below.



*Id.* at Figs. 2–3. They have also used recombinant DNA techniques to derive antibody fragments beyond simple enzymatic cleavage of a full-length antibody. One example (depicted below) is a fragment called a single-chain Fv (scFv), which contains the variable region of a heavy chain and the variable region of a light chain, held together by a synthetic string of amino acids. *Id.* ¶ 48.



*Id.* at Fig. 4.

Genetic engineering has also made possible the construction of antibodies that are part animal sequence and part human sequence. *Id.* ¶ 49. These are known as "chimeric" and "humanized" antibodies—as shown below. *Id.*

13



*Id.* at Fig. 5.  The benefit of humanizing antibodies is that it lessens the chances of an immune response to the antibody.  *Id.* ¶ 50.  In early efforts to use mouse (or murine) antibodies as therapeutic agents in humans, scientists observed that the human immune system recognized the murine antibody as a foreign substance and made antibodies against it.  *Id.*  This became known as the "HAMA response," for "human anti-mouse antibody."  *Id.*  It spurred research to develop a way to engineer antibodies containing more human amino acid sequences and less animal (*e.g.*, murine) sequences.  *Id.* ¶ 51.

Initially, scientists used genetic engineering techniques to create "chimeric antibodies" by splicing together genetic material (DNA) encoding the variable regions of animal antibodies (usually murine) with DNA encoding the constant regions of human antibodies.  *Id.* ¶¶ 52–53; '590 patent, col. 6, l. 64–col. 7, l. 3.  Although successful at first, over time it became clear that humans were developing a HAMA response to the murine sequences in the chimeric antibodies.  Strohl Rpt. ¶ 54.  To avoid that response, scientists designed "humanized antibodies" wherein non-human CDRs are inserted into an otherwise-human antibody.  '590 patent, col. 6, ll. 49–57.  In the resulting antibody, the binding affinity is preserved, while adverse human immune reaction is significantly reduced as compared to the original animal antibody.  Strohl Rpt. ¶¶ 55–56.

14

Appx43

Finally, scientists have created "bispecific antibodies" by pairing the heavy and light chains of an antibody that binds to one antigen with the heavy and light chains of a different antibody that binds to a different antigen. *Id.* ¶ 61. The resulting antibody, depicted below, is thus capable of binding two antigens. *Id.*; '590 patent, col. 7, ll. 32–34.



Strohl Rpt. at Fig. 7.

### 2.    The '590 Patent

Against this backdrop, in 1998, the scientists at Baxalta were experimenting with the idea of using an antibody binding to Factor IX/IXa to increase the procoagulant activity of Factor IXa even in the absence of Factor VIII. '590 patent, col. 2, ll. 29–44. Over the course of approximately four years, they used hybridoma techniques (described below) to create monospecific antibodies that bind to Factor IX or IXa and increase the procoagulant activity of Factor IXa. Cole Decl. vol. 1, ECF No. 409 ("Cole Decl. vol. 1"), Ex. 13, Kerschbaumer Dep. Tr. at 14:325–15:328; '590 patent, col. 7, l. 65–col. 8, l. 1; col. 9, l. 66–col. 10, l. 37; Sheehan Rpt. ¶ 166.

The '590 patent, titled "Factor IX/factor IXa activating antibodies and antibody derivatives," was filed on September 14, 2000, issued on April 25, 2006, and expired in December 2021. *See* Def.'s Mot. at 10. In total, the '590 patent discloses eleven working examples of

antibodies that bind to Factor IX/IXa and increase the procoagulant activity of Factor IXa.[4]  Pl.'s Opp'n, Ex. 4, Marasco Rebuttal Rpt., ECF No. 424-5, ¶ 124 (Marasco Rpt.), ¶ 111.  To find the eleven examples, the inventors tested tens of thousands of antibodies in assays designed to measure Factor VIII-like activity.  *See* '590 patent, col. 10, l. 39–col. 12, l. 56; Joint Stip. ¶ 10.   The examples are all murine, monospecific antibodies of the IgG and IgM isotypes, as well as a number of scFv fragments from some of those antibodies, and one Fab fragment.  *See* Marasco Dep. Tr. at 102:12–126:04.

Baxalta's efforts to produce antibodies that bind to Factor IX/IXa and increase the procoagulant activity of Factor IXa continued until 2003.  *See* Cole Decl. vol. 1, Ex. 6, Baxalta's Suppl. Resp. to Interrog. 11, at 47.  The parties agree that Baxalta has never commercialized an antibody for the treatment of hemophilia A in inhibitor patients consistent with the stated purpose of the '590 patent.  *See* Scheiflinger Dep. Tr. at 48:25–49:08; Sheehan Rpt. ¶ 166; Garcia Rpt. ¶ 221; *see also* '590 patent, col. 2, ll. 25–28 ("[I]t is an object of the [] invention to provide a preparation for the treatment of blood coagulation disorders which has particular advantages for factor VIII inhibitor patients[,] . . . through the use of antibodies . . . against factor IX/IXa.").

C.    Chugai's Invention of Emicizumab

Around the same time that Baxalta's scientists were experimenting with antibodies capable of binding to Factor IX and increasing the procoagulant activity of Factor IXa, scientists in Japan at Chugai were also working to develop antibody-based treatments for hemophilia A.  By at least October 27, 2000, Chugai had the idea of using a humanized bispecific antibody that would bind Factor IXa with one arm and Factor X with the other, holding Factor IXa and Factor X in a position

---

[4]    The parties dispute whether the patent discloses 11 examples, but for the purposes of its motion for summary judgment, Genentech accepts that the specification discloses 11 working examples.  *See* Joint Stip. of Fact, ECF No. 437 (Joint Stip.) ¶ 14.

by which Factor IXa would activate Factor X, similar to how Factor VIIIa functions (depicted below). *See* Strohl Rpt. ¶ 115; Cole Decl. vol. 1, Ex. 7 at GNE-01138116 (dated Oct. 27, 2000); *id.*, Ex. 8, Kitazawa Dep. Tr. at 185:01–186:10, 215:20–25; *id.*, Ex. 9 at GNE-01137931; *id.*, Ex. 10 at GNE-01137957.



Sampei et al., *Identification and Multidimensional Optimization of an Asymmetric Bispecific IgG Antibody Mimicking the Function of Factor VIII Cofactor Activity*, PLoS ONE 8(2):1–13 (2013) (Sampei Article), at 2, Fig. 1 (showing (A) Factor VIIIa forming a complex with Factor IXa and supporting the interaction between Factor IXa and Factor X through its binding ability to both factors on the phospholipid membrane, and (B) A bispecific antibody (like emicizumab) binding to Factor IXa and Factor X, promoting the interaction between Factor IXa and Factor X and therefore exerting Factor VIII mimetic activity on the phospholipid membrane.).

Genentech's expert, Dr. William R. Strohl, details the lengthy trial-and-error process through which Chugai's scientists generated tens of thousands of combinations of Factor IX and Factor X antibodies, combining them into bispecific antibodies and testing them in assays. Strohl

Rpt. ¶¶ 202–224.[5]  Once the scientists had discovered a candidate worthy of testing in animals and then in humans, they engaged in antibody engineering to refine and optimize the candidate antibody.  *Id*. ¶¶ 208–210; Strohl Decl., Ex. 2, ECF No. 413-1, Responsive Report, ¶¶ 61–127 (Strohl Resp.).  In total, "it took 10 or more full-time Chugai researchers almost 10 years to construct a therapeutically useful bispecific antibody that binds Factor IX/IXa with one arm and Factor X with the other."  Strohl Rpt. ¶ 224.

The resulting antibody, emicizumab, is a humanized bispecific antibody that mimics the function of Factor VIIIa by binding to Factor IXa with one of its arms and to Factor X with the other.  Young Decl. ¶ 28; Strohl Resp. ¶ 29.  It is the active ingredient in Hemlibra—the first and only FDA-approved product for hemophilia A patients that can be injected under your skin (subcutaneously).   Young Decl. ¶ 28; Malackowski Rpt. at 38.   Hemlibra has been shown to increase procoagulant activity to about 10% of normal Factor VIII levels.  *See* Decl. of Stephanie A. Smith, ECF No. 420, Ex. 1 at ¶ 49 (citing Uchida et al., *A first-in-human phase 1 study of ACE910, a novel factor VIII-mimetic bispecific antibody, in healthy subject*, Blood 127(13):1633–1641 (2016)); *Id.* at Ex. 2, ¶ 44.  This is enough to move a patient from severe hemophilia A (with observed Factor VIII activity less than 1%) to at least a moderate category (with observed factor VIII activity between 1–5%) or even a mild category (with observed factor VIII activity between 5–40%).  *See* Smith Decl., Ex. 2, ¶ 44; Krishnaswamy Rpt. ¶ 117 (showing severity classifications).

---

[5]      The work conducted by Chugai's scientists to discover emicizumab also is documented in literature.  *See* Sampei Article; *see also* Sampei et al. (2013) Discussion, *available at https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0057479* (explaining that "the lead bispecific antibody was identified from approximately 40,000 different bispecific antibodies" and "[b]ispecific antibodies meeting the criteria for FVIII cofactor activity were extremely rare (<0.3%)").

On November 16, 2017, the FDA approved Hemlibra for routine prophylaxis to prevent or reduce the frequency of bleeding episodes in adult and pediatric patients with hemophilia A with Factor-VIII inhibitors. Young Decl. ¶ 28. On October 4, 2018, the FDA approved Hemlibra for non-inhibitor patients. *Id.*

V.    Enablement Standard

A patent claim is presumed enabled unless proven otherwise by clear and convincing evidence. 35 U.S.C. § 282; *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1318 (Fed. Cir. 2007). The central question for enablement is whether the specification enables the full scope of its claims without undue experimentation. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003). "Enablement is not precluded where a 'reasonable' amount of routine experimentation is required to practice a claimed invention." *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010). To evaluate whether the patent enables a person of ordinary skill in the art to practice the invention without undue experimentation, courts consider a non-exclusive list of items, often referred to as the *Wands* factors: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988). A court need not consider each of the *Wands* factors, for they "are illustrative, not mandatory." *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1213 (Fed. Cir. 1991).

19

Appx48

VI.    Undisputed Facts Relevant to Enablement

The following are undisputed material facts, based on the patent claims, the specification, the court's claim construction order, Genentech's Motion for Summary Judgment, Baxalta's response, and the parties' stipulation dated December 3, 2021:

1.    Claim 1 of the '590 patent encompasses any isolated antibody or antibody fragment thereof that binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa by any amount.  *See* Claim Construction Order at 29.

2.    The number of candidate antibodies or antibody fragments within the scope of claim 1 is high, "encompassing millions of different structural formats, binding epitopes, binding affinities, and mechanisms of action."  Garcia Rpt. ¶ 215.  The specification discloses working examples of only eleven antibodies that satisfy claim 1.  *See* Joint Stip. ¶ 14.

3.    The structural breadth of claim 1 is illustrated by its dependent claims.  The dependent claims show that claim 1 is not specific to any particular isotype of the antibody or antibody fragment and includes antibodies that have been genetically engineered into different structural formats.

   a.    Dependent claims 3 and 20, define *Markush* groups[6] and include antibodies of the IgA, IgE, IgG and IgM isotypes that are within the scope of claim 1.  Claim 1 also includes the fifth principal isotype, IgD, because claim 1 is not limited by isotype.  *See* Def.'s Mot. at 18; Marasco Dep. Tr. at 103:12–104:9.  The patent does not disclose working examples of three of these isotypes: IgD, IgA,

---

[6]    "A Markush group lists specified alternatives in a patent claim, typically in the form: a member selected from the group consisting of A, B, and C." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1372 (Fed. Cir. 2005) (citing to *Manual of Patent Examining Procedure* § 803.2 (2004)).

and IgE. *See* Marasco Dep. Tr. at 102:08–22; 105:06–09; 105:20–106:12. The two isotypes represented by working examples are those that are most commonly present in high proportion in the blood at the early stages of an immune response. Marasco Rpt. ¶ 71; Strohl Rpt. ¶ 37. Using the teachings of the '590 patent, it would be rare to discover antibodies of the IgA and IgE isotypes, as the vast majority of antibodies, 75 percent, exist as IgG and IgM isotypes. It would be rarer still to discover IgD antibodies using the teachings of the '590 patent, since they do not circulate in the bloodstream but are instead bound to the exterior membranes of immune-system cells. *See* Marasco Dep. Tr. at 104:13–105:5.

      b.   Dependent claims 4 and 19 define *Markush* groups that include various types of antibodies, namely monoclonal antibodies, chimeric antibodies, humanized antibodies, single chain antibodies (such as scFvs), bispecific antibodies, and diabodies, as well as dimers, oligomers, and multimers thereof. The '590 patent does not disclose working examples of seven of the nine structural formats in the *Markush* group of claims 4 and 19: chimeric antibodies, humanized antibodies, bispecific antibodies, diabodies, and dimers, oligomers and multimers thereof. *See* Marasco Dep. Tr. at 124:24–125:12,126:02–04; Scheiflinger Dep. Tr. at 66:16–17.

4.   Claim 1 also is functionally broad. An antibody that increases the amount of procoagulant activity by the same amount as Factor VIII does (at least 40%) is within the scope of the asserted claims. *See* Marasco Dep. Tr. at 236:12–18; Cole Decl. vol. 2, ECF No. 410-1, Ex. 20, Krishnaswamy Dep. Tr. at 213:17–214:11. The highest estimated amount by which

any antibody disclosed in the '590 patent increased the procoagulant activity of Factor IXa was by 3.75% (antibody 198/A1)—far less than 40%.[7]  *See* Krishnaswamy Rpt. ¶¶ 122–123.  The 3.75% would only be capable of moving a patient with hemophilia A classified as severe to a moderate classification, pursuant to the below chart upon which both parties' experts rely.

| Factor VIII Activity | Classification |
|---|---|
| < 0.01 IU/mL (< 1% of normal) | Severe |
| 0.01 − 0.05 IU/mL (1%–5% of normal) | Moderate |
| > 0.05 − < 0.40 IU/mL (>5% − <40% of normal) | Mild |

*See* Krishnaswamy Rpt. ¶¶ 117; Sheehan Rpt. ¶ 99.  The specification does not disclose an antibody or antibody fragment that is therapeutically useful for moving someone suffering from a severe case of hemophilia A to a mild case.  Patients with severe conditions represent about 60 percent of hemophilia A cases.  Malackowski Rpt. at 22.

5.      Claim 1 also includes antibodies or antibody fragments that are capable of increasing the procoagulant activity of Factor IXa in the presence of inhibitors (as specified in claim 2).  The specification states that the objective of the patent is "to provide a preparation for the treatment of blood coagulation disorders which has particular advantages for factor VIII inhibitor patients."  '590 patent, col. 2, ll. 25–28; *id.* at col. 2, ll. 29–45.

6.      The '590 patent discloses only one working example of an antibody shown to increase the procoagulant activity of Factor IXa in the presence of Factor VIII inhibitors as required by claim 2 (antibody 193/AD3).  *See* Marasco Dep. Tr. at 122:06–11; Marasco Rpt. ¶ 73.  The highest amount that the 193/AD3 antibody increased the procoagulant activity of Factor

---

[7]      The 3.75% figure does not appear in the specification; a person of ordinary skill in the art reading the specification could derive it from the information disclosed in Figure 25.  *See* Krishnaswamy Rpt. ¶ 123.

IXa by was only 0.3–0.4% equivalent Factor VIII activity—a marginal amount.  *See*
Sheehan Rpt. ¶ 99; Krishnaswamy Rpt. ¶ 118.

7.     In order to treat hemophilia A without a HAMA response, it would be necessary to utilize
a humanized, or at least chimeric, antibody.  *See* Strohl Rpt. ¶¶ 50–56.[8]  There are no
working examples of humanized or chimeric antibodies disclosed in the patent
specification.  *See* Marasco Dep. Tr. at 124:24–125:12,126:02–04; Scheiflinger Dep. Tr.
at 66:16–17.

8.     The inventors of the '590 patent performed their experimentation for a period of three to
four years and never brought to market an antibody within the scope of claim 1 for the
treatment of hemophilia A.  *See* Scheiflinger Dep. Tr. at 48:25–49:08; Kerschbaumer Dep.
Tr. at 14:325–15:328; Sheehan Rpt. ¶ 166.

9.     Under the teachings of the '590 patent, arriving at an antibody that binds to Factor IX or
IXa and increases the procoagulant activity of Factor IX is a multi-step process, involving
experimentation at every critical step.  *See infra* ¶¶ 10–27.

10.    The level of skill in the art for the '590 patent is high,[9] Pl.'s Opp'n at 28–29 (citing Marasco
Rpt. ¶¶ 264–265), and a person of ordinary skill in the art would be familiar with the

---

[8]     *See also* Morrison, et al., *Chimeric human antibody molecules: mouse antigen- binding
domains with human constant region domains*, Proc. Natl. Acad. Sci. USA 81, 6851-55 (1984),
*cited in* Marasco Rpt. ¶ 286 n.254.

[9]     There is no material difference between the parties' descriptions of the level of skill in the
art.  *See* Garcia Decl. ¶¶ 52, 53. The court adopts Baxalta's definition for the purposes of this
motion.  That is, a person of ordinary skill in this art is one who:

> would have had an advanced degree and relevant work experience,
> either an M.D. and several years' experience practicing in the area
> of hematology or a Ph.D. in a chemical science- or biological
> science-related discipline. This person would have a working
> knowledge of experimental methodologies for detecting the activity
> of factors in the clotting cascade, measuring blood clotting

technology and techniques discussed in the patent for producing and testing antibodies generally, Marasco Rpt. ¶¶ 264–265.  But it would not be possible for a person skilled in the art to predict which antibodies would satisfy the claim limitations without trial-and-error testing.  *See* Scheiflinger Dep. Tr. at 92:15–93:3; Marasco Dep. Tr. at 205:04–19; Krishnaswamy Dep. Tr. at 168:09–168:19.

11.    There is no guidance or direction in the specification of the '590 patent as to how to identify antibodies that satisfy the claim limitations except by using trial and error.  *See* Marasco Dep. Tr. at 205:04–19; Krishnaswamy Dep. Tr. at 168:09–168:19; Scheiflinger Dep. Tr. at 92:15–93:3.

12.    "The only way to know [what antibodies bind as well as function as needed] is to make antibodies and test them."  Krishnaswamy Dep. Tr. at 168:20–169:02; Marasco Dep. Tr. at 218:23–219:04.[10]  The '590 patent does not describe what structural or other features of the disclosed antibodies cause them to bind to Factor IX/IXa or to increase the procoagulant activity of Factor IXa.  *See* Garcia Rpt. ¶ 130; Scheiflinger Dep. Tr. at 91:23–92:3; 97:23–98:02.

---

capabilities by a variety of means, or would have general familiarity with basic concepts in immunology, including basic knowledge of methods for making antibodies and using them as therapeutics. This hypothetical person would be teamed with or have access to other highly skilled individuals with advanced degrees (*e.g.*, Ph.Ds.) in other biological disciplines such as immunology or molecular biology who had several years' experience with methods to produce antibodies that bind to antigens of interest.

*Id.* ¶ 53; Marasco Rpt. ¶ 264.

[10]    "Q. . . . [T]he only way that the patent teaches a person of ordinary skill how to tell whether a given antibody to Factor IX or Factor IXa, in fact, increases the procoagulant activity of Factor IXa is to test that antibody in an assay, correct?  A. That's what the patent teaches."

24

13.    At step one of the multi-step process for producing antibodies that bind to Factor IX or IXa and increase the procoagulant activity of Factor IXa, the specification discloses how to produce antibodies using one of several methods known in the prior art "(e.g., by conventional hybridoma techniques, or by means of phage display gene libraries, immunoglobulin chain shuffling or humanizing)." '590 patent, col. 7, l. 66–col. 9, l. 10.

14.    The antibodies disclosed in the '590 patent were generated using the "hybridoma" technique, as shown in Example 1. *See* Joint Stip. ¶¶ 1, 6; '590 patent, col. 9, l. 66–col. 10, l. 37.

15.    In the hybridoma process, mice in groups of one to three are injected with Factor IX or IXa over a period of days. Joint Stip. ¶¶ 3, 7; '590 patent, col. 9, l. 66–col. 10, l. 8.

16.    The mouse's immune system responds to the Factor IX injections by producing B-cells in its spleen that secrete antibodies against the human antigen. Joint Stip. ¶ 3. Each B-cell produces only a single antibody. *Id.* It is not possible to predict whether a mouse used to make hybridomas will produce antibodies that satisfy the claim requirements. *See* Scheiflinger Dep. Tr. at 92:15–93:03.

17.    Each mouse is then euthanized, and its spleen cells removed. *See* '590 patent, col. 10, l. 8–9; Joint Stip. ¶ 4. In order to enable murine antibodies to survive and to replicate themselves sufficiently for further experimentation, the spleen cells are fused with myeloma (cancer) cells through a process known in the prior. '590 patent, col. 10, l. 9–11; Joint Stip. ¶ 5. The inventors performed and disclosed in the '590 patent at least four such "fusion" experiments, which they labeled #193, 195, 196, and 198. Joint Stip. ¶ 8 (citing '590 patent, col. 10, ll. 11–13).

25

Appx54

18.   In each fusion experiment, after the B-cells were fused with the myeloma cells, the resulting hybrid cells, or "hybridomas," were isolated and screened using techniques known in the prior art to determine whether they produce antibodies that bind to the antigen of interest (in this case, Factor IX or IXa). *See* Joint Stip. ¶¶ 5, 9; Garcia Rpt. at 30, Fig. 8; '590 patent, col. 10, ll. 14–31.

19.   Not all of the antibodies produced at step one will bind to Factor IX/IXa. Oral Arg. Hr'g Tr., ECF No. 431 (Hr'g Tr.), at 28:16–18; Scheiflinger Dep. Tr. at 92:15–93:3. Around "60% of the hybridoma cell lines screened expressed an FIX-binding antibody." Garcia Decl., Ex. 2, Reply Rpt. ¶ 21 n. 15 (citing Scheiflinger, F. et al., *Enhancement of the enzymatic activity of activated coagulation factor IX by anti-factor IX antibodies*, J. Thromb Haemost 6(2):315–322 (2008)).

20.   Once the antibodies are filtered to only those that bind to factor IX/IXa, they must undergo additional screening to determine which among them demonstrate the ability to increase the procoagulant activity of Factor IXa. Garcia Rpt. ¶ 213; Marasco Dep. Tr. at 218:23–219:04.

21.   In terms of the method used to measure procoagulant activity, the patent provides that "all the methods used for determining Factor VIII activity may be used." '590 patent, col. 9, ll. 22–25; *see also* Claim Construction Order at 29 (construing "increases the procoagulant activity of Factor IXa" to mean "[t]he ability of Factor IXa to activate Factor X to Factor Xa by any amount as determined *by any assay used* to measure Factor VIII-like activity" (emphasis added)).

22.   The specification of the '590 patent recommends the use of a modified version of the commercially available chromogenic test-kit called COATEST VIII:C/4® (COATEST)

for the hybridoma screening step.  *See* '590 patent, col. 10, l. 40–col. 12, l. 56.  The modified protocols disclosed in the examples of the '590 Patent are significantly different from the recommended protocol for the commercially available COATEST test.  Sheehan Rpt. ¶ 150; Krishnaswamy Rpt. ¶¶ 141, 157–161.  The modifications that the inventors made to the test were designed to make the test more sensitive.  *See* Marasco Dep. Tr. at 219:5–15.  They also made the test more complex and time consuming.  *See* '590 patent, col. 10, ll. 48–67, col. 15, ll. 44–45; Krishnaswamy Rpt. ¶ 158; Sheehan Rpt. ¶ 150.  Whereas the standard COATEST assay takes minutes, the modification disclosed in the patent takes several hours.  *See* Sheehan Rpt. ¶ 150, Krishnaswamy Rpt. ¶ 158; '590 patent, col. 10, ll. 48–67, col. 15, ll. 44–45.

23.    The inventors of the '590 patent did not use any of the other commonly used methods to screen hybridoma cells for procoagulant activity and did not determine or describe in the specification what modifications would be necessary for those other tests to function.  '590 patent, col.9, ll. 22–25; Garcia Rpt. ¶ 220.

24.    In an article published by the inventors after the '590 patent was filed, they disclosed that the vast majority of antibodies produced and screened in experiments leading up to the '590 patent (98.4% of them) did not increase the procoagulant activity of Factor IXa by any amount.  *See* Cole Decl. vol. 2, Ex. 24, Scheiflinger, et al., *Enhancement of the Enzymatic Activity of Activated Coagulation Factor IX by Anti-Factor IX Antibodies* (Scheiflinger Article), at 320; Marasco Dep. Tr. at 202:18–21 (agreeing that the inventors reported only 1.6% of the antibodies had procoagulant activity); Marasco Rpt. ¶ 262 ("the number [of antibodies] that would activate Factor IXa such that there is an increase in procoagulant activity, is a very, very minor sub-fraction.").

25.    Once the inventors discovered antibodies that increased the procoagulant activity of Factor IXa by screening the hybridoma cells using the modified COATEST assay, they then tested one of those antibodies (193/AD3) in aPTT assays to measure clotting time, including in the presence of Factor VIII inhibitors.   '590 patent, col. 16, l. 44–col. 17, l. 67; Figures 9, 10A, 10B.

26.    There are no examples in the patent of seven of the nine structural formats falling under claim 4 (a chimeric antibody, a humanized antibody, a bispecific antibody, a diabody, or di-, oligo- or multimers thereof).   *See* Marasco Dep. Tr. at 102:12–126:04.   In order to arrive at those antibody formats from the antibodies produced through the aforementioned steps, it would be necessary for one skilled in the art to genetically modify them.   *See supra* § IV.B.1.   This was never done, and the patent does not provide specific guidance on how such modification would take place.   Although a person skilled in the art would be familiar with the procedures for modifying antibodies using techniques known in the prior art, additional confirmatory testing would have been necessary following modification to ensure that the binding and activating functions of the antibody remained in place.   *See* Marasco Rpt. ¶¶ 235, 275; *see also* Garcia Rpt. ¶ 212; Marasco Dep. Tr. at 127:24–128:25.

27.    For example, the process for humanizing antibodies was well-known in the art prior to 1999, *see* Marasco Rpt. ¶ 289 n. 258 (citing Strohl Dep. Tr., ECF No. 424-11, at 17:24–18:9), but the process was "not as efficient [] as sometimes presented," Marasco Dep. Tr. at 130:18–19.   The process involves selecting "human framework regions . . . from heavy chain and light chain sequences of over 1,000 human sequences each," *id*. at 130:20–22, and "the resulting antibody, despite having the same variable region as the murine antibody, frequently does not have the same effectiveness as the original murine antibody,"

*id.* at 130:23–131:01.  Given this uncertainty, additional screening would be required to confirm whether there had been any degradation in the binding or activating functions of the antibody.  *See id.* at 132:10–12; Marasco Rpt. ¶ 275.

28.      The accused product, emicizumab, is a bispecific humanized antibody that mimics Factor VIIIa by binding Factor IXa with one arm and Factor X with the other arm.  *See* Sampei Article at 1.  It took the scientists at Chugai almost 10 years to develop emicizumab.  Strohl Rpt. ¶ 224.  They underwent a multi-phased, trial-and-error process that involved screening tens of thousands of antibodies and engineering the resulting antibodies for optimization before finding one that was suitable for clinical use.  *Id.* ¶¶ 212–224; *see also* Sampei Article at 1–13.  "The lead bispecific antibody was identified from approximately 40,000 different bispecific antibodies" and "[b]ispecific antibodies meeting the criteria for FVIII[-like] activity were extremely rare (<0.3%)."  Sampei et al. (2013) Discussion, *available at https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0057479.*

## VII.    Application of the *Wands* Factors

Applying the *Wands* factors here, the court finds as a matter of law that undue experimentation would be needed to practice the full scope of the claimed invention.  First, with respect to "the quantity of experimentation necessary" (factor 1), Baxalta does not dispute that practicing the teachings of the '590 patent involves a large amount of experimentation.  The potential candidates number in the millions.  *See supra* § VI ¶ 2.  As discussed, the patent teaches a multi-step process, with screening at every critical step to determine antibodies within the scope of the claims.  *See id.* ¶¶ 13–27.  Turning to factor 2, there is a limited "amount of guidance presented in the patent."  *See id.* ¶ 11.  There is no guidance or direction as to how to identify antibodies that satisfy the claims' limitations other than by utilizing trial and error.  *See id.*  This

29

lack of guidance is compounded by a limited number of "working examples" (factor 3).  While the specification of the '590 patent discloses eleven working examples, they are all monospecific murine antibodies or fragments thereof that bind to Factor IX or IXa and increase the procoagulant activity of Factor IXa by a small amount.  *See id.* ¶¶ 1–4.  It does not disclose working examples of antibodies of the IgE, IgA, or IGD isotypes; of humanized, chimeric, or bispecific antibodies; of diabodies; or of dimers, oligomers or multimers thereof.  *See id.* ¶ 3.  There also is no working example of an antibody that increases the procoagulant activity of Factor IXa by an amount capable of moving a patient with a severe case of hemophilia A to a mild case.  *See id.* ¶ 4.  There is not a single example of an antibody that produces procoagulant activity in the presence of Factor VIII inhibitors by more than a marginal amount.  *See id.* ¶¶ 4–6.

Courts often consider factors 4 and 7 (the "nature of the invention" and the "predictability or unpredictability" of the art) together.  *See, e.g.*, *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 655–56 (D. Del. 2009).  This area of art is inherently unpredictable.  The field of antibodies is itself unpredictable.  *See Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1352 (Fed. Cir. 2011) (analogizing finding an appropriate antibody for a particular antigen to searching for a key "on a ring with *a million* keys on it" (internal citations and quotation marks omitted)).  That unpredictability is compounded here by the lack of guidance as to how to produce antibodies satisfying the full scope of the claims other than by trial-and-error.  *See Fisher*, 427 F.2d at 839 ("In cases involving unpredictable factors, such as most chemical reactions and physiological activity, the scope of enablement obviously varies inversely with the degree of unpredictability of the factors involved.").

Turning to factor 6—the "relative skill of those in the art"—the level of skill would be high, with a POSITA holding "an advanced degree and relevant work experience, either an M.D.

and several years' experience practicing in the area of hematology or a Ph.D. in a chemical science-or biological science-related discipline." *Supra* note 10. Given the "state of the prior art" (factor 5), a POSITA would be familiar with the techniques for producing antibodies using hybridoma or phage display technology and in using the standard chromogenic or aPTT assays used in the trial and error process, *see supra* § VI ¶ 10, but could not predict in advance which antibodies would satisfy the claim limitations, *see id.* ¶ 11.

Finally, turning to factor 8, the undisputed facts show that a reasonable factfinder could only find that the "breadth of the claims" is great. By Baxalta's experts' own admissions, claim 1 covers all antibodies and fragments of any format, isotype or subtype, that bind with any affinity to factor IX/IXa, that achieve procoagulant effect through any mechanism of action, and that demonstrate procoagulant activity ranging from minuscule to therapeutically useful amounts, with or without the presence of Factor VIII inhibitors. *See id.* ¶¶ 1–5.

Decisions of the Federal Circuit applying the *Wands* factors make clear that the claims asserted here are not enabled.

VIII.    Enablement of the Full Scope of the Asserted Claims of the '590 Patent

A.    Make-and-Screen Nature of Invention

*First*, where, as here, there are a large number of potential candidates, few working examples disclosed in the patent, and no guidance in the specification as to how to practice the full scope of the invention except to use trial and error to narrow down the potential candidates to those satisfying the claims' functional limitations—the asserted claims are not enabled. *See Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1155–56 (Fed. Cir. 2019) (finding nonenablement where the claims included the broad functional limitation of having efficacy against hepatitis C virus, which required screening a large number of candidates to identify

compounds that satisfied the limitation); *Enzo Life Scis., Inc. v. Roche Molecular Sys., Inc.*, 928 F.3d 1340, 1346–47 (Fed. Cir. 2019) (finding nonenablement where the claims required both a particular structure and functionality but the specification failed to teach one of skill in the art whether the many embodiments of the broad claims would exhibit that required functionality); *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380, 1385–86 (Fed. Cir. 2013) (finding, due to the large number of possible candidates within the scope of the claims and the specification's corresponding lack of structural guidance, it would have required undue experimentation to synthesize and screen each candidate to determine which compounds in the claimed class exhibited the claimed functionality); *see also McRO*, 959 F.3d at 1100 n.2 ("In cases involving claims that state certain structural requirements and also require performance of some function (*e.g.*, efficacy for a certain purpose), we have explained that undue experimentation can include undue experimentation in identifying, from among the many concretely identified compounds that meet the structural requirements, the compounds that satisfy the functional requirement.").

In this respect, the facts of this case are strikingly similar to the facts of *Amgen Inc. v. Sanofi, Aventisub LLC*, 987 F.3d 1080 (Fed. Cir. 2021). There, as here, the claims were directed to a genus that was claimed broadly in terms of functionality. The two patents at issue there were directed to monoclonal antibodies for use in treatment of elevated low-density lipoprotein ("LDL") cholesterol—a leading cause of heart disease. *Amgen*, 987 F.3d at 1082–83. The body removes LDL cholesterol from the blood stream using LDL receptors. *Id.* at 1082. But "PCSK9," a naturally occurring protein, can bind to LDL receptors and cause the receptors to be destroyed, an undesirable result. *Id.* at 1082–83. The antibodies disclosed in Amgen's patents were claimed to prevent the degradation of LDL receptors by binding a specific region of PCSK9. *Id.* at 1083. By binding that specific region, the antibodies block PCSK9 from binding LDL receptors and causing

them to be destroyed. *Id.* The asserted claims thus imposed a functional limitation that the antibodies bind to a specific target. [11] The specification disclosed working examples of 26 antibodies that satisfied the claim limitations. *Id.*

In assessing enablement, the court first explained there are "high hurdles in fulfilling the enablement requirement for claims with broad functional language." *Id.* at 1087. Applying that standard, the court agreed with the district court's finding that the specification did not enable preparation of the full scope of the asserted claims—that the antibodies bind a specific target. *Amgen*, 987 F.3d at 1087. Key to that determination was the court's finding that the "claims [we]re far broader in functional diversity than the disclosed examples," and "the only ways for a person of ordinary skill to discover undisclosed claimed embodiments would be through either 'trial and error, by making changes to the disclosed antibodies and then screening those antibodies for the desired binding and blocking properties,' or else 'by discovering the antibodies *de novo*' according to a randomization-and-screening 'roadmap.'" *Id.* at 1088 (quoting *Amgen Inc. v. Sanofi*, 2019 WL 4058927, at *11 (D. Del. 2019)); *see also Idenix*, 941 F.3d at 1161 ("A specification that requires a [POSITA] to 'engage in an iterative, trial-and-error process to practice the claimed invention' does not provide an enabling disclosure." (quoting *ALZA*, 603 F.3d at 941).

*Amgen's* reasoning applies with equal force here, where the asserted claims also set forth not one but two functional requirements: that the antibodies bind to a target (Factor IX or IXa) and alter that target's activity (increasing the procoagulant activity of Factor IXa). Marasco Rpt. ¶ 63 (agreeing with Genentech's expert, Dr. K. Christopher Garcia, that the claims include the two functional limitations). Even if the first functional requirement (binding) were enabled, the second

---

[11]     Although the asserted claims also included a functional limitation of "blocking the PCSK9/LDLR interaction," *Amgen*, 987 F.3d at 1083, the court found that "[t]he binding limitation [alone] [wa]s [] enough [] to require undue experimentation," *id.* at 1087.

is not.  The record shows that if a person of ordinary skill in the art (POSITA) started with the genus of antibodies and antibody fragments that bind to Factor IX or IXa, only a very tiny percentage of those will meet the claims' functional limitation that the antibody or antibody fragment increase the procoagulant activity of Factor IXa,[12] and the only way to find that small number within the larger whole (of potentially millions of combinations satisfying the structural requirements), given the inherent unpredictability of the art and the lack of guidance in the specification, is by screening tens of thousands (if not more) antibodies or antibody fragments for procoagulant activity.  *See supra* § VI ¶¶ 2, 10–24.  It is a search for a needle in a haystack.

While Baxalta does not dispute the breadth of the claims, it asserts that only a "very, very minor sub-fraction" of antibodies will satisfy the claim limitations.  Pl.'s Opp'n at 12 (quoting Garcia Rpt. ¶ 189).  That is true, but this only exemplifies how substantial experimentation is necessary to sift through the broad genus of possible candidates to find the narrow species that satisfy the claim limitation.

The Federal Circuit considered an almost identical theory in *Idenix*, where the court found the claims were invalid for lack of enablement.  941 F.3d at 1161–63.  The patent in *Idenix* claimed a method of treatment for the hepatitis C virus (HCV) by using a particular pharmaceutical drug.

---

[12]    Although the results of the '590 patent inventors' experimentation (showing only 1.6% of antibodies screened bound to Factor IX/IXa and increased the procoagulant activity of Factor IXa) are not disclosed in the patent, the court may consider extrinsic evidence of those results to support its finding of non-enablement.  *See Pharm. Res., Inc. v. Roxane Labs., Inc.*, 253 F. App'x 26, 31 n.3 (Fed. Cir. 2007) ("Although extrinsic evidence cannot be used to supplement a non-enabling specification, such evidence can shed light on whether the specification is itself enabling."); *see also Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1577 (Fed. Cir. 1984) (considering results of experiments performed by patentee prior to filing the patent); *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1373 (Fed. Cir. 1999) (determining evidence of the patentee's own experimental failures was appropriate to consider).

The patent claimed the drug in a generic manner that included a large number of related compounds. The only independent claim of the patent recited:

> 1. A method for the treatment of a hepatitis C virus infection, comprising administering an effective amount of a purine or pyrimidine β-D-2'-methyl-ribofuranosyl nucleoside or a phosphate thereof, or a pharmaceutically acceptable salt or ester thereof.

*Id.* at 1155 (quoting U.S. Patent No. 7,608,597).

Of the "billions of potential 2'-methyl-up nucleosides," the specification identified only a small subset (four) compounds as being effective. *Id.* at 1156, 1161. The court thus found that the broad functional limitation of having efficacy against hepatis C virus (HCV) meant that there were a very large number of potential nucleoside candidates and only a few examples that satisfied the claim limitation. *Id.* at 1155–56, 1162. Idenix argued that the claims were not broad because, '[w]hen required to take all of the claim limitations into account, Gilead's witnesses described the claims as embracing only a 'small' number of compounds." *Id.* at 1162.

The court rejected that analysis as "backwards," explaining that "to get from a large number of candidate compounds to a relatively speaking small number of effective compounds . . . leaves a [POSITA] searching for a needle in a haystack to determine which of the 'large number' of . . . [candidate compounds] falls into the 'small' group of candidates that effectively treats HCV." *Id.* "The size disparity between those two groups," the court reasoned, "requires significant experimentation, which weighs against enablement, not for it." *Id.* The same reasoning applies here where the only way to find the very small number of antibodies that meet the claims' broad functional requirements, among millions of possible combinations, is to experiment. That there are few needles in the haystack makes the search harder, not easier.

Baxalta argues that that the experimentation required to practice the full scope of the invention is not undue here because "a POSITA need only engage in *routine* experimentation," as

shown in Examples 1 and 2 of the specification.  Pl.'s Opp'n at 22 (emphasis added) (quoting Marasco Rpt. ¶ 214).[13]  The same was true in *Amgen*, where expert testimony showed that "a person of skill in the art c[ould] make all antibodies within the scope of the claims by following a roadmap using anchor antibodies and well-known screening techniques as described in the specification or by making conservative amino acid substitutions in the twenty-six examples." *Amgen*, 987 F.3d at 1085.  The court nevertheless found the experimentation was undue.  *Id.* at 1088.

The Federal Circuit also considered and rejected a similar argument in *Wyeth*.  Like Baxalta, Wyeth argued that practicing the full scope of the claims would not require undue experimentation because it "would have required only *routine* experimentation."  720 F.3d at 1384 (emphasis added).  The Federal Circuit disagreed, explaining that even taking all of Wyeth's contentions—including that "one of ordinary skill could routinely use the assays disclosed in the specification to determine" which compounds fall within the scope of the claims, the claims were not enabled because "there [we]re still at least tens of thousands of candidates" to screen.  *Id.* at 1385.

The same reasoning dooms Baxalta's routine experimentation arguments here.  There is no guidance or direction in the specification of the '590 patent as to how to distinguish antibodies that bind to Factor IXa and increase the procoagulant activity of Factor IXa from those that do not. *Supra* ¶ 10.  And "there is no genuine dispute that it would be necessary to first synthesize and then screen *each* candidate compound using the assays disclosed in the specification to determine

---

[13]    Baxalta also points to its expert's statement that "'[t]he specification instructs a POSITA to use well-known, inexpensive, and efficient means of producing an antibody or fragment thereof that binds to Factor IX or Factor IXa and identifying those that increase the procoagulant activity of Factor IXa,' [and] it would not require 'substantial time and effort' to make and use the claimed invention."  Pl.'s Opp'n at 22 (quoting Marasco Rpt. ¶ 241).

whether it has" procoagulant effect, and until you screen the antibodies, "you can't tell whether they work or not." *Wyeth*, 720 F.3d at 1385.

Finally, while acknowledging that "a POSITA would need to screen for procoagulant activity," Pl.'s Opp'n at 22 (citing Marasco Dep. Tr. at 204:01–205:19), Baxalta argues that the requisite experimentation is nevertheless not undue because "POSITAs would 'feel confident that they could [utilize the teaching of the patent to produce] antibodies [] that have procoagulant return,'" *id.* (quoting Marasco Dep. Tr. at 209:02–09). Baxalta quotes one of its experts' testimony that there is a "'profound[]' difference between (i) making antibodies that bind to Factor IX/IXa and screening them for procoagulant activity, and (ii) starting from scratch or through trial and error." *Id.* at 22 (quoting Marasco Dep. Tr. at 206:07–13); *see also* Marasco Dep. Tr. at 206:14–19 ("A. . . . It's no longer an unknown of maybe I'll find them."). But this was also true in the *Idenix*, *Enzo*, *Wyeth* and *Amgen* cases, where the inventors had identified a small number of compounds within the scope of the claims and the court found the claims were not enabled given the breadth of the claims and the lack of sufficient guidance in the specifications.[14] There is nothing in the specification teaching how to identify any antibodies complying with the claim limitations other than by repeating the same process the inventors used to identify the eleven examples disclosed in the specification.

---

[14] Baxalta also attempts to distinguish *Amgen* on the basis that the claims there specified the amino acids (or residues) on PCSK9 to which the antibodies must bind. Pl.'s Opp'n at 32 (citing *Amgen*, 987 F.3d at 1087 n.1 ("For example, there are three claimed residues to which not one disclosed example binds.")). Baxalta maintains "[t]here is no similar unpredictability or lack of enablement in the" asserted claims in this case because they "merely require binding to Factor IX/IXa and do not require binding to specific residues." Pl.'s Opp'n at 32. The court disagrees. Here, similar to *Amgen*, there are various categories of antibodies that are identified in the claims that are not represented by working examples.

37

Appx66

B.    Broad Functional Scope

*Second*, the patent claims in this case, even more so than those in *Amgen* (which focused only on the binding requirement), cover a wide range of functionality in terms of procoagulant activity and that range is not represented by working examples**.**  The Federal Circuit's cases make clear that where, as here, "a range is claimed, there must be reasonable enablement of the scope of the range."  *See Amgen*, 987 F.3d at 1085 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020)); *see also MagSil Corp. v. Hitachi Global Storage Techs., Inc.*, 687 F.3d 1377, 1384 (Fed. Cir. 2012) (claims not enabled where the patentee argued for a broad scope despite meager results achieved by the inventors).  By Baxalta's own admission, the patent covers everything from a barely perceptible amount of procoagulant activity at the bottom end to an amount that would be created by Factor VIII itself (at least 40%) at the upper end.  *See* Marasco Dep. Tr. at 236:12–18;[15] Krishnaswamy Dep. Tr. at 213:17–214:11;[16] *see also supra* § VI ¶ 4.

The Federal Circuit's decision in *MagSil* is instructive.  There, a patentee asserted infringement of a claim directed to a device used in computer hard drive disks that required a "change in resistance by at least 10%" between two electrodes on the device.  687 F.3d at 1379–80.  The background section of the patent explained that past efforts to "produce an adequate level of change in the [ ] resistance" had achieved only a 2.7% change.  *Id.* at 1379.  The Federal Circuit found the claims were not enabled. In relevant part, the court observed that the patent specification "only disclose[d] enough information to achieve an 11.8% resistive change," even

---

[15]    "Q. So if an antibody binds Factor IX or IXa and increases the procoagulant activity of Factor IXa by as much as Factor VIII does, that antibody is within the scope of the claim, correct? A. . . . yeah, I think it's within the scope of the claim."
[16]    "Q. . . . [I]f it turned out that . . . there were an antibody that mirrored the activity of factor VIII itself, such an antibody would still be covered by these claims if it met the other limitations; correct? A. I would agree with that statement, yes."

though the claims were construed to cover resistive changes "from 10% up to infinity." *Id.* at 1383. The Federal Circuit further stated, "[t]he record contains no showing that the knowledge of [a skilled] artisan would permit, at the time of filing, achievement of the modern values above 600% without undue experimentation." *Id.* at 1384. "Indeed," the court observed," it had taken "nearly twelve years of experimentation to actually reach those [modern] values." *Id.* The same problem exists here.

Just as it took twelve years after the filing of the patent in *Magsil* for others to reach a 604% change in resistance, here, it took scientists at Chugai almost 10 years to discover the accused product emicizumab, which increases procoagulant activity by 10%. *See supra* § VI ¶ 28; Kitazawa Dep. Tr. at 241:12–20. The highest amount that any antibody disclosed in the specification is estimated to have increased the procoagulant activity of Factor IXa is by 3.75% of normal Factor VIII levels. *See supra* § VI ¶ 4. Both are far short of normal Factor VIII levels (at least 40%). *See id.* Although agreeing that an antibody that increases procoagulant activity by the same amount as would a normal level of Factor VIII would be within the scope of the claims, *see* Marasco Dep. Tr. at 236:12–18, Baxalta's expert concedes "it would be difficult or indeed impossible to create" an antibody that increases the procoagulant activity by such an amount, Krishnaswamy Dep. Tr. at 212:18–213:7. A specification cannot adequately enable something that is admittedly impossible to accomplish. *See, e.g., Tr. of Boston Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1362 (Fed. Cir. 2018) ("We can safely conclude that the specification does not enable what the experts agree is physically impossible."). But even as to the compounds within the realm of possibility, there is no enablement.

The stated object of the invention is "to provide a preparation for the treatment of blood coagulation disorders . . . ." '590 patent, col. 2, ll. 25–28; *see also id.* at col. 9, ll. 25–36 ("The

present antibodies . . . are suitable for therapeutic use . . . .").  And the primary utility disclosed in the '590 patent for antibodies and antibody fragments that "increase[] the procoagulant activity of Factor IXa" is a therapeutic one.  *See id.* col. 1, ll. 32–35; *id.*, col. 2, ll. 22–33; *id.*, col. 2, ll. 39–44; *id.*, col. 9, ll. 25–36; *id.*, col. 9, ll. 50–61.[17]  But as discussed, the highest amount by which any antibody disclosed in the specification is estimated to have increased the procoagulant activity of Factor IXa (3.75%), would only be capable of moving a patient with hemophilia A classified as severe to a moderate classification.  *See supra* § VI ¶ 4.  It would not be capable of moving a patient with severe hemophilia to a mild classification.  Although the experts debate whether such a small amount of procoagulant activity could be therapeutically useful for some patients, *see, e.g.*, Krishnaswamy Rpt. ¶¶ 115–118; Sheehan Rebuttal Rpt. ¶¶ 40–63, Baxalta acknowledges in the 20 years since the '590 patent was filed, it has never brought to market a product embodying the '590 patent's invention, *see* Scheiflinger Dep. Tr. 48:25–49:11 ("no company has ever brought to market a monospecific antibody to Factor IXa to treat  hemophilia"); *see also* Hr'g Tr. at 55:09–12 (counsel for Baxalta agreeing that none of the eleven examples in the patent were "developed into a therapeutic product").

---

[17]    After discussing the therapeutic utility of the claimed subject matter, the specification proposes other uses for the disclosed antibodies and antibody fragments, which only require that they bind to factor IX/IXa (not increase the procoagulant activity of factor IXa):

> Moreover, the antibodies and antibody derivatives according to the invention may also be used for industrial applications, e.g. for the purification of factor IX/factor IXa by means of affinity chromatography, or as a component of detection methods (e.g. ELISA assays), or as an agent for identification of and interaction with functional domains of a target protein.

'590 patent, col. 9, ll. 50–56.  Even if true that a stated purpose of the patent was the use of antibodies in industrial applications, that can hardly be used to show the enablement of what is clearly the primary purpose of the patent and indisputably covered by the claims—the treatment of hemophilia A.

40

What is more, the patent also claims therapeutic effectiveness in the presence of Factor VIII inhibitors (claim 2), necessary for the treatment of inhibitor patients. The only antibody that was subjected to the aPTT and measured in the presence of Factor VIII inhibitors was 193/AD3, *see supra* § VI ¶ 25, for which Baxalta's expert concedes the specification lacks "[]sufficient information to accurately estimate the relevant rates of Factor Xa generation" in the chromogenic assay, Krishnaswamy Rpt. ¶ 122. Genentech's expert estimated, based on Figure 6A in the patent, that 193/AD3 (the only antibody tested in the presence of Factor VIII inhibitors) increases the level of procoagulant activity only at about 0.3–0.4% equivalent of Factor VIII activity, a marginal amount. *See supra* § VI ¶ 6.

Baxalta's expert now concedes that the patent's assertions that antibodies of the invention have therapeutic utility was merely "aspirational," Krishnaswamy Dep. Tr. at 42:05–45:14, and agrees that there is "not enough information conveyed in the patent to tell whether an antibody such as [198/A1] would have activity sufficient for clinical use," *id.* at 185:23–186:05.

Baxalta's only response to *MagSil* is that it is "factually inapposite" because it pertains only to claims to "a marginal improvement to a known quality," Pl.'s Opp'n at 34, and that a lower enablement standard should somehow apply to claims covering subject matters with previously unknown qualities, as Baxalta contends is the case here, *id.*; *see also* Hr'g Tr. 57:20–58:1–2.[18] Baxalta cites no caselaw for such a proposition, and the court does not read *MagSil* to be cabined in such a way. In *Plant Genetic Systems*, the Federal Circuit made clear that the enablement requirement is the same regardless of whether marginal or major advances are the subject of a

---

[18]     "[The court]: There's no upper limit? [Counsel for Baxalta]: No, Your Honor, . . . this is not a quality that was known in advance."

patent.  315 F.3d at 1339–40 (rejecting as "not supported by precedents" an argument that a patent was entitled to a lower enablement requirement for a "pioneering" patent).

That the '590 patent discloses a starting point for further research by disclosing a monospecific murine antibody that binds to Factor IX or IXa and increases the procoagulant activity of Factor IXa by a small amount is not sufficient enablement.  *See Wyeth*, 720 F.3d at 1386 (determining that the specification provided "only a starting point for further iterative research in an unpredictable and poorly understood field"); *Storer v. Clark*, 860 F.3d 1340, 1350 (Fed. Cir. 2017) ("The specification need not recite textbook science, but it must be more than an invitation for further research.").

### C.    Structural Scope

*Third*, it is established that a claim is not enabled if it is structurally broad and there are insufficient working examples and guidance to enable the full scope of the structural limitations. *See, e.g.*, *Idenix*, 941 F.3d at 1157–58.  Here, claims 2–4 and 19–20 are necessarily within the scope of claim 1 because they are dependent claims.  It is undisputed that the '590 patent provides no working examples of two of the four *Markush*-group members in claims 3 and 20 (IgE and IgA), nor does the specification provide any guidance as to how one skilled in the art would alter the process disclosed in the patent or engineer antibodies to arrive at those isotypes.  In fact, Baxalta's expert testified that it would be exceedingly rare to discover antibodies of those isotypes for which there are no working examples.  *See supra* § VI ¶ 3(a).  Although the specification states that a class switch "may also be caused in a directed manner by means of genetic engineering methods" known in the prior art, '590 patent, col. 6, ll. 41–45, the inventors of the '590 patent did not perform such engineering or provide any specific guidance beyond reference to what was known in the prior art.

42

Appx71

Nor are there any working examples of seven of the nine members of the *Markush* group in claim 4—"a chimeric antibody, a humanized antibody, . . . , a bispecific antibody, a diabody, and di-, oligo- or multimers thereof." *See supra* § VI ¶ 3(b). Although a POSITA would have a general understanding of the process for modifying an antibody into these various formats, there is no specific direction as to the structure (*e.g.*, to what antigen the second arm of a bispecific antibody should bind),[19] and no assurance that, once the modifications are made, the antibody will retain the same functional qualities much less that making it bispecific would enhance its properties. *See id.* ¶ 26.

Of particular significance is the absence of any working examples of a humanized antibody (claim 19). While there are references to humanized antibodies in the list of antibody types known in the art, '590 patent col. 6, ll. 15–19, 49–63, and a reference to prior-art humanization techniques, *see id.* at col. 7, l. 66–col. 8, l.4, the inventors never created a humanized antibody, provided no guidance in the specification as to how to create a humanized antibody that would exhibit the claimed function, and never determined whether humanizing an antibody (that would otherwise satisfy the claim limitations) would preserve its claimed procoagulant function, *see supra* § VI ¶ 27; Marasco Dep. Tr. at 120:13–20, 125:24–126:04. And because there is no way to predict whether, after humanization, an antibody or antibody fragment will retain its ability to bind to factor IX/IXa and increase the procoagulant activity of factor IXa, additional screening would be

---

[19]    Although Baxalta's expert opines that "a POSITA would know to identify a second binding specificity for the bispecific form of the claimed invention," Pl.'s Opp'n, Ex. 12, ECF No. 424-13, Chang Rpt. ¶ 81, and that a "natural choice for a second binding specificity would be one of the two proteins associated with Factor IXa in the coagulation cascade: Factor VIII or Factor X," *id.* at ¶ 82, an inventor of the '590 patent admitted that, at the time of filing, they had not thought of or disclosed which antigens a bispecific antibody would bind, *see* Kerschbaumer Dep. Tr. at 19:459–461, and another Baxalta expert conceded that additional confirmatory testing would be necessary following modification of an antibody into a different format to ensure that the binding and activating functions of the antibody remained in place, Marasco Dep. Tr. at 127:24–128:25.

43

Appx72

necessary after modification of the antibody.  *See supra* § VI ¶ 27; Garcia Rpt. ¶¶ 84–85, 167.

Baxalta's expert Dr. Marasco wrote in a patent of his own, and confirmed at his deposition, that

"humanizing an antibody is not as efficient a process as sometimes presented," and that after

humanization an antibody "frequently does not have the same effectiveness as the original murine

antibody."  Marasco Dep. Tr. at 130:02–131:07.

### D.    Dependent Claims

So far, the court has been focused on claim 1, but the dependent claims fare no better.  If

anything, it is even clearer that the dependent claims are invalid given the dearth of working

examples for the vast majority of what they claim as a matter of structure, as discussed *supra*

§ VIII.C.  And the functional limitations of claim 1 apply equally to the dependent claims because

they each claim the antibody or antibody fragment according to claim 1 and do not narrow the

functional limitations of claim 1 in any way.  *Alcon Rsch., Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367

(Fed. Cir. 2012) ("[B]ecause a dependent claim narrows the claim from which it depends, it must

'incorporate . . . all the limitations of the claim to which it refers.'" (quotation omitted)).

Accordingly, given the limited working examples for the structural limitations of the asserted

dependent claims—including no working examples of antibodies that satisfy claim 19 (humanized

antibodies), only examples of two of the four isotypes listed in claims 3 and 20, and no working

examples of seven of the nine structural formats listed in claim 4—combined with the broad scope

of the functional limitations under claim 1 and the lack of guidance in the specification, no

reasonable jury could find the dependent claims are enabled.

### E.    Nonenablement of Emicizumab

Finally, it is significant that the patent does not remotely enable the accused antibody,

emicizumab, which must fall within the scope of the claims to establish an infringement claim.

Emicizumab increases the procoagulant effect by approximately 10%[20]—an amount that has proven capable of reducing bleeding episodes in inhibitor patients by a clinically significant amount. *See* Smith Decl. ¶¶ 44, 49; Malackowski Rpt. at 34, 36 . Yet, as discussed, the patent does not disclose an antibody that has procoagulant activity anywhere near that amount. None of the 11 disclosed antibodies in the specification increase the procoagulant activity of factor IXa more than 3.75%, and it is unknown whether that example would perform the same in the presence of Factor VIII inhibitors. *See supra* § VI ¶¶ 4, 6.

Moreover, key to emicizumab's therapeutic effectiveness is its structure as a bispecific humanized antibody, *see* Sampei Article at 2, and as discussed, there is no working example of either a bispecific or humanized antibody in the specification of the '590 patent, let alone an antibody that is both. Two inventors of the '590 patent, Scheiflinger and Kerschbaumer, admitted they did not make a bispecific antibody, *see* Scheiflinger Dep. Tr. at 68:08–19; Kerschbaumer Tr. at 18:429–434, and Baxalta's expert, Dr. Krishnaswamy, conceded that the patent's "language" about antibodies of the invention have therapeutic utility was merely "aspirational," Krishnaswamy Dep. Tr. at 42:05–45:14. Significantly, it took Chugai over ten years of multi-phased experimentation and the screening of tens of thousands of candidate compounds to discover emicizumab. *See supra* § VI ¶ 28.

Although Baxalta concedes that emicizumab is within the scope of the claims, it now argues that the court should not be concerned with the lack of enablement of emicizumab because

---

[20]    Baxalta's expert disputes the accuracy of this 10 percent figure, *see* Krishnaswamy Rpt ¶ 112, but that opinion is based on testing of emicizumab at a diluted concentration level and says nothing of the concentration level used in the treatment of hemophilia A. Moreover, the literature relied on by the same expert states that emicizumab at the treatment concentration level is "assumed to be equivalent to that of . . . 10% FVIII." Uchida et al*., A first-in-human phase 1 study of ACE910, a novel factor VIII–mimetic bispecific antibody, in healthy subjects*, Blood 127(13):1633–1641 (2016) (cited as Ex. E in Krishnaswamy Rpt).

the high coagulant effect of emicizumab may be due to the fact that it is bispecific and binds Factor X with the other arm, whereas the asserted claims involve the arm that binds Factor IX.  *See* Hr'g Tr. at 50:20–51:05.  In that event, Baxalta suggests maybe a compound is not within the scope of the claims if the procoagulant effect is only caused by a bispecific antibody's arm that binds to Factor X.  *See id.* at 52:03–19.[21]  This convoluted argument, offered for the first time at the Summary Judgment hearing, does nothing to show enablement.  Baxalta convinced the Federal Circuit that bispecific antibodies are within the scope of the claims.  It cannot now prevail by arguing that one bispecific antibody is perhaps not within the scope of the claims if its procoagulant activity results from its bispecific nature.

Past decisions have advised that patents should be awarded to the true inventor and that the enablement requirement serves an important purpose in this respect.  *See Amgen Inc. v. Sanofi, Aventisub LLC*, 850 F. App'x 794, 796 (Fed. Cir. 2021) (denying rehearing en banc) ("One should not gain exclusivity over claimed subject matter without disclosing how to make and use it. And if one considers that one has invented a group of compositions defined by a genus but does not know enough to fully enable that genus, one would suppress innovation if one were able to claim such a broad genus, not enhance it."); *see also J.E.M. Ag Supply*, 534 U.S. at 142  (identifying an enabling disclosure as the "*quid pro quo* of the right to exclude" (quoting *Kewanee Oil Co. v.*

---

[21]      Counsel: "The claimed invention is about the bispecific antibody with the arm that binds Factor 9, 9A and that arm that exhibits the procoagulant activity on Factor 9, 9A, and it's not necessary to enable or to fully describe even the portions of the . . . composition that are not part of the claim."
        Court: "[S]o there would be no infringement here if Hemlibra procoagulant activity resulted from the Factor 10 binding and not from the fact that it binds, the other chain binds to Factor 9A?"
        Counsel: "If the only procoagulant activity [] came from the binding of Factor 10 and there was no procoagulant activity as a result of the Factor [IX/IXA] arm, my understanding is that there would be no infringement."

Case: 22-1461   Document: 14   Page: 126   Filed: 06/10/2022

*Bicron Corp.*, 416 U.S. 470, 484 (1974)); *McRO*, 959 F.3d at 1099–100 ("The requirement of enablement . . . enforces the essential '*quid pro quo* of the patent bargain.'" (quoting *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1244 (Fed. Cir. 2003)).

That is, the enablement requirement ensures that the entity that does the hard work to invent a useful compound is the recipient of the patent, not some earlier inventor who may have conceived of such a therapy or made the first step in research, but did not enable its ultimate production. *See Genentech*, 108 F.3d at 1366 ("Patent protection is granted in return for an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be workable."); *see also Wyeth*, 720 F.3d at 1386 (finding that disclosing "only a starting point for further iterative research in an unpredictable and poorly understood field" does not constitute sufficient enablement). That is the situation here. The court cannot allow Baxalta to provide a starting point for further research and then claim "someone else's solution to the problem." *Genentech*, 108 F.3d at 1366.

## CONCLUSION

For the foregoing reasons, the court GRANTS Genentech's motion for summary judgment of invalidity for lack of enablement and DENIES as moot Genentech's motion for summary judgment in all other respects.

Honorable Timothy B. Dyk
United States Circuit Judge, sitting by designation

47

Appx76

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BAXALTA INCORPORATED and
BAXALTA GMBH,

               Plaintiffs,

       v.

GENENTECH, INC. and CHUGAI
PHARMACEUTICAL CO., LTD.,

               Defendants.

Civil Action No. 17-509-TBD

**ORDER**

For reasons discussed in the accompanying Memorandum Opinion issued this 13th day of

January, 2022,

**IT IS HEREBY ORDERED** that:

1.     Genentech's Motion for Summary Judgment, ECF No. 407, is **GRANTED** on the

       ground that the asserted claims of the '590 patent are invalid for lack of enablement,

       and judgment is entered in favor of Genentech.

2.     As the Memorandum Opinion was filed under seal, the parties shall meet and confer

       and shall on or before January 18, 2022, submit any proposed redactions.  The

       parties are advised that redactions are strongly disfavored and proposed redactions

       must be accompanied by a showing of good cause.  Thereafter, the court will issue

       a public version of its Memorandum Opinion.

This is a final appealable order.

**SO ORDERED.**

Honorable Timothy B. Dyk
United States Circuit Judge, sitting by designation



US007033590B1

(12) **United States Patent**
Scheiflinger et al.

(10) Patent No.: **US 7,033,590 B1**
(45) Date of Patent: **Apr. 25, 2006**

(54) **FACTOR IX/FACTOR IXA ACTIVATING ANTIBODIES AND ANTIBODY DERIVATIVES**

(75) Inventors: **Friedrich Scheiflinger**, Vienna (AT); **Randolf Kerschbaumer**, Vienna (AT); **Falko-Guenter Falkner**, Orth/Donau (AT); **Friedrich Dorner**, Vienna (AT); **Hans-Peter Schwarz**, Vienna (AT)

(73) Assignee: **Baxter Aktiengesellschaft**, Vienna (AT)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 462 days.

(21) Appl. No.: **09/661,992**

(22) Filed: **Sep. 14, 2000**

(30) **Foreign Application Priority Data**

Sep. 14, 1999 (AT) ............................................. 1576/99

(51) Int. Cl.
*A61K 39/395* (2006.01)
*A61K 38/04* (2006.01)
*C12N 5/20* (2006.01)
*C07K 16/00* (2006.01)
*C07K 16/34* (2006.01)

(52) **U.S. Cl.** ............... **424/145.1**; 435/326; 530/388.25; 530/387.1; 530/327; 530/328; 530/389.3

(58) **Field of Classification Search** ............. 530/387.3, 530/388.25, 389.3, 327, 328; 424/133.1, 424/145.1; 435/326
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,395,396 A | | 7/1983 | Eibl et al. |
| 4,873,316 A | | 10/1989 | Meade et al. |
| 5,932,706 A | | 8/1999 | Mertens et al. |
| 6,391,299 B1 | * | 5/2002 | Blackburn et al. |
| 6,632,927 B1 | * | 10/2003 | Adair et al. |

FOREIGN PATENT DOCUMENTS

| WO | WO95/13300 | 5/1995 |
|---|---|---|
| WO | WO97/26010 | 7/1997 |
| WO | WO99/01476 | 1/1999 |

OTHER PUBLICATIONS

Panka et al. Variable region framework differences result in decreased or increased affinity of variant anti–digoxin antibodies. Proc Natl Acad Sci U S A. 85(9):3080–3084, 1988.*
Rudikoff et al. Single amino acid substitution altering antigen–binding specificity. Proc Natl Acad Sci U S A. 79(6):1979–1983, 1982.*
Ames, R.S. et al., *Conversion of Murina Fabs Isolated From a Combinatorial Phage Display Library to Full Length Immunoglobulins, J. Immunol. Methods*, pp. 177–186 (1995).

Bajaj, S.P. et al., *A Monoclonal Antibody to Factor IX That Inhibits the Factor VIII:Ca Potentiation of Factor X Activation, The Journal of Biological Chemistry*, 260(21), pp. 11574–11580 (1985).
Bessos, H., et al., *The Characterization of a Panel of Monoclonal Antibodies to Human Coagulation Factor IX, Thrombosis Research,* 40, pp. 863–867 (1985).
Cao, Y. et al., *Bispecific Antibodies as Novel Bioconjugates, Bioconjugate Chemistry*, 9(6); pp. 635–644 (1998).
Cohen, F.E., et al., *The Combinatorial Approach, Protein Structure Prediction—A Practical Approach* (Ed. M.J.E. Sternberg), Oxford University Press, Ch. 9, pp. 207–227 (1996).
Engelhardt, O., et al., *Two Step Cloning of Antibody Variable Domains in a Phage Display Vector, Biotechniques*, 17, p. 44–46 (1994).
Esser, C., et al., *Immunoglobulin Class Switching: Molecular and Cellular Analysis, Annu. Rev. Immunol.*, 8, p. 717–735 (1990).
Evan, G.I., et al., *Isolation of Monoclonal Antibodies Specific for Human c–myc Proto–Oncogene Product, Mol. Cell. Biol.*, 5(12), p. 3610–3616 (1985).
Fay, P.J., et al., *Factor Villa A2 Subunit Residues 558–565 Represent a Factor IXa Interactive Site, Journal of Biological Chemistry*, 269(32), p. 20522–20527 (1994).
Frazier, D., et al., *Mapping of Monoclonal Antibodies to Human Factor IX, Blood*, 74(3), p. 971–977 (1989).
Gao, C., et al., *Making Artifical Antibodies: A Format for Phage Display of Combinatorial Heterodimeric Arrays, Proc. Natl. Acad. Sci.*, 96, p. 6025–6030 (1999).
Grassy, G., et al., *Computer–Assisted Rational Design of Immunosuppressive Compounds, Nature Biotechnology*, 16, p. 748–752 (1998).
Greer, J., et al., *Application of the Three–Dimensional Structures of Protein Target Molecules in Structure–Based Drug Design, Journal of Medicinal Chemistry*, 37(8), p. 1035–1054 (1994).
Harlow, E., et al., *2. Antibody Molecules, Antibodies—A Laboratory Manual*; pp. 7–22 (1988).
Harlow, E., et al., *3. Antibody–Antigen Interactions, Antibodies—A Laboratory Manual*; p. 23–35 (1988).
Harlow, E., et al., *6. Monoclonal Antibodies, Antibodies—A Laboratory Manual*; p. 139–243 (1988).
Hochuli, E., et al., *Genetic Approach to Facilitate Purification of Recombinant Proteins with a Novel Metal Chelate Adsorbent, Biotechnology*, 6, p. 1321–1325 (1988).
Huston, J.S., et al., *Medical Applications of Single–Chain Antibodies, Intern. Rev. Immunol.*, 10, p. 195–217 (1993).

(Continued)

*Primary Examiner*—Christina Chan
*Assistant Examiner*—Maher Haddad
(74) *Attorney, Agent, or Firm*—Townsend and Townsend and Crew LLP

(57) **ABSTRACT**

An antibody or antibody derivative against factor IX/activated factor IX (FIXa) which increases the procoagulant activity of FIXa.

**22 Claims, 61 Drawing Sheets**

**US 7,033,590 B1**

Page 2

OTHER PUBLICATIONS

Jones, D.T., et al., *Protein Folds and Their Recognition from Sequence, Protein Structure Prediction—A Practive Approach* (Ed. M.J.E. Sternberg), Oxford University Press, Ch. 8, p. 174–206 (1996).

Jones, P.T., et al., *Replacing the Complementarity–Determining Regions in a Human Antibody with Those from a Mouse, Nature*, 321, p. 522–525 (1986).

Jorquera, J.I., et al., *Synthetic Peptides Derived from Residues 698 to 710 of Factor VIII Inhibit Factor IXa Activity, Circulation*, 86, Abstract No. 2725, p. I–685 (1992).

Karpen, M.E., et al., *Modelling Protein Conformation by Molecular Mechanics and Dynamics, Protein Structure Prediction—A Practical Approach* (Ed. M.J.E. Sternberg), Oxford University Press, Ch. 10, p. 229–261 (1996).

Kemp, D.S., *Peptidomimetics and the Template Approach to Nucleation of β–sheets and α–helices in Peptides, TIBTECH*8, p. 249–255 (1990).

Kerschbaumer, R.J., et al, *pDAP2: A Vector for Construction of Alkaline Phosphatase Fusion–Proteins, Immunotechnology*, 2, p. 145–150 (1996).

Kerschbaumer, R.J. et al., *Single–Chain Fv Fusion Proteins Suitables as Coating and Detecting Reagents in a Double Antibody Sandwich Enzyme–Linked Immunosorbent Assay, Analytical Biochemistry*, 249, p. 219–227 (1997).

Lane, R.D., *A Short–Duration Polyethylene Glycol Fusion Technique for Increasing Production of Monoclonal Antibody–Secreting Hybridomas, Journal of Immunological Methods*, 81, p. 223–227 (1985).

Lenting, P.J., et al., *The Sequence $Glu^{1811}–Lys^{1818}$ of Human Blood Coagulation Factor VIII Comprises a Binding Site for Activated Factor IX, Journal of Biological Chemistry*, 271(4), p. 1935–1940 (1996).

Liles, D.K., et al, *The Factor VIII Peptide Consisting of Amino Acids 698 to 712 Enhances Factor IXa Cleavage of Factor X, Blood*, 90(1), Abstract No. 2054, p. 463a (1997).

Lin, H–F., et al, *A Coagulation Factor IX–Deficient Mouse Model for Human Hemophilia B, Blood*, 90(10), p. 3962–3966 (1997).

Malik, P., et al., *Multiple Display of Foreign Peptide Epitopes on Filamentous Bacteriophage Virions, Phage Display of Peptides and Proteins* (Ed. B. K. Kay et al.), Academic Press, p. 127–139 (1996).

Mann, K.G., et al., *Surface–Dependent Reactions of the Vitamin K–Dependent Enzyme Complexes, Blood*, 76(1), p. 1–16 (1990).

Mikaelsson, M., et al., *Standardization of VIII:C Assays: A Manufactorer's View, Scandinavian Journal of Haematology* (Ed. Nilsson et al.), 33, p. 79–86 (1984).

Nilsson, I.M. et al., *Induction of Split Tolerance and Clinical Cure in High–Responding Hemophiliacs with Factor IX Antibodies, Proc. Natl. Acad. Sci. USA*, 83, p. 9169–9173 (1986).

Persic, L., et al., *An Integrated Vector System For The Eukaryotic Expression of Antibodies of Their Fragments After Selection From Phase Display Libraries, Genes*, p. 9–18 (1997).

Pluckthun, A., et al., *New Protein Engineering Approaches to Multivalent and Bispecific Antibody Fragments, Immunotechnology*, 3, p. 83–105 (1997).

Raag, R., et al., *Single–Chain Fvs, FASEB Journal*, 9(1), pp. 73–80 (1995).

Rees, A.R., et al., *Antibody Combining Sites: Structure and Prediction, Protein Structure Prediction—A Practical Approach* (Ed. M.J.E. Sternberg), Oxford University Press, Ch. 7, p. 141–172 (1996).

Roitt, I.M., et al., *Molecules which Recognize Antigen, Immunology*, 2nd Edition, p. 5.1–5.11 (1989).

Sadler, J.E., et al., *Hemophila A, Hemophilia B, and von Willebrand's Disease, The Molecular Basis of Blood Diseases* (Ed. G. Stamatoyannopoulos et al.), p. 575–630 (1987).

Vaughan, T.J., et al., *Human Antibodies By Design, Nature Biotechnology*, p. 535–539 (1998).

Winter, G., et al., *Making Antibodies by Phage Display Technology, Annu. Rev. Immunol.*, 12, p. 433–455 (1994).

Zhong, D., et al., *Some Human Inhibitor Antibodies Interface with Factor VIII Binding to Factor IX, Blood*, 92(1), p. 136–142 (1998).

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



**FIG. 4**



**FIG. 5**



FIG. 6A



FIG. 6B



FIG. 7A



FIG. 7B



FIG. 8A



FIG. 8B



FIG. 8C



**FIG. 9**



**FIG. 10A**



**FIG. 10B**



FIG. 11

Mouse V$_H$ back primers (containing Sfi1-site):

VH1BACK-SfiI    5' C ATG CCA TGA CTC GCG GCC CAG CCG GCC ATG GCC SAG GTS MAR CTG CAG
                SAG TCW GG 3'  (SEQ.ID.NO. 50)

VH1BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAG GTG CAG CTT CAG GAG TCA
             GG 3'  (SEQ.ID.NO. 51)

VH2BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAT GTG CAG CTT CAG GAG TCR
             GG 3'  (SEQ.ID.NO. 52)

VH3BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC CAG GTG CAG CTG AAG SAG TCA
             GG 3'  (SEQ.ID.NO. 53)

VH4/6BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAG GTY CAG CTG CAR CAR TCT
               GG 3'  (SEQ.ID.NO. 54)

VH5/9BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC CAG GTY CAR CTG CAG CAG YCT
               GG 3'  (SEQ.ID.NO. 55)

VH7BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAR GTG AAG CTG GTG GAR TCT
             GG 3'  (SEQ.ID.NO. 56)

VH8BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAG GTT CAG CTT CAG CAG TCT
             GG 3'  (SEQ.ID.NO. 57)

VH10BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC GAA GTG CAG CTG KTG GAG WCT
              GG 3'  (SEQ.ID.NO. 58)

VH11BACKSfi   5' GTC CTC GCA ACT GCG GCC CAG CCG GCC ATG GCC CAG CAG TTG CTG CAG TCT
              GG 3'  (SEQ.ID.NO. 59)

FIG. 12-1

Mouse J$_H$ forward primers (containing 1/2 linker-sequence and AscI-site):

VH1FOR2LiAsc    5' ACC GCC AGA GGC GCG CCC ACC TGA ACC GCC TCC ACC TGA GGA GAC GGT
                GAC CGT GGT CCC TTG GCC CC 3'(SEQ.ID.NO. 60)

JH1FORLiAsc     5' ACC GCC AGA GGC GCG CCC ACC TGA ACC GCC TCC ACC TGA GGA GAC GGT
                GAC CGT GGT CCC 3'(SEQ.ID.NO. 61)

JH2FORLiAsc     5' ACC GCC AGA GGC GCG CCC ACC TGA ACC GCC TCC ACC TGA GGA GAC TGT
                GAG AGT GGT GCC 3'(SEQ.ID.NO. 62)

JH3FORLiAsc     5' ACC GCC AGA GGC GCG CCC ACC TGA ACC GCC TCC ACC TGC AGA GAC AGT
                GAC CAG AGT CCC 3'(SEQ.ID.NO. 63)

JH4FORLiAsc     5' ACC GCC AGA GGC GCG CCC ACC TGA ACC GCC TCC ACC TGA GGA GAC GGT
                GAC TGA GGT TCC 3'(SEQ.ID.NO. 64)

IUPAC-Code: M=A/C, W=A/T, R=A/G, Y=C/T, S=C/G, K=G/T, H=A/C/T, D=A/G/T, V=A/C/G, B=T/C/G.

## FIG. 12-2

**Primers for cloning mouse V$_K$ genes**
*Mouse V$_K$ back primers (containing AscI-site and 1/2 linker-sequence):*

VK2BACK-LiAscI  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAC ATT GAG
CTC ACC CAG TCT CCA 3'  (SEQ.ID.NO. 65)

VK1BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAC ATT GTG
ATG WCA CAG TCT CC 3'  (SEQ.ID.NO. 66)

VK2BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAT GTT KTG
ATG ACC CAA ACT CC 3'  (SEQ.ID.NO. 67)

VK3BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAT ATT GTG
ATR ACB CAG GCW GC 3'  (SEQ.ID.NO. 68)

VK4BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAC ATT GTG
CTG ACM CAR TCT GC 3'  (SEQ.ID.NO. 69)

VK5BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG SAA AWT GTK
CTC ACC CAG TCT CC 3'  (SEQ.ID.NO. 70)

VK6BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG GAY ATY VWG
ATG ACM CAG WCT CC 3'  (SEQ.ID.NO. 71)

VK7BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG CAA ATT GTT
CTC ACC CAG TCT CC 3'  (SEQ.ID.NO. 72)

VK8BACKLi Asc  5' GGT TCA GAT GGG CGC GCC TCT CGC GGT GGC GGA TCG TCA TTA TTG
CAG GTG CTT GTG GG 3'  (SEQ.ID.NO. 73)

**FIG. 13-1**

*Mouse J$_K$ forward primers (containing NotI-site):*

JK1NOT10    5' GAG TCA TTC TGC GGC CGC TTT GAT TTC CAG CTT GGT GCC 3'
            (SEQ.ID.NO. 74)

JK2NOT10    5' GAG TCA TTC TGC GGC CGC TTT TAT TTC CAG CTT GGT CCC 3'
            (SEQ.ID.NO. 75)

JK3NOT10    5' GAG TCA TTC TGC GGC CGC TTT TAT TTC CAG TCT GGT CCC 3'
            (SEQ.ID.NO. 76)

JK4NOT10    5' GAG TCA TTC TGC GGC CGC TTT TAT TTC CAA CTT TGT CCC 3'
            (SEQ.ID.NO. 77)

JK5NOT10    5' GAG TCA TTC TGC GGC CGC TTT CAG CTC CAG CTT GGT CCC 3'
            (SEQ.ID.NO. 78)

IUPAC-Code: K=G/T, M=A/C, W=A/T, R=A/G, Y=C/T, S=C/G, H=A/C/T, D=A/G/T, V=A/C/G, B=T/C/G.

# FIG. 13-2

```
    VH
+1   E    V    K    L    V    E    S    G    P    E    L    K    K    P    G
1   GAG  GTG  AAG  CTG  GTG  GAG  TCT  GGA  CCT  GAG  CTG  AAG  AAG  CCT  GGA


+1   E    T    V    K    I    S    C    K    A    S    G.   Y    I    F    T
46  GAG  ACA  GTC  AAG  ATC  TCC  TGC  AAG  GCT  TCT  GGG  TAT  ATC  TTC  ACA


+1   N    Y    G    M    N    W    V    K    Q    A    P    G    K    G    L
91  AAC  TAT  GGA  ATG  AAC  TGG  GTG  AAG  CAG  GCT  CCA  GGA  AAG  GGT  TTA


+1   K    W    M    G    W    I    N    T    Y    T    G    E    P    T    Y
136 AAG  TGG  ATG  GGC  TGG  ATA  AAC  ACC  TAC  ACT  GGA  GAG  CCA  ACA  TAT


+1   A    D    D    F    K    G    R    F    A    F    S    L    E    T    S
181 GCT  GAT  GAC  TTC  AAG  GGA  CGG  TTT  GCC  TTC  TCT  TTG  GAA  ACC  TCT


+1   A    S    T    A    Y    L    Q    I    N    N    L    K    N    E    D
226 GCC  AGC  ACT  GCC  TAT  TTG  CAG  ATC  AAC  AAC  CTC  AAA  AAT  GAG  GAC


+1   T    A    T    Y    F    C    A    L    **Y**  **G**  **N**  **S**  **P**  **K**  **G**
271 ACG  GCT  ACA  TAT  TTC  TGT  GCA  TTA  **TAT**  **GGT**  **AAC**  TCC  **CCT**  **AAG**  GGG

                                                                           *linker*
+1   **F**  **A**  **Y**  W    G    Q    G    T    L    V    T    V    S    A    G
316 **TTT**  **GCT**  **TAC**  TGG  GGC  CAA  GGG  ACT  CTG  GTC  ACT  GTC  TCT  GCA  GGT

                                                                      VL
+1   G    G    G    S    G    G    R    A    S    G    G    G    G    S    D
361 GGA  GGC  GGT  TCA  GGT  GGG  CGC  GCC  TCT  GGC  GGT  GGC  GGA  TCG  GAT


+1   I    Q    M    T    Q    S    P    K    F    L    L    V    S    A    G
406 ATT  CAG  ATG  ACA  CAG  TCT  CCC  AAA  TTC  CTG  CTT  GTA  TCA  GCA  GGA
```

## FIG. 14-1

```
+1    D   R   V   T   I   T   C   K   A   S   Q   S   V   S   N
451  GAC AGG GTT ACC ATA ACC TGC AAG GCC AGT CAG AGT GTG AGT AAT

+1    D   V   A   W   Y   Q   Q   K   P   G   Q   S   P   K   L
496  GAT GTA GCT TGG TAC CAA CAG AAG CCG GGG CAG TCT CCT AAA CTA

+1    L   M   Y   Y   A   S   N   R   Y   T   G   V   P   D   R
541  CTG ATG TAC TAT GCA TCC AAT CGC TAC ACT GGA GTC CCT GAT CGC

+1    F   T   G   S   G   Y   G   T   D   F   T   F   T   I   S
586  TTC ACT GGC AGT GGA TAT GGG ACG GAT TTC ACT TTC ACC ATC AGC

+1    T   V   Q   A   E   D   L   A   V   Y   F   C   Q   Q   D
631  ACT GTG CAG GCT GAA GAC CTG GCA GTT TAT TTC TGT CAG CAG GAT

+1    Y   G   S   P   P   T   F   G   G   G   T   K   L   E   I
676  TAT GGC TCT CCT CCC ACG TTC GGA GGG GGC ACC AAG CTG GAA ATT

+1    K   R
721  AAA CGG
```

# FIG. 14-2

VH

| +1 | E | V | Q | L | V | E | S | G | G | G | L | V | K | P | G |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | GAA | GTG | CAG | CTG | GTG | GAG | TCT | GGG | GGA | GGC | CTA | GTG | AAG | CCT | GGA |

| +1 | G | S | L | K | L | S | C | A | A | S | G | F | T | F | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 46 | GGG | TCC | CTG | AAA | CTC | TCC | TGT | GCA | GCC | TCT | GGA | TTC | ACT | TTC | AGT |

| +1 | T | Y | T | M | S | W | V | R | Q | T | P | E | K | R | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 91 | ACC | TAT | ACC | ATG | TCT | TGG | GTT | CGC | CAG | ACT | CCG | GAG | AAG | AGG | CTG |

| +1 | E | W | V | A | T | I | S | S | G | G | S | Y | T | Y | Y |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 136 | GAG | TGG | GTC | GCA | ACC | ATT | AGT | AGT | GGT | GGT | AGT | TAC | ACC | TAC | TAT |

| +1 | P | D | S | V | R | G | R | F | T | I | S | R | D | N | A |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 181 | CCA | GAC | AGT | GTG | AGG | GGC | CGA | TTC | ACC | ATC | TCC | AGA | GAC | AAT | GCC |

| +1 | K | N | T | L | Y | L | Q | M | S | S | L | K | S | E | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 226 | AAG | AAC | ACC | CTG | TAC | CTG | CAA | ATG | AGC | AGT | CTG | AAG | TCT | GAG | GAC |

| +1 | T | A | M | Y | Y | C | T | R | **D** | **G** | **G** | **H** | **G** | **Y** | **G** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 271 | ACA | GCC | ATG | TAT | TAC | TGT | ACA | AGA | **GAT** | **GGG** | **GGA** | **CAC** | **GGG** | **TAC** | **GGT** |

| +1 | **S** | **S** | **F** | **D** | **Y** | W | G | Q | G | T | T | L | T | V | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 316 | **AGT** | **AGC** | **TTT** | **GAC** | **TAC** | TGG | GGC | CAA | GGC | ACC | ACT | CTC | ACA | GTC | TCC |

*linker*

| +1 | S | G | G | G | G | S | G | G | R | A | S | G | G | G | G |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 361 | TCA | GGT | GGA | GGC | GGT | TCA | GGT | GGG | CGC | GCC | TCT | GGC | GGT | GGC | GGA |

VL

| +1 | S | Q | I | V | L | T | Q | S | P | L | S | L | P | V | S |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 406 | TCG | CAA | ATT | GTG | CTC | ACC | CAG | TCT | CCA | CTC | TCC | CTG | CCT | GTC | AGT |

# FIG. 15-1

```
+1    L    G    D    Q    A    S    I    S    C    R    S    S    Q    S    I
451   CTT  GGA  GAT  CAA  GCC  TCC  ATC  TCT  TGC  AGA  TCT  AGT  CAG  AGC  ATT

+1    V    H    S    N    G    N    T    Y    L    E    W    Y    L    Q    K
496   GTA  CAT  AGT  AAT  GGA  AAC  ACC  TAT  TTA  GAA  TGG  TAC  CTG  CAG  AAA

+1    P    G    Q    S    P    K    L    L    I    Y    K    V    S.   N    R
541   CCA  GGC  CAG  TCT  CCA  AAG  CTC  CTG  ATC  TAC  AAA  GTT  TCC  AAC  CGA

+1    F    S    G    V    P    D    K    F    S    G    S    G    S    G    T
586   TTT  TCT  GGG  GTC  CCA  GAC  AAA  TTC  AGT  GGC  AGT  GGA  TCA  GGG  ACA

+1    D    F    T    L    K    I    S    R    V    E    A    E    D    L    G
631   GAT  TTC  ACA  CTC  AAG  ATC  AGC  AGA  GTG  GAG  GCT  GAG  GAT  CTG  GGA

+1    V    Y    Y    C    F    Q    G    S    H    V    P    W    T    F    G
676   GTT  TAT  TAC  TGC  TTT  CAA  GGT  TCA  CAT  GTT  CCG  TGG  ACG  TTC  GGT

+1    G    G    T    K    L    E    I    K    R
721   GGA  GGC  ACC  AAG  CTG  GAA  ATC  AAA  CGG
```

# FIG. 15-2

```
+1  E   V   Q   L   Q   E   S   G   G   G   L   V   K   P   G
1   GAG GTG CAG CTT CAG GAG TCA GGG GGA GGC TTA GTG AAG CCT GGA

+1  G   S   L   K   L   S   C   A   A   S   G   F   T   F   S
46  GGG TCC CTG AAA CTC TCC TGT GCA GCC TCT GGA TTC ACT TTC AGT

+1  S   Y   T   M   S   W   V   R   Q   T   P   E   K   R   L
91  AGC TAT ACC ATG TCT TGG GTT CGC CAG ACT CCG GAG AAG AGG CTG

+1  E   W   V   A   T   I   S   S   G   G   S   S   T   Y   Y
136 GAG TGG GTC GCA ACC ATT AGT AGT GGT GGT AGT TCC ACC TAC TAT

+1  P   D   S   V   K   G   R   F   T   I   S   R   D   N   A
181 CCA GAC AGT GTG AAG GGC CGA TTC ACC ATC TCC AGA GAC AAT GCC

+1  K   N   T   L   Y   L   Q   M   S   S   L   R   S   È   D
226 AAG AAC ACC CTG TAC CTG CAA ATG AGC AGT CTG AGG TCT GAG GAC

+1  T   A   M   Y   Y   C   T   R   E   G   G   G   F   T   V
271 ACA GCC ATG TAT TAC TGT ACA AGA GAG GGG GGT GGT TTC ACC GTC

+1  N   W   Y   F   D   V   W   G   A   G   T   L   V   T   V
316 AAC TGG TAC TTC GAT GTC TGG GGC GCA GGG ACT CTG GTC ACT GTC

              linker
+1  S   A   G   G   G   G   S   G   G   R   A   S   G   G   G
361 TCT GCA GGT GGA GGC GGT TCA GGT GGG CGC GCC TCT GGC GGT GGC

         VL
+1  G   S   E   N   V   L   T   Q   S   P   A   S   L   A   V
406 GGA TCG GAA AAT GTG CTC ACC CAG TCT CCA GCT TCT TTG GCT GTG
```

**FIG. 16-1**

```
+1   S   L   G   Q   R   A   T   I   S   C   R   A   S   E   S
451  TCT CTA GGG CAG AGG GCC ACC ATA TCC TGC AGA GCC AGT GAA AGT

+1   V   D   S   Y   G   Y   N   F   M   H   W   Y   Q   Q   I
496  GTT GAT AGT TAT GGC TAT AAT TTT ATG CAC TGG TAT CAG CAG ATA

+1   P   G   Q   P   P   K   L   L   I   Y   R   A   S   N   L
541  CCA GGA CAG CCA CCC AAA CTC CTC ATC TAT CGT GCA TCC AAC CTA

+1   E   S   G   I   P   A   R   F   S   G   S   G   S   R   T
586  GAG TCT GGG ATC CCT GCC AGG TTC AGT GGC AGT GGG TCT AGG ACA

+1   D   F   T   L   T   I   N   P   V   E   A   D   D   V   A
631  GAC TTC ACC CTC ACC ATT AAT CCT GTG GAG GCT GAT GAT GTT GCA

+1   T   Y   Y   C   Q   Q   S   N   E   D   P   L   T   F   G
676  ACC TAT TAC TGT CAG CAA AGT AAT GAG GAT CCG CTC ACG TTC GGT

+1   T   G   T   R   L   E   I   K   R
721  ACT GGG ACC AGA CTG GAA ATA AAA CGG
```

**FIG. 16-2**

```
          VH
+1
 1        E    V    Q    L    Q    Q    S    G    G    G    L    V    K    P    G    G    S    V    K    L
          GAG  GTG  CAG  CTT  CAG  CAG  TCA  GGG  GGA  GGC  TTA  GTG  AAG  CCT  GGA  GGG  TCC  GTT  AAA  CTC
          CTC  CAC  GTC  GAA  GTC  GTC  AGT  CCC  CCT  CCG  AAT  CAC  TTC  GGA  CCT  CCC  AGG  CAA  TTT  GAG

+1
 61       S    C    E    K    S    G    Y    T    F    T    S    Y    W    M    N    W    V    R    Q    T
          TCC  TGT  GAG  AAG  TCT  GGA  TAT  ACC  TTC  ACC  AGC  TAC  TGG  ATG  AAC  TGG  GTC  CGC  CAG  ACT
          AGG  ACA  CTC  TTC  AGA  CCT  ATA  TGG  AAG  TGG  TCG  ATG  ACC  TAC  TTG  ACC  CAG  GCG  GTC  TGA

+1
 121      P    P    D    S    V    D    S    G    E    S    L    Q    K    A    N    Y    T    L    Y    Y
          CCG  CCA  GAC  AGC  GTG  GAC  TCT  GGC  GAG  AGT  CTG  CAA  AAG  GCC  AAT  TAT  ACA  CTC  TAC  TAT
          GGC  GGT  CTG  TCG  CAC  CTG  AGA  CCG  CTC  TCA  GAC  GTT  TTC  CGG  TTA  ATA  TGT  GAG  ATG  ATA

+1
 181      P    P    D    S    A    K    N    A    D    R    T    A    N    K    T    L    A    T    L    Y
          CCA  CCA  GAC  TCA  GCC  AAG  AAT  GCC  GAC  TCT  ACA  GCC  AAC  AAG  ACT  CTA  GCC  ACC  CTG  TAC
          GGT  GGT  CTG  AGT  CGG  TTC  TTA  CGG  CTG  AGA  TGT  CGG  TTG  TTC  TGA  GAT  CGG  TGG  GAC  ATG

+1
 241      L    Q    L    S    K    E    D    T    A    M    Y    H    C    T    T    R    L    T    R    G
          CTG  CAA  CTG  TCT  AAG  GAG  GAC  ACA  GCC  ATG  TAT  CAC  TGT  ACA  ACT  AGA  CTC  ACA  AGA  GGG
          GAC  GTT  GAC  AGA  TTC  CTC  CTG  TGT  CGG  TAC  ATA  GTG  ACA  TGT  TGA  TCT  GAG  TGT  TCT  CCC

+1
 301      G    G    S    E    G    S    Y    D    Y    F    D    N    W    G    G    G    T    T    L    V
          GGT  GGT  TAT  AAC  GGT  TCA  TAC  GAT  TTC  TTC  GAT  TGG  GGC  GGA  GGC  ACC  ACT  CTC  ACA  GTC
          CCA  CCA  ATA  TTG  CCA  AGT  ATG  CTA  AAG  AAG  CTA  ACC  CCG  CCT  CCG  TGG  TGA  GAG  TGT  CAG

          linker                                                              VL
+1
 361      S    S    G    G    S    P    A    S    L    S    A    V    R    G    G    S    D    T    D    I    E
          TCC  TCA  GGT  GGC  GGT  CCA  GCT  TCT  CTA  TCT  GCC  GTG  CGC  GGA  GGC  TCG  GAC  TCG  GGA  TCA  GAG
          AGG  AGT  CCA  CCG  CCA  GGT  CGA  AGA  GAT  AGA  CGG  CAC  GCG  CCT  CCG  AGC  CTG  AGC  CCT  AGT  CTC

+1
 421      L    T    Q    S    P    A    S    L    A    V    S    L    G    Q    R    A    T    I    S    C
          CTC  ACN  CAG  CCA  GCT  CCA  TCT  TTG  GCT  GTG  TCT  CTA  GGG  CAG  AGG  GCC  ACC  ATA  TCC  TGC
          GAG  TGN  GTC  GGT  CGA  GGT  AGA  AAC  CGA  CAC  AGA  GAT  CCC  GTC  TCC  CGG  TGG  TAT  AGG  ACG
```

FIG. 17-1

```
+1        R   A   S   E   S   V   D   S   Y   G   K   S   F   M   H   W   Y   Q   Q   K
481      AGA GCC AGT GAA AGT GTT GAT AGT TAT GGC AAG AGT TTT ATG CAC TGG TAC CAG CAG AAA
         TCT CGG TCA CTT TCA CAA CTA TCA ATA CCG TTC TCA AAA TAC GTG ACC ATG GTC TTT

+1        P   G   Q   P   P   K   L   L   I   Y   R   A   S   N   L   E   S   G   I   P
541      CCA GGG CAG CCA CCC AAA CTC CTC ATC TAT CGT GCA TCC AAC CTA GAA TCT GGG ATC CCT
         GGT CCC GTC GGT GGG TTT GAG GAG TAG ATA GCA CGT AGG TTG GAT CTT AGA CCC TAG GGA

+1        A   R   F   S   G   S   R   T   D   F   T   L   T   I   N   P   V   E
601      GCC AGG TTC AGT GGC TCT AGG ACA GAC TTC ACC CTC ACC ATT AAT CCT GTG GAG
         CGG TCC AAG TCA CCG AGA TCC TGT CTG AAG TGG GAG TGG TAA TTA GGA CAC CTC

+1        A   D   V   A   T   Y   C   Q   Q   S   N   E   D   P   L   T   F   G
661      GCT GAT GTT GCN ACC TAT TGT CAG CAA AGT AAT GAG GAT CCC CTC ACG TTC GGT
         CGA CTA CAA CGN TGG ATA ACA GTC GTT TCA TTA CTC CTA GGG GAG TGC AAG CCA

+1        A   G   T   L   E   I   K   R
721      GCT GGG ACC CTG GAA ATA AAA CGG
         CGA CCC TGG GAC CTT TAT TTT GCC
```

**FIG. 17-2**



FIG. 18



**FIG. 19**



FIG. 20



**FIG. 21**



FIG. 22



# FIG. 23



FIG. 24A



**FIG. 24B**



FIG. 25

```
        PelB-Leader
     +1  M   K   Y   L   L   P   T   A   A   A   G   L   L   L
      1  ATG AAA TAC CTA TTG CCT ACG GCA GCC GCT GGA TTG TTA TTA
         TAC TTT ATG GAT AAC GGA TGC CGT CGG CGA CCT AAC AAT AAT

                                                VH
     +1  L   A   A   Q   P   A   M   A  |E   V   K   L   V   E
     43  CTC GCG GCC CAG CCG GCC ATG GCG|GAG GTG AAG CTG GTG GAG
         GAG CGC CGG GTC GGC CGG TAC CGC|CTC CAC TTC GAC CAC CTC

     +1  S   G   G   G   L   V   K   P   G   G   S   L   K   L
     85  TCT GGG GGA GGC TTA GTG AAG CCT GGA GGG TCC CTG AAA CTC
         AGA CCC CCT CCG AAT CAC TTC GGA CCT CCC AGG GAC TTT GAG

     +1  S   C   A   A   S   G   F   T   F   S   S   Y   T   M
    127  TCC TGT GCA GCC TCT GGA TTC ACT TTC AGT AGC TAT ACC ATG
         AGG ACA CGT CGG AGA CCT AAG TGA AAG TCA TCG ATA TGG TAC

     +1  S   W   V   R   Q   T   P   E   K   R   L   E   W   V
    169  TCT TGG GTT CGC CAG ACT CCG GAG AAG AGG CTG GAG TGG GTC
         AGA ACC CAA GCG GTC TGA GGC CTC TTC TCC GAC CTC ACC CAG

     +1  A   T   I   S   S   G   G   S   S   T   Y   Y   P   D
    211  GCA ACC ATT AGT AGT GGN GGT AGT TCC ACC TAC TAT CCA GAC
         CGT TGG TAA TCA TCA CCN CCA TCA AGG TGG ATG ATA GGT CTG

     +1  S   V   K   G   R   F   T   I   S   R   D   N   A   K
    253  AGT GTG AAG GGC CGA TTC ACC ATC TCC AGA GAC AAT GCC AAG
         TCA CAC TTC CCG GCT AAG TGG TAG AGG TCT CTG TTA CGG TTC

     +1  N   T   L   Y   L   Q   M   S   S   L   R   S   E   D
    295  AAC ACC CTG TAC CTG CAA ATG AGC AGT CTG AGG TCT GAG GAC
         TTG TGG GAC ATG GAC GTT TAC TCG TCA GAC TCC AGA CTC CTG

     +1  T   A   M   Y   Y   C   T   R   E   G   G   G   F   T
    337  ACA GCC ATG TAT TAC TGT ACA AGA GAG GGG GGT GGT TTC ACC
         TGT CGG TAC ATA ATG ACA TGT TCT CTC CCC CCA CCA AAG TGG

     +1  V   N   W   Y   F   D   V   W   G   A   G   T   S   V
    379  GTC AAC TGG TAC TTC GAT GTC TGG GGC GCA GGA ACC TCA GTC
         CAG TTG ACC ATG AAG CTA CAG ACC CCG CGT CCT TGG AGT CAG

                                 linker
     +1  T   V   S   S  |G   G   G   G   S   G   G   R   A   S
    421  ACC GTC TCC TCA|GGT GGA GGC GGT TCA GGT GGG CGC GCC TCT
         TGG CAG AGG AGT|CCA CCT CCG CCA AGT CCA CCC GCG CGG AGA
```

**FIG. 26-1**

```
                                      VL
     +1  G   G   G   G   S  D   I   V   L   T   Q   S   P   A
     463 GGC GGT GGC GGA TCG GAC ATT GTG CTG ACA CAG TCT CCA GCT
         CCG CCA CCG CCT AGC CTG TAA CAC GAC TGT GTC AGA GGT CGA

     +1  S   L   A   V   S   L   G   Q   R   A   T   I   S   C
     505 TCT TTG GCT GTG TCT CTA GGG CAG AGG GCC ACC ATA TCC TGC
         AGA AAC CGA CAC AGA GAT CCC GTC TCC CGG TGG TAT AGG ACG

     +1  R   A   S   E   S   V   D   S   Y   G   Y   N   F   M
     547 AGA GCC AGT GAA AGT GTT GAT AGT TAT GGC TAT AAT TTT ATG
         TCT CGG TCA CTT TCA CAA CTA TCA ATA CCG ATA TTA AAA TAC

     +1  H   W   Y   Q   Q   I   P   G   Q   P   P   K   L   L
     589 CAC TGG TAT CAG CAG ATA CCA GGA CAG CCA CCC AAA CTC CTC
         GTG ACC ATA GTC GTC TAT GGT CCT GTC GGT GGG TTT GAG GAG

     +1  I   Y   R   A   S   N   L   E   S   G   I   P   A   R
     631 ATC TAT CGT GCA TCC AAC CTA GAG TCT GGG ATC CCT GCC AGG
         TAG ATA GCA CGT AGG TTG GAT CTC AGA CCC TAG GGA CGG TCC

     +1  F   S   G   S   G   S   R   T   D   F   T   L   T   I
     673 TTC AGT GGC AGT GGG TCT AGG ACA GAC TTC ACC CTC ACC ATT
         AAG TCA CCG TCA CCC AGA TCC TGT CTG AAG TGG GAG TGG TAA

     +1  N   P   V   E   A   D   D   V   A   T   Y   Y   C   Q
     715 AAT CCT GTG GAG GCT GAT GAT GTT GCA ACC TAT TAC TGT CAG
         TTA GGA CAC CTC CGA CTA CTA CAA CGT TGG ATA ATG ACA GTC

     +1  Q   S   N   E   D   P   L   T   F   G   T   G   T   R
     757 CAA AGT AAT GAG GAT CCG CTC ACG TTC GGT ACT GGG ACC AGA
         GTT TCA TTA CTC CTA GGC GAG TGC AAG CCA TGA CTG TGG TCT
                              Spacer     Alkaline phosphatase
     +1  L   E   I   K   R  A   A   A   A  R   A   P   E   M
     799 CTG GAA ATA AAA CGG GCG GCC GCA GCC CGG GCA CCA GAA ATG
         GAC CTT TAT TTT GCC CGC CGG CGT CGG GCC CGT GGT CTT TAC
                                       -
     +1  P   V   L   E   N   R   A   A   Q   G   D   I   T   A
     841 CCT GTT CTG GAA AAC CGG GCT GCT CAG GGC GAT ATT ACT GCA
         GGA CAA GAC CTT TTG GCC CGA CGA GTC CCG CTA TAA TGA CGT

     +1  P   G   G   A   R   R   L   T   G   D   Q   T   A   A
     883 CCC GGC GGT GCT CGC CGT TTA ACG GGT GAT CAG ACT GCC GCT
         GGG CCG CCA CGA GCG GCA AAT TGC CCA CTA GTC TGA CGG CGA

     +1  L   R   D   S   L   S   D   K   P   A   K   N   I   I
     925 CTG CGT GAT TCT CTT AGC GAT AAA CCT GCA AAA AAT ATT ATT
         GAC GCA CTA AGA GAA TCG CTA TTT GGA CGT TTT TTA TAA TAA
```

## FIG. 26-2

```
     +1  L    L    I    G    D    G    M    G    D    S    E    I    T    A
     463 TTG  CTG  ATT  GGC  GAT  GGG  ATG  GGG  GAC  TCG  GAA  ATT  ACT  GCC
         AAC  GAC  TAA  CCG  CTA  CCC  TAC  CCC  CTG  AGC  CTT  TAA  TGA  CGG

     +1  A    R    N    Y    A    E    G    A    G    G    F    F    K    G
     505 GCA  CGT  AAT  TAT  GCC  GAA  GGT  GCG  GGC  GGC  TTT  TTT  AAA  GGT
         CGT  GCA  TTA  ATA  CGG  CTT  CCA  CGC  CCG  CCG  AAA  AAA  TTT  CCA

     +1  I    D    A    L    P    L    T    G    Q    Y    T    H    Y    A
     1051 ATA GAT  GCC  TTA  CCG  CTT  ACG  GGG  CAA  TAC  ACT  CAC  TAT  GCG
          TAT CTA  CGG  AAT  GGC  GAA  TGC  CCC  GTT  ATG  TGA  GTG  ATA  CGC

     +1  L    N    K    K    T    G    K    P    D    Y    V    T    D    S
     1093 CTG AAT  AAA  AAA  ACC  GGC  AAA  CCG  GAC  TAC  GTC  ACC  GAC  TCG
          GAC TTA  TTT  TTT  TGG  CCG  TTT  GGC  CTG  ATG  CAG  TGG  CTG  AGC

     +1  A    A    S    A    T    A    W    S    T    G    V    K    T    Y
     1135 GCT GCA  TCA  GCA  ACC  GCC  TGG  TCA  ACC  GGT  GTC  AAA  ACC  TAT
          CGA CGT  AGT  CGT  TGG  CGG  ACC  AGT  TGG  CCA  CAG  TTT  TGG  ATA

     +1  N    G    A    L    G    V    D    I    H    E    K    D    H    P
     1177 AAC GGC  GCG  CTG  GGC  GTC  GAT  ATT  CAC  GAA  AAA  GAT  CAC  CCA
          TTG CCG  CGC  GAC  CCG  CAG  CTA  TAA  GTG  CTT  TTT  CTA  GTG  GGT

     +1  T    I    L    E    M    A    K    A    A    G    L    A    T    G
     1219 ACG ATT  CTG  GAA  ATG  GCA  AAA  GCC  GCA  GGT  CTG  GCG  ACC  GGT
          TGC TAA  GAC  CTT  TAC  CGT  TTT  CGG  CGT  CCA  GAC  CGC  TGG  CCA

     +1  N    V    S    T    A    E    L    Q    D    A    T    P    A    A
     1261 AAC GTT  TCT  ACC  GCA  GAG  TTG  CAG  GAT  GCC  ACG  CCC  GCT  GCG
          TTG CAA  AGA  TGG  CGT  CTC  AAC  GTC  CTA  CGG  TGC  GGG  CGA  CGC

     +1  L    V    A    H    V    T    S    R    K    C    Y    G    P    S
     1303 CTG GTG  GCA  CAT  GTG  ACC  TCG  CGC  AAA  TGC  TAC  GGT  CCG  AGC
          GAC CAC  CGT  GTA  CAC  TGG  AGC  GCG  TTT  ACG  ATG  CCA  GGC  TCG

     +1  A    T    S    E    K    C    P    G    N    A    L    E    K    G
     1345 GCG ACC  AGT  GAA  AAA  TGT  CCG  GGT  AAC  GCT  CTG  GAA  AAA  GGC
          CGC TGG  TCA  CTT  TTT  ACA  GGC  CCA  TTG  CGA  GAC  CTT  TTT  CCG

     +1  G    K    G    S    I    T    E    Q    L    L    N    A    R    A
     1387 GGA AAA  GGA  TCG  ATT  ACC  GAA  CAG  CTG  CTT  AAC  GCT  CGT  GCC
          CCT TTT  CCT  AGC  TAA  TGG  CTT  GTC  GAC  GAA  TTG  CGA  GCA  CGG

     +1  D    V    T    L    G    G    A    K    T    F    A    E    T
     1429 GAC GTT  ACG  CTT  GGC  GGC  GGC  GCA  AAA  ACC  TTT  GCT  GAA  ACG
          CTG CAA  TGC  GAA  CCG  CCG  CCG  CGT  TTT  TGG  AAA  CGA  CTT  TGC
```

## FIG. 26-3

```
     +1  A   T   A   G   E   W   Q   G   K   T   L   R   E   Q
   1471 GCA ACC GCT GGT GAA TGG CAG GGA AAA ACG CTG CGT GAA CAG
        CGT TGG CGA CCA CTT ACC GTC CCT TTT TGC GAC GCA CTT GTC

     +1  A   Q   A   R   G   Y   Q   L   V   S   D   A   A   S
   1513 GCA CAG GCG CGT GGT TAT CAG TTG GTG AGC GAT GCT GCC TCA
        CGT GTC CGC GCA CCA ATA GTC AAC CAC TCG CTA CGA CGG AGT

     +1  L   N   S   V   T   E   A   N   Q   Q   K   P   L   L
   1555 CTG AAT TCG GTG ACG GAA GCG AAT CAG CAA AAA CCC CTG CTT
        GAC TTA AGC CAC TGC CTT CGC TTA GTC GTT TTT GGG GAC GAA

     +1  G   L   F   A   D   G   N   M   P   V   R   W   L   G
   1177 GGC CTG TTT GCT GAC GGC AAT ATG CCA GTG CGC TGG CTA GGA
        CCG GAC AAA CGA CTG CCG TTA TAC GGT CAC GCG ACC GAT CCT

     +1  P   K   A   T   Y   H   G   N   I   D   K   P   A   V
   1639 CCG AAA GCA ACG TAC CAT GGC AAT ATC GAT AAG CCC GCA GTC
        GGC TTT CGT TGC ATG GTA CCG TTA TAG CTA TTC GGG CGT CAG

     +1  T   C   T   P   N   P   Q   R   N   D   S   V   P   T
   1681 ACC TGT ACG CCA AAT CCG CAA CGT AAT GAC AGT GTA CCA ACC
        TGG ACA TGC GGT TTA GGC GTT GCA TTA CTG TCA CAT GGT TGG

     +1  L   A   Q   M   T   D   K   A   I   E   L   L   S   K
   1723 CTG GCG CAG ATG ACC GAC AAA GCC ATT GAA TTG TTG AGT AAA
        GAC CGC GTC TAC TGG CTG TTT CGG TAA CTT AAC AAC TCA TTT

     +1  N   E   K   G   F   F   L   Q   V   E   G   A   S   I
   1765 AAT GAG AAA GGC TTT TTC CTG CAA GTT GAA GGT GCG TCA ATC
        TTA CTC TTT CCG AAA AAG GAC GTT CAA CTT CCA CGC AGT TAG

     +1  D   K   Q   D   H   A   A   N   P   C   G   Q   I   G
   1807 GAT AAA CAG GAT CAT GCT GCG AAT CCT TGT GGG CAA ATT GGC
        CTA TTT GTC CTA GTA CGA CGC TTA GGA ACA CCC GTT TAA CCG

     +1  E   T   V   D   L   D   E   A   V   Q   R   A   L   E
   1849 GAG ACG GTC GAT CTC GAT GAA GCC GTA CAA CGG GCG CTG GAA
        CTC TGC CAG CTA GAG CTA CTT CGG CAT GTT GCC CGC GAC CTT

     +1  F   A   K   K   E   G   N   T   L   V   I   V   T   A
   1891 TTC GCT AAA AAG GAG GGT AAC ACG CTG GTC ATA GTC ACC GCT
        AAG CGA TTT TTC CTC CCA TTG TGC GAC CAG TAT CAG TGG CGA

     +1  D   H   A   H   A   S   Q   I   V   A   P   D   T   K
   1933 GAT CAC GCC CAC GCC AGC CAG ATT GTT GCG CCG GAT ACC AAA
        CTA GTG CGG GTG CGG TCG GTC TAA CAA CGC GGC CTA TGG TTT

     +1  A   P   G   L   T   Q   A   L   N   T   K   D   G   A
   1975 GCT CCG GGC CTC ACC CAG GCG CTA AAT ACC AAA GAT GGC GCA
        CGA GGC CCG GAG TGG GTC CGC GAT TTA TGG TTT CTA CCG CGT
```

**FIG. 26-4**

```
     +1   V   M   V   M   S   Y   G   N   S   E   E   D   S   Q
   2017  GTG ATG GTG ATG AGT·TAC GGG AAC TCC GAA GAG GAT TCA CAA
         CAC TAC CAC TAC TCA ATG CCC TTG AGG CTT CTC CTA AGT GTT


     +1   E   H   T   G   S   Q   L   R   I   A   A   Y   G   P
   2059  GAA CAT ACC GGC AGT CAG TTG CGT ATT GCG GCG TAT GGC CCG
         CTT GTA TGG CCG TCA GTC AAC GCA TAA CGC CGC ATA CCG GGC


     +1   H   A   A   N   V   V   G   L   T   D   Q   T   D   L
   2101  CAT GCC GCC AAT GTT GTT GGA CTG ACC GAC CAG ACC GAT CTC
         GTA CGG CGG TTA CAA CAA CCT GAC TGG CTG GTC TGG CTA GAG

                                                 |His tag
     +1   F   Y   T   M   K   A   A   L   G   D   I |A   H   H
   2143  TTC TAC ACC ATG AAA GCC GCT CTG GGG GAT ATC|GCA CAC CAT
         AAG ATG TGG TAC TTT CGG CGA GAC CCC CTA TAG|CGT GTG GTA


     +1   H   H   H   H   *
   2185  CAC CAT CAC CAT TAA
         GTG GTA GTG GTA ATT
```

# FIG. 26-5



FIG. 27

```
     PelB-Leader
+1   M   K   Y   L   L   P   T   A   A   A   G   L   L   L   L
1    ATG AAA TAC CTA TTG CCT ACG GCA GCC GCT GGA TTG TTA TTA CTC
     TAC TTT ATG GAT AAC GGA TGC CGT CGG CGA CCT AAC AAT AAT GAG


+1   A   A   Q   P   A   M   A   E   V   K   L   V   E   S   G
46   GCG GCC CAG CCG GCC ATG GCG GAG GTG AAG CTG GTG GAG TCT GGG
     CGC CGG GTC GGC CGG TAC CGC CTC CAC TTC GAC CAC CTC AGA CCC


+1   G   G   L   V   K   P   G   G   S   L   K   L   S   C   A
91   GGA GGC TTA GTG AAG CCT GGA GGG TCC CTG AAA CTC TCC TGT GCA
     CCT CCG AAT CAC TTC GGA CCT CCC AGG GAC TTT GAG AGG ACA CGT


+1   A   S   G   F   T   F   S   S   Y   T   M   S   W   V   R
136  GCC TCT GGA TTC ACT TTC AGT TCA TCG ATA ACC ATG TCT TGG GTT CGC
     CGG AGA CCT AAG TGA AAG TCA TCG ATA TGG TAC AGA ACC CAA GCG


+1   Q   T   P   E   K   R   L   E   W   V   A   T   I   S   S
181  CAG ACT CCG GAG AAG AGG CTG GAG TGG GTC GCA ACC ATT AGT AGT
     GTC TGA GGC CTC TTC TCC GAC CTC ACC CAG CGT TGG TAA TCA TCA


+1   G   G   S   S   T   Y   Y   P   D   S   V   K   G   R   F
226  GGN GGT AGT TCC ACC TAC TAT CCA GAC AGT GTG AAG GGC CGA TTC
     CCN CCA TCA AGG TGG ATG ATA GGT CTG TCA CAC TTC CCG GCT AAG


+1   T   I   S   R   D   N   A   K   N   T   L   Y   L   Q   M
271  ACC ATC TCC AGA GAC AAT GCC AAG AAC ACC CTG TAC CTG CAA ATG
     TGG TAG AGG TCT CTG TTA CGG TTC TTG TGG GAC ATG GAC GTT TAC


+1   S   S   L   R   S   E   D   T   A   M   Y   Y   C   T   R
316  AGC AGT CTG AGG TCT GAG GAC ACA GCC ATG TAT TAC TGT ACA AGA
     TCG TCA GAC TCC AGA CTC CTG TGT CGG TAC ATA ATG ACA TGT TCT


+1   E   G   G   G   F   T   V   N   W   Y   F   D   V   W   G
361  GAG GGG GGT GGT TTC ACC GTC AAC TGG TAC TTC GAT GTC TGG GGC
     CTC CCC CCA CCA AAG TGG CAG TTG ACC ATG AAG CTA CAG ACC CCG


                                         Linker
+1   A   G   T   S   V   T   V   S   S   G   G   G   G   S   G
406  GCA GGA ACC TCA GTC ACC GTC TCC TCA GGT GGA GGC GGT TCA GGT
     CGT CCT TGG AGT CAG TGG CAG AGG AGT CCA CCT CCG CCA AGT CCA


                                     VL
+1   G   R   A   S   G   G   G   G   S   D   I   V   L   T   Q
451  GGG CGC GCC TCT GGC GGT GGC GGA TCG GAC ATT GTG CTG ACA CAG
     CCC GCG CGG AGA CCG CCA CCG CCT AGC CTG TAA CAC GAC TGT GTC
```

**FIG. 28-1**

```
    +1  X   P   A   S   L   A   V   S   L   G   Q   R   A   T   I
   496  TNT CCA GCT TCT TTG GCT GTG TCT CTA GGG CAG AGG GCC ACC ATA
        ANA GGT CGA AGA AAC CGA CAC AGA GAT CCC GTC TCC CGG TGG TAT

    +1  S   C   R   A   S   E   S   V   D   S   Y   G   Y   N   F
   541  TCN TGC AGA GCC AGT GAA AGT GTT GAT AGT TAT GGC TAT AAT TTT
        AGN ACG TCT CGG TCA CTT TCA CAA CTA TCA ATA CCG ATA TTA AAA

    +1  M   H   W   Y   Q   Q   I   P   G   Q   P   P   K   L   L
   586  ATG CAC TGG TAT CAG CAG ATA CCA GGA CAG CCA CCC AAA CTC CTC
        TAC GTG ACC ATA GTC GTC TAT GGT CCT GTC GGT GGG TTT GAG GAG

    +1  I   Y   R   A   S   N   L   E   S   G   I   P   A   R   F
   631  ATC TAT CGT GCA TCC AAC CTA GAG TCT GGG ATC CCT GCC AGG TTC
        TAG ATA GCA CGT AGG TTG GAT CTC AGA CCC TAG GGA CGG TCC AAG

    +1  S   G   S   G   S   R   T   D   F   T   L   T   I   N   P
   676  AGT GGC AGT GGG TCT AGG ACA GAC TTC ACC CTC ACC ATT AAT CCT
        TCA CCG TCA CCC AGA TCC TGT CTG AAG TGG GAG TGG TAA TTA GGA

    +1  V   E   A   D   D   V   A   T   Y   Y   C   Q   Q   S   N
   721  GTG GAG GCT GAT GAT GTT GCA ACC TAT TAC TGT CAG CAA AGT AAT
        CAC CTC CGA CTA CTA CAA CGT TGG ATA ATG ACA GTC GTT TCA TTA

    +1  E   D   P   L   T   F   G   T   G   T   R   L   E   I   K
   766  GAG GAT CCG CTC ACG TTC GGT ACT GGG ACC AGA CTG GAA ATA AAA
        CTC CTA GGC GAG TGC AAG CCA TGA CCC TGG TCT GAC CTT TAT TTT

            Spacer       Hinge                                Helix

    +1  R   A   A   A   P   K   P   S   T   P   P   G   S   S   R
   811  CGG GCG GCC GCA CCG AAG CCT TCC ACT CCG CCC GGG TCT TCC CGT
        GCC CGC CGG CGT GGC TTC GGA AGG TGA GGC GGG CCC AGA AGG GCA

    +1  M   K   Q   L   E   D   K   V   E   E   L   L   S   K   N
   856  ATG AAA CAG CTG GAA GAC AAA GTA GAG GAG CTC CTT AGC AAG AAC
        TAC TTT GTC GAC CTT CTG TTT CAT CTC CTC GAG GAA TCG TTC TTG

    +1  Y   H   L   E   N   E   V   A   R   L   K   K   L   V   G
   901  TAC CAT CTA GAA AAC GAG GTA GCT CGT CTG AAA AAG CTT GTT GGT
        ATG GTA GAT CTT TTG CTC CAT CGA GCA GAC TTT TTC GAA CAA CCA

            Spacer       His-tag
    +1  E   R   G   G   H   H   H   H   H   H   *
   946  GAA CGT GGT GGT CAC CAT CAC CAT CAC CAT TAA
        CTT GCA CCA CCA GTG GTA GTG GTA GTG GTA ATT
```

**FIG. 28-2**

```
     PelB-Leader
 +1  M   K   Y   L   L   P   T   A   A   A   G   L   L   L
 1   ATG AAA TAC CTA TTG CCT ACG GCA GCC GCT GGA TTG TTA TTA
     TAC TTT ATG GAT AAC GGA TGC CGT CGG CGA CCT AAC AAT AAT

                                         VH
 +1  L   A   A   Q   P   A   M   A │ E   V   Q   L   Q   Q
 43  CTC GCG GCC CAG CCG GCC ATG GCC│GAG GTT CAG CTT CAG CAG
     GAG CGC CGG GTC GGC CGG TAC CGG│CTC CAA GTC GAA GTC GTC

 +1  S   G   P   E   L   V   K   P   G   A   S   V   K   I
 85  TCT GGA CCT GAG CTG GTG AAG CCC GGG GCC TCA GTG AAG ATT
     AGA CCT GGA CTC GAC CAC TTC GGG CCC CGG AGT CAC TTC TAA

 +1  S   C   K   A   S   G   Y   A   F   S   S   S   W   M
 127 TCC TGC AAA GCT TCT GGC TAC GCA TTC AGT AGC TCT TGG ATG
     AGG ACG TTT CGA AGA CCG ATG CGT AAG TCA TCG AGA ACC TAC

 +1  N   W   V   K   Q   R   P   G   Q   G   L   E   W   I
 169 AAC TGG GTG AAG CAG AGG CCT GGA CAG GGT CTT GAG TGG ATT
     TTG ACC CAC TTC GTC TCC GGA CCT GTC CCA GAA CTC ACC TAA

 +1  G   R   I   Y   P   G   N   G   D   T   N   Y   N   G
 211 GGA CGG ATT TAT CCT GGA AAT GGA GAT ACT AAC TAC AAT GGG
     CCT GCC TAA ATA GGA CCT TTA CCT CTA TGA TTG ATG TTA CCC

 +1  K   F   K   G   K   A   T   L   T   A   D   K   S   S
 253 AAG TTC AAG GGC AAG GCC ACA CTG ACT GCA GAC AAA TCC TCC
     TTC AAG TTC CCG TTC CGG TGT GAC TGA CGT CTG TTT AGG AGG

 +1  S   T   A   Y   M   Q   L   S   S   L   T   S   V   D
 295 AGC ACA GCC TAC ATG CAG CTC AGC AGC CTG ACC TCT GTG GAC
     TCG TGT CGG ATG TAC GTC GAG TCG TCG GAC TGG AGA CAC CTG

 +1  S   A   V   Y   F   C   A   D   G   N   V   Y   Y   Y
 337 TCT GCG GTC TAT TTC TGT GCA GAT GGT AAC GTA TAT TAC TAT
     AGA CGC CAG ATA AAG ACA CGT CTA CCA TTG CAT ATA ATG ATA

 +1  A   M   D   Y   W   G   Q   G   T   S   V   T   V   S
 379 GCT ATG GAC TAC TGG GGT CAA GGA ACC TCA GTC ACC GTC TCC
     CGA TAC CTG ATG ACC CCA GTT CCT TGG AGT CAG TGG CAG AGG

         Linker
 +1  S │ G   G   G   G   S   G   G   R   A   S   G   G   G
 421 TCA│GGT GGA GGC GGT TCA GGT GGG CGC GCC TCT GGC GGT GGC
     AGT│CCA CCT CCG CCA AGT CCA CCC GCG CGG AGA CCG CCA CCG

             VL
 +1  G   S │ Q   I   V   L   T   Q   S   P   A   S   L   A
 463 GGA TCG│CAA ATT GTT CTC ACC CAG TCT CCT GCT TCC TTA GCT
     CCT AGC│GTT TAA CAA GAG TGG GTC AGA GGA CGA AGG AAT CGA
```

## FIG. 29-1

```
    +1  V   S   L   G   Q   R   A   T   I   S   C   R   A   S
   505  GTA TCT CTG GGG CAG AGG GCC ACC ATC TCA TGC AGG GCC AGC
        CAT AGA GAC CCC GTC TCC CGG TGG TAG AGT ACG TCC CGG TCG

    +1  K   S   V   S   T   S   G   Y   S   Y   M   H   W   Y
   547  AAA AGT GTC AGT ACA TCT GGC TAT AGT TAT ATG CAC TGG TAC
        TTT TCA CAG TCA TGT AGA CCG ATA TCA ATA TAC GTG ACC ATG

    +1  Q   Q   K   P   G   Q   P   P   K   L   L   I   Y   L
   589  CAA CAG AAA CCA GGA CAG CCA CCC AAA CTC CTC ATC TAT CTT
        GTT GTC TTT GGT CCT GTC GGT GGG TTT GAG GAG TAG ATA GAA

    +1  A   S   N   L   E   S   G   V   P   A   R   F   S   G
   631  GCA TCC AAC CTA GAA TCT GGG GTC CCT GCC AGG TTC AGT GGC
        CGT AGG TTG GAT CTT AGA CCC CAG GGA CGG TCC AAG TCA CCG

    +1  S   G   S   G   T   D   F   T   L   N   I   H   P   V
   679  AGT GGG TCT GGG ACA GAC TTC ACC CTC AAC ATC CAT CCT GTG
        TCA CCC AGA CCC TGT CTG AAG TGG GAG TTG TAG GTA GGA CAC

    +1  E   E   E   D   A   A   T   Y   Y   C   Q   H   S   R
   715  GAG GAG GAG GAT GCT GCA ACC TAT TAC TGT CAG CAC AGT AGG
        CTC CTC CTC CTA CGA CGT TGG ATA ATG ACA GTC GTG TCA TCC

    +1  E   L   P   R   T   F   G   G   G   T   K   L   E   I
   757  GAG CTT CCT CGG ACG TTC GGT GGA GGC ACC AAG CTG GAA ATC
        CTC GAA GGA GCC TGC AAG CCA CCT CCG TGG TTC GAC CTT TAG

              |  Spacer          |  Alkaline phosphatase
    +1  K   R | A   A   A   A | R   A   P   E   M   P   V   L
   799  AAA CGG|GCG GCC GCA GCC|CGG GCA CCA GAA ATG CCT GTT CTG
        TTT GCC|CGC CGG CGT CGG|GCC CGT GGT CTT TAC GGA CAA GAC

    +1  E   N   R   A   A   Q   G   D   I   T   A   P   G   G
   841  GAA AAC CGG GCT GCT CAG GGC GAT ATT ACT GCA CCC GGC GGT
        CTT TTG GCC CGA CGA GTC CCG CTA TAA TGA CGT GGG CCG CCA

    +1  A   R   R   L   T   G   D   Q   T   A   A   L   R   D
   883  GCT CGC CGT TTA ACG GGT GAT CAG ACT GCC GCT CTG CGT GAT
        CGA GCG GCA AAT TGC CCA CTA GTC TGA CGG CGA GAC GCA CTA

    +1  S   L   S   D   K   P   A   K   N   I   I   L   L   I
   925  TCT CTT AGC GAT AAA CCT GCA AAA AAT ATT ATT TTG CTG ATT
        AGA GAA TCG CTA TTT GGA CGT TTT TTA TAA TAA AAC GAC TAA

    +1  G   D   G   M   G   D   S   E   I   T   A   A   R   N
   967  GGC GAT GGG ATG GGG GAC TCG GAA ATT ACT GCC GCA CGT AAT
        CCG CTA CCC TAC CCC CTG AGC CTT TAA TGA CGG CGT GCA TTA
```

**FIG. 29-2**

```
      +1  Y   A   E   G   A   G   G   F   F   K   G   I   D   A
    1009 TAT GCC GAA GGT GCG GGC GGC TTT TTT AAA GGT ATA GAT GCC
         ATA CGG CTT CCA CGC CCG CCG AAA AAA TTT CCA TAT CTA CGG

      +1  L   P   L   T   G   Q   Y   T   H   Y   A   L   N   K
    1051 TTA CCG CTT ACC GGG CAA TAC ACT CAC TAT GCG CTG AAT AAA
         AAT GGC GAA TGG CCC GTT ATG TGA GTG ATA CGC GAC TTA TTT

      +1  K   T   G   K   P   D   Y   V   T   D   S   A   A   S
    1093 AAA ACC GGC AAA CCG GAC TAC GTC ACC GAC TCG GCT GCA TCA
         TTT TGG CCG TTT GGC CTG ATG CAG TGG CTG AGC CGA CGT AGT

      +1  A   T   A   W   S   T   G   V   K   T   Y   N   G   A
    1135 GCA ACC GCC TGG TCA ACC GGT GTC AAA ACC TAT AAC GGC GCG
         CGT TGG CGG ACC AGT TGG CCA CAG TTT TGG ATA TTG CCG CGC

      +1  L   G   V   D   I   H   E   K   D   H   P   T   I   L
    1177 CTG GGC GTC GAT ATT CAC GAA AAG GAT CAC CCA ACG ATT CTG
         GAC CCG CAG CTA TAA GTG CTT TTT CTA GTG GGT TGC TAA GAC

      +1  E   M   A   K   A   A   G   L   A   T   G   N   V   S
    1219 GAA ATG GCA AAA GCC GCA GGT CTG GCG ACC GGT AAC GTT TCT
         CTT TAC CGT TTT CGG CGT CCA GAC CGC TGG CCA TTG CAA AGA

      +1  T   A   E   L   Q   D   A   T   P   A   A   L   V   A
    1261 ACC GCA GAG TTG CAG GAT GCC ACG CCC GCT GCG CTG GTG GCA
         TGG CGT CTC AAC GTC CTA CGG TGC GGG CGA CGC GAC CAC CGT

      +1  H   V   T   S   R   K   C   Y   G   P   S   A   T   S
    1303 CAT GTG ACC TCG CGC AAA TGC TAC GGT CCG AGC GCG ACC AGT
         GTA CAC TGG AGC GCG TTT ACG ATG CCA GGC TCG CGC TGG TCA

      +1  E   K   C   P   G   N   A   L   E   K   G   G   K   G
    1345 GAA AAA TGT CCG GGT AAC GCT CTG GAA AAA GGC GGA AAA GGA
         CTT TTT ACA GGC CCA TTG CGA GAC CTT TTT CCG CCT TTT CCT

      +1  S   I   T   E   Q   L   L   N   A   R   A   D   V   T
    1387 TCG ATT ACC GAA CAG CTG CTT AAC GCT CGT GCC GAC GTT ACG
         AGC TAA TGG CTT GTC GAC GAA TTG CGA GCA CGG CTG CAA TGC

      +1  L   G   G   G   A   K   T   F   A   E   T   A   T   A
    1429 CTT GGC GGC GGC GCA AAA ACC TTT GCT GAA ACG GCA ACC GCT
         GAA CCG CCG CCG CGT TTT TGG AAA CGA CTT TGC CGT TGG CGA

      +1  G   E   W   Q   G   K   T   L   R   E   Q   A   Q   A
    1471 GGT GAA TGG CAG GGA AAA ACG CTG CGT GAA CAG GCA CAG GCG
         CCA CTT ACC GTC CCT TTT TGC GAC GCA CTT GTC CGT GTC CGC
```

## FIG. 29-3

```
      +1  R    G    Y    Q    L    V    S    D    A    A    S    L    N    S
    1513  CGT  GGT  TAT  CAG  TTG  GTG  AGC  GAT  GCT  GCC  TCA  CTG  AAT  TCG
          GCA  CCA  ATA  GTC  AAC  CAC  TCG  CTA  CGA  CGG  AGT  GAC  TTA  AGC

      +1  V    T    E    A    N    Q    Q    K    P    L    L    G    L    F
    1555  GTG  ACG  GAA  GCG  AAT  CAG  CAA  AAA  CCC  CTG  CTT  GGC  CTG  TTT
          CAC  TGC  CTT  CGC  TTA  GTC  GTT  TTT  GGG  GAC  GAA  CCG  GAC  AAA

      +1  A    D    G    N    M    P    V    R    W    L    G    P    K    A
    1597  GCT  GAC  GGC  AAT  ATG  CCA  GTG  CGC  TGG  CTA  GGA  CCG  AAA  GCA
          CGA  CTG  CCG  TTA  TAC  GGT  CAC  GCG  ACC  GAT  CCT  GGC  TTT  CGT

      +1  T    Y    H    G    N    I    D    K    P    A    V    T    C    T
    1639  ACG  TAC  CAT  GGC  AAT  ATC  GAT  AAG  CCC  GCA  GTC  ACC  TGT  ACG
          TGC  ATG  GTA  CCG  TTA  TAG  CTA  TTC  GGG  CGT  CAG  TGG  ACA  TGC

      +1  P    N    P    Q    R    N    D    S    V    P    T    L    A    Q
    1681  CCA  AAT  CCG  CAA  CGT  AAT  GAC  AGT  GTA  CCA  ACC  CTG  GCG  CAG
          GGT  TTA  GGC  GTT  GCA  TTA  CTG  TCA  CAT  GGT  TGG  GAC  CGC  GTC

      +1  M    T    D    K    A    I    E    L    L    S    K    N    E    K
    1723  ATG  ACC  GAC  AAA  GCC  ATT  GAA  TTG  TTG  AGT  AAA  AAT  GAG  AAA
          TAC  TGG  CTG  TTT  CGG  TAA  CTT  AAC  AAC  TCA  TTT  TTA  CTC  TTT

      +1  G    F    F    L    Q    V    E    G    A    S    I    D    K    Q
    1765  GGC  TTT  TTC  CTG  CAA  GTT  GAA  GGT  GCG  TCA  ATC  GAT  AAA  CAG
          CCG  AAA  AAG  GAC  GTT  CAA  CTT  CCA  CGC  AGT  TAG  CTA  TTT  GTC

      +1  D    H    A    A    N    P    C    G    Q    I    G    E    T    V
    1807  GAT  CAT  GCT  GCG  AAT  CCT  TGT  GGG  CAA  ATT  GGC  GAG  ACG  GTC
          CTA  GTA  CGA  CGC  TTA  GGA  ACA  CCC  GTT  TAA  CCG  CTC  TGC  CAG

      +1  D    L    D    E    A    V    Q    R    A    L    E    F    A    K
    1849  GAT  CTC  GAT  GAA  GCC  GTA  CAA  CGG  GCG  CTG  GAA  TTC  GCT  AAA
          CTA  GAG  CTA  CTT  CGG  CAT  GTT  GCC  CGC  GAC  CTT  AAG  CGA  TTT

      +1  K    E    G    N    T    L    V    I    V    T    A    D    H    A
    1891  AAG  GAG  GGT  AAC  ACG  CTG  GTC  ATA  GTC  ACC  GCT  GAT  CAC  GCC
          TTC  CTC  CCA  TTG  TGC  GAC  CAG  TAT  CAG  TGG  CGA  CTA  GTG  CGG

      +1  H    A    S    Q    I    V    A    P    D    T    K    A    P    G
    1933  CAC  GCC  AGC  CAG  ATT  GTT  GCG  CCG  GAT  ACC  AAA  GCT  CCG  GGC
          GTG  CGG  TCG  GTC  TAA  CAA  CGC  GGC  CTA  TGG  TTT  CGA  GGC  CCG

      +1  L    T    Q    A    L    N    T    K    D    G    A    V    M    V
    1975  CTC  ACC  CAG  GCG  CTA  AAT  ACC  AAA  GAT  GGC  GCA  GTG  ATG  GTG
          GAG  TGG  GTC  CGC  GAT  TTA  TGG  TTT  CTA  CCG  CGT  CAC  TAC  CAC
```

**FIG. 29-4**

```
      +1  M   S   Y   G   N   S   E   E   D   S   Q   E   H   T
      2017 ATG AGT TAC GGG AAC TCC GAA GAG GAT TCA CAA GAA CAT ACC
           TAC TCA ATG CCC TTG AGG CTT CTC CTA AGT GTT CTT GTA TGG


      +1  G   S   Q   L   R   I   A   A   Y   G   P   H   A   A
      2059 GGC AGT CAG TTG CGT ATT GCG GCG TAT GGC CCG CAT GCC GCC
           CCG TCA GTC AAC GCA TAA CGC CGC ATA CCG GGC GTA CGG CGG


      +1  N   V   V   G   L   T   D   Q   T   D   L   F   Y   T
      2101 AAT GTT GTT GGA CTG ACC GAC CAG ACC GAT CTC TTC TAC ACC
           TTA CAA CAA CCT GAC TGG CTG GTC TGG CTA GAG AAG ATG TGG

                                                  His tag
      +1  M   K   A   A   L   G   D   I   A │ H   H   H   H   H
      2143 ATG AAA GCC GCT CTG GGG GAT ATC GCA│CAC CAT CAC CAT CAC
           TAC TTT CGG CGA GAC CCC CTA TAG CGT│GTG GTA GTG GTA GTG


      +1  H   *
      2185 CAT TAA
           GTA ATT
```

**FIG. 29-5**

```
     PelB-Leader
+1   M    K    Y    L    L    P    T    A    A    A    G    L    L    L    L
1    ATG  AAA  TAC  CTA  TTG  CCT  ACG  GCA  GCC  GCT  GGA  TTG  TTA  TTA  CTC
     TAC  TTT  ATG  GAT  AAC  GGA  TGC  CGT  CGG  CGA  CCT  AAC  AAT  AAT  GAG

                                          VH
+1   A    A    Q    P    A    M    A  |  E    V    Q    L    Q    Q    S    G
46   GCG  GCC  CAG  CCG  GCC  ATG  GCG  GAG  GTT  CAG  CTT  CAG  CAG  TCT  GGA
     CGC  CGG  GTC  GGC  CGG  TAC  CGC  CTC  CAA  GTC  GAA  GTC  GTC  AGA  CCT

+1   P    E    L    V    K    P    G    A    S    V    K    I    S    C    K
91   CCT  GAG  CTG  GTG  AAG  CCC  GGG  GCC  TCA  GTG  AAG  ATT  TCC  TGC  AAA
     GGA  CTC  GAC  CAC  TTC  GGG  CCC  CGG  AGT  CAC  TTC  TAA  AGG  ACG  TTT

+1   A    S    G    Y    A    F    S    S    S    W    M    N    W    V    K
136  GCT  TCT  GGC  TAC  GCA  TTC  AGT  AGC  TCT  TGG  ATG  AAC  TGG  GTG  AAG
     CGA  AGA  CCG  ATG  CGT  AAG  TCA  TCG  AGA  ACC  TAC  TTG  ACC  CAC  TTC

+1   Q    R    P    G    Q    G    L    E    W    I    G    R    I    Y    P
181  CAG  AGG  CCT  GGA  CAG  GGT  CTT  GAG  TGG·ATT  GGA  CGG  ATT  TAT  CCT
     GTC  TCC  GGA  CCT  GTC  CCA  GAA  CTC  ACC  TAA  CCT  GCC  TAA  ATA  GGA

+1   G    N    G    D    T    N    Y    N    G    K    F    K    G    K    A
226  GGA  AAT  GGA  GAT  ACT  AAC  TAC  AAT  GGG  AAG  TTC  AAG  GGC  AAG  GCC
     CCT  TTA  CCT  CTA  TGA  TTG  ATG  TTA  CCC  TTC  AAG  TTC  CCG  TTC  CGG

+1   T    L    T    A    D    K    S    S    S    T    A    Y    M    Q    L
271  ACA  CTG  ACT  GCA  GAC  AAA  TCC  TCC  AGC  ACA  GCC  TAC  ATG  CAG  CTC
     TGT  GAC  TGA  CGT  CTG  TTT  AGG  AGG  TCG  TGT  CGG  ATG  TAC  GTC  GAG

+1   S    S    L    T    S    V    D    S    A    V    Y    F    C    A    D
316  AGC  AGC  CTG  ACC  TCT  GTG  GAC  TCT  GCG  GTC  TAT  TTC  TGT  GCA  GAT
     TCG  TCG  GAC  TGG  AGA  CAC  CTG  AGA  CGC  CAG  ATA  AAG  ACA  CGT  CTA

+1   G    N    V    Y    Y    Y    A    M    D    Y    W    G    Q    G    T
361  GGT  AAC  GTA  TAT  TAC  TAT  GCT  ATG  GAC  TAC  TGG  GGT  CAA  GGA  ACC
     CCA  TTG  CAT  ATA  ATG  ATA  CGA  TAC  CTG  ATG  ACC  CCA  GTT  CCT  TGG

                                          Linker
+1   S    V    T    V    S    S  |  G    G    G    G    S    G    G    R    A
406  TCA  GTC  ACC  GTC  TCC  TCA  GGT  GGA  GGC  GGT  TCA  GGT  GGG  CGC  GCC
     AGT  CAG  TGG  CAG  AGG  AGT  CCA  CCT  CCG  CCA  AGT  CCA  CCC  GCG  CGG
```

**FIG. 30-1**

```
                                         VL
    +1  S    G    G    G    G    S  |Q    I    V    L    T    Q    S    P    A
   451  TCT  GGC  GGT  GGC  GGA  TCG CAA  ATT  GTT  CTC  ACC  CAG  TCT  CCT  GCT
        AGA  CCG  CCA  CCG  CCT  AGC GTT  TAA  CAA  GAG  TGG  GTC  AGA  GGA  CGA


    +1  S    L    A    V    S    L    G    Q    R    A    T    I    S    C    R
   496  TCC  TTA  GCT  GTA  TCT  CTG  GGG  CAG  AGG  GCC  ACC  ATC  TCA  TGC  AGG
        AGG  AAT  CGA  CAT  AGA  GAC  CCC  GTC  TCC  CGG  TGG  TAG  AGT  ACG  TCC



    +1  A    S    K    S    V    S    T    S    G    Y    S    Y    M    H    W
   541  GCC  AGC  AAA  AGT  GTC  AGT  ACA  TCT  GGC  TAT  TAT  TAT  ATG  CAC  TGG
        CGG  TCG  TTT  TCA  CAG  TCA  TGT  AGA  CCG  ATA  ATA  ATA  TAC  GTG  ACC

    +1  Y    Q    Q    K    P    G    Q    P    P    K    L    L    I    Y    L
   586  TAC  CAA  CAG  AAA  CCA  GGA  CAG  CCA  CCC  AAA  CTC  CTC  ATC  TAT  CTT
        ATG  GTT  GTC  TTT  GGT  CCT  GTC  GGT  GGG  TTT  GAG  GAG  TAG  ATA  GAA

    +1  A    S    N    L    E    S    G    V    P    A    R    F    S    G    S
   631  GCA  TCC  AAC  CTA  GAA  TCT  GGG  GTC  CCT  GCC  AGG  TTC  AGT  GGC  AGT
        CGT  AGG  TTG  GAT  CTT  AGA  CCC  CAG  GGA  CGG  TCC  AAG  TCA  CCG  TCA

    +1  G    S    G    T    D    F    T    L    N    I    H    P    V    E    E
   676  GGG  TCT  GGG  ACA  GAC  TTC  ACC  CTC  AAC  ATC  CAT  CCT  GTG  GAG  GAG
        CCC  AGA  CCC  TGT  CTG  AAG  TGG  GAG  TTG  TAG  GTA  GGA  CAC  CTC  CTC

    +1  E    D    A    A    T    Y    Y    C    Q    H    S    R    E    L    P
   721  GAG  GAT  GCT  GCA  ACC  TAT  TAC  TGT  CAG  CAC  AGT  AGG  GAG  CTT  CCT
        CTC  CTA  CGA  CGT  TGG  ATA  ATG  ACA  GTC  GTG  TCA  TCC  CTC  GAA  GGA

                                                               Spacer
    +1  R    T    F    G    G    G    T    K    L    E    I    K    R |A    A
   766  CGG  ACG  TTC  GGT  GGA  GGC  ACC  AAG  CTG  GAA  ATC  AAA  CGG GCG  GCC
        GCC  TGC  AAG  CCA  CCT  CCG  TGG  TTC  GAC  CTT  TAG  TTT  GCC CGC  CGG

            Hinge                                  Helix
    +1  A  |P    K    P    S    T    P    P    G    S    S |R    M    K    Q
   811  GCA CCG  AAG  CCT  TCC  ACT  CCG  CCC  GGG  TCT  TCC CGT  ATG  AAA  CAG
        CGT GGC  TTC  GGA  AGG  TGA  GGC  GGG  CCC  AGA  AGG GCA  TAC  TTT  GTC

    +1  L    E    D    K    V    E    E    L    L    S    K    N    Y    H    L
   856  CTG  GAA  GAC  AAA  GTA  GAG  GAG  CTC  CTT  AGC  AAG  AAC  TAC  CAT  CTA
        GAC  CTT  CTG  TTT  CAT  CTC  CTC  GAG  GAA  TCG  TTC  TTG  ATG  GTA  GAT


    +1  E    N    E    V    A    R    L    K    K    L    V    G    E    R |G
   901  GAA  AAC  GAG  GTA  GCT  CGT  CTG  AAA  AAG  CTT  GTT  GGT  GAA  CGT GGT
        CTT  TTG  CTC  CAT  CGA  GCA  GAC  TTT  TTC  GAA  CAA  CCA  CTT  GCA CCA
```

**FIG. 30-2**

```
    Spacer| His-tag
  +1   G  | H    H    H    H    H    H    *
946   GGT |CAC  CAT  CAC  CAT  CAC  CAT  TAA
      CCA |GTG  GTA  GTG  GTA  GTG  GTA  ATT
```

# FIG. 30-3



FIG. 31



**FIG. 32**

```
                                             HindIII
2206  CAG GAA ACA GCT ATG ACC ATG ATT ACG CCA AGC TTC CAT GAA AAT
      GTC CTT TGT CGA TAC TGG TAC TAA TGC GGT TCG AAG GTA CTT TTA

                                          PelB-Leader
                                    M   K   Y   L   L   P   T
2251  TCT ATT TCA AGG AGA CAG TCA TAA TGA AAT ACC TAT TGC CTA CGG
      AGA TAA AGT TCC TCT GTC AGT ATT ACT TTA TGG ATA ACG GAT GCC


       A   A   A   G   L   L   L   A   A   Q   P   A   M   A  |
                                          SfiI
2296  CAG CCG CTG GAT TGT TAT TAC TCG CGG CCC AGC CGG CCA TGG CCC
      GTC GGC GAC CTA ACA ATA ATG AGC GCC GGG TCG GCC GGT ACC GGG


       Polylinker
       Q   V   Q   L   Q   A   R   L   Q   V   D   L   E   I   K
                             AscI
2341  AGG TGC AGC TGC AGG CGC GCC TGC AGG TCG ACC TCG AGA TCA AAC
      TCC ACG TCG ACG TCC GCG CGG ACG TCC AGC TGG AGC TCT AGT TTG


      |    Spacer     |   Myc-tag
      R |  A   A   A  | E   Q   K   L   I   S   E   E   D   L   N
         | NotI
2386  GGG CGG CCG CAG AAC AAA AAC TCA TCT CAG AAG AGG ATC TGA ATG
      CCC GCC GGC GTC TTG TTT TTG AGT AGA GTC TTC TCC TAG ACT TAC


      | Spacer |  His tag
      G | A   A | H   H   H   H   H   H   *   *
                                             EcoRI
2431  GGG CGG CAC ATC ACC ATC ACC ATC ACT AAT AAG AAT TCA CTG GCC
      CCC GCC GTG TAG TGG TAG TGG TAG TGA TTA TTC TTA AGT GAC CGG
```

**FIG. 33**

```
          PelB-leader
  +1   M   K   Y   L   L   P   T   A   A   A   G   L   L   L   L
  1   ATG AAA TAC CTA TTG CCT ACG GCA GCC GCT GGA TTG TTA TTA CTC
      TAC TTT ATG GAT AAC GGA TGC CGT CGG CGA CCT AAC AAT AAT GAG

                                          VH
  +1   A   A   Q   P   A   M   A   E   V   K   L   V   E   S   G
  46  GCG GCC CAG CCG GCC ATG GCC GAG GTG AAG CTG GTG GAG TCT GGG
      CGC CGG GTC GGC CGG TAC CGG CTC CAC TTC GAC CAC CTC AGA CCC

  +1   G   G   L   V   K   P   G   G   S   L   K   L   S   C   A
  91  GGA GGC TTA GTG AAG CCT GGA GGG TCC CTG AAA CTC TCC TGT GCA
      CCT CCG AAT CAC TTC GGA CCT CCC AGG GAC TTT GAG AGG ACA CGT

  +1   A   S   G   F   T   F   S   S   Y   T   M   S   W   V   R
  136 GCC TCT GGA TTC ACT TTC AGT AGC TAT ACC ATG TCT TGG GTT CGC
      CGG AGA CCT AAG TGA AAG TCA TCG ATA TGG TAC AGA ACC CAA GCG

  +1   Q   T   P   E   K   R   L   E   W   V   A   T   I   S   S
  181 CAG ACT CCG GAG AAG AGG CTG GAG TGG GTC GCA ACC ATT AGT AGT
      GTC TGA GGC CTC TTC TCC GAC CTC ACC CAG CGT TGG TAA TCA TCA

  +1   G   G   S   S   T   Y   Y   P   D   S   V   K   G   R   F
  226 GGN GGT AGT TCC ACC TAC TAT CCA GAC AGT GTG AAG GGC CGA TTC
      CCN CCA TCA AGG TGG ATG ATA GGT CTG TCA CAC TTC CCG GCT AAG

  +1   T   I   S   R   D   N   A   K   N   T   L   Y   L   Q   M
  271 ACC ATC TCC AGA GAC AAT GCC AAG AAC ACC CTG TAC CTG CAA ATG
      TGG TAG AGG TCT CTG TTA CGG TTC TTG TGG GAC ATG GAC GTT TAC

  +1   S   S   L   R   S   E   D   T   A   M   Y   Y   C   T   R
  316 AGC AGT CTG AGG TCT GAG GAC ACA GCC ATG TAT TAC TGT ACA AGA
      TCG TCA GAC TCC AGA CTC CTG TGT CGG TAC ATA ATG ACA TGT TCT

  +1   E   G   G   G   F   T   V   N   W   Y   F   D   V   W   G
  361 GAG GGG GGT GGT TTC ACC GTC AAC TGG TAC TTC GAT GTC TGG GGC
      CTC CCC CCA CCA AAG TGG CAG TTG ACC ATG AAG CTA CAG ACC CCG

                                          Leader
  +1   A   G   T   S   V   T   V   S   S   G   G   G   G   S   G
  406 GCA GGA ACC TCA GTC ACC GTC TCC TCA GGT GGA GGC GGT TCA GGT
      CGT CCT TGG AGT CAG TGG CAG AGG AGT CCA CCT CCG CCA AGT CCA
```

**FIG. 34-1**



```
                                                    VK
    +1 G   R   A   S   G   G   G   G   S │ D   I   V   L   T   Q
   451 GGG GCG GCC TCT GGC GGT GGC GGA TCG│GAC ATT GTG CTG ACA CAG
       CCC GCG CGG AGA CCG CCA CCG CCT AGC│CTG TAA CAC GAC TGT GTC

    +1 S   P   A   S   L   A   V   S   L   G   Q   R   A   T   I
   496 TCT CCA GCT TCT TTG GCT GTG TCT CTA GGG CAG AGG GCC ACC ATA
       AGA GGT CGA AGA AAC CGA CAC AGA GAT CCC GTC TCC CGG TGG TAT

    +1 S   C   R   A   S   E   S   V   D   S   Y   G   Y   N   F
   541 TCC TGC AGA GCC AGT GAA AGT GTT GAT AGT TAT GGC TAT AAT TTT
       AGG ACG TCT CGG TCA CTT TCA CAA CTA TCA ATA CCG ATA TTA AAA

    +1 M   H   W   Y   Q   Q   I   P   G   Q   P   P   K   L   L
   586 ATG CAC TGG TAT CAG CAG ATA CCA GGA CAG CCA CCC AAA CTC CTC
       TAC GTG ACC ATA GTC GTC TAT GGT CCT GTC GGT GGG TTT GAG GAG

    +1 I   Y   R   A   S   N   L   E   S   G   I   P   A   R   F
   631 ATC TAT CGT GCA TCC AAC CTA GAG TCT GGG ATC CCT GCC AGG TTC
       TAG ATA GCA CGT AGG TTG GAT CTC AGA CCC TAG GGA CGG TCC AAG

    +1 S   G   S   G   S   R   T   D   F   T   L   T   I   N   P
   676 AGT GGC AGT GGG TCT AGG ACA GAC TTC ACC CTC ACC ATT AAT CCT
       TCA CCG TCA CCC AGA TCC TGT CTG AAG TGG GAG TGG TAA TTA GGA

    +1 V   E   A   D   D   V   A   T   Y   Y   C   Q   Q   S   N
   721 GTG GAG GCT GAT GAT GTT GCA ACC TAT TAC TGT CAG CAA AGT AAT
       CAC CTC CGA CTA CTA CAA CGT TGG ATA ATG ACA GTC GTT TCA TTA

    +1 E   D   P   L   T   F   G   T   G   T   R   L   E   I   K
   766 GAG GAT CCG CTC ACG TTC GGT ACT GGG ACC AGA CTG GAA ATA AAA
       CTC CTA GGC GAG TGC AAG CCA TGA CCC TGG TCT GAC CTT TAT TTT

           Spacer          Myc-tag
    +1 R │ A   A   A │ E   Q   K   L   I   S   E   E   D   L   N
   811 CGG│GCG GCC GCA│GAA CAA AAA CTC ATC TCA GAA GAG GAT CTG AAT
       GCC│CGC CGG CGT│CTT GTT TTT GAG TAG AGT CTT CTC CTA GAC TTA

           Spacer   His tag
    +1 G │ A   A │ H   H   H   H   H   H   *   *
   856 GGG│GCG GCA│CAT CAC CAT CAC CAT CAC TAA TAA
       CCC│CGC CGT│GTA GTG GTA GTG GTA GTG ATT ATT
```

**FIG. 34-2**

```
        Pel-leader
   +1  M   K   Y   L   L   P   T   A   A   A   G   L   L   L   L
    1  ATG AAA TAC CTA TTG CCT ACG GCA GCC GCT GGA TTG TTA TTA CTC
       TAC TTT ATG GAT AAC GGA TGC CGT CGG CGA CCT AAC AAT AAT GAG


                                       VH
   +1  A   A   Q   P   A   M   A   E   V   Q   L   Q   Q   S   G
   46  GCG GCC CAG CCG GCC ATG GCC GAG GTT CAG CTT CAG CAG TCT GGA
       CGC CGG GTC GGC CGG TAC CGG CTC CAA GTC GAA GTC GTC AGA CCT


   +1  P   E   L   V   K   P   G   A   S   V   K   I   S   C   K
   91  CCT GAG CTG GTG AAG CCC GGG GCC TCA GTG AAG ATT TCC TGC AAA
       GGA CTC GAC CAC TTC GGG CCC CGG AGT CAC TTC TAA AGG ACG TTT


   +1  A   S   G   Y   A   F   S   S   S   W   M   N   W   V   K
  136  GCT TCT GGC TAC GCA TTC AGT AGC TCT TGG ATG AAC TGG GTG AAG
       CGA AGA CCG ATG CGT AAG TCA TCG AGA ACC TAC TTG ACC CAC TTC


   +1  Q   R   P   G   Q   G   L   E   W   I   G   R   I   Y   P
  181  CAG AGG CCT GGA CAG GGT CTT GAG TGG ATT GGA CGG ATT TAT CCT
       GTC TCC GGA CCT GTC CCA GAA CTC ACC TAA CCT GCC TAA ATA GGA


   +1  G   N   G   D   T   N   Y   N   G   K   F   K   G   K   A
  226  GGA AAT GGA GAT ACT AAC TAC AAT GGG AAG TTC AAG GGC AAG GCC
       CCT TTA CCT CTA TGA TTG ATG TTA CCC TTC AAG TTC CCG TTC CGG


   +1  T   L   T   A   D   K   S   S   S   T   A   Y   M   Q   L
  271  ACA CTG ACT GCA GAC AAA TCC TCC AGC ACA GCC TAC ATG CAG CTC
       TGT GAC TGA CGT CTG TTT AGG AGG TCG TGT CGG ATG TAC GTC GAG


   +1  S   S   L   T   S   V   D   S   A   V   Y   F   C   A   D
  316  AGC AGC CTG ACC TCT GTG GAC TCT GCG GTC TAT TTC TGT GCA GAT
       TCG TCG GAC TGG AGA CAC CTG AGA CGC CAG ATA AAG ACA CGT CTA


   +1  G   N   V   Y   Y   Y   A   M   D   Y   W   G   Q   G   T
  361  GGT AAC GTA TAT TAC TAT GCT ATG GAC TAC TGG GGT CAA GGA ACC
       CCA TTG CAT ATA ATG ATA CGA TAC CTG ATG ACC CCA GTT CCT TGG


                                       Leader
   +1  S   V   T   V   S   S   G   G   G   G   S   G   G   R   A
  406  TCA GTC ACC GTC TCC TCA GGT GGA GGC GGT TCA GGT GGG CGC GCC
       AGT CAG TGG CAG AGG AGT CCA CCT CCG CCA AGT CCA CCC GCG CGG



                                       VL
   +1  S   G   G   G   G   S   Q   I   V   L   T   Q   S   P   A
  451  TCT GGC GGT GGC GGA TCG CAA ATT GTT CTC ACC CAG TCT CCT GCT
       AGA CCG CCA CCG CCT AGC GTT TAA CAA GAG TGG GTC AGA GGA CGA
```

**FIG. 35-1**

```
    +1  S   L   A   V   S   L   G   Q   R   A   T   I   S   C   R
    496 TCC TTA GCT GTA TCT CTG GGG CAG AGG GCC ACC ATC TCA TGC AGG
        AGG AAT CGA CAT AGA GAC CCC GTC TCC CGG TGG TAG AGT ACG TCC


    +1  A   S   K   S   V   S   T   S   G   Y   S   Y   M   H   W
    541 GCC AGC AAA AGT GTC AGT ACA TCT GGC TAT AGT TAT ATG CAC TGG
        CGG TCG TTT TCA CAG TCA TGT AGA CCG ATA TCA ATA TAC GTG ACC

    +1  Y   Q   Q   K   P   G   Q   P   P   K   L   L   I   Y   L
    586 TAC CAA CAG AAA CCA GGA CAG CCA CCC AAA CTC CTC ATC TAT CTT
        ATG GTT GTC TTT GGT CCT GTC GGT GGG TTT GAG GAG TAG ATA GAA

    +1  A   S   N   L   E   S   G   V   P   A   R   F   S   G   S
    631 GCA TCC AAC CTA GAA TCT GGG GTC CCT GCC AGG TTC AGT GGC AGT
        CGT AGG TTG GAT CTT AGA CCC CAG GGA CGG TCC AAG TCA CCG TCA

    +1  G   S   G   T   D   F   T   L   N   I   H   P   V   E   E
    676 GGG TCT GGG ACA GAC TTC ACC CTC AAC ATC CAT CCT GTG GAG GAG
        CCC AGA CCC TGT CTG AAG TGG GAG TTG TAG GTA GGA CAC CTC CTC

    +1  E   D   A   A   T   Y   Y   C   Q   H   S   R   E   L   P
    721 GAG GAT GCT GCA ACC TAT TAC TGT CAG CAC AGT AGG GAG CTT CCT
        CTC CTA CGA CGT TGG ATA ATG ACA GTC GTG TCA TCC CTC GAA GGA

                                                        Spacer
    +1  R   T   F   G   G   G   T   K   L   E   I   K   R | A   A
    766 CGG ACG TTC GGT GGA GGC ACC AAG CTG GAA ATC AAA CGG| GGG GCC
        GCC TGC AAG CCA CCT CCG TGG TTC GAC CTT TAG TTT GCC| CGC CGG

              Myc-tag                                      Spacer
    +1  A | E   Q   K   L   I   S   E   E   D   L   N   G | A   A
    811 GCA|GAA CAA AAA CTC ATC TCA GAA GAG GAT CTG AAT GGG|GCG GCA
        CGT|CTT GTT TTT GAG TAG AGT CTT CTC CTA GAC TTA CCC|CGC CGT

          His tag
    +1  H   H   H   H   H   H   *
    856 CAT CAC CAT CAC CAT CAC TAA
        GTA GTG GTA GTG GTA GTG ATT
```

# FIG. 35-2



FIG. 36

US 7,033,590 B1

**1**

# FACTOR IX/FACTOR IXA ACTIVATING ANTIBODIES AND ANTIBODY DERIVATIVES

The present invention relates to actor IX/factor IXa-antibodies and antibody derivatives.

Blood clots (thrombi) are formed by a series of zymogen activations referred to as the coagulation cascade. In the course of this enzymatic cascade, the activated form of each of such zymogens (referred to as factors) catalyzes the activation of the next one. Thrombi are deposits of blood components on the surface of a blood vessel wall and mainly consist of aggregated blood platelets and insoluble, cross-linked fibrin. Fibrin formation is effected by means of thrombin by limited proteolysis of fibrinogen. Thrombin is the final product of the coagulation cascade, (K. G. Mann, Blood, 1990, Vol. 76, pp. 1–16).

Activation of factor x by the complex of activated factor IX (FIXa) and activated factor VIII (FVIIIa) is a key step in coagulation. The absence of the components of this complex or a disturbance of their function is associated with the blood coagulation disorder called hemophilia (J. E. Sadler & E. W. Davie: Hemophilia A, Hemophilia B and von Willebrand's disease, in G. Stamatoyannopoulos et al. (Eds.): The molecular basis of blood diseases. W. B. Saunders Co., Philadelphia, 1987, pp. 576–602). Hemophilia A denotes a (functional) absence of factor VIII activity, while Hemophilia B is characterized by the absence of factor IX activity. At present, treatment of Hemophilia A is effected via a substitution therapy by administering factor VIII concentrates. However, approximately 20–30% of Hemophilia A patients develop factor VIII inhibitors (i.e. antibodies against factor VIII), whereby the effect of administered factor VIII preparations is inhibited. Treatment of factor VIII inhibitor patients is very difficult and involves risks, and so far there exist only a limited number of treatments for these patients.

In the case of patients having a low FVIII inhibitor level, it is possible, though expensive, to administer high doses of factor VIII to such patients and thus to neutralize the antibodies against factor VIII. The amount of factor VIII beyond that needed to neutralize the inhibitor antibodies then has hemostatic action. In many cases, desensitization can be effected, whereupon it is then possible again to apply standard factor VIII treatments. Such high dose factor VIII treatments require, however, large amounts of factor VIII, are time-consuming and may involve severe anaphylactic side reactions. Alternatively, the treatment may be carried out with porcine factor VIII molecules.

A further high-cost method involves removing factor VIII inhibitors through extra corporeal immunoadsorption on lectins which bind to immunoglobulins (protein A, protein G) or to immobilized factor VIII. Since the patient must be connected to an apheresis machine during this treatment, the treatment also constitutes a great burden on the patient. It is also not possible to treat an acute hemorrhage in this way.

At present, the therapy of choice is to administer activated prothrombin complex concentrates (APCC), such as FEIBA® and AUTOPLEX®, which are suitable for the treatment of acute hemorrhages even in patients having a high inhibitor titer (DE 31 27 318).

In the intravascular system of blood coagulation, the last step is the activation of factor X. This reaction is stimulated by the binding of factor VIIIa to factor IXa and the formation of a "tenase"-complex consisting of the factors IXa, VIIIa, X and phospholipid. Without the binding of FVIIIa, FIXa exhibits no or only a very slight enzymatic activity relative to FX.

**2**

Over the last several years, a number of possible binding sites for factor VIIIa to factor IXa have been characterized, and it has been shown that antibodies or peptides which bind to these regions inhibit the activity of FIXa (Fay et al., J. Biol. Chem., 1994, Vol. 269, pp. 20522–20527, Lenting et al., J. Biol. Chem., 1996, Vol. 271, pp. 1935–1940, Jorquera et al., Circulation, 1992, Vol. 86, Abstract 2725). The inhibition of coagulation factors, such as factor IX, has also been achieved through the use of monoclonal antibodies with the aim of preventing thrombosis formation (WO 97/26010).

The opposite effect, i.e. an increase in the factor IXa mediated activation of factor X, has been described by Liles D. K. et al., (Blood, 1997, Vol. 90, suppl. 1, 2054) through the binding of a factor VIII peptide (amino acids 698–712) to factor IX. Yet, this effect only occurs in the absence of factor VIIIa, while in the presence of factor VIIIa the factor IXa/factor VIIIa-mediated cleavage of factor X is inhibited by this peptide.

## SUMMARY OF THE INVENTION

With a view to the possible risks and side effects which may occur in the treatment of hemophilia patients, there is a need for a therapy which allows for the effective treatment of FVIII inhibitor patients. Therefore, it is an object of the present invention to provide a preparation for the treatment of blood coagulation disorders which has particular advantages for factor VIII inhibitor patients.

According to the present invention, this object is achieved through the use of antibodies or antibody derivatives against factor IX/factor IXa which have factor VIIIa-cofactor activity or factor IXa-activating activity and lead to an increase in the procoagulant activity of factor IXa. Surprisingly, the action of these inventive factor IX/factor IXa-activating antibodies and antibody derivatives is not negatively affected by the presence of inhibitors, such as inhibitors against factor VIII/factor VIIIa, but instead the procoagulant activity of factor IXa in this case also is increased.

A further advantage of this invention is that the administration of the preparation according to the invention allows for rapid blood coagulation even in the absence of factor VIII or factor VIIIa, even in the case of FVIII inhibitor patients. Surprisingly, these agents are also effective in the presence of factor VIIIa.

The antibodies and antibody derivatives according to the present invention thus have a FVIII-cofactor-like activity which, in a FVIII assay (e.g. a COATEST® assay or Immunochrom test) after 2 hours of incubation exhibits a ratio of background (basic noise) to measured value of at least 3. Calculation of this ratio may, e.g., be effected according to the following scheme:

$$\frac{\text{Antibody measurement (OD 405)} - \text{blank value from reagent}}{\text{Mouse-IgG-measurement (OD 405)} - \text{blank value from reagent}} \geq 3$$

after two hours of incubation.

The antibodies according to the invention preferably have an in vivo half life of at least 5 days, more preferably at least 10 days, though it is more preferred to have a half life of at least 20 days.

A further aspect of this invention is a preparation comprising antibodies and/or antibody derivatives against factor IX/factor IXa and a pharmaceutically acceptable carrier substance. Furthermore, the preparation according to the invention may additionally comprise factor IX and/or factor IXa.

US 7,033,590 B1

**3**

A further aspect of the invention is the use of the antibodies or antibody derivatives to increase the amidolytic activity of factor IXa.

FIG. **1** shows the results of a screening of supernatants from hybridoma cell cultures for FVIII-like activity. Preselected clones from fusion experiments, #193, #195 and #196, were tested in a chromogenic assay.

FIG. **2** shows the results of screening for IgG-mediated factor VIII-like activity in supernatants of a hybridoma cell culture of a master plate.

FIG. **3** shows the subcloning of clone 193/C0, namely the results of the first cloning round.

FIG. **4** shows a comparison of the chromogenic FVIII-like activity and factor IX-ELISA-reactivity of hybridoma cultures derived from the starting clone 193/C0.

FIG. **5** shows the results of the measurement of the chromogenic activity of some master clones and sub-clones.

FIG. **6**A shows the FVIII-like activity of the anti-FIX/FIXa-antibodies 193/AD3 and 196/AF2 compared to human FVIII, TBS buffer and cell culture medium. After a lag phase, both antibodies gave rise to chromogenic substrate cleavage, as judged by the increasing optical density.

FIG. **6**B shows a comparison of the chromogenic activity of factor VIII, 196/AF1, 198/AC1/1 and mouse-IgG.

FIG. **7**A shows a comparison of the kinetics of Factor Xa generation by Factor VIII and 196/AF2 with and without the addition of a Factor Xa specific inhibitor.

FIG. **7**B shows a comparison of the kinetics of the Factor Xa generation by Factor VIII, mouse-IgG and anti-factor IX/IXa-antibody 198/AM1 with and without the addition of a factor Xa-specific inhibitor, Pefabloc Xa®.

FIG. **8**A shows a measurement of the dependence of the factor VIII-like activity of purified anti-factor IX/IXa-antibody 198/AC1/1 in the presence and absence of phospholipids, FIXa/FX and calcium ions.

FIG. **8**B shows a measurement of the dependence of FXa generation by anti-FIXa-antibody 196/AF1 in the presence of phospholipids, Ca$^{2+}$ in FIXa/FX.

FIG. **8**C shows the generation of FXa by unspecific mouse IgG antibody.

FIG. **9** is a graphical representation of the coagulation times of Factor VIII-deficient plasma in an APTT assay by using various concentrations of anti-factor IX/IXa-antibody 193/AD3.

FIG. **10**A shows that in the presence of Factor IXa, antibody 193/AD3 leads to a reduction in the coagulation time of factor VIII-deficient plasma.

FIG. **10**B shows a dose-dependent reduction of the clotting time by antibody 193/AD3 in the presence of factor IXa- and factor VIII-inhibitors.

FIG. **11** shows the chromogenic activity of antibodies 198/A1, 198/B1 and 198/AP1 in the presence and absence of human FIXaβ.

FIG. **12** shows the primer sequences (SEQ ID NOS:50–61) for the amplification of the genes of the variable heavy chain of mouse antibody.

FIG. **13** shows the primer sequences (SEQ ID NOS:65–78) for the amplification of the genes of the variable light (kappa) chain of the mouse antibody.

FIG. **14** shows the DNA and derived protein sequence of the scFv from hybridoma cell line 193/AD3 (SEQ.ID.NOs. 81 and 82).

FIG. **15** shows the DNA and derived protein sequence of the scFv from hybridoma cell line 193/K2 (SEQ.ID.NOs. 83 and 84).

FIG. **16** shows the DNA and derived protein sequence of the scFv from hybridoma cell line 198/AB2 (subclone of 198/B1) (SEQ.ID.NOs. 85 and 86).

**4**

FIG. **17** shows the DNA and deduced protein sequence of scFv derived from the cell line 198/A1 (SEQ.ID.NOs. 87 and 88).

FIG. **18** demonstrates the chromogenic FVIII-like activity of peptide A1/3 in the presence of 2.9 nM human FIXa. The scrambled version of peptide A1/3, peptide A1/5 does not give rise to any FXa generation.

FIG. **19** demonstrates the dependence of the chromogenic FVIII-like activity of peptide A1/3 on the presence of human FIXa. In the absence of human FIXa, peptide A1/3 does not give rise to any FXa generation. The buffer control, plain imidazole buffer is designated 1Z.

FIG. **20** shows that the chirality of Arg-residues does not play a significant role for the chromogenic activity of peptides A1/3-rd and A1/3-Rd-srmb.

FIG. **21** shows that the addition of 2.4 μM peptide B1/7 to the reaction mixture led to a measureable generation of FXa.

FIG. **22** shows that the addition of a FX-specific inhibitor results in a significant reduction in the reaction. If there was no FIXa and FX is added to the reaction mixture, no FXa was synthesized.

FIG. **23** shows vector pBax-IgG1.

FIG. **24** shows the increase of the amidolytic activity of FIXa in the presence of antibody 198/B1 (FIG. **24**A) and IgM antibody 198/AF1 (FIG. **24**B).

FIG. **25** demonstrates the chromogenic FVIII-like activity of the antibody 198/A1 Fab fragment in the presence of 2.3 nM human FIXa. As a positive control the intact antibody 198/A1 was used as well as 7.5 pM FVIII. The buffer control (IZ) was used as a negative control.

FIG. **26** shows the nucleotide and amino acid sequence of the 198AB2 scFv-alkaline phosphatase fusion protein (ORF of the expression vector pDAP2-198AB2#100, (SEQ.ID.NOs. 89 and 90).

The genes for the VL and the VH domains of antibody 198/AB2 (198/AB2 is an identical subclone of 198/B1) were derived from the corresponding hybridoma cells as described in example 10. The PCR product of the VH-gene was digested Sfil-AscI and the PCR-product of the VL-gene was digested AscI and NotI. VH and VL genes were linked via the AscI site and inserted into Sfil-NotI digested vector pDAP2 (Kerschbaumer R. J. et al, Immuno-technology 2, 145–150, 1996; GeneBank accession no.:U35316). PelB leader: leader sequence of *Erwinia carotovora* Pectate Lyase B, His tag, Histidinee tag for metal ion chromatography.

FIG. **27** demonstrates the chromogenic FVIII-like activity of two antibody 198/B1 (subclone AB2) scFv fragment-alkaline phosphatase fusion proteins (198AB2#1 and 198AB2#100) in the presence of 2.3 nM human FIXa. As a positive control 7.5 pM FVIII was used.

FIG. **28** shows the amino acid and nucleotide sequence of pZip198AB2#102 (SEQ.ID.NOs. 91 and 92).

FIG. **29** shows the nucleotide and amino acid sequence of the mAB#8860 scFv-alkaline phosphatase fusion protein (vector pDAP2-8860scFv#11, (SEQ.ID.NOs. 93 and 94). The genes for the VT and the VH domains of antibody #8860 were derived from the corresponding hybridoma cells as described in example 10. The PCR product of the VH-gene was digested Sfil-AscI and the PCR-product of the VL-gene was digested AscI and NotI. VH and VL genes were linked via the AscI site and inserted into Sfil-NotI digested vector pDAP2 (Kerschbaumer R. J. et al, Immunotechnology 2, 145–150, 1996; GeneBank accession No.:U35316).

FIG. **30** shows the nucleotide and amino acid sequence of the mAB #8860 scFv-leucine zipper fusion protein

US 7,033,590 B1

**5**

(miniantibody; vector p8860-Zip#1.2, (SEQ.ID.NOs. 95 and 96). The gene of the scFv fragment was derived from mAB #8860 and was swapped from vector pDAP2-8860scFv#11 into SfiI-NotI digested plasmid pZip1 (Kerschbaumer R. J. et al., Analytical Biochemistry 249, 219–227, 1997; GeneBank accession No.: U94951)

FIG. 31 demonstrates the chromogenic FVIII-like activity of the 198/B1 (subclone AB2) miniantibody 198AB-Zip#102 in the presence of 2.3 nM human FIXa. As a positive control 4.5 pM FVIII was used whereas a unrelated miniantibody (8860-Zip#1.2) and plain reaction buffer (IZ) served as negative controls.

FIG. 32 shows a schematic representation of the plasmid pMycHis6 (SEQ ID NOS:107–110).

FIG. 33 shows the nucleotide and amino acid sequence of the part of the plasmid pMycHis6 differing from vector pCOCK (SEQ.ID.Nos. 97 and 98). Vector pMycHis6 was constructed by cleaving vector pCOCK (Engelhardt et al., 1994, Biotechniques, 17: 44–46) with NotI and EcoRI and insertion of the oligonucleotides: mychis6-co: 5'ggccgca-gaacaaaaactcatctcagaagaggatct gaatgggcggcacatcaccatcac-catcactaataag 3' (SEQ ID.No. 79) and mycchis-ic: 5' aattct-tattagtgatggtgatggtgatggtgccgccccattcagatctctcttct gagatgaggtttttgttctgc (SEQ.ID.No. 80).

FIG. 34 shows the nucleotide and amino acid sequence of 198AB2 scFv (linked to the c-myc-tag and the His6tag): ORF of the expression vector pMycHis6-198AB2#102. Vector pMycHis6 was constructed by cleaving vector pCOCK (Engelhardt O. et al, BioTechniques 17, 44–46, 1994) NotI-EcoRI and inserting the following annealed oligonucleotides: (5'-GGCCGCAGAACAAAAACTCATCTCAGAA GAGGATCTGAATGGGGCGGCACATCA CCATCACCATCACTAATAAG-3' (SEQ.ID.No. 103) and 5'-TTATTAGTGATGGTGATGGT GATGTGCC GCCCCATTCAGATCCTCTTCTGAGATGAGTTTTTG TTCTGC-3'(SEQ.ID.NO. 104)). The resultant vector, named pMycHis6, was cleaved SfiI-NotI and the gene of scFv 198AB2 was swapped into this vector from vector pDAP2-198AB2#100.

FIG. 35 shows the nucleotide and amino acid sequence of the mAB #8860 scFv linked to the c-myc-tag and the His6-tag (vector p8860-M/H#4c, SEQ.ID.NOs. 101 and 102). Plasmid pMycHis6 was cleaved with SfiI and NotI and the DNA sequence coding for the scFv 8860#11 protein was inserted from pDAP2-8860scFv#µl (see FIG. 29) yielding plasmid p8860-M/H#4c.

FIG. 36 demonstrates the chromogenic FVIII-like activity of the 198/B1 (subclone AB2) scFv fragment (MycHis-198AB2#102) in the presence of 2.3 nM human FIXa. As a positive control 4.8 pM FVIII was used whereas a unrelated scFv (8860-M/H#4c) and plain reaction buffer (IZ) served as negative controls.

Antibodies and Antibody Derivatives

The present invention also comprises the nucleic acids encoding the inventive antibodies and antibody derivatives, expression vectors, hybridoma cell lines, and methods for producing the same.

Antibodies are immunoglobulin molecules having a specific amino acid sequence which only bind to antigens that induce their synthesis (or its immunogen, respectively) or to antigens (or immunogens) which are very similar to the former. Each immunoglobulin molecule consists of two types of polypeptide chains. Each molecule consists of large, identical heavy chains (H chains) and two light, also identical chains (L chains). The polypeptides are connected by disulfide bridges and non-covalent bonds. In vivo, the heavy and light chains are formed on different ribosomes, assembled in the cell, and secreted as intact immunoglobulins (Roitt I. et al., in: Immunology, second ed., 1989).

**6**

The inventive antibodies and antibody derivatives and organic compounds derived there from comprise human and animal monoclonal antibodies or fragments thereof, single chain antibodies and fragments thereof and miniantibodies, bispecific antibodies, diabodies, triabodies, or di-, oligo- or multimers thereof. Also included are peptidomimetics or peptides derived from the antibodies according to the invention, e.g. they comprise one or several CDR regions, preferably the CDR3 region.

Further included are human monoclonal antibodies and peptide sequences which, based on a structure activity connection, are produced through an artificial modeling process (Greer J. et al., J. Med. Chem., 1994, Vol. 37, pp. 1035–1054).

The term factor IX/IXa activating antibodies and antibody derivatives may also include proteins produced by expression of an altered, immunoglobulin-encoding region in a host cell, e.g. "technically modified antibodies" such as synthetic antibodies, chimeric or humanized antibodies, or mixtures thereof, or antibody fragments which partially or completely lack the constant region, e.g. Fv, Fab, Fab' or F(ab')₂ etc. In these technically modified antibodies, e.g., a part or parts of the light and/or heavy chain may be substituted. Such molecules may, e.g., comprise antibodies consisting of a humanized heavy chain and an unmodified light chain (or chimeric light chain), or vice versa. The terms Fv, Fc, Fd, Fab, Fab' or F(ab)₂ are used as described in the prior art (Harlow E. and Lane D., in "Antibodies, A Laboratory Manual", Cold Spring Harbor Laboratory, 1988).

The present invention also comprises the use of Fab fragments or F(ab)₂ fragments which are derived from monoclonal antibodies (mAb), which are directed against factor IX/factor IXa and cause an increase of the procoagulant activity of factor IXa.

Preferably, the heterologous framework regions and constant regions are selected from the human immunoglobulin classes and isotypes, such as IgG (subtypes 1 to 4), IgM, IgA and IgE. In the course of the immune response, a class switch of the immuno-globulins may occur, e.g. a switch from IgM to 1gG; therein, the constant regions are exchanged, e.g. from p to y. A class switch may also be caused in a directed manner by means of genetic engineering methods ("directed class switch recombination"), as is known from the prior art (Esser C. and Radbruch A., Annu. Rev. Immunol., 1990, Vol. 8, pp. 717–735). However, the antibodies and antibody derivatives according to the present invention need not comprise exclusively human sequences of the immunoglobulin proteins.

In one particular embodiment, a humanized antibody comprises complement determining regions (CDRs) from murine monoclonal antibodies which are inserted in the framework regions of selected human antibody sequences. However, human CDR regions can also be used. Preferably, the variable regions in the human light and heavy chains are technically altered by one or more CDR exchanges. It is also possible to use all six CDRs or varying combinations of less than six CDRs.

The humanized antibody according to the present invention preferably has the structure of a human antibody or of a fragment thereof and comprises the combination of characteristics necessary for a therapeutic application, e.g., the treatment of coagulation disorders in patients, preferably factor VIII inhibitor patients.

A chimeric antibody differs from a humanized antibody in that it comprises the entire variable regions including the framework regions of the heavy and light chains of non-human origin in combination with the constant regions of

US 7,033,590 B1

**7**

both chains from human immuno-globulin. A chimeric antibody consisting of murine and human sequences may, for example, be produced. According to the present invention, the antibodies and antibody derivatives may also be single chain antibodies or miniantibodies (scFv fragments, which, e.g., are linked to proline-rich sequences and oligomerisation domains, e.g. Pluckthun A. and Pack P., Immunotechnology, 1997, Vol. 3, pp. 83–105) or single chain Fv (sFv) which incorporate the entire antibody binding region in one single polypeptide chain. For instance, single chain antibodies may be formed by linking the V-genes to an oligonucleotide which has been constructed as a linker sequence and connects the C terminus of the first V region with the N terminus of the second V region, e.g. in the arrangement VH-Linker-VL or VL-Linker-$V_H$; both, $V_H$ $^{and}$ $v_L$ thus may represent the N-terminal domain (Huston JS et al., Int. Rev. Immunol., 1993, Vol. 10, pp. 195–217; Raag R. and Whitlow M., FASEB J., 1995, Vol. 9, pp. 73–80). The protein which can be used as linker sequence may, e.g., have a length of up to 150 Å, preferably up to 80 Å, and more preferably up to 40 Å. Linker sequences containing glycine and serine are particularly preferred for their flexibility, or glutamine and lysine, respectively, for their solubility. The choice of the amino acid is effected according to the criteria of immunogenicity and stability, also depending on whether or not these single chain antibodies are to be suitable for physiological or industrial applications (e.g. immunoaffinity chromatography). The single chain antibodies may also be present as aggregates, e.g. as trimers, oligomers or multimers. The linker sequence may, however, also be missing, and the connection of the $V_H$ and $V_L$ chains may occur directly.

Bispecific antibodies are macromolecular, heterobifunctional cross-linkers having two different binding specificities within one single molecule. In this group belong, e.g., bispecific (bs) IgGs, bs IgM-IgAs, bs IgA-dimers, bs (Fab')$_2$, bs(scFv)$_2$, diabodies, and bs bis Fab Fc (Cao Y. and Suresh M. R., Bioconjugate Chem., 1998, Vol. 9, pp. 635–644).

By peptidomimetics, protein components of low molecular weight are understood which imitate the structure of a natural peptide component, or of templates which induce a specific structure formation in an adjacent peptide sequence (Kemp DS, Trends Biotechnol., 1990, pp. 249–255). The peptidomimetics may, e.g., be derived from the CDR3 domains. Methodical mutational analysis of a given peptide sequence, i.e. by alanine or glutamic acid scanning mutational analysis, allows for the identification of peptide residues critical for procoagulant activity. Another possibility to improve the activity of a certain peptide sequence is the use of peptide libraries combined with high throughput screening.

The term antibodies and antibody derivatives may also comprise agents which have been obtained by analysis of data relating to structure-activity relationships. These compounds may also be used as peptidomimetics (Grassy G. et al., Nature Biotechnol., 1998, Vol. 16, pp. 748–752; Greer J. et al., J. Med. Chem., 1994, Vol. 37, pp. 1035–1054).

Examples of hybridoma cells expressing the antibodies or antibody derivatives according to the invention were deposited on 9 Sep. 1999 under the numbers 99090924 (#198/A1), 99090925 (#198/B1) and 99090926 (#198/BB1) and on Dec. 16, 1999 under the numbers 99121614 (#193/A0), 99121615 (#196/c4), 99121616 (#198/D1), 99121617 (198/T2), 99121618 (#198/G2), 99121619 (#198/AC1) and 99121620 (#198/U2) according to the Budapest Treaty.

Methods of Production:

The antibodies of the present invention can be prepared by methods known from the prior art, e.g. by conventional

**8**

hybridoma techniques, or by means of phage display gene libraries, immunoglobulin chain shuffling or humanizing techniques (Harlow E. and Lane D., in: Antibodies, A Laboratory Manual, Cold Spring Harbor Laboratory, 1988). The production of the inventive antibodies and antibody derivatives may, for instance, be made by conventional hybridoma techniques (Antibodies, A Laboratory Manual, Cold Spring Harbor Laboratory, 1988, Eds. Harlow and Lane, pp. 148–242). According to the present invention, human and also non-human species may be employed therefor, such as cattle, pigs, monkeys, chickens and rodents (mice, rats). Normal, immunocompetent Balb/c mice or FIX-deficient mice may, e.g., be used (factor IX-deficient mice may be obtained from Dr. Darrel Stafford from the University of North Carolina, Chapel Hill). Immunization may, e.g., be effected with factor IX, factor IXaα or completely activated factor IXaβ, or with fragments thereof.

The hybridomas are selected with a view to the fact that the antibodies and antibody derivatives in the supernatants of the hybridoma cells bind to factor IX/factor IXa and cause an increase of the procoagulant activity of factor IXa. The increase in the procoagulant activity may, e.g., be proven by assaying methods as known from the prior art for the measurement of factor VIII-like activity, e.g. chromogenic assays.

Alternatively, the antibodies and antibody derivatives of the invention may also be produced by recombinant production methods. In doing so, the DNA sequence of the antibodies according to the invention can be determined by known techniques, and the entire antibody DNA or parts thereof can be expressed in suitable systems. Recombinant production methods can be used, such as those involving phage display, synthetic and natural libraries, expression of the antibody proteins in known expression systems, or expression in transgenic animals (Jones et al., Nature, 19B6, Vol. 321, pp. 522–525; Phage Display of Peptides and Proteins, A Laboratory Manual, 1996, Eds. Kay et al., pp. 127–139; U.S. Pat. No. 4,873,316; Vaughan T. J. et al., Nature Biotechnology, 1998, pp. 535–539; Persic L. et al., Gene, 1997, pp. 9–18; Ames R. S. et al., J.Immunol.Methods, 1995, pp. 177–186).

The expression of recombinantly produced antibodies may be effected by means of conventional expression vectors, such as bacterial vectors, such as pBr322 and its derivatives, pSKF or eukaryotic vectors, such as pMSG and SV40 vectors. Those sequences which encode the antibody may be provided with regulatory sequences which regulate the replication, expression and secretion from the host cell. These regulatory sequences comprise promoters, e.g. CMV or SV40, and signal sequences.

The expression vectors may also comprise selection and amplification markers, such as the dihydrofolate reductase gene (DHFR), hygromycin-B phosphotransferase, thymidine-kinase etc.

The components of the vectors used, such as selection markers, replicons, enhancers etc., may either be commercially obtained or prepared by means of conventional methods. The vectors may be constructed for the expression in various cell cultures, e.g. for mammalian cells such as CHO, COS, fibroblasts, insect cells, yeast or bacteria, such as *E. coli*. Preferably, those cells are used which allow for an optimal glycosylation of the expressed protein. Particularly preferred is the vector pBax (cf. FIG. **17**) which is expressed in CHO cells or in SK-Hep.

The production of Fab fragments or F(ab)$_2$ fragments may be effected according to methods known from the prior art, e.g. by cleaving a mAb with proteolytic enzymes, such as

US 7,033,590 B1

**9**

papain and/or pepsin, or by recombinant methods. These Fab and $F(ab)_2$ fragments may also be prepared by means of a phage display gene library (Winter et al., 1994, Ann. Rev. Immunol., 12: 433–455).

The antibody derivatives may also be prepared by means of methods known from the prior art, e.g. by molecular modeling, e.g. from Grassy G. et al., Nature Biotechnol., 1998, Vol. 16, pp. 748–752, or Greer J. et al., J. Med. Chem., Vol. 37, pp. 1035–1054, or Rees A. et al., in: "Protein Structure Prediction: A practical approach", ed. Sternberg M. J. E., IRL press, 1996, chapt. 7–10, pp. 141–261.

The purification of the inventive antibodies and antibody derivatives may also be carried out by methods described in the prior art, e.g., by ammonium sulfate precipitation, affinity purification (protein G-Sepharose), ion exchange chromatography, or gel chromatography. The following methods may be used as the test methods to show that the antibodies and antibody derivatives of the present invention bind to factor IX/factor IXa, increase the procoagulant activity of factor IXa or have factor VIII-like activity.: the one step coagulation test (Mikaelsson and Oswaldson, Scand. J. Haematol., Suppl., 33, pp. 79–86, 1984) or the chromogenic tests, such as COATEST VIII:C® (Chromogenix) or Immunochrom (IMMUNO). In principle, all the methods used for determining factor VIII activity may be used. As the control blank value for the measurements, e.g., unspecific mouse-IgG antibody may be used.

The present antibodies and antibody derivatives are suitable for therapeutic use in the treatment of coagulation disorders, e.g. in the case of hemophilia A, for factor VIII inhibitor patients etc. Administration may be effected by any method suitable to effectively administer the therapeutic agent to the patient, e.g. by oral, subcutaneous, intramuscular, intravenous or intranasal administration.

Therapeutic agents according to the invention may be produced as preparations which comprise a sufficient amount of antibodies or of antibody derivatives as the active agent in a pharmaceutically acceptable carrier substance. These agents may be present either in liquid or in powderized form. Moreover, the preparations according to the invention may also comprise mixtures of different antibodies, the derivatives thereof and/or organic compounds derived therefrom, as well as mixtures consisting of antibodies and factor $1\times$ and/or factor IXa. Factor IXa may be present as factor IXaα and/or factor IXaβ. An example of an aqueous carrier substance is, e.g., saline. The solutions are sterile, sterilisation being effected by conventional methods.

The antibodies or antibody derivatives according to the invention may be present in lyophilized form for storage and be suspended in a suitable solvent before administration. This method has proven generally advantageous for conventional immunoglobulins, and known lyophilisation and reconstitution methods may be applied in this case.

Moreover, the antibodies and antibody derivatives according to the invention may also be used for industrial applications, e.g. for the purification of factor IX/factor IXa by means of affinity chromatography, or as a component of detection methods (e.g. ELISA assays), or as an agent for identification of and interaction with functional domains of a target protein.

The present invention will be described in more detail by way of the following examples and drawing figures, to which, however, it shall not be restricted.

EXAMPLES

Example 1

Immunization of Immunocompetent Mice and Generation of Anti-FIX/IXa Antibody Secreting Hybridoma Cells

Groups of 1–3 normal immunocompetent 5–8 week old Balb/c mice were immunized with 100 μg antigen (100 μl

**10**

doses) via the intraperitoneal (i.p.) route. In a typical experiment, mice were inoculated with either recombinant human coagulation factor (F) IX (Benefix™), human activated FIXα (Enzyme Research Laboratories, Lot: FIXα 1190L) or human FIXaβ (Enzyme Research Laboratories, Lot: HFIXaβ 1332 AL,) adjuvanted with $Al(OH)_3$ or KFA.

Individual mice were boosted at various times with 100 μg antigen (100l1 doses, i.p) and sacrificed two days later. Spleen cells were removed and fused to P3x63-Ag8 6.5.3 myeloma cells essentially as described by Lane et al., 1985 (J. Immunol. Methods, Vol. 81, pp. 223–228). Each fusion experiment was individually numbered, i.e. #193, 195, 196 or 198.

Hybridoma cells were grown in 96 well plates on a macrophage feeder layer (app. $10^5$ cells/ml) and selected in HAT-medium (RPMI-1640 medium supplemented with antibiotics, 10% FCS, Na-pyruvate, L-glutamine, 2-mercaptoethanol and HAT (HAT 100x: $1.0 \times 10^{-2}$M hypoxanthine in $H_2O$ (136.1 mg/100 ml $H_2O$), $4.0 \times 10^{-5}$M aminopterin in $H_2O$ (1.76 mg/100 ml $H_2O$) and $1.6 \times 10^{-3}$M thymidine in $H_2O$ (38.7 mg/100 ml $H_2O$). Medium was first changed after 6 days and thereafter twice a week. After 2–3 weeks HAT-medium was changed to HT-medium (RpMI-1640 supplemented with antibiotics, 10% FCS, Na-pyruvate, L-glutamine, 2-mercaptoethanol and HT) and later on (after additional 1–2 weeks) to normal growth medium (RPMI-1640 medium supplemented with 10% FCS, Na-pyruvate, L-glutamine and 2-mercaptoethanol) (see: HYBRIDOMA TECHNIQUES, EMBO, SKMB Course 1980, Base1).

In another set of experiments FIX deficient C57B16 mice (Lin et al., 1997, Blood, 90: 3962) were used for immunization and subsequent hybridoma production. Since FIX knockout (k.o.) mice do not express endogenous FIX, the anti (a)-FIX antibody spectrum achievable is supposed to be different compared to normal Balb/c mice (due to lack of tolerance).

Example 2

Assaying for FVIII-like Activity in Supernatants of Anti-Fix/FIXa Antibody Secreting Hybridoma Cells

In order to assay the FVIII-like activity of anti-FIXa antibodies secreted by hybridoma cells, the commercially available test-kit COATEST VIII:C/4® (Chromogenix) was employed. The assay was done essentially as described by the manufacturer with the following modifications:

To allow high throughput screening, the assay was down-scaled to microtiter plate format. Briefly, 25 μl aliquots of hybridoma supernatants were transferred to microtiter plate (Costar, #3598) wells and warmed to 37° C. Chromogenic substrate (S-2222), synthetic thrombin inhibitor (1–2581), factor (F) IXa and FX were reconstituted in sterile water and FIXa/FX was mixed with phospholipids according to the supplier's protocol. Per reaction, 50 μl of the phospholipid/ FIXa/FX solution were combined with 25 μl CaCl$_2$ (25 mM) and 50 μl of the substrate/inhibitor cocktail. To start the reaction, 125 μl of the premix were added to the hybridoma supernatant in the microtiter plates and incubated at 37° C. Absorbency at 405 nm and 490 nm of the samples was read at various times (30 min to 12 h) against a reagent blank (MLW, cell culture medium instead of hybridoma supernatant) in a Labsystems iEMS Reader MF™ microtiter plate reader. FVIII-like activity of the samples was calculated by comparing the absorbency of the samples against the absorbency of a diluted FVIII reference standard (IMMUNO AG # 5T4AR00) using GENESIS™ software.

US 7,033,590 B1

**11**

The results of a screening for FVIII-like activity in hybridoma cell culture supernatants are shown in FIG. **1**. Pre-selected clones derived from fusion experiments #193, #195 and #196 (see above) were examined in a chromogenic FVIII assay as described. Clones 193/M1, 193/N1 and 193/P1 are subclones derived from the master clone 193/C0 (see below). Master clone 195/10 was derived from fusion experiment #195 and clones 196/A0, 196/B0 and 196/C0 were derived from fusion experiment #196. In a typical screening experiment, approximately 1000 clones (in 96 wells) from a single fusion experiment were pre-screened for FVIII-like activity. Subsequently, selected clones were grown on a larger scale (3–5 ml supernatant) and re-analyzed in a chromogenic assay. As a negative control cell culture medium was assayed on each plate (MLW).

Wells either exhibiting high FVIII-like activity or substantial FVIII-like activity were subjected to subcloning procedures. The selection and subcloning process is exemplified for the screening and subcloning of an IgG producing cell line (i.e. 193/C0) but has been done exactly the same way for an IgM clone (i.e. 196/C0, see below, FIG. **5**) producing clone.

The selection process was done by initially plating all hybridoma cell clones from a single fusion experiment on ten 96 well plates thereby creating the so called "master plates". Singular positions (wells) on a master plate usually contained more than one hybridoma cell clone (usually 3 to 15 different clones). Subsequently, the antibody secreted by only several thousand cells was tested. These cells grew under conditions suboptimal for antibody production, which is known to be best in dying cells. So the expected specific anti-FIX antibody concentration in the supernatant may be in the range of 10–12 to 10–14 M. This explains why incubation periods had to be extended compared to standard FVIII assays.

Results of an IgG mediated FVIII-like activity in hybridoma cell culture supernatants of a master plate are shown in FIG. **2**. Supernatants were examined in a chromogenic FVIII assay. Shown are the results derived from the fifth master plate of fusion experiment number #193 (Balb/c mice immunized with FIXaα). Absorbance was read after 4 hours of incubation at 37° C. Position ES was identified as exhibiting FVIII like activity significantly higher than the blank (MLW). This cell pool was designated 193/C0 and was further subcloned (FIG. **3**). As each well of the master plate contains more than one hybridoma cell clone, cells of a single positive well were expanded and plated at a calculated cell density of 2–0.2 cells/well on a 96 well plate. Again, the supernatants were tested for FVIII-like activity and positive positions were subjected to another round of subcloning. Typically three to four rounds of subcloning were performed with each clone displaying FVIII-like activity to obtain homogenous cell populations. Here the results of the chromogenic assay of the 193/C0 subclones are shown. Absorbance was read after a 4 hour incubation period at 37° C. Positions A6 and D5 exhibited substantial FVIII-like activity and were named 193/M1 and 193/P1, respectively. These two clones were subjected to another round of subcloning. As a negative control plain cell culture medium was assayed on each plate (MLW(H1)).

A comparison of chromogenic FVIII-like activity and FIX-ELISA reactivity of small scale (3 ml) hybridoma cultures is shown in FIG. **4**. Before a decision was made whether a master clone (or subclone) was to be further subcloned, clones were grown at a 3–5 ml scale and the supernatants were checked again. This graph shows the FIX specific ELISA results and the FVIII-like chromogenic

**12**

activity of the master clone 193/C0 and all its subclones which were identified as positives and re-checked. Blanks (absorbency of the chromogenic reagent itself) were subtracted in the case of the ELISA as well as the chromogenic assay readings depicted here. Clone 193/M1 was subcloned and yielded clones 193/V2, 193/M2 and 193/U2. The other clones of the 2nd round came from 193/P1, 193/AB2 and 193/P2 were subcloned. 193/AF3, 193/AB3 and 193/AE3 are subclones of 193/AB2. The other clones of the 3rd round came from 193/P2. Finally 193/AF3 (→193/AF4), AE3 (→193/AE4, 193/AL4, 193/AN4 and 193/AO4) and 193/AD3 (→193/AG4, 193/AH4, 193/AD4, 193/AI4, 193/AK4) were subcloned.

From each fusion experiment, several (5–15) master clones (selected from the master plate) were identified and subjected to subcloning. After 3 rounds of sub-cloning, most of the cell lines were homogenous as demonstrated by ELISA and chromogenic activity analysis (see FIG. **4**) as well as by cDNA sequence analysis. A specific master clone and all its subclones produce the same FIX/FIXa binding antibody. However, there are huge differences in the antibody protein sequences of clones derived from different master clones (see Example 11). Most hybridoma cell lines express antibodies from the IgG subclass (i.e. clones #193, #198, like 198/A1, 198/B1, 198/BB1). However, we were also able to select some clones expressing IgM antibodies.

The chromogenic activity of hybridoma supernatant of some important master clones and subclones was determined. Absorbance was measured after a 1 h 30 min and 3 h 30 min incubation period at 37° C. (FIG. **5**). In contrast to all the clones from the 193rd fusion, clone 196/C0 and its subclone 196/AP2 produced a FIX/FIXa-specific IgM antibody that gave a strong chromogenic activity even after a short period of incubation.

The following cell lines have been deposited with the European Collection of Cell Cultures (ECACC) in accordance with the Budapest Treaty: 198/B1 (ECACC No. 99090925, deposited Sep. 9, 1999); 198/A1 (ECACC No. 99090924, deposited Sep. 9, 1999); 198/BB1 (ECACC No. 99090926, deposited Dec. 16, 1999); 193/AO (ECACC No. 99121614, deposited Dec. 16, 1999); 196/C4 (ECACC No. 99121615, deposited Dec. 16, 1999); 198/DI (ECACC No. 99121616, deposited Dec. 16, 1999); 198/T2 (ECACC No. 99121617, deposited Dec. 16, 1999); 198/G2 (ECACC No. 99121618, deposited Dec. 16, 1999); 198/AC1 (ECACC No, 99121619, deposited Dec. 16, 1999); and 198/U2 (ECACC No. 99121620, deposited Dec. 16, 1999). The address of the ECACC is Salisbury. Wiltshire SP4 OJG, UK.

To do a more in depth analysis of the biochemical properties of certain antibodies, homogenous hybridoma cell lines expressing different antibodies with FVIII-like activity were expanded and used to express the antibody in question on a larger scale (100–1000 ml). These antibodies were affinity purified (see Example 3) prior to being used in further experiments.

Example 3

Factor IX/FIXa$_{(α,β)}$ Binding Properties of
Antibodies Exhibiting FIX/FIXa Activating Activity

Factor IX and the two activated forms of FIX, FIXaα and FIXaβ (FIX/FIXa$_{(α,β)}$) were diluted in TBS (25 mM Tris HCl, 150 mM NaCl, pH 7.5) to a final concentration of 2 μg/ml. Nunc Maxisorp ELISA plates were coated with 100 μl FIX/FIXa$_{(α,β)}$ solution according to standard procedures (4° C., overnight) and washed several times with TBST

US 7,033,590 B1

**13**

(TBS, 0.1% (v/v) Tween 20). 50 µl hybridoma supernatant was diluted 1:1 with 50 µl TBST/2% BSA and added to the coated ELISA plate. After an incubation period of 2 h at room temperature (RT), plates were washed 4 times with TBST and incubated (2 h, RT) with 100 µl/well of a 1:25000 dilution (in TBST/1% BSA) of an anti-mouse IgG (Fc-specific) peroxidase conjugated antibody (Sigma, #A-0168). Wells were washed 5 times with TBST and finally stained with 100 µl freshly prepared staining solution (10 ml 50M sodium citrate, pH 5 supplemented with 100 µl OPD (60 mg OPD/ml) and 10 µl 30% $H_2O_2$). The reaction was stopped by the addition of 50 ml $H_2S_4$ and the optical density recorded at 492 nm and 620 nm in a Labsystems iEMS Reader MF™ microtiter plate reader employing GENESIS™ software.

In certain cases, instead of an anti-mouse IgG ELISA, an anti-mouse IgM ELISA was carried out.

Purification of Mouse-IgG from Hybridoma Cell Culture Supernatants

Hybridoma supernatant (100–500 ml) was supplemented with 200 mM Tris/HCl buffer (pH 7.0) and solid NaCl to give final concentrations of 20 mM Tris and 3M NaCl, respectively. The supernatant was then clarified by centrifugation at 5500×g for 10 minutes. A 1 ml protein G affinity chromatography column (Protein G Sepharose Fast Flow, Amersham-Pharmacia) was washed with 15 ml 20 mM Tris/Cl pH 7.0 and afterwards equilibrated with 10 ml of 20 mM Tris/Cl buffer pH 7.0 containing 3M NaCl. The hybridoma supernatant containing 3M NaCl was then loaded onto the column by gravity. The column was washed with 15 ml of 20 mM Tris/Cl buffer, pH 7.0, containing 3M NaCl. Bound IgG was further eluted with 12 ml glycine/HCl buffer pH 2.8 and 1 ml fractions were collected. 100 µl of 1M Tris pH 9.0 were added to each fraction for neutralization. Fractions containing the IgG were identified by mixing 50>1 with 150 µl of a staining solution (BioRad concentrate, 1:5 diluted with water) in wells of a microplate. Positive fractions were pooled, concentrated to 1 ml in an ultrafiltration concentrator device (Centricon Plus 20, Amicon) according to the manufacturer. The concentrate was diluted with 19 ml TBS (20 mM Tris/Cl buffer pH 7.0 containing 150 mM NaCl) and again concentrated to 1 ml. The diluting-concentrating step was repeated for two more times in order to bring IgG into TBS.

Purification of Mouse-IgM from Hybridoma Cell Supernatants

100–500 ml of hybridoma cell culture supernatant were concentrated to 5–10 ml either with an ultra-filtration concentrator device (Centricon Plus 20, Amicon) according to the manufacturer or by ammonium sulfate precipitation (40% saturation, 0° C.) and redissolving the precipitate with 5–10 ml of TBS. In either case the concentrate was dialyzed against 20 mM Tris Cl buffer pH 7.4 containing 1.25M NaCl and further concentrated to 1 ml in a Centricon Plus 20, (Amicon) ultrafiltration device. IgM was purified from this concentrate with the Immunopure IgM Purification Kit (Pierce) according to the manufacturer. Fractions collected during elution from the maltose binding protein-column were tested for IgM, pooled, concentrated and brought into TBS as described for IgG.

Determination of IgG Concentrations in Purified Preparations

Total IgG content 280 nm−extinction of appropriate dilutions were measured. E280=1.4 corresponds to 1 mg/ml protein.

Factor IXa Specific IgG (Quantitative ELISA)

Wells of a microplate (Nunc Maxisorp) were incubated with 2 µg/ml factor IXa diluted in TBS (25 mM Tris/HCl pH

**14**

7.5 containing 150 mM NaCl) overnight at 4° C. Wells were washed four times with TBST (25 mM Tris/HCl pH 7.5 containing 150 mM NaCl and 0.1% (v/v) Tween 20). As a standard monoclonal AB the HIX1 anti-FIX (accurate) was used. Standard and samples were diluted in TBST containing 2%(w/v) BSA. The standard dilution series and appropriate dilutions of the samples were incubated on the ELISA-plate for 2 hours at room temperature. Plates were washed 4 times with TBST and incubated (2 h, RT) with 100 µl/well of a 1:25000 dilution (in TBST/1% BSA) of an anti-mouse IgG (Fc-specific) peroxidase conjugated antibody (Sigma, #A-0168) FIXa. Wells were washed 5 times with TBST and finally stained with 100 µl freshly prepared staining solution (10 ml 50 mM sodium citrate, pH 5 supplemented with 100 µl OPD (60 mg OPD/ml) and 10 µl 30% $H_2O_2$). The reaction was stopped by the addition of 50 ml $H_2SO_4$ and after 30 minutes the optical density was recorded at 492 nm and 620 nm in a Labsystems iEMS Reader MF™ microtiter plate reader employing GENESIS™ software.

Example 4

Anti-FIX/FIXa Antibodies Exhibiting FVIII-like Activity in a Chromogenic FVIII Assay

Several anti-FIX/FIXa antibody producing hybridoma clones were subcloned up to four times and the resulting monoclonal hybridoma cell line used to produce monoclonal antibody containing supernatant. IgG isotype antibodies derived from these supernatants were purified over affinity columns and dialyzed against TBS (see above). IgM antibodies were used as unpurified supernatant fractions. The following experiments were done with two sets of representative antibodies: 193/AD3 and 198/AC1/1 (IgG isotype, the antibody 198/AC1/1 is a preparation from the parent 198/AC1 hybridoma clone, i.e. that a (frozen) vial containing 198/AC1 cells is cultivated and antibodies are produced. The supernatant is then used for these experiments.) and 196/AF2 and 196/AF1 (IgM isotype) (FIG. **6**A and FIG. **6**B). Briefly, 25 µl aliquots of monoclonal antibody containing sample (unpurified hybridoma supernatant or, where indicated, a certain amount of FIX specific antibody) were transferred to microtiter plate wells and warmed to 37° C. Chromogenic substrate (S-2222), synthetic thrombin inhibitor (I-2581), factor (F) IXa and FX were reconstituted in sterile water and FIXa/FX was mixed with phospholipids according to the supplier's protocol. Per reaction, 50 µl of the phospholipid/FIXa/FX solution were combined with 25 µl CaCl₂ (25 mM) and 50 µl of the substrate/inhibitor cocktail. To start the reaction, 125 µl of the premix were added to the monoclonal antibody solution in the microtiter plates and incubated at 37° C. Absorbance at 405 nm and 490 nm of the samples was read at various times (5 min to 6 h) against a reagent blank (cell culture medium instead of hybridoma supernatant) in a Labsystems iEMS Reader MF™ microtiter plate reader using GENESIS™ software.

The time course of FVIII-like activity exhibited by monoclonal antibodies 193/AD3 (IgG isotype) and 196/AF2 (IgM isotype) compared to human FVIII (12 and 16 mU/ml), TBS and to cell culture medium is shown in FIG. **6**A. After a lag phase, both antibodies give rise to chromogenic substrate cleavage, as judged by the increasing optical density measurable at 405 nm wavelength.

The time course of FVIII-like activity exhibited by monoclonal antibodies 198/AC1/1 (IgG isotype, 10 µg/ml) and 196/AF1 (IgM isotype, unpurified supernatant) compared to human FVIII (16 mU/ml) and 10 µg/ml of mouse IgG is

US 7,033,590 B1

**15**

shown in FIG. **6**B. After a lag phase, both antibodies give rise to chromogenic substrate cleavage, as judged by the increasing optical density measurable at 405 nm wavelength.

Example 5

FVIII-like Activity Exhibited by Anti-FIX/FIXa-
antibodies Generates Factor Xa and is
Phospholipid, FIXa/FX and $Ca^{2+}$ Dependent

Factor VIII activity is usually determined with a chromogenic assay and/or an APTT-based clotting assay. Both types of assays rely on FVIIIa/FIXa-mediated factor Xa generation. In the case of a chromogenic FVIII assay, the factor Xa produced will subsequently react with a chromogenic substrate, which can be monitored spectroscopically, e.g., in an ELISA reader. In an APTT based clotting assay free factor Xa will assemble with FVa on a phospholipid surface in the so-called prothrombinase complex and activate prothrombin to thrombin. Thrombin in turn gives rise to fibrin generation and finally to clot formation. Central to the two assay systems is generation of factor Xa by the FVIIIa/FIXa complex.

To demonstrate that the FVIII-like activity exhibited by anti-FIX/FIXa-antibodies indeed generates factor Xa, the following experiment was carried out. Several 25 μl aliquots of unpurified hybridoma supernatant 196/AF2 (IgM isotype) were transferred to microtiter plate wells and warmed to 37° C. As a positive control, 16mU of Recombinate™ were diluted into hybridoma medium (196 HM 007/99) and treated exactly the same way as the hybridoma supernatant. As a negative control, plain hybridoma medium was used. Chromogenic substrate (S-2222), synthetic thrombin inhibitor (I-2581), factor IXa and FX were reconstituted in sterile water and FIXa/FX was mixed with phospholipids according to the supplier's protocol. Pefabloc Xa®, a factor Xa specific proteinase inhibitor (Pentapharm, LTD), was reconstituted with water to a final concentration of 1 mM/l. Per reaction, 50μl of the phospholipid/FIXa/FX solution were combined with 25 μl $CaCl_2$ (25 mM) and 50 μl of the substrate/thrombin inhibitor cocktail. To start the reaction, 125 μl of the premix were added to the samples in the microtiter plates and incubated at 37° C. Where indicated, 35 μM Pefabloc Xa® were added. Absorbance at 405 nm and 490 nm was read at various times (every 5 minutes to 6 h) against a reagent blank (cell culture medium) in a Labsystems iEMS Reader MF™ microtiter plate reader employing the GENESIS™ software.

The results of the factor IXa stimulation by the FVIII-like activity exhibited by the IgM anti FIX/FIXa-antibody 196/AF2 in generating actor Xa as judged by the readily measurable cleavage of the chromogenic substrate S-2222 (compare "16 mU FVIII" and "196/AF2") is shown in FIG. **7**A. Factor Xa activity is effectively blocked by the FXa specific inhibitor "Pefabloc Xa®" (compare "196/AF2" versus "196/AF2 351M Pefabloc Xa®") indicating that indeed FXa was generated.

The same experiment was performed using purified IgG preparations of clone 198/AM1 (FIG. **7**B). Purified IgG was diluted in TBS to a final concentration of 0.4 mg/ml and 25 μl (i.e. a total of 10 μg), transferred to microtiter plate wells and warmed to 37° C. As a positive control, 6 mU plasma derived FVIII was used. 10 μg unspecific mouse IgG (Sigma, I-5381) served as a negative control. The assay was performed as described above.

Further experiments show the factor IXa stimulation by the FVIII-like activity exhibited by the IgG anti-FIX/FIXa-

**16**

antibody 198/AM1 generates factor Xa as judged by the readily measurable cleavage of the chromogenic substrate S-2222 (FIG. **7**B). Again factor VIII and antibody 198/AM1 generate FXa which is effectively blocked by the FXa specific inhibitor "Pefabloc Xa®". As a negative control, unspecific mouse IgG (Sigma, 15381) was assayed.

In another set of experiments, the dependence of the FVIII-like activity of either purified anti-FIX/FIXa-antibodies (IgM, FIG. **8**A) or of unpurified antibodies derived from cell culture supernatants (IgG, FIG. **8**B) on the presence of phospholipids (PL), FIXa/FX and $Ca^{2+}$ was demonstrated. Mouse IgG was used as a control (FIG. **8**C). Factor VIII-like activity was assayed essentially as described above. When indicated, either the FIXa/FX mixture, the PL or $Ca^{2+}$ was omitted from the reaction. Absorbency at 405 nm and 490 nm of the samples was read at various times against a reagent blank (buffer instead of purified antibody) in a Labsystems iEMS Reader MF™ microtiter plate reader. The results are shown in FIG. **8**A, FIG. **8**B and FIG. **8**C.

The dependence of the FVIII-like activity of purified anti-FIXa-antibody 198/AC1/1 (IgG isotype, concentration used throughout the assay was 10 μg/ml) on the presence of phospholipids (PL), FIXa/FX and $Ca^{2+}$ is further shown in FIG. **8**A. As is easily recognizable, the complete assay, including antibody, PL, $Ca^{2+}$, and FIXa/FX gives rise to a reasonable FXa generation. The dependence of the FVIII-like activity of cell culture supernatant containing unpurified IgM isotype anti-FIX/FIXa-antibody (196/AF1) on the presence of phospholipids, FIXa/FX and $Ca^{2+}$ is shown in FIG. **8**B.

Again, as already shown for the purified IgG preparation (FIG. **8**A), antibody 198/AC1/1, only the complete assay, including PL, $Ca^{2+}$, FIXa/FX, will give a reasonable amount of FXa generation. To demonstrate the specificity of the reaction, total IgG prepared from normal mouse plasma was assayed under the same conditions as above. The results are shown in FIG. **8**C. No FVIII-like activity could be detected. There is, as expected, no activity detectable in the absence of phospholipids, FIXa/FX and $Ca^{2+}$. All experiments were done in a microtiter plate and the OD405 was scanned every 5 minutes for 6 h.

Example 6

Certain anti-FIX/FIXa-antibodies are procoagulant
in the presence of FIXa

During normal hemostasis, FIX becomes initially activated either by the tissue factor (TF)/factor VIIa pathway or later on by activated factor XI (FIXa). Subsequent to its activation, FIXa associates on the platelet surface in a membrane bound complex with activated FVIII. Factor IXa by itself has little or no enzymatic activity towards FX, but becomes highly active in the presence of FVIIIa. To demonstrate that certain anti-FIX/FIXa antibodies have FVIII-like activity and hence are procoagulant in a FVIII deficient human plasma, the following experiment was carried out. Different amounts of antibody 193/AD3 or mouse IgG (as a control) were used in a standard aPTT based one stage clotting assay. Briefly, 100 μl of antibody-containing samples were incubated with 100 μl of FVIII deficient plasma (DP) and with 100 μl of DAPTTIN (PTT Reagent for determining activated Thromboplastin Time; IMMUNO AG) reagent, in a KC10A clotting analyzer. Where indicated, a total amount of 50 ng activated FIX was included in the reaction mixture. After a 4 minute

US 7,033,590 B1

**17**

incubation, the reaction was started by the addition of 100 μl CaCl$_2$ (25 mM). The results are shown in Table 1 and FIG. **9**.

| | clotting time (sec) | |
|---|---|---|
| μg AB | 193/AD3 50 ng FIXa | mouse IgG 50 ngFIXa |
| 9 | 101.6 | 102.5 |
| 4.5 | 95.6 | 103.2 |
| 2.25 | 93.1 | 103.2 |
| 1.8 | 93.7 | 101.9 |
| 1.35 | 91.4 | 103.4 |
| 0.9 | 94.4 | 102.2 |
| 0.45 | 98.1 | 101.9 |
| 0.34 | 97.1 | 103.9 |
| 0.23 | 99.3 | 103.7 |

Table 1: Clotting times of FVIII deficient plasma in an APTT based clotting assay employing various amounts of procoagulant (193/AD3) and control antibody (mouse IgG) in the presence of 50 ng activated FIX (0.01UFIX). The molar ratio of antibody in the reaction and activated FIX is 10:1. The molar ratio between antibody and total FIX (FIX and FIXa, assuming that human FVIII deficient plasma contains 1 U (5% g) FIX) varies between 6:1 (9% g antibody in reaction) and 1:6 (0.23% g antibody in reaction). At the optimal shortening of the clotting time, the molar ratio between antibody and total FIX is 1:1. The clotting time without the addition of FIXa is in the range of 120 seconds.

FIG. **9** is a graphical representation of the clotting times of FVIII deficient plasma in an aPTT based clotting assay employing various amounts of procoagulant (193/AD3) and control (mouse IgG) antibody in the presence of 50 ng activated FIX. There is a clear dose-dependent reduction of the clotting time in samples supplemented with antibody 193/AD3. These results imply that antibody 193/AD3 is procoagulant in the presence of FIXa.

Example 7

Anti-FIX/FIXa-antibodies are Procoagulant in the Presence of FVIII Inhibitors and FIXa

A severe complication of the standard FVIII substitution therapy is the development of alloantibodies directed against FVIII, leading to FVIII neutralization and a condition where the patient's blood will not clot.

To demonstrate that certain anti-FIXa-antibodies have FVIII-like activity even in the presence of FVIII inhibitors, the following experiment was carried out. Different amounts of antibody 193/AD3 or, as a control, mouse IgG were used in a standard APTT based one-stage clotting assay. Briefly, 100 μl antibody samples were incubated with either 100 μl of FVIII deficient plasma (FIG. **10**A) or FVIII inhibitor plasma (inhibitor potency 400 BU/ml), FIG. **10**B) as well as with 100 μl of DAPTTIN reagent, in a KC10A clotting analyzer. In addition, a total amount of 50 ng activated FIXa was included in the reaction mixture. After a 4 minute incubation, the reaction was started by the addition of 100 μl CaCl$_2$ (25 mM). To ensure equal conditions, the experiments employing FVIII deficient plasma and FVIII inhibitor plasma were done side by side. The results are shown in FIGS. **10**A and **10**B. As already shown in Example 6, there is a clear dose-dependent reduction of the clotting time in samples supplemented with antibody 193/AD3 in the presence of FVIII inhibitors.

**18**

Example 8

Anti-FIX/FIXa-antibodies are Procoagulant in the Presence of Defective FVIII and FIXa

To demonstrate that certain anti-FIXa-antibodies have FVIII-like activity in the presence of defective FVIII, the following experiment may be carried out. Increasing amounts of antibody 193/AD3 or, as a control, mouse IgG are used in a standard aPTT-based one stage clotting assay. In this clotting assay, a hemophilia A patient's plasma having very low clotting activity due to the presence of defective FVIII (DF8) is used. Briefly, 100 μl antibody samples are incubated with either 100 μl of DF8 plasma or FVIII deficient plasma as well as with 100 μl of DAPTTIN reagent, in a KC10A clotting analyzer. In addition, a total amount of 50 ng activated FIXa is included in the reaction mixture. After a short incubation, the reaction will be started by the addition of 100 μl CaCl$_2$ (25 mM). To ensure equal conditions, the experiment employing FVIII deficient plasma and DF8 plasma is done side by side.

Example 9

Anti-FIX/FIXa-antibodies with Procoagulant Activity in the Presence of FIXa Distinguish Between Human and Bovine FIXa

FIX/FIXa specific monoclonal antibodies selected from the 198th fusion experiment were purified from the respective hybridoma supernatant and quantified as described in Example 3. These antibodies were analyzed in a modified one-stage clotting assay (as described in Example 6) and some showed procoagulant activity.

The chromogenic activity of these antibody preparations was measured in the following FXa generation kinetic assay: 10 μg of monoclonal antibody (in 25 μl) were transferred to microtiter plate wells and warmed to 37° C. Chromogenic substrate (S-2222), synthetic thrombin inhibitor (I-2581), factor IXa and FX were reconstituted in sterile water and FIXa/FX (both bovine) were mixed with phospholipids according to the supplier's protocol. Per reaction, 50 μl of the phospholipid/FIXa/FX solution were combined with 25 μl CaCl$_2$ (25 mM) and 50 μl of the substrate/inhibitor cocktail. To start the reaction, 125 μl of the premix were added to the monoclonal antibody solution in the microtiter plates and incubated at 37° C. Absorbance at 405 nm and 490 nm of the samples was read at various times (5 min to 2 h) against a reagent blank (25 ml TBS instead of monoclonal antibodies) in a Labsystems iEMS Reader MF™ microtiter plate reader using GENESIS™ software. In parallel, the same reactions were performed except that 50 ng human FIXa were added per reaction. Those antibodies that showed procoagulant activity had no chromogenic activity in the case of bovine FIX, but displayed high activity when human FIXa was present.

FIG. **11** shows the time course of the FVIII-like activity exhibited by the monoclonal antibodies 198/A1, 198/B1 and 198/AP1 with (+) and without (−) addition of 50 ng human FIXaβ. Non-specific polyclonal mouse IgG was used as a control. 198/A1 and 198/B1 show procoagulant activity (similar as 193/AD3 in example 6) whereas 198/AP1 does not. Antibody 198/BB1 had the same activity pattern (data not shown).

Further monoclonal antibodies selected from the 198th fusion experiment include 198/D1 (ECACC NO. 99121616), 198/T2 (ECACC No. 99121617), 198/G2 (ECACC No.9912118), 198/U2 (ECACC No. 99121620).

US 7,033,590 B1

**19**

Example 10

Structure and Procoagulant Activity of Antibody
Derivatives Derived from Anti-FIX/FIXa-
antibodies; Subcloning Antibody Variable Domains
from Hybridoma Cell Lines 193/AD3, 193/K2,
198/A1 and 198/B1 (Clone AB2)

Cloning procedure: Messenger RNA was prepared from
$1 \times 10^{-6}$ hybridoma cells of the respective cell line (either
193/AD3, 193/K2, 198/A1 or 198/B1 (clone AB2)) employ-
ing the "QickPrep® Micro mRNA Purification Kit"
(Pharmacia) according to the manufacturer's instructions.
The corresponding cDNA was produced by retro transcrip-
tion of mRNA using the "Ready-To-Go-You-Prime-First-
Strand Beads kit" (Pharmacia) according to the manufac-
turer's instructions. Heavy and light chain encoding
sequences were converted to the corresponding cDNA
employing a set of primers. To reverse transcribe heavy
chain-specific mRNA (VH), an equimolar mixture of the
oligonucleotides MOCG1-2FOR (5' CTC AAT TTT CTT
GTC CAC CTT GGT GC 3') (SEQ.ID.NO. 1), MOCG3FOR
(5'CTC GAT TCT CTT GAT CAA CTC AGT CT 3')
(SEQ.ID.NO. 2) and MOCMFOR (5' TGG AAT GGG CAC
ATG CAG ATC TCT 3') (SEQ.ID.NO. 3) was used
(RTmix1). In the same reaction tube, light chain-specific
cDNA (VL) was synthesized using primer MOCKFOR-
(5'CTC ATT CCT GTT GAA GCT CTT GAC 3')
(SEQ.ID.NO. 4).

The coding sequences for VH were amplified by PCR
using the primer-sets depicted in FIG. **12** and the specific
cDNA, derived from the reverse transcription mixture
(RTmix1) described above, as the template. VK-chain genes
were amplified using the primer sets depicted in FIG. **13** and
also employing Rtmix1 as a template. The VF-PCR product
was cleaved Sfil-AscI and inserted into Sfil-AscI digested
vector pDAP2 (GeneBank accession no.: U35316). The
pDAP2-VH constructs obtained thereby were named
pDAP2-193AD3/VH, pDAP2-198A1/VH, pDAP2-
198AB2/VH (derived from antibody 198/B1) and pDAP2-
193/K2/VH, respectively. The plasmids were subsequently
cleaved with AscI-NotI and the corresponding AscI-NotI
digested VK-gene PCR product was inserted. The resultant
vectors were designated pDAP2-193/AD3scFv, pDAP2-
198/A1scFv, pDAP2-198/AB2scFv (derived from antibody
198/B1) and pDAP2-193/K2scFv and code for the VH-gene
and the VL-gene of the monoclonal antibodies 193/AD3,
198/A1, 198/AB2 (derived from antibody 198/B1) and
193/K2. Heavy and light chains are linked by the coding
sequence for an artificial, flexible linker ($G_4SGGRASG_4S$;
SEQ ID NO:111); Engelhardt et al., 1994) and enables
expression of the scFv variant of the respective antibody.

In FIG. **14**, the DNA and the deduced protein sequence of
the scFv derived from the hybridoma cell line 193/AD3 are
depicted. Nucleotides 1 to 357 code for the heavy chain
variable domain, nucleotides 358 to 402 code for the arti-
ficial flexible linker and nucleotides 403 to 726 code for the
light chain variable region. The protein sequence of the
CDR3 region of the heavy chain has the sequence YGNSP-
KGFAY (SEQ ID NO:5) and is given in bold letters. The
artificial linker sequence ($G_4SGGRASG_4S$; SEQ ID
NO:111) is shown.

In FIG. **15**, the DNA and the deduced protein sequence of
the scFv derived from the hybridoma cell line 193/K2 is
shown. Nucleotides 1 to 363 code for the heavy chain
variable domain, nucleotides 364 to 408 code for the arti-
ficial flexible linker, and nucleotides 409 to 747 code for the

**20**

light chain variable region. The protein sequence of the
CDR3 of the heavy chain has the sequence DGGHGYGSS-
FDY (SEQ ID NO:6), and is given in bold letters. The
artificial linker sequence ($G_4SGGRASG_4S$; SEQ ID
NO:111) is shown.

In FIG. **16**, the DNA and the deduced protein sequence of
the scFv derived from the hybridoma cell line 198/AB2
(derived from antibody 198/B1) are depicted. Nucleotides 1
to 366 code for the heavy chain variable domain, nucleotides
367 to 411 code for the artificial flexible linker, and nucle-
otides 412–747 code for the light chain variable region. The
protein sequence of the CDR3 region of the heavy chain has
the sequence EGGGFTVNWYFDV (SEQ ID NO:7) and is
given in bold letters. The artificial linker sequence
($G_4SGGRASG_4S$; SEQ ID NO:111) is also shown.

In FIG. **17**, the DNA and the deduced protein sequence of
the scFv derived from the hybridoma cell line 198/A1 are
depicted. Nucleotides 1 to 366 code for the heavy chain
variable domain, nucleotides 367 to 411 code for an artificial
flexible linker, and nucleotides 412–747 code for the light
chain variable region. The protein sequence of the CDR3
region of the heavy chain has the sequence EGGGYYVN-
WYFDV (SEQ ID NO:8) and is given in bold letters. The
artificial linker sequence ($G_4SGGRASG_4S$; SEQ ID
NO:111) is also shown.

Example 11

Procoagulant Activity of Peptides Derived from
CDR3 Regions of Anti-FIX/FIXa-Antibodies

In principle, the antibody molecule can be envisioned as
a biological device for the presentation of a combinatorial
array of peptide elements in three dimensional space (see
Gao et al., 1999, PNAS, 96:6025). Therefore, an antibody
(or an antibody derivative, e.g. scFv, Fab, etc.) can be used
either as a tool for the detection of functionally important
domains of a specific target protein, or on the other hand, for
the delineation of amino acid sequences specifically medi-
ating certain interactions, i.e. activating or enhancing the
activity of FIXa towards the physiological substrate FX. The
latter process has led to the evaluation of a number of heavy
chain CDR3 region (CDR3H) derived peptide sequences as
FIXa enhancing agents.

Enhancing the procoagulant activity of peptides which
exhibit such activity may be accomplished through sequence
variation within the peptide regions critical for mediating the
FIXa activity enhancement. As a possible step towards
peptide sequences with enhanced procoagulant activity, the
binding site of an antibody, i.e. 198/A1 or 198/B1, on the
FIXa molecule is mapped by employing sequence compari-
son analyses, competitive binding assays, Western blot
analyses and competitive ELISA analyses. Since the crystal
structure of FIX is known, molecular modeling is subse-
quently used to improve the fitting of i.e. 198/B1 derived
peptides in the 198/B1 binding site on human FIXa.

On the other hand, methodical mutational analysis of a
given peptide sequence such as 198/A1 or 198/B1 CDR3H
derived peptide sequences by e.g., "alanine scanning muta-
tional analysis" allows for the identification of peptide
residues critical for procoagulant activity. Another way to
improve the activity of a certain peptide sequence is the use
of peptide libraries combined with high throughput screen-
ing.

The antigen binding site of an antibody is derived from
the juxtaposition of the six "complement determining
regions (CDR's)" at the N-terminal end of the VL-HL dimer

US 7,033,590 B1

**21**

(or Fv region). The contribution of a single CDR to the antibody specificity for a given antigen may vary considerably, but in general it is thought that the CDR3 region of the heavy chain (CDR3H) is of special influence, i.e. the particular protein sequence of CDR3$_H$ region may be highly important for antigen recognition. The length of CDR3H regions has been reported to vary considerably and is in the range of 4–25 amino acids (Borrebaeck, p. 16).

An example of a mutational analysis of peptide sequences is given below. To improve the solubility/procoagulant efficacy of peptides derived from the CD3-region of anti FIX/FIXa antibodies, the N-terminal as well as the C-terminal amino acid sequences were changed. In addition, a series of mutated peptides was constructed and analyzed.

The principle of such a study is exemplified by a series of peptides derived from CDR3H region of antibodies 198/A1 and 198/B1. The original peptide A1 (see table 2) is derived from the CDR3H region of antibody 198/A1 and peptide B1 is derived from the CDR3H region of antibody 198/B1, respectively (see example 10, FIGS. **16** and **17**). The term "scrambled version" means that a peptide has the same amino acids but in random order.

**22**

FVIII assay was developed (see examples 2 and 4). The basic principle is, that without a cofactor, FIXa will have very limited activity towards its natural substrate FX. Only in the presence of a substance having FIXa activation properties, i.e. FVIII or a substance exhibiting FVIII-like activity, a substantial amount of FXa is produced by cleavage of FX through the FIXa/activator complex. The amount of FXa generated is monitored by cleavage of a chromogenic substrate. The principle of the revised chromogenic assay is described for two representative peptides: A1/3 and A1/5 (Table 2). Briefly, 25 μl aliquots of peptide stock solution (in imidazole buffer (IZ) 50 mM imidazole, 100 mM NaCl, pH7.2) were transferred to microtiter plate wells and warmed to 37° C. Chromogenic FXa substrate (S-2222), synthetic thrombin inhibitor (I-2581), bovine FIXa and bovine FX were reconstituted in sterile water and FIXa/FX mixed with phospholipids according to the supplier's protocol. Since the peptides do not react with bovine FIXa, (which comes as a mixture with bovine FX in the Test Kit) 2,9 nM (in most cases 2.3 nM) human FIXa (ERL) were added (see Example 11, FIG. **19**). Per reaction, 50 μl of the phospholipid/FIXa/FX solution were combined with 251 CaCl$_2$ (25 mM) and 50 μl of the substrate/inhibitor cocktail. To start the reaction, 125 μl of the premix were added to the

| Peptide | Sequence | Amino-acids | MW (D) | pI | Remark |
|---|---|---|---|---|---|
| A1 | EGGGYYVNWYFDV (SEQ ID NO:8) | (13aa) | 1569 | 7.2 | Decreased solubility |
| A1/1 | VYGFGWGYEVNDY (SEQ ID NO:10) | (13aa) | 1569 | 7.1 | Scrambled version of A1, |
| A1/2 | EEEEGGGYYVNWYFDEEE (SEQ ID NO:11) | (18aa) | 2244 | 5.8 | Acidic pI, soluble, |
| A1/3 | RRREGGGYYVNWYFDRRR (SEQ ID NO:12) | (18aa) | 2407 | 9.9 | Basic pI, soluble, |
| A1/4 | EYGEGYGEVNEYDEFEWE (SEQ ID NO:13) | (18aa) | 2244 | 5.8 | Scrambled version of A1/2 |
| A1/5 | VRYRNRYRWGYRGRFGDE (SEQ ID NO:14) | (18aa) | 2407 | 9.9 | Scrambled version of A1/3 |
| A1/3-scr3 | RRRGEYGVYWNGDFYRRR (SEQ ID NO:15) | (18aa) | 2407 | 9.9 | Scrambled version of A1/3 |
| A1/3-Rd | RdRdRdEGGGYYVNWYFDRdRdRd | (18aa) | 2407 | 9.9 | Peptide A1/3 but substitute D-Arg for L-Arg |
| A1/3-Rd-srmb | RdRdRdGEYGVYWNGDFYRdRdRd | (18aa) | 2407 | 9.9 | Scrambled version of A1/3-Rd |

Table 2

List of a series of antibody 198/A1 derived peptizes. Listed are the length of the peptide (aa, amino acids #), the calculated molecular weight (MW, in Dalton (D) and the statistical isoelectric point (pI).D-Arg is abbreviated as Rd.

In a first series of experiments we improved the solubility of the original CDR3H peptide sequence (A1; EGG-GYYVNWYFDV; SEQ ID NO:8) by changing the C-terminal Val residue and adding several charged residues at the N— as well as the C-terminal end of the peptide. The resulting peptides, A1/2 (acidic pI) as well as A1/3 (basic pI) and their respective scrambled versions A1/4, A1/5 and A1/3scr3 were readily soluble in a variety of buffer systems at physiological pH.

To analyze the FVIII-like (FIXa activating) activity of the peptides, an assay system based on a commercial available

peptide solution in the microtiter plate and incubated at 37° C. Absorbance at 405 nm and 490 nm of the samples was read at various times (5 min to 2 h) against a reagent blank in a Labsystems iEMS Reader MF™ microtiter plate reader using GENESIS™ software.

The result of this experiment are shown in Example 11, FIG. **18**. Peptide A1/3 induced a readily measurable FXa generation in the presence of 2.9 nM human FIXa, whereas the scrambled version A1/5 was inactive. In addition, the acidic peptide A1/2 as well as the scrambled versions A1/4 and A1/3-scr3 did not give any significant chromogenic activity when tested under comparable conditions (data not shown). To prove that the peptide A1/3 like the parental antibody 198/A1 does not react with bovine FIXa and FX the experiment shown in FIG. **19** was done. The peptide

US 7,033,590 B1

**23**

A1/3 was incubated as described above with (A1/3 (24 μM), +hFIXa) and without (A1/3 (24 μM), w/o hFIXa) 2.3 nM human FIXa (hFIXa). In a control experiment we added plain dilution buffer (IZ) supplemented with 2.3 nM hFIXa to the reaction mixture. As shown in FIG. **19**, the reaction takes place only in the presence of human FIXa.

FIG. **18** demonstrates the chromogenic FVIII-like activity of peptide A1/3 in the presence of 2.9 nM human FIXa (hFIXa). The scrambled version of peptide A1/3, peptide A1/5 does not give rise to any FXa generation. FIG. **19** demonstrates the dependence of the chromogenic FVIII-like activity of peptide A1/3 on the presence of human FIXa (hFIXa). In the absence of human FIXa, peptide A1/3 does not give rise to any FXa generation. The buffer control, plain imidazole buffer is designated IZ.

The peptides were also analyzed for their potential to reduce the clotting time in a FVIII deficient plasma. The aPTT based one stage assay was essentially done as described (see example 6). Clotting times (time from starting the reaction to the "clot"-formation were compared either against FVIII, a buffer control (IZ) or a control peptide (scrambled version). The results of two typical clotting experiments done with two different aPTT reagents (DAPTTIN and Pathromtin SL) are shown in table 3A and table 3B.

|  | peptide conc. | w/o FIXa sec | w/o FIXa sec | average sec | 2.2 nM FIXa sec | 2.2 nM FIXa sec | average sec |
|---|---|---|---|---|---|---|---|
| Exp. 1 |  |  |  |  |  |  |  |
| IZ | 0 | 107.7 | 106.8 | 107 | 93.1 | 94.5 | 94 |
| A1/3 | 15 μM | 78.2 | 77.1 | 78 | 59.3 | 59.9 | 60 |
|  | 12.5 μM | 80.2 | 80.6 | 80 | 60.2 | 58.9 | 60 |
|  | 7.5 μM | 97.8 | 97.9 | 98 | 73.1 | 72.7 | 73 |
|  | 2.5 μM | 105.2 | 104.8 | 105 | 91.1 | 91 | 91 |
| A1/3-scr3 | 15 μM | 122.5 | 122 | 122 | 106.1 | 105.5 | 106 |
|  | 12.5 μM | 116 | 117.6 | 117 | 103.1 | 104.5 | 104 |
|  | 7.5 μM | 114.2 | 113.9 | 114 | 100.8 | 100.6 | 101 |
|  | 2.5 μM | 107.8 | 107.4 | 108 | 96.3 | 95.2 | 96 |
| Exp. 2 |  |  |  |  |  |  |  |
| IZ | 0 | 111 | 109.7 | 110 | 94.7 | 95.5 | 95 |
| A1/3 | 12.5 μM | 83.6 | 85.5 | 85 | 56.7 | 56.7 | 57 |
|  | 10 μM | 79.1 | 78.5 | 79 | 63.1 | 62.5 | 63 |
|  | 7.5 μM | 100.1 | 100.5 | 100 | 71.6 | 73.9 | 73 |
|  | 5 μM | 103.4 | 104.8 | 104 | 77 | 76 | 77 |
|  | 2.5 μM | 110.1 | 108.9 | 110 | 88 | 88.8 | 88 |
|  | 1.25 μM | 108.7 | 109.3 | 109 | 90.7 | 90.8 | 91 |

Table 3A. Clotting activity of peptides A1/3 and A1/3-scr (scrambled version of A1/3) in FVIII deficient plasma either in the presence or in the absence (w/o) of 2.2 nM human FIXa. Shown are two independent representative experiments (Exp. 1 and Exp. 2). All clotting experiments have been done in duplicate. Given are the clotting times for the individual experiments and the average clotting time in seconds (sec). Experiments shown in table 3A have been done employing the aPTT reagent DAPTTIN (Baxter Hyland Immuno). Compared to the buffer control (IZ, imidazole buffer) the peptide A1/3 gave rise to a dose dependent reduction in the clotting time. The reduction in the clotting time became much more pronounced by the addition of 2.2 nM activated human FIX to the reaction mix. The scrambled version of peptide A1/3, A1/3-scr3 did not show any reduction of the clotting time. In fact, at concentrations above 2.5 μM, the scrambled peptide became inhibitory and therefore prolonged the clotting time. Peptides A1/1, A1/2, A1/4 and A1/5 did not give any reduction in the

**24**

clotting time indicating that they lack procoagulant activity (data not shown).

|  | Final conc. | w/o FIXa sec | w/o FIXa sec | average sec | 2.2 nM FIXa sec | 2.2 nM FIXa sec | average sec |
|---|---|---|---|---|---|---|---|
| IZ | 0 | 131.8 | 132.1 | 132 | 107.9 | 108.7 | 108 |
| FVIII | 12.5 mU/ml | 68.9 | 69 | 69 | 52.9 | 53.6 | 53 |
|  | 6.25 mU/ml | 77.8 | 77.9 | 78 | 58.6 | 58.9 | 59 |
| A1/3 | 15 μM | 152.8 | 149.3 | 151 | 75.4 | 75.2 | 75 |
|  | 10 μM | 135.7 | 134.6 | 135 | 76.2 | 79.8 | 78 |
|  | 5 μM | 152.6 | 155.6 | 154 | 86.6 | 90.2 | 88 |
|  | 1 μM | 138.3 | 138.8 | 139 | 103.7 | 105.9 | 105 |

Table 3B. Clotting activity of peptide A1/3 in FVIII deficient plasma when Pathromtin SL (DADE Behring) is used as an aPTT reagent. The experiments were done in duplicate, either in the presence or in the absence (w/o) of 2.2 nM human FIXa. Given are the clotting times for the individual experiments and the average clotting time in seconds (sec). Factor VIII and imidazole buffer (IZ) were included as positive and negative control respectively.

In contrast to the experiments shown in table 3A the experiments shown in table 3B have been done employing the aPTT reagent Pathromtin SL. In the presence of FIXa, the peptide A1/3 gave rise to a dose dependent reduction in the clotting time whereas in the absence of FIXa no reduction of the clotting time was detectable.

In another series of experiments we set out to improve the plasma stability (protection from, e.g., proteolytic degradation) of peptide A1/3. One approach was to substitute the N- and C-terminal L-Arg residues with D-Arg residues (exemplified by peptides A1/3-rd and A1/3-Rd-srmb). Peptides A1/3-rd and A1/3-Rd-srmb (scrambled version of the peptide) were then analyzed in a chromogenic as well as in the aPTT based clotting assay. These experiments revealed that exchanging the terminal L-Arg residues for D-Arg residues did not change the FVIII-like activity as measured in the chromogenic assay, indicating that chirality of the Arg-residues does not play a major role in chromogenic activity (FIG. **20**). In addition, the aPTT based one-stage clotting activity, although somewhat reduced, was still easily detectable (Table 4).

|  | Peptide conc. | w/o FIXa sec | w/o FIXa sec | average sec | 2.2 nM FIXa sec | 2.2 nM FIXa sec | average sec |
|---|---|---|---|---|---|---|---|
| IZ | 0 | 110 | 109.1 | 110 | 96 | 96 | 96 |
| A1/3 | 15 μM | 77.8 | 78 | 78 | 56.1 | 55.5 | 56 |
|  | 12.5 μM | 99.4 | 100.5 | 100 | 65 | 68 | 67 |
|  | 10 μM | 104.4 | 104.5 | 104 | 72 | 73.2 | 73 |
|  | 7.5 μM | 105.2 | 105.2 | 105 | 80.7 | 80.5 | 81 |
|  | 5 μM | 108.4 | 107.7 | 108 | 89.7 | 88.3 | 89 |
|  | 2.5 μM | 107.9 | 107.6 | 108 | 93.6 | 93.3 | 93 |
|  | 1.25 μM | 106.7 | 107 | 107 | 94.4 | 95 | 95 |
| A1/3-Rd | 15 μM | 96.4 | 95.4 | 96 | 76.1 | 74.4 | 75 |
|  | 12.5 μM | 98 | 98.6 | 98 | 72.3 | 73.7 | 73 |
|  | 10 μM | 93.5 | 95.8 | 95 | 74.2 | 77.2 | 76 |
|  | 7.5 μM | 97.6 | 98.1 | 98 | 80.9 | 82.2 | 82 |
|  | 5 μM | 99.2 | 99.1 | 99 | 86 | 85.1 | 86 |
|  | 2.5 μM | 102.7 | 103.4 | 103 | 94.4 | 94.7 | 95 |
|  | 1.25 μM | 107.5 | 107.7 | 108 | 96.6 | 96 | 96 |
| A1/3-Rd srmb | 15 μM | 121.9 | 121.3 | 122 | 112.7 | 112.4 | 113 |
|  | 12.5 μM | 117.2 | 118 | 118 | 108.1 | 107.8 | 108 |
|  | 10 μM | 115.8 | 115.3 | 116 | 107.2 | 107.8 | 108 |
|  | 7.5 μM | 114.6 | 113.6 | 114 | 107.6 | 106.6 | 107 |
|  | 5 μM | 113.1 | 112.4 | 113 | 108.5 | 108.2 | 108 |

US 7,033,590 B1

**25**

-continued

| Peptide conc. | w/o FIXa sec | w/o FIXa, sec | average sec | 2.2 nM FIXa sec | 2.2 nM FIXa sec | average sec |
|---|---|---|---|---|---|---|
| 2.5 μM | 111.9 | 111.9 | 112 | 105 | 104.2 | 105 |
| 1.25 μM | 107.2 | 107.1 | 107 | 101.1 | 105.3 | 103 |

Table 4. One stage clotting activity of peptides A1/3, A1/3-Rd and A1/3-Rd-srmb (sequences see table 2). IZ, buffer control.

FIG. 20 demonstrates the unchanged chromogenic activity of peptide A1/3-Rd. Peptides at a final concentration of 12 μM or the buffer control (IZ) were incubated in the presence of 2.3 nM human FIXa (+). The chromogenic activity of peptide A1/3 and A1/3-Rd was found to be virtually unchanged and gave almost identical results in the chromogenic assay. The scrambled version of peptide A1/3, A1/5 as well as the buffer gave no significant FXa generation.

In the next series of experiments we set out to determine the individual role of any amino acid of the peptide core sequence by substituting each residue for the amino acid Alanine (Table 5).

**26**

100 mM NaCl, 1% human albumin, pH7.4) to the desired final concentration. The peptides were analyzed for their chromogenic activity as well as for their potential to reduce the clotting time in a FVIII deficient plasma. The one-stage clotting assay was essentially done as described (see example 6). Clotting times (time from starting the reaction to the "clot"-formation were compared either against a buffer control or a control peptide (scrambled version).

Some of the results of the "Alanine scan" are given for the peptides A1/3-2 and A1/3-3. The change of $G_3$-$A_3$ as exemplified in the peptide A1/3-2 yields high chromogenic activity and a strong reduction of the one-stage clotting time (34 seconds at a concentration of 12.5 μM) in the presence of 2.2 nM human FIXa. Peptide A1/3-3 ($G_4$-$A_4$) exhibits an optimum of chromogenic activity around a final concentration of 12 μM with decreased activity at either higher or lower concentrations. The peptide is somewhat inhibitory in a one-stage clotting assay at higher concentrations (12.5 μM) in the absence of FIXa but becomes strongly active in the presence of 2.2 nM FIXa (31 seconds, 12.5 μM).

In the next series of experiments we set out to determine the individual role of any amino acid of the peptide core sequence by substituting each core residue for the amino acid glutamic acid (E) (see Table 6).

| Peptide | Sequence | Amino acid # | MW (D) | pI | Remark |
|---|---|---|---|---|---|
| A1/3 | RRREGGGYYVNWYFDRRR (SEQ ID NO:12) | (18aa) | 2407 | 9.9 | Basic pI, soluble. |
| A1/3-13 | RRRAGGGYYVNWYFDRRR (SEQ ID NO:19) | (18aa) | 2349 | 10.4 | $E_1$-$A_1$ |
| A1/3-1 | RRREAGGYYVNWYFDRRR (SEQ ID NO:20) | (18aa) | 2421 | 9.9 | $G_2$-$A_2$ |
| A1/3-2 | RRREGAGYYVNWYFDRRR (SEQ ID NO:21) | (18aa) | 2421 | 9.9 | $G_3$-$A_3$ |
| A1/3-3 | RRREGGAYYVNWYFDRRR (SEQ ID NO:22) | (18aa) | 2421 | 9.9 | $G_4$-$A_4$ |
| A1/3-4 | RRREGGGAYVNWYFDRRR (SEQ ID NO:23) | (18aa) | 2315 | 9.9 | $Y_5$-$A_5$ |
| A1/3-5 | RRREGGGYAVNWYFDRRR (SEQ ID NO:24) | (18aa) | 2315 | 9.9 | $Y_6$-$A_6$ |
| A1/3-6 | RRREGGGYYANWYFDRRR (SEQ ID NO:25) | (18aa) | 2379 | 9.9 | $V_7$-$A_7$ |
| A1/3-7 | RRREGGGYYVAWYFDRRR (SEQ ID NO:26) | (18aa) | 2364 | 9.9 | $N_8$-$A_8$ |
| A1/3-8 | RRREGGGYYVNAYFDRRR (SEQ ID NO:27) | (18aa) | 2292 | 9.9 | $W_9$-$A_9$ |
| A1/3-9 | RRREGGGYYVNWAFDRRR (SEQ ID NO:28) | (18aa) | 2315 | 9.9 | $Y_{10}$-$A_{10}$ |
| A1/3-10 | RRREGGGYYVNWYADRRR (SEQ ID NO:29) | (18aa) | 2331 | 9.9 | $F_{11}$-$A_{11}$ |
| A1/3-11 | RRREGGGYYVNWYFARRR (SEQ ID NO:30) | (18aa) | 2363 | 10.5 | $D_{12}$-$A_{12}$ |
| A1/3-12smb | RRRYVYNGWGYFEGARRR (SEQ ID NO:31) | (18aa) | 2363 | 10.4 | Scrambled version |

Table 5. Listed are the peptides designed to elucidate the role of any single amino acid within the peptide core sequence $(E_1G_2G_3G_4Y_5Y_6V_7N_8W_9Y_{10}F_{11}D_{12};$ SEQ ID NO:112). The subscripted numbers describe the position of the amino acid within the peptide. Alanine, an uncharged small amino acid, was substituted for each amino acid ("Alanine scan"). Also listed are the lengths of the peptides (amino acids #), the calculated molecular weights (MW, in Dalton (D) and the statistical isoelectric points (pI).

Each of the peptides was dissolved individually in imidazole buffer (50 mM imidazole, 100 mM NaCl, pH7.2) and subsequently diluted in clotting buffer (50 mM imidazole,

| Peptide | Sequence | Amino-Acids | MW (D) | pI | Remark |
|---|---|---|---|---|---|
| A1/3 | RRREGGGYYVNWYFDRRR (SEQ ID NO:12) | (18aa) | 2407 | 9.9 | Basic pI, soluble. |
| A1/3-22 | RRREEGGYYVNWYFDRRR (SEQ ID NO:32) | (18aa) | 2479 | 9.5 | $G_2$-$E_2$ |
| A1/3-23 | RRREGEGYYVNWYFDRRR | (18aa) | 2479 | 9.5 | $G_3$-$A_3$ |

US 7,033,590 B1

27

-continued

| Peptide | Sequence | Amino-Acids | MW (D) | pI | Remark |
|---|---|---|---|---|---|
| | (SEQ ID NO:33) | | | | |
| A1/3-24 | RRREGGGYYVNWYFDRRR (SEQ ID NO:34) | (18aa) | 2479 | 9.5 | $G_4$–$E_4$ |
| A1/3-26 | RRREGGGYEVNWYFDRRR (SEQ ID NO:35) | (18aa) | 2373 | 9.4 | $Y_5$–$E_5$ |
| A1/3-27 | RRREGGGYEVNWYFDRRR (SEQ ID NO:36) | (18aa) | 2373 | 9.4 | $Y_6$–$E_6$ |
| A1/3-28 | RRREGGGYYENWYFDRRR (SEQ ID NO:37) | (18aa) | 2437 | 9.5 | $V_7$–$E_7$ |
| A1/3-29 | RRREGGGYYVEWYFDRRR (SEQ ID NO:38) | (18aa) | 2422 | 9.5 | $N_8$–$E_8$ |
| A1/3-30 | RRREGGGYYVNEYFDRRR (SEQ ID NO:39) | (18aa) | 2350 | 9.5 | $W_9$–$E_9$ |
| A1/3-31 | RRREGGGYYVNWEFDRRR (SEQ ID NO:40) | (18aa) | 2373 | 9.4 | $Y_{10}$–$E_{10}$ |
| A1/3-32 | RRREGGGYYVNWYEDRRR (SEQ ID NO:41) | (18aa) | 2389 | 9.5 | $F_{11}$–$E_{11}$ |
| A1/3-33 | RRREGGGYYVNWYFERRR (SEQ ID NO:42) | (18aa) | 2421 | 9.9 | $D_{12}$–$E_{12}$ |
| A1/3-34smb | RRRGEYGEYWNGDFYRRR (SEQ ID NO:43) | (18aa) | 2437 | 9.5 | Scrambled version |

Table 6. Listed are the peptides designed to elucidate the role of any single amino acid within the peptide core sequence $(E_1G_2G_3G_4Y_5Y_6V_7N_8W_9Y_{10}F_{11}D_{12}$; SEQ ID NO:112). The subscripted numbers describe the position of the amino acid within the peptide. Glutamic acid, a negatively charged large amino acid, was substituted for each amino acid of the core sequence ("Glutamic acid scan"). Also listed are the lengths of the peptide (amino acids #), the calculated molecular weights (MW, in Dalton (D) and the statistical isoelectric points (pI).

Each of the peptides was solved individually in imodazole buffer (50 mM imidazole, 100 mM NaCl, pH7.2) and subsequently diluted in clotting buffer (50 mM imidazole, 100 mM NaCl, 1% human albumin, pH7.4) to the desired final concentration. The peptides derived from the "Glutamic acid scan" series were analyzed for their chromogenic FVIII-like activity as well as for their potential to reduce the clotting time in a FVIII deficient plasma. The one-stage clotting assay was essentially done as described (see example 6).

The peptide A1/3-24 showed some interesting properties. The molecule exhibited high chromogenic FVIII-like activity at concentrations between 6.5 μM-12 μM but lost activity at higher concentrations (up to 24 μM). The peptide had no procoagulant activity in the absence of human hFIXa but was strongly active in the presence of 2.2 nM hFIXa.

In a second series of experiments we set out to improve the procoagulant activity of the antibody-198/B1 CDR3H derived peptide sequence B1. In a first step we improved the solubility of the original peptide sequence (B1; EGGG-FTVNWYFDV; SEQ ID NO:7) by removing the C-terminal Val residue and adding several charged residues at the N- as well as the —C-terminal end of the peptide. The resulting peptides B1/4, B1/6 (acidic pI), B1/7 (basic pI) and their scrambled versions B1/5, B1/7scr3 are readily soluble in a variety of buffer systems at physiological pH.

28

| Peptide | Sequence | Amino-acids | MW (D) | pI | Remark |
|---|---|---|---|---|---|
| B1 | EGGGFTVNWYFDV (SEQ ID NO:7) | (13aa) | 1491 | 6.0 | Decreased solubility |
| B1/4 | REGGGFTVNWYFDR (SEQ ID NO:45) | (14aa) | 1704 | 7.9 | Soluble, |
| B1/5 | FGVGYRGETRNFDW (SEQ ID NO:46) | (14aa) | 1704 | 8.0 | Scrambled version, soluble |
| B1/6 | EEEEGGGFTVNWYFDEEE (SEQ ID NO:47) | (18aa) | 2166 | 5.0 | Acidic pI soluble |
| B1/7 | RRREGGGFTVNWYFDRRR (SEQ ID NO:48) | (18aa) | 2329 | 9.9 | Basic pI soluble |
| B1/7 scr3 | RRRFGVGYGETNFDWRRR (SEQ ID NO:49) | (18aa) | 2329 | 9.9 | Basic pI, soluble, scrambled version |

Table 7 is a list of a series of antibody 198/B1 derived peptides. Listed are the length of the peptide (aa, amino acids #), the calculated molecular weight (MW, in Dalton (D) and the statistical isoelectric point (pI).

Peptides B1/4 and B1/5 were soluble in 50 mM Tris, 100 mM NaCl, pH=6.5. Both peptides were analyzed in a chromogenic FVIII assay. Peptide B1/4 but not the scrambled version B1/5 was found to have some chromogenic activity (data not shown).

Subsequently peptides B1/6, B1/7 and B1/7scr3 were analyzed. Each of the peptides was solved individually in 50 mM imidazole, 100 mM NaCl, pH7.2 and subsequently diluted either in clotting buffer (50 mM imidazole, 100 mM NaCl, 1% human albumin, pH7.4) or in imidazole buffer to the desired final concentration. The peptides were analyzed for their chromogenic activity as well as for their potential to reduce the clotting time in a FVIII deficient plasma (table 8 & 9). The one stage clotting assay was essentially done as described (see example 6). Clotting times (time from starting the reaction to the "clot"-formation were compared either against a buffer control or a control peptide (scrambled version).

The FIXa activating activity (FVIII cofactor-like activity) from peptide B1/7 was first measured in the chromogenic assay described above.

As shown in FIG. 21, the addition of 2.4 μM peptide B1/7 to the reaction mixture led to a well measurable generation of FXa. In contrast, the addition of 35 μM Pefabloc Xa, a specific inhibitor of FXa protease activity, resulted in a significant reduction of the chromogenic substrate cleavage reaction (FIG. 22) thereby proving that there was indeed a peptide-FIXa mediated FXa generation. If there was no addition of FIXa and FX to the reaction mixture, no FXa was synthesized (FIG. 22). Peptide B1/6 and the control peptides B1/5 and B1/7scr3 exhibited no activity (data not shown).

FIG. 21 demonstrates the chromogenic activity of peptide B1/7. The peptide at a final concentration of 2.4 μM or the buffer control (IZ) were incubated in the presence of 2.3 nM human FIXa.

In FIG. 22 peptide B1/7 at a final concentration of 2.4 μM or the buffer control (IZ) were incubated in the presence of 2.3 nM human FIXa (as indicated either as "+2.3 nM hFIXa" or "+") The chromogenic activity of peptide B1/7 was found to be dependent on the presence of FIXa and FX since no reaction is detectable when FIXa and FX are left out of the reaction (w/o FIXa/FX). To prove that the peptide B1/7 mediates indeed FXa generation, the FXa specific protease inhibitor Pefabloc Xa was added to the reaction mix (35 μM Pefabloc Xa). In a second set of experiments, the procoagu-

Appx154

US 7,033,590 B1

**29**

lant effect of peptides B1/6, B1/7 and B1/7scr3 were tested in a aPTT based one-step coagulation assay. The experiments were done essentially as described in Example 6. The results are shown in tables 8 and 9.

| Pep-tide | 12.5 µM (−) | 1.25 µM (−) | 0.125 µM (−) | 12.5 nM (−) | Buffer (−) | remarks |
|---|---|---|---|---|---|---|
| B1/6 | 115 | 110 | 111 | 111 | 110 | |
| B1/7 | 157 | 112 | 109 | 110 | 110 | |
| B1/7 scr3 | 115 | 105 | 106 | 105 | 107 | |

Table 8: FVIII deficient plasma was incubated either with peptides B1/6, B1/7scr3 or B1/7 in the absence of activated human FIX. As a negative control, plain buffer was added to the deficient plasma. The clotting times for the various combinations are given. Under these conditions, peptide B1/7 at its highest concentration (12.5 µM) becomes inhibitory to the coagulation process as indicated by the extended clotting time of 157 seconds.

| Pep-tide | 12.5 µM (+) | 1.25 µM (+) | 0.125 µM (+) | 12.5 nM (+) | Buffer (+) | remarks |
|---|---|---|---|---|---|---|
| B1/6 | 103 | 100 | 101 | 100 | 100 | |
| B1/7 | 83 | 92 | 99 | 99 | 100 | |
| B1/7 scr3 | 102 | 94 | 94 | 94 | 94 | |

Table 9: FVIII deficient plasma was incubated either with peptides B1/6, B1/7scr3 or B1/7 in the presence of activated human FIX. As a negative control, plain buffer was added to the deficient plasma. The clotting times for the various combinations are given. In the presence of FIXa, peptide B1/7 becomes procoagulant as indicated by the reduced clotting time (83 seconds compared to 102 seconds for the scrambled peptide and 100 seconds for the buffer control).

### Example 12

#### Procoagulant Activity of Peptide Derivatives Obtained from CDR3 Regions of Anti-FIX/FIXa-Antibodies in FVIII Inhibitor Plasma

To assay for the procoagulant activity of peptide A1/3 in FVIII inhibitor plasma the following experiment was carried out. We performed a standard aPTT based one stage clotting assay, but instead of FVIII deficient plasma we employed FVIII inhibitor plasma. The inhibitory potency of the plasma was 8.1 Bethesda Units per ml.

TABLE 10

| | Peptide conc. | w/o FIXa sec | w/o FIXa sec | Average sec | FIXa sec | FIXa sec | average sec |
|---|---|---|---|---|---|---|---|
| IZ | 0 | 104.9 | 103.6 | 104 | 94.2 | 94.1 | 94 |
| A1/3 | 12.5 µM | 85.8 | 85.3 | 86 | 61 | 60.2 | 61 |
| | 10 µM | 88.4 | 87.9 | 88 | 61.3 | 61.8 | 61 |
| | 7.5 µM | 93.7 | 92.7 | 93 | 68.8 | 70.9 | 70 |
| | 5 µM | 101.5 | 101.1 | 101 | 81 | 82 | 82 |
| | 2.5 µM | 106.1 | 105.3 | 106 | 90.2 | 90.5 | 90 |
| | 1.25 µM | 104.5 | 104.3 | 104 | 91.3 | 91.4 | 91 |

Table 10: Various amounts of peptide A1/3 (12.5 µM-1.25 µM) were added to FVIII inhibitor plasma (either in the

**30**

presence (FIXa) of 2.2 nM FIXa or in the absence (w/o FIXa). As a negative control, plain buffer was added to the plasma (IZ). Experiments were done in duplicate and the average (aver.) was calculated. The clotting times (in seconds) for the various combinations are given. It is quite appreciable that the peptide A1/3 reduces (in a dose dependent manner) the clotting time of FVIII inhibitor plasma in the presence of FIXa but, although albeit to a much lesser extent, also in the absence of FIXa.

### Example 13

#### Conversion of the 196/C4 IgM into IgG1

Since some IgM antibodies demonstrate high FVIII-like activity in chromogenic assays, attempts were made to convert such IgM antibodies into IgG antibodies (though antibody derivatives such as Fab, F(ab)$_2$, scFv, etc. could also be produced). Described in detail below is the rescue of the IgM variable region genes. Expression vector pBax-IgG1 (FIG. **23**) was first constructed from vectors pSI (Promega) and pEF/Bsd (Invitrogen) through multiple cloning steps. B-lymphocytes of a donor are purified from blood and mature mRNA purified from these cells using the "micro-mRNA purification-kit" (Pharmacia). cDNA of a human kappa chain and a human gamma 1 chain are prepared employing the "you-primefirst-strand-cDNA-"kit" (Pharmacia) using specific primers.

The coding sequence of a human kappa light chain constant domain is amplified from the cDNA by PCR using specific primers.

The gene of a human gamma 1 chain constant region (CH1-hinge-CH2—CH3) is amplified from the cDNA by PCR using specific primers.

The PCR product of the light chain constant domain is digested with XbaI and NheI and inserted into digested pSI. The resultant vector is cleaved with EcoRI and XbaI and annealed oligonucleotides are inserted, resulting in vector pSI-Ckappa. The annealed oligonucleotides provide for the leader and the SacI-XbaI sites for insertion of the kappa chain variable region. The PCR product of the human gamma 1 chain constant region is digested with SpeI and BamHI and inserted into digested pSI. The resultant vector is cleaved with SpeI and NotI and annealed oligonucleotides are inserted resulting in vector pSI-Cgamma. The annealed oligonucleotides provide for the leader and the XhoI-BstEI sites for insertion of the heavy chain variable region. Vector pEF/Bsd is digested NheI and SfiI, blunt ended by Klenow treatment and the whole expression cassette of pSI-Ckappa, excised with BglII and BamHI, is inserted (after Klenow treatment). The resultant vector is digested with EcoRI and HindIII and treated with Klenow. The whole expression cassette of pSI-Cgamma is excised with BglII and BamHI and is inserted (after Klenow treatment). The resultant vector is named pBax-IgG1.

The light chain variable region can be inserted in between the SacI-XbaI sites, yielding the complete coding-sequence of a kappa light chain. The heavy chain variable region can be cloned in between the XhoI-BstEI sites, resulting in a complete IgG1 heavy chain gene. Both open reading frames are expressed under the control of the SV40-promoter and harbour the coding sequence of a signal peptide at the 5' end of the genes for secretion of the heavy and light chains into the endoplasmatic reticulum. Transfection into COS cells allows the expression of an IgG1 with the same binding properties as the parental IgM.

Construction of the plasmid pBax-196/C4 is further accomplished by amplifying the VH of the 196/C4 scFv

US 7,033,590 B1

**31**

(subcloned as described in Experiment 10) by PCR using specific primers. The PCR product is digested with XhoI and BstEII and inserted into XhoI and BstEII digested pBax IgG1. The VL of the 196/C4 scFv is amplified by PCR using specific primers. The PCR product is digested with SacI and XbaI and inserted into SacI and XbaI-digested pBax IgG1-VH. The resultant vector (pBax-196/C4) is transfected into COS cells by electroporation, and hybrid IgG1 molecules (murine variable region and human constant region) with the same specificity as the parental IgM is expressed.

## Example 14

### Activation of FIXa Amydolytic Activity by Anti-FIXa Antibodies

Briefly, 20±1 factor IXa (containing 20 mU FIXa (Stago)) were incubated at 37° C., with 200 µl of reaction buffer (50 mM Tris HCl pH7.4, 100 mM NaCl, 5 mM CaCl$_2$ and 40% Ethyleneglycol), 25 µl of FIXa substrate (CH$_3$SO$_2$-D-CHG-Gly-Arg-pNA, AcOH, 10M/ml, Pentapharm LTD) in the absence or presence of various amounts of anti-FIX antibodies 198/B1 (IgG isotype) or 196/AF1 (IgM isotype). Specific cleavage of FIXa substrate was monitored at 405 nm in an ELISA reader.

The presence of the anti-FIX antibodies enhanced the amydolytic activity of FIXa at least 2 fold. FIG. 24 shows the increase of the amidolytic activity of FIXa in the presence of antibody 198/B1 (FIG. 24A) and antibody 198/AF1 (FIG. 24B).

## Example 15

### FVIII-like Activity Exhibited by Fab Fragments Derived from Anti FIX/FIXa-antibodies

Fab fragments of anti-FIX/FIXa antibodies were prepared and purified according to standard protocols. Briefly, 1 ml antibody 198/A1(4 mg/ml in 50 mM imidazole, 100 mM NaCl, pH7.4) was incubated overnight with 87 µl fragmentation buffer (1M Na Acetate, 10 mM EDTA 67.5 mg/ml L-cysteine) and 0.25 mg papain (immobilized on agarose beads), at 37° C. The preparation was filtered to remove the papain. L-histidine was added (final concentration 50 mM) and afterwards the pH was adjusted to 7.0. Finally, solid NaCl is added to give a final concentration of 1M.

Subsequently, the 198/A1 Fab fragment was purified by binding to protein L: we used ImmunoPure Immobilized PROTEIN L Plus (Pierce) in a PHARMACIA XK 16/20 Column (gel-volume: 2 ml) Buffers for chromatography were: 1) equilibration-buffer: 50 mM L-histidine pH 7.0; 1M NaCl, 0,1% (w/v) NaN$_3$; 2) wash-buffer: 50 mM L-Histidine pH 7.0; 0.1 (w/v) NaN$_3$; 3) elution-buffer: 100 mM glycine pH 2.5; 0.1% (w/v) NaN$_3$; and 4) neutralization buffer: 2M Tris/Cl pH 8,0;

Chromatography was essentially done by following steps 1 to 7 described in table 11. In order to neutralize the low pH of the elution buffer "Fraction-tubes" were pre-loaded with 0.2 ml 2M Tris pH 8.0.

TABLE 11

| | STEP | BUFFER | Flow rate | Vol. | CV | Fractions |
|---|---|---|---|---|---|---|
| 1. | column-wash | elution-buffer | 2.0 ml/min | 10 ml | 5 | waste |
| 2. | equilibration | equi-buffer | 2.0 ml/min | 10 ml | 5 | waste |

**32**

TABLE 11-continued

| | STEP | BUFFER | Flow rate | Vol. | CV | Fractions |
|---|---|---|---|---|---|---|
| 3. | sample-load | sample | 1.0 ml/min | x ml | x | flow-through |
| 4. | wash 1 | equi-buffer | 1.0 ml/min | 20 ml | 10 | flow-through |
| 5. | wash 2 | wash-buffer | 1.0 ml/min | 10 ml | 5 | flow-through |
| 6. | elution | elution-buffer | 1.0 ml/min | 15 ml | 7.5 | 1,0 ml fractions- |
| 7. | neutral-ization | wash-buffer | 2.0 ml/min | 10 ml | 5 | waste |

Table 11

The final 198/A1 Fab preparation was dialyzed against 50 mM imidazole, 100 mM NaCl, pH7.4 and analyzed in a chromogenic FVIII assay as described above (FIG. 25). Compared to an intact antibody, the 198/A1 Fab fragment has somewhat less activity; however, the Fab fragment still gives rise to FIX dependent FXa generation.

FIG. 25 demonstrates the chromogenic FVIII-like activity of the antibody 198/A1 Fab fragment in the presence of 2.3 nM human FIXa. As a positive control we used the intact antibody 198/A1 as well as 7.5 pM FVIII. Buffer control (IZ) instead of 198/A1 Fab fragment or FVIII was used as a negative control.

## Example 16

### FVIII-like Activity Exhibited by Fusion Proteins Between scFv Fragments of Anti-FIX/FIXa Antibodies and E. coli Alkaline Phosphatase

The single chain Fv fragment (see example 10) of antibody 198/B1 (subclone AB2) was fused to the N-terminus of E. coli alkaline phosphatase employing the pDAP2 vector system (Kerschbaumer et al., 1996). Two identical clones were isolated and designated pDAP2-198AB2#1 and pDAP2-198AB2#100 (FIG. 26). The resulting fusion proteins were expressed in E. coli, purified by metal affinity chromatography (Kerschbaumer et al., 1997) and analysed in a standard chromogenic assay (FIG. 27).

FIG. 27 demonstrates the chromogenic FVIII-like activity of two antibody 198/B1 (subclone AB2) scFv fragment-alkaline phosphatase fusion proteins (198AB2#1 and 198AB2#100) in the presence of 2.3 nM human FIXa. As a positive control we used 7.5 pM FVIII.

## Example 17

### FVIII-like Activity Exhibited by a Bivalent Miniantibody

In order to obtain a bivalent miniantibody, the scFv fragment of antibody 198/B1 (subclone AB2) was fused to a amphipatic helical structure employing the pZip1 vector system (Kerschbaumer et al. (Analytical Biochemistry 249, 219–227, 1997). Briefly, the gene of the 198/B1 scFv fragment was isolated from the plasmid pDAP2-198AB2#100 (example 16) by digestion with SfiI and NotI. The DNA fragment was gel purified and inserted in the SfiI/NotI digested vector pZip1. The resulting plasmid was sequenced and designated pZip-198AB2#102 (FIG. 28). In parallel, we constructed a miniantibody version from an irrelevant monoclonal antibody termed #8860. In a first step, the single chain Fv fragment of antibody #8860 was assembled in the vector pDAP2. The cloning was done essentially as described in example 10. The construct was

named pDAP2-8860scFv#11 (FIG. 29). Subcloning of the scFv fragment contained within pDAP2-8860scFv#11 into plasmid pZip1 (see above) yielded the miniantibody construct p8860-Zip#1.2 (FIG. 30). Since antibody #8860 does not react with FIX/FIXa (as judged by Western Blot and ELISA analysis) it represents an appropriate negative control. Subsequently, the miniantibody proteins were expressed in *E. coli* and purified from bacterial supernatants by binding to Protein L according to the following protocol: For affinity chromatography we used ImmunoPure Immobilized PROTEIN L Plus (Pierce) in a PHARMACIA XK 16/20 Columns having a gel-volume of 4 ml Buffers employed were: 1) equilibration-buffer: 5 mM L-Histidine pH 7.0, 1M NaCl, 0.1% (w/v) NaN₃, wash-buffer: 50 mM L-histidine pH 7.0, 0.1% (w/v) NaN₃; elution-buffer: 100 mM glycine pH 2.5, 0.1% (w/v) NaN₃; and neutralization buffer: 2M Tris/Cl pH 8.0.

Samples were prepared as follows: The bacterial culture supernatant was obtained by centrifugation of the bacterial expression culture (11,000×g, 4° C., 10 minutes). 470 g of ammonium-sulphate was added to 1 liter of supernatant and the solution stirred on ice for 1 hour to precipitate the protein. The precipitate was pelleted at 14,000×g for 35 minutes at 2° C. and re-dissolved in 100 ml 20 mM Tris pH 7.0. Subsequently the concentrate was dialyzed against 20 mM Tris pH 7.0, L-histidine was added to a final concentration of 50 mM and the pH was adjusted to 7.0. Finally, solid NaCl was added to give a final concentrations of 1M. Before loading on the column, a sample was first centrifuged at 16,000×g for 15 min at room temperature and then filtered through a 0.45 µm sterile filter.

Chromatography was essentially done by following steps 1 to 7 described in table 12. In order to neutralize the low pH of the elution buffer "Fraction-tubes" were pre-loaded with 0.2 ml 2M Tris pH 8.0.

|   | STEP | BUFFER | Flow rate | Vol. | CV | Fractions |
|---|------|--------|-----------|------|-----|-----------|
| 1. | column-wash | elution-buffer | 2.0 ml/min | 20 ml | 5 | waste |
| 2. | equilibration | equi-buffer | 2.0 ml/min | 20 ml | 5 | waste |
| 3. | sample-load | sample | 1.0 ml/min | x ml | x | flow-through |
| 4. | wash 1 | equi-buffer | 1.0 ml/min | 40 ml | 10 | flow-through |
| 5. | wash 2 | wash-buffer | 1.0 ml/min | 20 ml | 5 | flow-through |
| 6. | elution | elution-buffer | 1.0 ml/min | 30 ml | 7.5 | 1.0 ml fractions- |
| 7. | neutralization | wash-buffer | 2.0 ml/min | 20 ml | 5 | waste |

Table 12. The final 198/B1 (subclone AB2) miniantibody preparation (designated 198AB-Zip#102) and the negative control 8860-Zip#1.2 were dialyzed against 50 mM imidazole, 100 mM NaCl, pH7.4 and analyzed in a chromogenic FVIII assay as described above (FIG. 31).

As can be seen in FIG. 31, the miniantibody construct 198AB-Zip#102 gives rise to substantial FXa generation (compare to FVIII) whereas the negative control miniantibody 8860-Zip#1.2 does not.

FIG. 31 demonstrates the chromogenic FVIII-like activity of the 198/B1 (subclone AB2) miniantibody 198AB-Zip#102 in the presence of 2.3 nM human FIXa. As a positive control we used 4.8 pM FVIII whereas an unrelated miniantibody (8860-Zip#1.2) and plain reaction buffer (IZ) served as negative controls.

### Example 18

### FVIII-like Activity Exhibited by Anti-FIXa/FIX Antibody scFv Fragments

The single chain Fv fragment of antibody 198/B1 (subclone AB2) as well as the scfv fragment of antibody

#8860 were expressed employing the pMycHis6 vector system. Vector pMycHis6 (FIGS. 32 & 33) was constructed by cleaving vector pCOCK (Engelhardt et al., 1994, Biotechniques, 17: 44–46) with NotI and EcoRI and insertion of the following oligonucleotides: mychis6-co: 5' ggc-cgcagaacaaaaactcatctcagaagaggatct gaatggggcggcacatcac-catcaccatcactaataag 3' (SEQ. ID.NO.

79) and mycchis-ic: 5'aattcttattagtgatggtgatggtgat-gtgccgccccattcagatcctct tctgagatgagtttttgttctgc 3' (SEQ.ID.NO. 80) FIG. 32 shows a schematic representation of the plasmid pMycHis6. The c-myc-tag sequence is used to detect the scFv fragment in an ELISA or a Western Blot analysis (Evan et al., Mol.Cell.Biol., 1985, 5(12), pp. 3610–6). The His6-tag sequence was included to facilitate the purification of scFv fragments by metal ion chromatography (Hochuli et al., 1988. Biotechnology, 6: 1321–1325). The plasmid contains the lacZ gene promoter (PlacZ) the PelB-leader sequence (see legend FIG. 26) an *E. coli* origin of replication (colEIori) and a M13 phage origin of replication (M13ori). To allow for specific selection, the plasmid also carries the gene for the enzyme β-lactamase (AmpR) mediating resistance against the antibiotic ampicillin.

The gene of the 198/B1 (clone AB2)-scFv was rescued from plasmid pDAP2-198AB2#100 (example 16) by digestion with SfiI and NotI and inserted into SfiI/NotI cleaved pMycHis6. The resultant plasmid was designated pMycHis-198AB2#102. FIG. 34 shows the nucleotide and amino acid sequence of 198AB2 scFv (linked to the c-myc-tag and the His6tag):the resulting ORF of the expression vector is named pMycHisG-198AB2#102. Vector pMycHis6 was constructed by cleaving vector pCOCK (Engelhardt O. et al, BioTechniques 17, 44–46, 1994) NotI-EcoRI and inserting the following annealed oligonucleotides: (5'-GGCCGCAGAACAAAAACTCATCTCAGAA-GAGGATCTGAATGGG GCGGCACATCACCATCACCATCACTAATAAG-3' (SEQ.ID.No. 103) and 5'-TTATTAGTGATGGTGATGGT GATGTGCCGCCCCATTCAGATCCTCTTCTGAGATGA GTTTTTGTTCTGC-3'(SEQ.ID.No. 104)). The resultant vector, named pMycHis6, was cleaved SfiI-NotI and the gene of scFv 198AB2 was swapped into this vector from vector pDAP2-198AB2#100.

In analogy to the 198AB2 construct, the #8860 scFv fragment was cloned from a plasmid designated pDAP2-8860scFv clone 11. The pure scFv protein of #8860 was designated 8860-M/H#4c (plasmid p8860-M/H#4c, FIG. 35). The scFv proteins were expressed in *E. coli* and affinity purified from bacterial supernatants on Protein L columns (see example 17). The final MycHis-198AB2#102 and 8860-M/H#4c preparations were dialyzed against 50 mM imidazole, 100 mM NaCl, pH7.4 and analyzed in a chromogenic FVIII assay as described above (FIG. 36).

As can be seen in FIG. 36, the scfv construct MycHis-198AB2#102 gave rise to a substantial FXa generation whereas the negative controls 8860-M/H#4c and plain reaction buffer (IZ) did not.

FIG. 36 demonstrates the chromogenic FVIII-like activity of the 198/B1 (subclone AB2) scFv fragment (MycHis-198AB2#102) in the presence of 2.3 nM human FIXa. As a positive control we used 4.8 pM FVIII whereas a unrelated scfv (8860-M/H#4c) and plain reaction buffer (IZ) served as negative controls.

```
                          SEQUENCE LISTING


<160> NUMBER OF SEQ ID NOS: 112

<210> SEQ ID NO 1
<211> LENGTH: 26
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:primer
      oligonucleotide MOCG1-2FOR

<400> SEQUENCE: 1

ctcaattttc ttgtccacct tggtgc                                26


<210> SEQ ID NO 2
<211> LENGTH: 26
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:primer
      oligonucleotide MOCG3FOR

<400> SEQUENCE: 2

ctcgattctc ttgatcaact cagtct                                26


<210> SEQ ID NO 3
<211> LENGTH: 24
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:primer
      oligonucleotide MOCMFOR

<400> SEQUENCE: 3

tggaatgggc acatgcagat ctct                                  24


<210> SEQ ID NO 4
<211> LENGTH: 24
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:primer
      MOCKFOR

<400> SEQUENCE: 4

ctcattcctg ttgaagctct tgac                                  24


<210> SEQ ID NO 5
<211> LENGTH: 10
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:hybridoma
      cell line 193/AD3 heavy chain CDRJ region

<400> SEQUENCE: 5

Tyr Gly Asn Ser Pro Lys Gly Phe Ala Tyr
 1               5                  10


<210> SEQ ID NO 6
<211> LENGTH: 12
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:hybridoma
      cell line 193/K2 heavy chain CDR3 region
```

-continued

```
<400> SEQUENCE: 6

Asp Gly Gly His Gly Tyr Gly Ser Ser Phe Asp Tyr
  1               5                   10


<210> SEQ ID NO 7
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:hybridoma
      cell line 193/AB2 (derived from antibody 198/B1) heavy chain CDR3
      region, peptide B1

<400> SEQUENCE: 7

Glu Gly Gly Gly Phe Thr Val Asn Trp Tyr Phe Asp Val
  1               5                   10


<210> SEQ ID NO 8
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:hybridoma
      cell line 198/A1 heavy chain CDR3 region, peptide A1

<400> SEQUENCE: 8

Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Val
  1               5                   10


<210> SEQ ID NO 9

<400> SEQUENCE: 9

000


<210> SEQ ID NO 10
<211> LENGTH: 13
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/1 scrambled versioon of A1

<400> SEQUENCE: 10

Val Tyr Gly Phe Gly Trp Gly Tyr Glu Val Asn Asp Tyr
  1               5                   10


<210> SEQ ID NO 11
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/2

<400> SEQUENCE: 11

Glu Glu Glu Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Glu
  1               5                   10                  15

Glu Glu


<210> SEQ ID NO 12
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/3
```

-continued

```
<400> SEQUENCE: 12

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 13
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/4 scrambled version of A1/2

<400> SEQUENCE: 13

Glu Tyr Gly Glu Gly Tyr Gly Glu Val Asn Glu Tyr Asp Glu Phe Glu
 1               5                   10                  15

Trp Glu


<210> SEQ ID NO 14
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/5 scrambled version of A1/3

<400> SEQUENCE: 14

Val Arg Tyr Arg Asn Arg Tyr Arg Trp Gly Tyr Arg Gly Arg Phe Gly
 1               5                   10                  15

Asp Glu


<210> SEQ ID NO 15
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutated peptide A1/3-scr3 scrambled version of A1/3

<400> SEQUENCE: 15

Arg Arg Arg Gly Glu Tyr Gly Val Tyr Trp Asn Gly Asp Phe Tyr Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 16

<400> SEQUENCE: 16

000


<210> SEQ ID NO 17

<400> SEQUENCE: 17

000


<210> SEQ ID NO 18

<400> SEQUENCE: 18

000


<210> SEQ ID NO 19
```

US 7,033,590 B1

**41**                                                          **42**

-continued

```
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-13 Alanine scan E-1-A-1

<400> SEQUENCE: 19

Arg Arg Arg Ala Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 20
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-1 Alanine scan G-2-A-2

<400> SEQUENCE: 20

Arg Arg Arg Glu Ala Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 21
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-2 Alanine scan G-3-A-3

<400> SEQUENCE: 21

Arg Arg Arg Glu Gly Ala Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 22
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-3 Alanine scan G-4-A-4

<400> SEQUENCE: 22

Arg Arg Arg Glu Gly Gly Ala Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 23
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-4 Alanine scan Y-5-A-5

<400> SEQUENCE: 23

Arg Arg Arg Glu Gly Gly Gly Ala Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg
```

US 7,033,590 B1

**43**

**44**

-continued

```
<210> SEQ ID NO 24
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
     198/A1 derived mutant peptide A1/3-5 Alanine scan Y-6-A-6

<400> SEQUENCE: 24

Arg Arg Arg Glu Gly Gly Gly Tyr Ala Val Asn Trp Tyr Phe Asp Arg
1               5                   10                  15

Arg Arg


<210> SEQ ID NO 25
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
     198/A1 derived mutant peptide A1/3-6 Alanine scan V-7-A-7

<400> SEQUENCE: 25

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Ala Asn Trp Tyr Phe Asp Arg
1               5                   10                  15

Arg Arg


<210> SEQ ID NO 26
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
     198/A1 derived mutant peptide A1/3-7 Alanine scan N-8-A-8

<400> SEQUENCE: 26

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Ala Trp Tyr Phe Asp Arg
1               5                   10                  15

Arg Arg


<210> SEQ ID NO 27
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
     198/A1 derived mutant peptide A1/3-8 Alanine scan W-9-A-9

<400> SEQUENCE: 27

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Ala Tyr Phe Asp Arg
1               5                   10                  15

Arg Arg


<210> SEQ ID NO 28
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
     198/A1 derived mutant peptide A1/3-9 Alanine scan Y-10-A-10

<400> SEQUENCE: 28

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Ala Phe Asp Arg
1               5                   10                  15

Arg Arg
```

US 7,033,590 B1

-continued

```
<210> SEQ ID NO 29
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-10 Alanine scan F-11-A-11

<400> SEQUENCE: 29

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Ala Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 30
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-11 Alanine scan D-12-A-12

<400> SEQUENCE: 30

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Ala Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 31
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-12srmb scrambled version

<400> SEQUENCE: 31

Arg Arg Arg Tyr Val Tyr Asn Gly Trp Gly Tyr Phe Glu Gly Ala Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 32
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-22 Glutamic acid scan G-2-E-2

<400> SEQUENCE: 32

Arg Arg Arg Glu Glu Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 33
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-23 Glutamic acid scan G-3-E-3

<400> SEQUENCE: 33

Arg Arg Arg Glu Gly Glu Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg
```

US 7,033,590 B1

47                                                              48

-continued

```
<210> SEQ ID NO 34
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-24 Glutamic acid scan G-4-E-4

<400> SEQUENCE: 34

Arg Arg Arg Glu Gly Gly Glu Tyr Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 35
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-26 Glutamic acid scan Y-5-E-5

<400> SEQUENCE: 35

Arg Arg Arg Glu Gly Gly Gly Glu Tyr Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 36
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-27 Glutamic acid scan Y-6-E-6

<400> SEQUENCE: 36

Arg Arg Arg Glu Gly Gly Gly Tyr Glu Val Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 37
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-28 Glutamic acid scan V-7-E-7

<400> SEQUENCE: 37

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Glu Asn Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 38
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-29 Glutamic acid scan N-8-E-8

<400> SEQUENCE: 38

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Glu Trp Tyr Phe Asp Arg
 1               5                   10                  15
```

US 7,033,590 B1

**49**                                                                                        **50**

-continued

Arg Arg


<210> SEQ ID NO 39
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-30 Glutamic acid scan W-9-E-9

<400> SEQUENCE: 39

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Glu Trp Tyr Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 40
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-31 Glutamic acid scan Y-10-E-10

<400> SEQUENCE: 40

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Glu Phe Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 41
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-32 Glutamic acid scan F-11-E-11

<400> SEQUENCE: 41

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Glu Asp Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 42
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-33 Glutamic acid scan D12-E-12

<400> SEQUENCE: 42

Arg Arg Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Glu Arg
 1               5                   10                  15

Arg Arg


<210> SEQ ID NO 43
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/A1 derived mutant peptide A1/3-34srmb scrambled version

<400> SEQUENCE: 43

Arg Arg Arg Gly Glu Tyr Gly Glu Tyr Trp Asn Gly Asp Phe Tyr Arg
 1               5                   10                  15

US 7,033,590 B1

51                                                                    52

-continued

Arg Arg

<210> SEQ ID NO 44

<400> SEQUENCE: 44

000

<210> SEQ ID NO 45
<211> LENGTH: 14
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/B1 derived mutated peptide B1/4

<400> SEQUENCE: 45

Arg Glu Gly Gly Gly Phe Thr Val Asn Trp Tyr Phe Asp Arg
 1               5                  10

<210> SEQ ID NO 46
<211> LENGTH: 14
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/B1 derived mutated peptide B1/5 scrambled version

<400> SEQUENCE: 46

Phe Gly Val Gly Tyr Arg Gly Glu Thr Arg Asn Phe Asp Trp
 1               5                  10

<210> SEQ ID NO 47
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/B1 derived mutated peptide B1/6

<400> SEQUENCE: 47

Glu Glu Glu Glu Gly Gly Gly Phe Thr Val Asn Trp Tyr Phe Asp Glu
 1               5                  10                  15

Glu Glu

<210> SEQ ID NO 48
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/B1 derived mutated peptide B1/7

<400> SEQUENCE: 48

Arg Arg Arg Glu Gly Gly Gly Phe Thr Val Asn Trp Tyr Phe Asp Arg
 1               5                  10                  15

Arg Arg

<210> SEQ ID NO 49
<211> LENGTH: 18
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:antibody
      198/B1 derived mutated peptide B1/7scr3 scrambled version

US 7,033,590 B1

53    54

-continued

<400> SEQUENCE: 49

Arg Arg Arg Phe Gly Val Gly Tyr Gly Glu Thr Asn Phe Asp Trp Arg
1               5                   10                  15

Arg Arg


<210> SEQ ID NO 50
<211> LENGTH: 57
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
      back primer VH1BACK-SfiI

<400> SEQUENCE: 50

catgccatga ctcgcggccc agccggccat ggccsaggts marctgcags agtcwgg       57


<210> SEQ ID NO 51
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
      back primer VH1BACKSfi

<400> SEQUENCE: 51

gtcctcgcaa ctgcggccca gccggccatg gccgaggtgc agcttcagga gtcagg       56


<210> SEQ ID NO 52
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
      back primer VH2BACKSfi

<400> SEQUENCE: 52

gtcctcgcaa ctgcggccca gccggccatg gccgatgtgc agcttcagga gtcrgg       56


<210> SEQ ID NO 53
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
      back primer VH3BACKSfi

<400> SEQUENCE: 53

gtcctcgcaa ctgcggccca gccggccatg gcccaggtgc agctgaagsa gtcagg       56


<210> SEQ ID NO 54
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
      back primer VH4/6BACKSfi

<400> SEQUENCE: 54

gtcctcgcaa ctgcggccca gccggccatg gccgaggtyc agctgcarca rtctgg       56


<210> SEQ ID NO 55
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H

US 7,033,590 B1

<table>
<tr><td>55</td><td>56</td></tr>
</table>

-continued

```
    back primer VH5/9BACKSfi

<400> SEQUENCE: 55

gtcctcgcaa ctgcggccca gccggccatg gcccaggtyc arctgcagca gyctgg        56


<210> SEQ ID NO 56
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
    back primer VH7BACKSfi

<400> SEQUENCE: 56

gtcctcgcaa ctgcggccca gccggccatg gccgargtga agctggtgga rtctgg        56


<210> SEQ ID NO 57
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
    back primer VH8BACKSfi

<400> SEQUENCE: 57

gtcctcgcaa ctgcggccca gccggccatg gccgaggttc agcttcagca gtctgg        56


<210> SEQ ID NO 58
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
    back primer VH10BACKSfi

<400> SEQUENCE: 58

gtcctcgcaa ctgcggccca gccggccatg gccgaagtgc agctgktgga gwctgg        56


<210> SEQ ID NO 59
<211> LENGTH: 56
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse V-H
    back primer VH11BACKSfi

<400> SEQUENCE: 59

gtcctcgcaa ctgcggccca gccggccatg gcccagatcc agttgctgca gtctgg        56


<210> SEQ ID NO 60
<211> LENGTH: 68
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse J-H
    forward primer VH1FOR2LiAsc

<400> SEQUENCE: 60

accgccagag gcgcgcccac ctgaaccgcc tccacctgag gagacggtga ccgtggtccc     60

ttggcccc                                                             68


<210> SEQ ID NO 61
<211> LENGTH: 60
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
```

-continued

```
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse J-H
      forward primer JH1FORLiAsc

<400> SEQUENCE: 61

accgccagag gcgcgcccac ctgaaccgcc tccacctgag gagacggtga ccgtggtccc      60


<210> SEQ ID NO 62
<211> LENGTH: 60
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse J-H
      forward primer JH2FORLiAsc

<400> SEQUENCE: 62

accgccagag gcgcgcccac ctgaaccgcc tccacctgag gagactgtga gagtggtgcc      60


<210> SEQ ID NO 63
<211> LENGTH: 60
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse J-H
      forward primer JH3FORLiAsc

<400> SEQUENCE: 63

accgccagag gcgcgcccac ctgaaccgcc tccacctgca gagacagtga ccagagtccc      60


<210> SEQ ID NO 64
<211> LENGTH: 60
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse J-H
      forward primer JH4FORLiAsc

<400> SEQUENCE: 64

accgccagag gcgcgcccac ctgaaccgcc tccacctgag gagacggtga ctgaggttcc      60


<210> SEQ ID NO 65
<211> LENGTH: 60
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK2BACK-LiAscI

<400> SEQUENCE: 65

ggttcagatg ggcgcgcctc tggcggtggc ggatcggaca ttgagctcac ccagtctcca      60


<210> SEQ ID NO 66
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK1BACKLi Asc

<400> SEQUENCE: 66

ggttcagatg ggcgcgcctc tggcggtggc ggatcggaca ttgtgatgwc acagtctcc       59


<210> SEQ ID NO 67
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
```

US 7,033,590 B1

**59**                                                                                                    **60**

-continued

V-kappa back primer VK2BACKLi Asc

<400> SEQUENCE: 67

ggttcagatg ggcgcgcctc tggcggtggc ggatcggatg ttktgatgac ccaaactcc     59


<210> SEQ ID NO 68
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK3BACKLi Asc

<400> SEQUENCE: 68

ggttcagatg ggcgcgcctc tggcggtggc ggatcggata ttgtgatrac bcaggcwgc     59


<210> SEQ ID NO 69
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK4BACKLi Asc

<400> SEQUENCE: 69

ggttcagatg ggcgcgcctc tggcggtggc ggatcggaca ttgtgctgac mcartctcc     59


<210> SEQ ID NO 70
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK5BACKLi Asc

<400> SEQUENCE: 70

ggttcagatg ggcgcgcctc tggcggtggc ggatcgsaaa wtgtkctcac ccagtctcc     59


<210> SEQ ID NO 71
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK6BACKLi Asc

<400> SEQUENCE: 71

ggttcagatg ggcgcgcctc tggcggtggc ggatcggaya tyvwgatgac mcagwctcc     59


<210> SEQ ID NO 72
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK7BACKLi Asc

<400> SEQUENCE: 72

ggttcagatg ggcgcgcctc tggcggtggc ggatcgcaaa ttgttctcac ccagtctcc     59


<210> SEQ ID NO 73
<211> LENGTH: 59
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      V-kappa back primer VK8BACKLi Asc

US 7,033,590 B1

61                                                              62

-continued

<400> SEQUENCE: 73

ggttcagatg ggcgcgcctc tggcggtggc ggatcgtcat tattgcaggt gcttgtggg        59


<210> SEQ ID NO 74
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      J-kappa forward primer JK1NOT10

<400> SEQUENCE: 74

gagtcattct gcggccgccc gtttgatttc cagcttggtg cc                         42


<210> SEQ ID NO 75
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      J-kappa forward primer JK2NOT10

<400> SEQUENCE: 75

gagtcattct gcggccgccc gttttatttc cagcttggtc cc                         42


<210> SEQ ID NO 76
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      J-kappa forward primer JK3NOT10

<400> SEQUENCE: 76

gagtcattct gcggccgccc gttttatttc cagtctggtc cc                         42


<210> SEQ ID NO 77
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      J-kappa forward primer JK4NOT10

<400> SEQUENCE: 77

gagtcattct gcggccgccc gttttatttc caactttgtc cc                         42


<210> SEQ ID NO 78
<211> LENGTH: 42
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mouse
      J-kappa forward primer JK5NOT10

<400> SEQUENCE: 78

gagtcattct gcggccgccc gtttcagctc cagcttggtc cc                         42


<210> SEQ ID NO 79
<211> LENGTH: 74
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:
      oligonucleotide mychis6-co

US 7,033,590 B1

63                                                                              64

-continued

```
<400> SEQUENCE: 79

ggccgcagaa caaaaactca tctcagaaga ggatctgaat ggggcggcac atcaccatca    60

ccatcactaa taag                                                      74


<210> SEQ ID NO 80
<211> LENGTH: 74
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:
      oligonucleotide mycchis-ic

<400> SEQUENCE: 80

aattcttatt agtgatggtg atggtgatgt gccgccccat tcagatcctc ttctgagatg    60

agttttgtt ctgc                                                       74


<210> SEQ ID NO 81
<211> LENGTH: 726
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 193/AD3

<400> SEQUENCE: 81

gaggtgaagc tggtggagtc tggacctgag ctgaagaagc ctggagagac agtcaagatc    60

tcctgcaagg cttctgggta tatcttcaca aactatggaa tgaactgggt gaagcaggct   120

ccaggaaagg gtttaaagtg gatgggctgg ataaacacct acactggaga gccaacatat   180

gctgatgact tcaagggacg gtttgccttc tctttggaaa cctctgccag cactgcctat   240

ttgcagatca acaacctcaa aaatgaggac acggctacat atttctgtgc attatatggt   300

aactcccta aggggtttgc ttactggggc caagggactc tggtcactgt ctctgcaggt   360

ggaggcggtt caggtgggcg cgcctctggc ggtggcggat cggatattca gatgacacag   420

tctcccaaat tcctgcttgt atcagcagga gacagggtta ccataacctg caaggccagt   480

cagagtgtga gtaatgatgt agcttggtac caacagaagc cggggcagtc tcctaaacta   540

ctgatgtact atgcatccaa tcgctacact ggagtccctg atcgcttcac tggcagtgga   600

tatgggacgg atttcacttt caccatcagc actgtgcagg ctgaagacct ggcagtttat   660

ttctgtcagc aggattatgg ctctcctccc acgttcggag ggggcaccaa gctggaaatt   720

aaacgg                                                             726


<210> SEQ ID NO 82
<211> LENGTH: 242
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 193/AD3

<400> SEQUENCE: 82

Glu Val Lys Leu Val Glu Ser Gly Pro Glu Leu Lys Lys Pro Gly Glu
 1               5                  10                  15

Thr Val Lys Ile Ser Cys Lys Ala Ser Gly Tyr Ile Phe Thr Asn Tyr
            20                  25                  30

Gly Met Asn Trp Val Lys Gln Ala Pro Gly Lys Gly Leu Lys Trp Met
        35                  40                  45

Gly Trp Ile Asn Thr Tyr Thr Gly Glu Pro Thr Tyr Ala Asp Asp Phe
```

US 7,033,590 B1

65                                                    66

-continued

```
        50                  55                  60
Lys Gly Arg Phe Ala Phe Ser Leu Glu Thr Ser Ala Ser Thr Ala Tyr
 65                  70                  75                  80
Leu Gln Ile Asn Asn Leu Lys Asn Glu Asp Thr Ala Thr Tyr Phe Cys
                 85                  90                  95
Ala Leu Tyr Gly Asn Ser Pro Lys Gly Phe Ala Tyr Trp Gly Gln Gly
                100                 105                 110
Thr Leu Val Thr Val Ser Ala Gly Gly Gly Gly Ser Gly Gly Arg Ala
            115                 120                 125
Ser Gly Gly Gly Gly Ser Asp Ile Gln Met Thr Gln Ser Pro Lys Phe
        130                 135                 140
Leu Leu Val Ser Ala Gly Asp Arg Val Thr Ile Thr Cys Lys Ala Ser
145                 150                 155                 160
Gln Ser Val Ser Asn Asp Val Ala Trp Tyr Gln Gln Lys Pro Gly Gln
                165                 170                 175
Ser Pro Lys Leu Leu Met Tyr Tyr Ala Ser Asn Arg Tyr Thr Gly Val
            180                 185                 190
Pro Asp Arg Phe Thr Gly Ser Gly Tyr Gly Thr Asp Phe Thr Phe Thr
            195                 200                 205
Ile Ser Thr Val Gln Ala Glu Asp Leu Ala Val Tyr Phe Cys Gln Gln
        210                 215                 220
Asp Tyr Gly Ser Pro Pro Thr Phe Gly Gly Gly Thr Lys Leu Glu Ile
225                 230                 235                 240
Lys Arg
```

<210> SEQ ID NO 83
<211> LENGTH: 747
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 193/K2

<400> SEQUENCE: 83

```
gaagtgcagc tggtggagtc tgggggaggc ctagtgaagc ctggagggtc cctgaaactc        60

tcctgtgcag cctctggatt cactttcagt acctatacca tgtcttgggt tcgccagact       120

ccggagaaga ggctggagtg ggtcgcaacc attagtagtg gtggtagtta cacctactat       180

ccagacagtg tgaggggccg attcaccatc tccagagaca atgccaagaa caccctgtac       240

ctgcaaatga gcagtctgaa gtctgaggac acagccatgt attactgtac aagagatggg       300

ggacacgggt acggttagtag ctttgactac tgggggcaag gcaccactct cacagtctcc       360

tcaggtggag gcggttcagg tgggcgcgcc tctggcggtg gcggatcgca aattgtgctc       420

acccagtctc cactctccct gcctgtcagt cttggagatc aagcctccat ctcttgcaga       480

tctagtcaga gcattgtaca tagtaatgga aacacctatt tagaatggta cctgcagaaa       540

ccaggccagt ctccaaagct cctgatctac aaagtttcca accgatttc tggggtccca       600

gacaaattca gtggcagtgg atcagggaca gatttcacac tcaagatcag cagagtggag       660

gctgaggatc tgggagttta ttactgcttt caaggttcac atgttccgtg gacgttcggt       720

ggaggcacca agctggaaat caaacgg                                          747
```

<210> SEQ ID NO 84
<211> LENGTH: 249
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence

US 7,033,590 B1

67                                                                                    68

-continued

```
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 193/K2

<400> SEQUENCE: 84

Glu Val Gln Leu Val Glu Ser Gly Gly Gly Leu Val Lys Pro Gly Gly
 1               5                   10                  15

Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly Phe Thr Phe Ser Thr Tyr
            20                  25                  30

Thr Met Ser Trp Val Arg Gln Thr Pro Glu Lys Arg Leu Glu Trp Val
        35                  40                  45

Ala Thr Ile Ser Ser Gly Gly Ser Tyr Thr Tyr Tyr Pro Asp Ser Val
    50                  55                  60

Arg Gly Arg Phe Thr Ile Ser Arg Asp Asn Ala Lys Asn Thr Leu Tyr
65                  70                  75                  80

Leu Gln Met Ser Ser Leu Lys Ser Glu Asp Thr Ala Met Tyr Tyr Cys
                85                  90                  95

Thr Arg Asp Gly Gly His Gly Tyr Gly Ser Ser Phe Asp Tyr Trp Gly
            100                 105                 110

Gln Gly Thr Thr Leu Thr Val Ser Ser Gly Gly Gly Gly Ser Gly Gly
        115                 120                 125

Arg Ala Ser Gly Gly Gly Gly Ser Gln Ile Val Leu Thr Gln Ser Pro
    130                 135                 140

Leu Ser Leu Pro Val Ser Leu Gly Asp Gln Ala Ser Ile Ser Cys Arg
145                 150                 155                 160

Ser Ser Gln Ser Ile Val His Ser Asn Gly Asn Thr Tyr Leu Glu Trp
                165                 170                 175

Tyr Leu Gln Lys Pro Gly Gln Ser Pro Lys Leu Leu Ile Tyr Lys Val
            180                 185                 190

Ser Asn Arg Phe Ser Gly Val Pro Asp Lys Phe Ser Gly Ser Gly Ser
        195                 200                 205

Gly Thr Asp Phe Thr Leu Lys Ile Ser Arg Val Glu Ala Glu Asp Leu
    210                 215                 220

Gly Val Tyr Tyr Cys Phe Gln Gly Ser His Val Pro Trp Thr Phe Gly
225                 230                 235                 240

Gly Gly Thr Lys Leu Glu Ile Lys Arg
                245


<210> SEQ ID NO 85
<211> LENGTH: 747
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 198/AB2 (subclone of 198/B1)

<400> SEQUENCE: 85

gaggtgcagc ttcaggagtc agggggaggc ttagtgaagc ctggagggtc cctgaaactc      60

tcctgtgcag cctctggatt cactttcagt agctatacca tgtcttgggt tcgccagact     120

ccggagaaga ggctggagtg ggtcgcaacc attagtagtg gtggtagttc cacctactat     180

ccagacagtg tgaagggccg attcaccatc tccagagaca atgccaagaa caccctgtac     240

ctgcaaatga gcagtctgag gtctgaggac acagccatgt attactgtac aagagagggg     300

ggtggtttca ccgtcaactg gtacttcgat gtctggggcg cagggactct ggtcactgtc     360

tctgcaggtg gaggcggttc aggtgggcgc gcctctggcg gtggcggatc ggaaaatgtg     420
```

US 7,033,590 B1

69                                                                70

-continued

```
ctcacccagt ctccagcttc tttggctgtg tctctagggc agagggccac catatcctgc    480

agagccagtg aaagtgttga tagttatggc tataatttta tgcactggta tcagcagata    540

ccaggacagc cacccaaact cctcatctat cgtgcatcca acctagagtc tgggatccct    600

gccaggttca gtggcagtgg gtctaggaca gacttcaccc tcaccattaa tcctgtggag    660

gctgatgatg ttgcaaccta ttactgtcag caaagtaatg aggatccgct cacgttcggt    720

actgggacca gactggaaat aaaacgg                                        747
```

<210> SEQ ID NO 86
<211> LENGTH: 249
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv from
      hybridoma cell line 198/AB2 (subclone of 198/B1)

<400> SEQUENCE: 86

```
Glu Val Gln Leu Gln Glu Ser Gly Gly Gly Leu Val Lys Pro Gly Gly
 1               5                  10                  15

Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly Phe Thr Phe Ser Ser Tyr
            20                  25                  30

Thr Met Ser Trp Val Arg Gln Thr Pro Glu Lys Arg Leu Glu Trp Val
        35                  40                  45

Ala Thr Ile Ser Ser Gly Gly Ser Ser Thr Tyr Tyr Pro Asp Ser Val
    50                  55                  60

Lys Gly Arg Phe Thr Ile Ser Arg Asp Asn Ala Lys Asn Thr Leu Tyr
65                  70                  75                  80

Leu Gln Met Ser Ser Leu Arg Ser Glu Asp Thr Ala Met Tyr Tyr Cys
                85                  90                  95

Thr Arg Glu Gly Gly Gly Phe Thr Val Asn Trp Tyr Phe Asp Val Trp
            100                 105                 110

Gly Ala Gly Thr Leu Val Thr Val Ser Ala Gly Gly Gly Gly Ser Gly
        115                 120                 125

Gly Arg Ala Ser Gly Gly Gly Gly Ser Glu Asn Val Leu Thr Gln Ser
    130                 135                 140

Pro Ala Ser Leu Ala Val Ser Leu Gly Gln Arg Ala Thr Ile Ser Cys
145                 150                 155                 160

Arg Ala Ser Glu Ser Val Asp Ser Tyr Gly Tyr Asn Phe Met His Trp
                165                 170                 175

Tyr Gln Gln Ile Pro Gly Gln Pro Pro Lys Leu Leu Ile Tyr Arg Ala
            180                 185                 190

Ser Asn Leu Glu Ser Gly Ile Pro Ala Arg Phe Ser Gly Ser Gly Ser
        195                 200                 205

Arg Thr Asp Phe Thr Leu Thr Ile Asn Pro Val Glu Ala Asp Asp Val
    210                 215                 220

Ala Thr Tyr Tyr Cys Gln Gln Ser Asn Glu Asp Pro Leu Thr Phe Gly
225                 230                 235                 240

Thr Gly Thr Arg Leu Glu Ile Lys Arg
                245
```

<210> SEQ ID NO 87
<211> LENGTH: 747
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv derived
      from hybridima cell line 198/A1

US 7,033,590 B1

71                                                                    72

-continued

```
<220> FEATURE:
<221> NAME/KEY: modified_base
<222> LOCATION: (1)..(747)
<223> OTHER INFORMATION: n = g, a, c or t

<400> SEQUENCE: 87

gaggtgcagc ttcaggagtc aggggagggc ttagtgaagc ctggagggtc cctgaaactc      60

tcctgtgcag cctctggatt cattttagt agttatacca tgtcttgggt tcgccagact      120

ccggagaaga ggctggagtg ggtcgcaacc attagtagtg gtggtagttc cacctactat      180

ccagacagtg tgaagggccg attcaccatc tccagagaca atgccaagaa caccctgtac      240

ctgcaaatga gcagtctgaa gtctgaggac acagccatgt atcactgtac aagagagggg      300

ggtggttatt acgtcaactg gtacttcgat gtctggggcg caggcaccac tctcacagtc      360

tcctcaggtg gaggcggttc aggtgggcgc gcctctggcg gtggcggatc ggacattgag      420

ctcacncagt ctccagcttc tttggctgtg tctctagggc agagggccac catatcctgc      480

agagccagtg aaagtgttga tagttatggc aagagtttta tgcactggta ccagcagaaa      540

ccagggcagc cacccaaact cctcatctat cgtgcatcca acctagaatc tgggatccct      600

gccaggttca gtggcagtgg gtctaggaca gacttcaccc tcaccattaa tcctgtggag      660

gctgatgatg ttgcnaccta ttactgtcag caaagtaatg aggatcccct cacgttcggt      720

gctgggacca gactggaaat aaaacgg                                         747


<210> SEQ ID NO 88
<211> LENGTH: 249
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:scFv derived
      from hybridima cell line 198/A1

<400> SEQUENCE: 88

Glu Val Gln Leu Gln Glu Ser Gly Gly Gly Leu Val Lys Pro Gly Gly
  1               5                  10                  15

Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly Phe Ile Phe Ser Ser Tyr
             20                  25                  30

Thr Met Ser Trp Val Arg Gln Thr Pro Glu Lys Arg Leu Glu Trp Val
         35                  40                  45

Ala Thr Ile Ser Ser Gly Gly Ser Ser Thr Tyr Tyr Pro Asp Ser Val
     50                  55                  60

Lys Gly Arg Phe Thr Ile Ser Arg Asp Asn Ala Lys Asn Thr Leu Tyr
 65                  70                  75                  80

Leu Gln Met Ser Ser Leu Lys Ser Glu Asp Thr Ala Met Tyr His Cys
                 85                  90                  95

Thr Arg Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp Val Trp
            100                 105                 110

Gly Ala Gly Thr Thr Leu Thr Val Ser Ser Gly Gly Gly Gly Ser Gly
        115                 120                 125

Gly Arg Ala Ser Gly Gly Gly Gly Ser Asp Ile Glu Leu Thr Gln Ser
    130                 135                 140

Pro Ala Ser Leu Ala Val Ser Leu Gly Gln Arg Ala Thr Ile Ser Cys
145                 150                 155                 160

Arg Ala Ser Glu Ser Val Asp Ser Tyr Gly Lys Ser Phe Met His Trp
                165                 170                 175

Tyr Gln Gln Lys Pro Gly Gln Pro Pro Lys Leu Leu Ile Tyr Arg Ala
            180                 185                 190
```

Appx176

US 7,033,590 B1

-continued

```
Ser Asn Leu Glu Ser Gly Ile Pro Ala Arg Phe Ser Gly Ser Gly Ser
        195                 200                 205

Arg Thr Asp Phe Thr Leu Thr Ile Asn Pro Val Glu Ala Asp Asp Val
    210                 215                 220

Ala Thr Tyr Tyr Cys Gln Gln Ser Asn Glu Asp Pro Leu Thr Phe Gly
225                 230                 235                 240

Ala Gly Thr Arg Leu Glu Ile Lys Arg
                245


<210> SEQ ID NO 89
<211> LENGTH: 2199
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:198A2
      scFv-alkaline phosphatase fusion protein (ORF of expression
      vector pDAP2-198AB2#100)
<220> FEATURE:
<221> NAME/KEY: modified_base
<222> LOCATION: (228)
<223> OTHER INFORMATION: n = g, a, c or t

<400> SEQUENCE: 89

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc     60

atggcggagg tgaagctggt gggagtctggg ggaggcttag tgaagcctgg agggtccctg    120

aaactctcct gtgcagcctc tggattcact ttcagtagct ataccatgtc ttgggttcgc    180

cagactccgg agaagaggct ggagtgggtc gcaaccatta gtagtggngg tagttccacc    240

tactatccag acagtgtgaa gggccgattc accatctcca gagacaatgc caagaacacc    300

ctgtacctgc aaatgagcag tctgaggtct gaggacacag ccatgtatta ctgtacaaga    360

gaggggggtg gtttcaccgt caactggtac ttcgatgtct ggggccgagg aacctcagtc    420

accgtctcct caggtggagg cggttcaggt gggcgcgcct ctggcggtgg cggatcggac    480

attgtgctga cacagtctcc agctctcttg gctgtgtctc tagggcagag ggccaccata    540

tcctgcagag ccagtgaaag tgttgatagt tatggctata atttttatgca ctggtatcag    600

cagataccag gacagccacc caaactcctc atctatcgtg catccaacct agagtctggg    660

atccctgcca ggttcagtgg cagtgggtct aggacagact tcaccctcac cattaatcct    720

gtggaggctg atgatgttgc aacctattac tgtcagcaaa gtaatgagga tccgctcacg    780

ttcggtactg ggaccagact ggaaataaaa cgggcggccg cagcccggcc accagaaatg    840

cctgttctgg aaaaccgggc tgctcagggc gatattactg cacccggcgg tgctcgccgt    900

ttaacgggtg atcagactgc cgctctgcgt gattctctta gcgataaacc tgcaaaaaat    960

attattttgc tgattggcga tgggatgggg gactcggaaa ttactgccgc acgtaattat   1020

gccgaaggtg cggcggctt ttttaaaggt atagatgcct taccgcttac cgggcaatac   1080

actcactatg cgctgaataa aaaaaccggc aaaccggact acgtcaccga ctcggctgca   1140

tcagcaaccg cctggtcaac cggtgtcaaa acctataacg gcgcgctggg cgtcgatatt   1200

cacgaaaaag atcacccaac gattctggaa atggcaaaag ccgcaggtct ggcgaccggt   1260

aacgtttcta ccgcagagtt gcaggatgcc acgcccgctg cgctggtggc acatgtgacc   1320

tcgcgcaaat gctacggtgc gagcgcgacc agtgaaaaat ctgcgggtaa cgctctggaa   1380

aaaggcggaa aaggatcgat taccgaacag ctgcttaacg ctcgtgccga cgttacgctt   1440

ggcggcggcg caaaaacctt tgctgaaacg gcaaccgctg gtgaatggca gggaaaaacg   1500
```

Appx177

US 7,033,590 B1

-continued

```
ctgcgtgaac aggcacaggc gcgtggttat cagttggtga gcgatgctgc ctcactgaat    1560

tcggtgacgg aagcgaatca gcaaaaaccc ctgcttggcc tgtttgctga cggcaatatg    1620

ccagtgcgct ggctaggacc gaaagcaacg taccatggca atatcgataa gcccgcagtc    1680

acctgtacgc caaatccgca acgtaatgac agtgtaccaa ccctggcgca gatgaccgac    1740

aaagccattg aattgttgag taaaaatgag aaaggctttt tcctgcaagt tgaaggtgcg    1800

tcaatcgata aacaggatca tgctgcgaat ccttgtgggc aaattggcga gacggtcgat    1860

ctcgatgaag ccgtacaacg ggcgctggaa ttcgctaaaa aggagggtaa cacgctggtc    1920

atagtcaccg ctgatcacgc ccacgccagc cagattgttg cgccggatac caaagctccg    1980

ggcctcaccc aggcgctaaa taccaaagat ggcgcagtga tggtgatgag ttacgggaac    2040

tccgaagagg attcacaaga acataccggc agtcagttgc gtattgcggc gtatggcccg    2100

catgccgcca atgttgttgg actgaccgac cagaccgatc tcttctacac catgaaagcc    2160

gctctggggg atatcgcaca ccatcaccat caccattaa                           2199
```

<210> SEQ ID NO 90
<211> LENGTH: 732
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:198A2
      scFv-alkaline phosphatase fusion protein (ORF of expression
      vector pDAP2-198AB2#100)

<400> SEQUENCE: 90

```
Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
  1               5                  10                  15

Ala Gln Pro Ala Met Ala Glu Val Lys Leu Val Glu Ser Gly Gly Gly
             20                  25                  30

Leu Val Lys Pro Gly Gly Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly
         35                  40                  45

Phe Thr Phe Ser Ser Tyr Thr Met Ser Trp Val Arg Gln Thr Pro Glu
     50                  55                  60

Lys Arg Leu Glu Trp Val Ala Thr Ile Ser Ser Gly Gly Ser Ser Thr
 65                  70                  75                  80

Tyr Tyr Pro Asp Ser Val Lys Gly Arg Phe Thr Ile Ser Arg Asp Asn
                 85                  90                  95

Ala Lys Asn Thr Leu Tyr Leu Gln Met Ser Ser Leu Arg Ser Glu Asp
            100                 105                 110

Thr Ala Met Tyr Tyr Cys Thr Arg Glu Gly Gly Gly Phe Thr Val Asn
        115                 120                 125

Trp Tyr Phe Asp Val Trp Gly Ala Gly Thr Ser Val Thr Val Ser Ser
    130                 135                 140

Gly Gly Gly Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser Asp
145                 150                 155                 160

Ile Val Leu Thr Gln Ser Pro Ala Ser Leu Ala Val Ser Leu Gly Gln
                165                 170                 175

Arg Ala Thr Ile Ser Cys Arg Ala Ser Glu Ser Val Asp Ser Tyr Gly
            180                 185                 190

Tyr Asn Phe Met His Trp Tyr Gln Gln Ile Pro Gly Gln Pro Pro Lys
        195                 200                 205

Leu Leu Ile Tyr Arg Ala Ser Asn Leu Glu Ser Gly Ile Pro Ala Arg
    210                 215                 220

Phe Ser Gly Ser Gly Ser Arg Thr Asp Phe Thr Leu Thr Ile Asn Pro
```

Appx178

US 7,033,590 B1

77                                                                            78

-continued

```
225                    230                    235                    240

Val Glu Ala Asp Asp Val Ala Thr Tyr Tyr Cys Gln Gln Ser Asn Glu
                   245                    250                    255

Asp Pro Leu Thr Phe Gly Thr Gly Thr Arg Leu Glu Ile Lys Arg Ala
               260                    265                    270

Ala Ala Ala Arg Ala Pro Glu Met Pro Val Leu Glu Asn Arg Ala Ala
           275                    280                    285

Gln Gly Asp Ile Thr Ala Pro Gly Gly Ala Arg Arg Leu Thr Gly Asp
       290                    295                    300

Gln Thr Ala Ala Leu Arg Asp Ser Leu Ser Asp Lys Pro Ala Lys Asn
305                    310                    315                    320

Ile Ile Leu Leu Ile Gly Asp Gly Met Gly Asp Ser Glu Ile Thr Ala
                   325                    330                    335

Ala Arg Asn Tyr Ala Glu Gly Ala Gly Gly Phe Phe Lys Gly Ile Asp
               340                    345                    350

Ala Leu Pro Leu Thr Gly Gln Tyr Thr His Tyr Ala Leu Asn Lys Lys
           355                    360                    365

Thr Gly Lys Pro Asp Tyr Val Thr Asp Ser Ala Ala Ser Ala Thr Ala
       370                    375                    380

Trp Ser Thr Gly Val Lys Thr Tyr Asn Gly Ala Leu Gly Val Asp Ile
385                    390                    395                    400

His Glu Lys Asp His Pro Thr Ile Leu Glu Met Ala Lys Ala Ala Gly
                   405                    410                    415

Leu Ala Thr Gly Asn Val Ser Thr Ala Glu Leu Gln Asp Ala Thr Pro
               420                    425                    430

Ala Ala Leu Val Ala His Val Thr Ser Arg Lys Cys Tyr Gly Pro Ser
           435                    440                    445

Ala Thr Ser Glu Lys Cys Pro Gly Asn Ala Leu Glu Lys Gly Gly Lys
       450                    455                    460

Gly Ser Ile Thr Glu Gln Leu Leu Asn Ala Arg Ala Asp Val Thr Leu
465                    470                    475                    480

Gly Gly Gly Ala Lys Thr Phe Ala Glu Thr Ala Thr Ala Gly Glu Trp
                   485                    490                    495

Gln Gly Lys Thr Leu Arg Glu Gln Ala Gln Ala Arg Gly Tyr Gln Leu
               500                    505                    510

Val Ser Asp Ala Ala Ser Leu Asn Ser Val Thr Glu Ala Asn Gln Gln
           515                    520                    525

Lys Pro Leu Leu Gly Leu Phe Ala Asp Gly Asn Met Pro Val Arg Trp
       530                    535                    540

Leu Gly Pro Lys Ala Thr Tyr His Gly Asn Ile Asp Lys Pro Ala Val
545                    550                    555                    560

Thr Cys Thr Pro Asn Pro Gln Arg Asn Asp Ser Val Pro Thr Leu Ala
                   565                    570                    575

Gln Met Thr Asp Lys Ala Ile Glu Leu Leu Ser Lys Asn Glu Lys Gly
               580                    585                    590

Phe Phe Leu Gln Val Glu Gly Ala Ser Ile Asp Lys Gln Asp His Ala
           595                    600                    605

Ala Asn Pro Cys Gly Gln Ile Gly Glu Thr Val Asp Leu Asp Glu Ala
       610                    615                    620

Val Gln Arg Ala Leu Glu Phe Ala Lys Lys Glu Gly Asn Thr Leu Val
625                    630                    635                    640

Ile Val Thr Ala Asp His Ala His Ala Ser Gln Ile Val Ala Pro Asp
                   645                    650                    655
```

Appx179

US 7,033,590 B1

-continued

```
Thr Lys Ala Pro Gly Leu Thr Gln Ala Leu Asn Thr Lys Asp Gly Ala
            660                 665                 670

Val Met Val Met Ser Tyr Gly Asn Ser Glu Glu Asp Ser Gln Glu His
        675                 680                 685

Thr Gly Ser Gln Leu Arg Ile Ala Ala Tyr Gly Pro His Ala Ala Asn
    690                 695                 700

Val Val Gly Leu Thr Asp Gln Thr Asp Leu Phe Tyr Thr Met Lys Ala
705                 710                 715                 720

Ala Leu Gly Asp Ile Ala His His His His His His
                725                 730


<210> SEQ ID NO 91
<211> LENGTH: 978
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:plasmid
      pZip-198AB2#102
<220> FEATURE:
<221> NAME/KEY: modified_base
<222> LOCATION: (1)..(978)
<223> OTHER INFORMATION: n = g, a, c or t

<400> SEQUENCE: 91

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc      60

atggcggagg tgaagctggt ggagtctggg ggaggcttag tgaagcctgg agggtccctg     120

aaactctcct gtgcagcctc tggattcact ttcagtagct ataccatgtc ttgggttcgc     180

cagactccgg agaagaggct ggagtgggtc gcaaccatta gtagtggngg tagttccacc     240

tactatccag acagtgtgaa gggccgattc accatctcca gagacaatgc caagaacacc     300

ctgtacctgc aaatgagcag tctgaggtct gaggacacag ccatgtatta ctgtacaaga     360

gaggggggtg gtttcaccgt caactggtac ttcgatgtct ggggcgcagg aacctcagtc     420

accgtctcct caggtggagg cggttcaggt gggcgcgcct ctggcggtgg cggatcggac     480

attgtgctga cacagtntcc agcttctttg gctgtgtctc tagggcagag ggccaccata     540

tcntgcagag ccagtgaaag tgttgatagt tatggctata attttatgca ctggtatcag     600

cagataccag gacagccacc caaactcctc atctatcgtg catccaacct agagtctggg     660

atccctgcca ggttcagtgg cagtgggtct aggacagact tcaccctcac cattaatcct     720

gtggaggctg atgatgttgc aacctattac tgtcagcaaa gtaatgagga tccgctcacg     780

ttcggtactg ggaccagact ggaaataaaa cgggcggccg caccgaagcc ttccactccg     840

cccgggtctt cccgtatgaa acagctggaa gacaaagtag aggagctcct tagcaagaac     900

taccatctag aaaacgaggt agctcgtctg aaaaagcttg ttggtgaacg tggtggtcac     960

catcaccatc accattaa                                                    978


<210> SEQ ID NO 92
<211> LENGTH: 325
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:plasmid
      pZip-198AB2#102
<220> FEATURE:
<221> NAME/KEY: MOD_RES
<222> LOCATION: (166)
<223> OTHER INFORMATION: Xaa = Cys, Tyr, Ser or Phe

<400> SEQUENCE: 92
```

US 7,033,590 B1

**81**                                                                    **82**

-continued

```
Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
  1               5                   10                  15

Ala Gln Pro Ala Met Ala Glu Val Lys Leu Val Glu Ser Gly Gly Gly
             20                  25                  30

Leu Val Lys Pro Gly Gly Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly
         35                  40                  45

Phe Thr Phe Ser Ser Tyr Thr Met Ser Trp Val Arg Gln Thr Pro Glu
     50                  55                  60

Lys Arg Leu Glu Trp Val Ala Thr Ile Ser Ser Gly Gly Ser Ser Thr
 65                  70                  75                  80

Tyr Tyr Pro Asp Ser Val Lys Gly Arg Phe Thr Ile Ser Arg Asp Asn
                 85                  90                  95

Ala Lys Asn Thr Leu Tyr Leu Gln Met Ser Ser Leu Arg Ser Glu Asp
             100                 105                 110

Thr Ala Met Tyr Tyr Cys Thr Arg Glu Gly Gly Gly Phe Thr Val Asn
         115                 120                 125

Trp Tyr Phe Asp Val Trp Gly Ala Gly Thr Ser Val Thr Val Ser Ser
     130                 135                 140

Gly Gly Gly Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Ser Asp
145                 150                 155                 160

Ile Val Leu Thr Gln Xaa Pro Ala Ser Leu Ala Val Ser Leu Gly Gln
             165                 170                 175

Arg Ala Thr Ile Ser Cys Arg Ala Ser Glu Ser Val Asp Ser Tyr Gly
         180                 185                 190

Tyr Asn Phe Met His Trp Tyr Gln Gln Ile Pro Gly Gln Pro Pro Lys
     195                 200                 205

Leu Leu Ile Tyr Arg Ala Ser Asn Leu Glu Ser Gly Ile Pro Ala Arg
     210                 215                 220

Phe Ser Gly Ser Gly Ser Arg Thr Asp Phe Thr Leu Thr Ile Asn Pro
225                 230                 235                 240

Val Glu Ala Asp Asp Val Ala Thr Tyr Tyr Cys Gln Gln Ser Asn Glu
                 245                 250                 255

Asp Pro Leu Thr Phe Gly Thr Gly Thr Arg Leu Glu Ile Lys Arg Ala
             260                 265                 270

Ala Ala Pro Lys Pro Ser Thr Pro Pro Gly Ser Ser Arg Met Lys Gln
         275                 280                 285

Leu Glu Asp Lys Val Glu Glu Leu Leu Ser Lys Asn Tyr His Leu Glu
     290                 295                 300

Asn Glu Val Ala Arg Leu Lys Lys Leu Val Gly Glu Arg Gly Gly His
305                 310                 315                 320

His His His His His
                 325
```

```
<210> SEQ ID NO 93
<211> LENGTH: 2190
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB#8860
      scFv~alkaline phosphatase fusion protein (vector construct
      pDAP2-8860scFv#11)

<400> SEQUENCE: 93

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc      60

atggccgagg ttcagcttca gcagtctgga cctgagctgg tgaagcccgg ggcctcagtg     120
```

US 7,033,590 B1

83          84

-continued

```
aagatttcct gcaaagcttc tggctacgca ttcagtagct cttggatgaa ctgggtgaag    180

cagaggcctg gacagggtct tgagtggatt ggacggattt atcctggaaa tggagatact    240

aactacaatg ggaagttcaa gggcaaggcc acactgactg cagacaaatc ctccagcaca    300

gcctacatgc agctcagcag cctgacctct gtggactctg cggtctattt ctgtgcagat    360

ggtaacgtat attactatgc tatggactac tggggtcaag gaacctcagt caccgtctcc    420

tcaggtggag gcggttcagg tgggcgcgcc tctggcggtg gcggatcgca aattgttctc    480

acccagtctc ctgcttcctt agctgtatct ctgggcgcag gggccaccat ctcatgcagg    540

gccagcaaaa gtgtcagtac atctggctat agttatatgc actggtacca acagaaacca    600

ggacagccac ccaaactcct catctatctt gcatccaaac tagaatctgg ggtccctgcc    660

aggttcagtg gcagtgggtc tgggacagac ttcaccctca acatccatcc tgtggaggag    720

gaggatgctg caacctatta ctgtcagcac agtagggagc ttcctcggac gttcggtgga    780

ggcaccaagc tggaaatcaa acgggcggcc gcagcccggg caccagaaat gcctgttctg    840

gaaaaccggg ctgctcaggg cgatattact gcaccggcg gtgctcgccg tttaacgggt    900

gatcagactg ccgctctgcg tgattctctt agcgataaac ctgcaaaaaa tattattttg    960

ctgattggcg atgggatggg ggactcggaa attactgccg cacgtaatta tgccgaaggt    1020

gcgggcggct tttttaaagg tatagatgcc ttaccgctta ccgggcaata cactcactat    1080

gcgctgaata aaaaaaccgg caaaccggac tacgtcaccg actcggctgc atcagcaacc    1140

gcctggtcaa ccggtgtcaa aacctataac ggcgcgctgg gcgtcgatat tcacgaaaaa    1200

gatcacccaa cgattctgga aatggcaaaa gccgcaggtc tggcgaccgg taacgtttct    1260

accgcagagt tgcaggatgc cacgcccgct gcgctggtgg cacatgtgac ctcgcgcaaa    1320

tgctacggtc cgagcgcgac cagtgaaaaa tgtccgggta acgctctgga aaaaggcgga    1380

aaaggatcga ttaccgaaca gctgcttaac gctcgtgccg acgttacgct tggcggcggc    1440

gcaaaaacct ttgctgaaac ggcaaccgct ggtgaatggc agggaaaaac gctgcgtgaa    1500

caggcacagg cgcgtggtta tcagttggtg agcgatgctg cctcactgaa ttcggtgacg    1560

gaagcgaatc agcaaaaacc cctgcttggc ctgtttgctg acggcaatat gccagtgcgc    1620

tggctaggac cgaaagcaac gtaccatggc aatatcgata agcccgcagt cacctgtacg    1680

ccaaatccgc aacgtaatga cagtgtacca accctggcgc agatgaccga caaagccatt    1740

gaattgttga gtaaaaatga gaaaggcttt ttcctgcaag ttgaaggtgc gtcaatcgat    1800

aaacaggatc atgctgcgaa tccttgtggg caaattggcg agacggtcga tctcgatgaa    1860

gccgtacaac gggcgctgga attcgctaaa aaggagggta acacgctggt catagtcacc    1920

gctgatcacg cccacgccag ccagattgtt gcgccggata ccaaagctcc gggcctcacc    1980

caggcgctaa ataccaaaga tggcgcagtg atggtgatga gttacgggaa ctccgaagag    2040

gattcacaag aacataccgg cagtcagttg cgtattgcgg cgtatggccc gcatgccgcc    2100

aatgttgttg gactgaccga ccagaccgat ctcttctaca ccatgaaagc cgctctgggg    2160

gatatcgcac accatcacca tcaccattaa    2190
```

<210> SEQ ID NO 94
<211> LENGTH: 729
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB#8860
    scFv-alkaline phosphatase fusion protein (vector construct

US 7,033,590 B1

**85**                                                                          **86**

-continued

pDAP2-8860scFv#11)

<400> SEQUENCE: 94

Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
1               5                   10                  15

Ala Gln Pro Ala Met Ala Glu Val Gln Leu Gln Gln Ser Gly Pro Glu
            20                  25                  30

Leu Val Lys Pro Gly Ala Ser Val Lys Ile Ser Cys Lys Ala Ser Gly
        35                  40                  45

Tyr Ala Phe Ser Ser Ser Trp Met Asn Trp Val Lys Gln Arg Pro Gly
    50                  55                  60

Gln Gly Leu Glu Trp Ile Gly Arg Ile Tyr Pro Gly Asn Gly Asp Thr
65                  70                  75                  80

Asn Tyr Asn Gly Lys Phe Lys Gly Lys Ala Thr Leu Thr Ala Asp Lys
                85                  90                  95

Ser Ser Ser Thr Ala Tyr Met Gln Leu Ser Ser Leu Thr Ser Val Asp
            100                 105                 110

Ser Ala Val Tyr Phe Cys Ala Asp Gly Asn Val Tyr Tyr Tyr Ala Met
        115                 120                 125

Asp Tyr Trp Gly Gln Gly Thr Ser Val Thr Val Ser Ser Gly Gly Gly
    130                 135                 140

Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser Gln Ile Val Leu
145                 150                 155                 160

Thr Gln Ser Pro Ala Ser Leu Ala Val Ser Leu Gly Gln Arg Ala Thr
                165                 170                 175

Ile Ser Cys Arg Ala Ser Lys Ser Val Ser Thr Ser Gly Tyr Ser Tyr
            180                 185                 190

Met His Trp Tyr Gln Gln Lys Pro Gly Gln Pro Pro Lys Leu Leu Ile
        195                 200                 205

Tyr Leu Ala Ser Asn Leu Glu Ser Gly Val Pro Ala Arg Phe Ser Gly
    210                 215                 220

Ser Gly Ser Gly Thr Asp Phe Thr Leu Asn Ile His Pro Val Glu Glu
225                 230                 235                 240

Glu Asp Ala Ala Thr Tyr Tyr Cys Gln His Ser Arg Glu Leu Pro Arg
                245                 250                 255

Thr Phe Gly Gly Gly Thr Lys Leu Glu Ile Lys Arg Ala Ala Ala Ala
            260                 265                 270

Arg Ala Pro Glu Met Pro Val Leu Glu Asn Arg Ala Ala Ala Gln Gly Asp
        275                 280                 285

Ile Thr Ala Pro Gly Gly Ala Arg Arg Leu Thr Gly Asp Gln Thr Ala
    290                 295                 300

Ala Leu Arg Asp Ser Leu Ser Asp Lys Pro Ala Lys Asn Ile Ile Leu
305                 310                 315                 320

Leu Ile Gly Asp Gly Met Gly Asp Ser Glu Ile Thr Ala Ala Arg Asn
                325                 330                 335

Tyr Ala Glu Gly Ala Gly Gly Phe Phe Lys Gly Ile Asp Ala Leu Pro
            340                 345                 350

Leu Thr Gly Gln Tyr Thr His Tyr Ala Leu Asn Lys Lys Thr Gly Lys
        355                 360                 365

Pro Asp Tyr Val Thr Asp Ser Ala Ala Ser Ala Thr Ala Trp Ser Thr
    370                 375                 380

Gly Val Lys Thr Tyr Asn Gly Ala Leu Gly Val Asp Ile His Glu Lys
385                 390                 395                 400

Appx183

US 7,033,590 B1

**87**                                                                        **88**

-continued

```
Asp His Pro Thr Ile Leu Glu Met Ala Lys Ala Ala Gly Leu Ala Thr
            405                 410                 415

Gly Asn Val Ser Thr Ala Glu Leu Gln Asp Ala Thr Pro Ala Ala Leu
            420                 425                 430

Val Ala His Val Thr Ser Arg Lys Cys Tyr Gly Pro Ser Ala Thr Ser
        435                 440                 445

Glu Lys Cys Pro Gly Asn Ala Leu Glu Lys Gly Gly Lys Gly Ser Ile
        450                 455                 460

Thr Glu Gln Leu Leu Asn Ala Arg Ala Asp Val Thr Leu Gly Gly Gly
465                 470                 475                 480

Ala Lys Thr Phe Ala Glu Thr Ala Thr Ala Gly Glu Trp Gln Gly Lys
                485                 490                 495

Thr Leu Arg Glu Gln Ala Gln Ala Arg Gly Tyr Gln Leu Val Ser Asp
            500                 505                 510

Ala Ala Ser Leu Asn Ser Val Thr Glu Ala Asn Gln Gln Lys Pro Leu
        515                 520                 525

Leu Gly Leu Phe Ala Asp Gly Asn Met Pro Val Arg Trp Leu Gly Pro
        530                 535                 540

Lys Ala Thr Tyr His Gly Asn Ile Asp Lys Pro Ala Val Thr Cys Thr
545                 550                 555                 560

Pro Asn Pro Gln Arg Asn Asp Ser Val Pro Thr Leu Ala Gln Met Thr
                565                 570                 575

Asp Lys Ala Ile Glu Leu Leu Ser Lys Asn Glu Lys Gly Phe Phe Leu
            580                 585                 590

Gln Val Gly Gly Ala Ser Ile Asp Lys Gln Asp His Ala Ala Asn Pro
        595                 600                 605

Cys Gly Gln Ile Gly Glu Thr Val Asp Leu Asp Glu Ala Val Gln Arg
        610                 615                 620

Ala Leu Glu Phe Ala Lys Lys Glu Gly Asn Thr Leu Val Ile Val Thr
625                 630                 635                 640

Ala Asp His Ala His Ala Ser Gln Ile Val Ala Pro Asp Thr Lys Ala
                645                 650                 655

Pro Gly Leu Thr Gln Ala Leu Asn Thr Lys Asp Gly Ala Val Met Val
            660                 665                 670

Met Ser Tyr Gly Asn Ser Glu Glu Asp Ser Gln Glu His Thr Gly Ser
        675                 680                 685

Gln Leu Arg Ile Ala Ala Tyr Gly Pro His Ala Ala Asn Val Val Gly
        690                 695                 700

Leu Thr Asp Gln Thr Asp Leu Phe Tyr Thr Met Lys Ala Ala Leu Gly
705                 710                 715                 720

Asp Ile Ala His His His His His His
                725
```

```
<210> SEQ ID NO 95
<211> LENGTH: 969
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB #8860
      scFv-leucine zipper fusion protein (miniantibody vector construct
      p8860-Zip#1.2)

<400> SEQUENCE: 95

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc      60

atggcggagg ttcagcttca gcagtctgga cctgagctgg tgaagcccgg ggcctcagtg     120
```

Appx184

US 7,033,590 B1

**89**                                                                 **90**

-continued

```
aagatttcct gcaaagcttc tggctacgca ttcagtagct cttggatgaa ctgggtgaag      180

cagaggcctg gacagggtct tgagtggatt ggacggattt atcctggaaa tggagatact      240

aactacaatg ggaagttcaa gggcaaggcc acactgactg cagacaaatc ctccagcaca      300

gcctacatgc agctcagcag cctgacctct gtggactctg cggtctattt ctgtgcagat      360

ggtaacgtat attactatgc tatggactac tggggtcaag gaacctcagt caccgtctcc      420

tcaggtggag gcggttcagg tgggcgcgcc tctggcggtg gcggatcgca aattgttctc      480

acccagtctc ctgcttcctt agctgtatct ctggggcaga gggccaccat ctcatgcagg      540

gccagcaaaa gtgtcagtac atctggctat agttatatgc actggtacca acagaaacca      600

ggacagccac ccaaactcct catctatctt gcatccaacc tagaatctgg ggtccctgcc      660

aggttcagtg gcagtgggtc tgggacagac ttcaccctca acatccatcc tgtggaggag      720

gaggatgctg caacctatta ctgtcagcac agtagggagc ttcctcggac gttcggtgga      780

ggcaccaagc tggaaatcaa acgggcggcc gcaccgaagc cttccactcc gcccgggtct      840

tcccgtatga aacagctgga agacaaagta gaggagctcc ttagcaagaa ctaccatcta      900

gaaaacgagg tagctcgtct gaaaaagctt gttggtgaac gtggtggtca ccatcaccat      960

caccattaa                                                             969
```

<210> SEQ ID NO 96
<211> LENGTH: 322
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB #8860
      scFv-leucine zipper fusion protein (miniantibody vector construct
      p8860-Zip#1.2)

<400> SEQUENCE: 96

```
Met Lys Tyr Leu Leu Pro Thr Ala Ala Gly Leu Leu Leu Leu Ala
1               5                   10                  15

Ala Gln Pro Ala Met Ala Glu Val Gln Leu Gln Gln Ser Gly Pro Glu
            20                  25                  30

Leu Val Lys Pro Gly Ala Ser Val Lys Ile Ser Cys Lys Ala Ser Gly
        35                  40                  45

Tyr Ala Phe Ser Ser Ser Trp Met Asn Trp Val Lys Gln Arg Pro Gly
    50                  55                  60

Gln Gly Leu Glu Trp Ile Gly Arg Ile Tyr Pro Gly Asn Gly Asp Thr
65                  70                  75                  80

Asn Tyr Asn Gly Lys Phe Lys Gly Lys Ala Thr Leu Thr Ala Asp Lys
                85                  90                  95

Ser Ser Ser Thr Ala Tyr Met Gln Leu Ser Ser Leu Thr Ser Val Asp
            100                 105                 110

Ser Ala Val Tyr Phe Cys Ala Asp Gly Asn Val Tyr Tyr Tyr Ala Met
    115                 120                 125

Asp Tyr Trp Gly Gln Gly Thr Ser Val Thr Val Ser Ser Gly Gly Gly
    130                 135                 140

Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser Gln Ile Val Leu
145                 150                 155                 160

Thr Gln Ser Pro Ala Ser Leu Ala Val Ser Leu Gly Gln Arg Ala Thr
                165                 170                 175

Ile Ser Cys Arg Ala Ser Lys Ser Val Ser Thr Ser Gly Tyr Ser Tyr
            180                 185                 190

Met His Trp Tyr Gln Gln Lys Pro Gly Gln Pro Pro Lys Leu Leu Ile
```

Appx185

US 7,033,590 B1

91                                                                92

-continued

```
         195                200                205

Tyr Leu Ala Ser Asn Leu Glu Ser Gly Val Pro Ala Arg Phe Ser Gly
    210                215                220

Ser Gly Ser Gly Thr Asp Phe Thr Leu Asn Ile His Pro Val Glu Glu
225                230                235                240

Glu Asp Ala Ala Thr Tyr Tyr Cys Gln His Ser Arg Glu Leu Pro Arg
              245                250                255

Thr Phe Gly Gly Gly Thr Lys Leu Glu Ile Lys Arg Ala Ala Ala Pro
         260                265                270

Lys Pro Ser Thr Pro Pro Gly Ser Ser Arg Met Lys Gln Leu Glu Asp
         275                280                285

Lys Val Glu Glu Leu Leu Ser Lys Asn Tyr His Leu Glu Asn Glu Val
    290                295                300

Ala Arg Leu Lys Lys Leu Val Gly Glu Arg Gly Gly His His His His
305                310                315                320

His His
```

<210> SEQ ID NO 97
<211> LENGTH: 270
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:part of
      plasmid pMycHis6 differing from vector pCOCK

<400> SEQUENCE: 97

```
caggaaacag ctatgaccat gattacgcca agcttccatg aaaattctat ttcaaggaga      60

cagtcataat gaaatacctn ttgcctacgg cagccgctgg attgttatta ctcgcggccc     120

agccggccat ggcccaggtg cagctgcagg cgcgcctgca ggtcgacctc gagatcaaac     180

gggcggccgc agaacaaaaa ctcatctcag aagaggatct gaatggggcg gcacatcacc     240

atcaccatca ctaataagaa ttcactggcc                                     270
```

<210> SEQ ID NO 98
<211> LENGTH: 61
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:part of
      plasmid pMycHis6 differing from vector pCOCK

<400> SEQUENCE: 98

```
Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
1                5                10                15

Ala Gln Pro Ala Met Ala Gln Val Gln Leu Gln Ala Arg Leu Gln Val
              20                25                30

Asp Leu Glu Ile Lys Arg Ala Ala Ala Ala Glu Gln Lys Leu Ile Ser Glu
         35                40                45

Glu Asp Leu Asn Gly Ala Ala His His His His His His
    50                55                60
```

<210> SEQ ID NO 99
<211> LENGTH: 888
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:198AB2 scFv
      linked to c-myc-tag and His6 tag (ORF of expression vector
      pMycHis6-198AB2#102)
<220> FEATURE:

US 7,033,590 B1

93                                                                    94

-continued

```
<221> NAME/KEY: modified_base
<222> LOCATION: (228)
<223> OTHER INFORMATION: n = g, a, c or t

<400> SEQUENCE: 99

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc      60

atggccgagg tgaagctggt ggagtctggg ggaggcttag tgaagcctgg agggtccctg     120

aaactctcct gtgcagcctc tggattcact ttcagtagct ataccatgtc ttgggttcgc     180

cagactccgg agaagaggct ggagtgggtc gcaaccatta gtagtggngg tagttccacc     240

tactatccag acagtgtgaa gggccgattc accatctcca gagacaatgc caagaacacc     300

ctgtacctgc aaatgagcag tctgaggtct gaggacacag ccatgtatta ctgtacaaga     360

gaggggggtg gtttcaccgt caactggtac ttcgatgtct ggggcgcagg aacctcagtc     420

accgtctcct caggtggagg cggttcaggt gggcgcgcct ctggcggtgg cggatcggac     480

attgtgctga cacagtctcc agcttctttg gctgtgtctc tagggcagag ggccaccata     540

tcctgcagag ccagtgaaag tgttgatagt tatggctata attttatgca ctggtatcag     600

cagataccag gacagccacc caaactcctc atctatcgtg catccaacct agagtctggg     660

atccctgcca ggttcagtgg cagtgggtct aggacagact tcaccctcac cattaatcct     720

gtggaggctg atgatgttgc aacctattac tgtcagcaaa gtaatgagga tccgctcacg     780

ttcggtactg ggaccagact ggaaataaaa cgggcggccg cagaacaaaa actcatctca     840

gaagaggatc tgaatggggc ggcacatcac catcaccatc actaataa                 888
```

```
<210> SEQ ID NO 100
<211> LENGTH: 294
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:198AB2 scFv
      linked to c-myc-tag and His6 tag (ORF of expression vector
      pMycHis6-198AB2#102)

<400> SEQUENCE: 100

Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
  1               5                  10                  15

Ala Gln Pro Ala Met Ala Glu Val Lys Leu Val Glu Ser Gly Gly Gly
             20                  25                  30

Leu Val Lys Pro Gly Gly Ser Leu Lys Leu Ser Cys Ala Ala Ser Gly
         35                  40                  45

Phe Thr Phe Ser Ser Tyr Thr Met Ser Trp Val Arg Gln Thr Pro Glu
     50                  55                  60

Lys Arg Leu Glu Trp Val Ala Thr Ile Ser Ser Gly Gly Ser Ser Thr
 65                  70                  75                  80

Tyr Tyr Pro Asp Ser Val Lys Gly Arg Phe Thr Ile Ser Arg Asp Asn
                 85                  90                  95

Ala Lys Asn Thr Leu Tyr Leu Gln Met Ser Ser Leu Arg Ser Glu Asp
             100                 105                 110

Thr Ala Met Tyr Tyr Cys Thr Arg Glu Gly Gly Gly Phe Thr Val Asn
         115                 120                 125

Trp Tyr Phe Asp Val Trp Gly Ala Gly Thr Ser Val Thr Val Ser Ser
     130                 135                 140

Gly Gly Gly Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser Asp
145                 150                 155                 160

Ile Val Leu Thr Gln Ser Pro Ala Ser Leu Ala Val Ser Leu Gly Gln
```

Appx187

US 7,033,590 B1

95                                                                96

---

-continued

```
           165              170              175
Arg Ala Thr Ile Ser Cys Arg Ala Ser Glu Ser Val Asp Ser Tyr Gly
           180              185              190
Tyr Asn Phe Met His Trp Tyr Gln Gln Ile Pro Gly Gln Pro Pro Lys
           195              200              205
Leu Leu Ile Tyr Arg Ala Ser Asn Leu Glu Ser Gly Ile Pro Ala Arg
210              215              220
Phe Ser Gly Ser Gly Ser Arg Thr Asp Phe Thr Leu Thr Ile Asn Pro
225              230              235              240
Val Glu Ala Asp Asp Val Ala Thr Tyr Tyr Cys Gln Gln Ser Asn Glu
                245              250              255
Asp Pro Leu Thr Phe Gly Thr Gly Thr Arg Leu Glu Ile Lys Arg Ala
           260              265              270
Ala Ala Glu Gln Lys Leu Ile Ser Glu Glu Asp Leu Asn Gly Ala Ala
           275              280              285
His His His His His His
    290
```

```
<210> SEQ ID NO 101
<211> LENGTH: 876
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB #8860
      scFv linked to c-myc-tag and His6-tag designated 8860-M/H#4c
      (plasmid vector p8860-M/H#4c)

<400> SEQUENCE: 101

atgaaatacc tattgcctac ggcagccgct ggattgttat tactcgcggc ccagccggcc      60

atggccgagg ttcagcttca gcagtctgga cctgagctgg tgaagccggg ggcctcagtg     120

aagatttcct gcaaagcttc tggctacgca ttcagtagct cttggatgaa ctgggtgaag     180

cagaggcctg gacagggtct tgagtggatt ggacggattt atcctggaaa tggagatact     240

aactacaatg ggaagttcaa gggcaaggcc acactgactg cagacaaatc ctccagcaca     300

gcctacatgc agctcagcag cctgacctct gtggactctg cggtctattt ctgtgcagat     360

ggtaacgtat attactatgc tatggactac tggggtcaag gaacctcagt caccgtctcc     420

tcaggtggag gcggttcagg tgggcgcgcc tctggcggtg gcggatcgca aattgttctc     480

acccagtctc ctgcttcctt agctgtatct ctgggggcaga gggccaccat ctcatgcagg     540

gccagcaaaa gtgtcagtac atctggctat agttatatgc actggtacca acagaaacca     600

ggacagccac ccaaactcct catctatctt gcatccaacc tagaatctgg ggtccctgcc     660

aggttcagtg gcagtgggtc tgggacagac ttcaccctca acatccatcc tgtggaggag     720

gaggatgctg caacctatta ctgtcagcac agtagggagc ttcctcggac gttcggtgga     780

ggcaccaagc tggaaatcaa acgggcggcc gcagaacaaa aactcatctc agaagaggat     840

ctgaatgggg cggcacatca ccatcaccat cactaa                              876
```

```
<210> SEQ ID NO 102
<211> LENGTH: 291
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:mAB #8860
      scFv linked to c-myc-tag and His6-tag designated 8860-M/H#4c
      (plasmid vector p8860-M/H#4c)

<400> SEQUENCE: 102
```

US 7,033,590 B1

97                                                                   98

-continued

```
Met Lys Tyr Leu Leu Pro Thr Ala Ala Ala Gly Leu Leu Leu Leu Ala
  1               5                  10                  15

Ala Gln Pro Ala Met Ala Glu Val Gln Leu Gln Gln Ser Gly Pro Glu
             20                  25                  30

Leu Val Lys Pro Gly Ala Ser Val Lys Ile Ser Cys Lys Ala Ser Gly
         35                  40                  45

Tyr Ala Phe Ser Ser Ser Trp Met Asn Trp Val Lys Gln Arg Pro Gly
     50                  55                  60

Gln Gly Leu Glu Trp Ile Gly Arg Ile Tyr Pro Gly Asn Gly Asp Thr
 65                  70                  75                  80

Asn Tyr Asn Gly Lys Phe Lys Gly Lys Ala Thr Leu Thr Ala Asp Lys
                 85                  90                  95

Ser Ser Ser Thr Ala Tyr Met Gln Leu Ser Ser Leu Thr Ser Val Asp
             100                 105                 110

Ser Ala Val Tyr Phe Cys Ala Asp Gly Asn Val Tyr Tyr Tyr Ala Met
         115                 120                 125

Asp Tyr Trp Gly Gln Gly Thr Ser Val Thr Val Ser Ser Gly Gly Gly
     130                 135                 140

Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser Gln Ile Val Leu
145                 150                 155                 160

Thr Gln Ser Pro Ala Ser Leu Ala Val Ser Leu Gly Gln Arg Ala Thr
                165                 170                 175

Ile Ser Cys Arg Ala Ser Lys Ser Val Ser Thr Ser Gly Tyr Ser Tyr
            180                 185                 190

Met His Trp Tyr Gln Gln Lys Pro Gly Gln Pro Pro Lys Leu Leu Ile
        195                 200                 205

Tyr Leu Ala Ser Asn Leu Glu Ser Gly Val Pro Ala Arg Phe Ser Gly
    210                 215                 220

Ser Gly Ser Gly Thr Asp Phe Thr Leu Asn Ile His Pro Val Glu Glu
225                 230                 235                 240

Glu Asp Ala Ala Thr Tyr Tyr Cys Gln His Ser Arg Glu Leu Pro Arg
                245                 250                 255

Thr Phe Gly Gly Gly Thr Lys Leu Glu Ile Lys Arg Ala Ala Ala Glu
            260                 265                 270

Gln Lys Leu Ile Ser Glu Glu Asp Leu Asn Gly Ala Ala His His His
        275                 280                 285

His His His
    290
```

```
<210> SEQ ID NO 103
<211> LENGTH: 74
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:annealed
      oligonucleotide

<400> SEQUENCE: 103

ggccgcagaa caaaaactca tctcagaaga ggatctgaat ggggcggcac atcaccatca      60

ccatcactaa taag                                                        74


<210> SEQ ID NO 104
<211> LENGTH: 69
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
```

-continued

```
<223> OTHER INFORMATION: Description of Artificial Sequence:annealed
      oligonucleotide

<400> SEQUENCE: 104

ttattagtga tggtgatggt gatgtgccgc cccattcaga tcctcttctg agatgagttt      60

ttgttctgc                                                             69


<210> SEQ ID NO 105
<211> LENGTH: 16
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:CDR3 peptide
<220> FEATURE:
<221> NAME/KEY: MOD_RES
<222> LOCATION: (1)..(16)
<223> OTHER INFORMATION: Xaa = any amino acid

<400> SEQUENCE: 105

Cys Xaa Xaa Tyr Gly Asn Ser Pro Lys Gly Phe Ala Tyr Xaa Xaa Cys
  1               5                  10                  15


<210> SEQ ID NO 106
<211> LENGTH: 16
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:CDR3 peptide

<400> SEQUENCE: 106

Phe Arg Asn Arg Gly Met Thr Ala Leu Leu Lys Val Ser Ser Cys Asp
  1               5                  10                  15


<210> SEQ ID NO 107
<211> LENGTH: 30
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:portion of
      plasmid pMycHis6 with pelB-leader, polylinker and c-myc tag

<400> SEQUENCE: 107

Leu Ala Ala Gln Pro Ala Met Ala Gln Val Gln Leu Gln Ala Arg Leu
  1               5                  10                  15

Gln Val Asp Leu Glu Ile Lys Arg Ala Ala Ala Glu Gln Lys
           20                  25                  30


<210> SEQ ID NO 108
<211> LENGTH: 90
<212> TYPE: DNA
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:portion of
      plasmid pMycHis6 with pelB-leader, polylinker and c-myc tag

<400> SEQUENCE: 108

ctcgcggccc agccggccat ggcccaggtg cagctgcagg cgcgcctgca ggtcgacctc      60

gagatcaaac gggcggccgc agaacaaaaa                                       90


<210> SEQ ID NO 109
<211> LENGTH: 12
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:c-myc-tag
```

US 7,033,590 B1

**101**                                                                 **102**

-continued

```
<400> SEQUENCE: 109

Glu Gln Lys Leu Ile Ser Glu Glu Asp Leu Asn Gly
 1               5                  10


<210> SEQ ID NO 110
<211> LENGTH: 6
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:His6-tag

<400> SEQUENCE: 110

His His His His His His
 1               5


<210> SEQ ID NO 111
<211> LENGTH: 15
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:flexible
     linker

<400> SEQUENCE: 111

Gly Gly Gly Gly Ser Gly Gly Arg Ala Ser Gly Gly Gly Gly Ser
 1               5                  10                  15


<210> SEQ ID NO 112
<211> LENGTH: 12
<212> TYPE: PRT
<213> ORGANISM: Artificial Sequence
<220> FEATURE:
<223> OTHER INFORMATION: Description of Artificial Sequence:A1 peptide
     core sequence

<400> SEQUENCE: 112

Glu Gly Gly Gly Tyr Tyr Val Asn Trp Tyr Phe Asp
 1               5                  10
```

What is claimed is:

**1**. An isolated antibody or antibody fragment thereof that binds Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa.

**2**. The antibody or antibody fragment according to claim **1** that increases the procoagulant activity of Factor IXa in the presence of Factor VIII inhibitors.

**3**. The antibody or antibody fragment according to claim **1** wherein the antibody is an IgG, IgM, IgA or IgE antibody.

**4**. The antibody or antibody fragment according to claim **1**, wherein said antibody or antibody fragment is selected from the group consisting of a monoclonal antibody, a chimeric antibody, a humanized antibody, a single chain antibody, a bispecific antibody, a diabody, and di-, oligo- or multimers thereof.

**5**. A CDR3 peptide of the antibody or antibody fragment according to claim **1** consisting of an amino acid sequence selected from the group consisting of:

Tyr-Gly-Asn-Ser-Pro-Lys-Gly-Phe-Ala-Tyr (SEQ ID NO:5); and

Asp-Gly-Gly-His-Gly-Tyr-Gly-Ser-Ser-Phe-Asp-Tyr (SEQ ID NO:6).

**6**. The antibody or antibody fragment according to chain **1**, wherein the variable region of said antibody or antibody fragment comprises amino acids 1–119 and amino acids 135–242 as listed in SEQ ID NO:82.

**7**. The antibody or antibody fragment according to claim **6** that additionally comprises an artificial linker sequence.

**8**. The antibody or antibody fragment according to claim **1**, wherein the variable region of said antibody or antibody fragment comprises amino acids 1–121 and amino acids 137–249 as listed in SEQ ID NO:84.

**9**. The antibody or antibody fragment according to claim **8** that additionally comprises an artificial linker sequence.

**10**. The antibody or antibody fragment according to claim **1**, wherein the variable region of said antibody or antibody fragment comprises amino acids 1–122 and amino acids 138–249 as listed in SEQ ID NO:86.

**11**. The antibody or antibody fragment according to claim **10** that additionally comprises an artificial linker sequence.

**12**. A hybridoma cell line secreting an antibody that binds Factor LX or Factor IXa and increases the procoagulant activity of Factor IXa.

**13**. The hybridoma cell line according to claim **12** that is selected from the group consisting of cell lines having ECACC deposit numbers 99090924, 99090925, 99090926, 99121614, 99121615, 99121616, 99121617, 99121618, 99121619 and 99121620.

**14**. An antibody that is secreted by a hybridoma cell line according to claim **12**.

**15**. A preparation comprising an antibody or antibody fragment according to claim **1** and a pharmaceutically acceptable carrier.

US 7,033,590 B1

**103**

**16**. The preparation according to claim **15**, additionally comprising Factor IXaα and/or Factor IXaβ.

**17**. A method of obtaining an antibody that interacts with Factor IX or Factor IXa and increases the procoagulant activity of Factor IXa, comprising the steps of:

immunizing an immunocompetent mouse with an antigen selected from the group consisting of FIX, FIXaα, FIXaβ or fragments thereof,

isolating spleen cells of the immunized mouse,

producing hybridoma cells,

screening the hybridoma cell supernatants for an increase in the procoagulant activity of Factor IXa, isolating and purifying the antibody from a supernatant from the

**104**

hybridoma cells which exhibit an increase in the procoagulant activity of Factor IXa.

**18**. The antibody or antibody fragment according to claim **4**, wherein the antibody fragment is a single chain antibody.

**19**. The antibody or antibody fragment according to claim **4**, wherein the antibody is a humanized antibody.

**20**. The antibody or antibody fragment according to claim **2** wherein the antibody is selected from the group consisting of an IgG, IgM, IgA or IgE antibody.

**21**. The antibody or antibody fragment of claim **1**, wherein the antibody fragment comprises a CDR3 peptide.

**22**. The antibody or antibody fragment of claim **1**, wherein the antibody fragment is a CDR3 peptide.

\*   \*   \*   \*   \*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This brief complies with the type-volume limitations of Federal Circuit Rule 32(b)(1) because this brief contains 12,922 words, including the words in images and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), Federal Circuit Rule 32(b)(2), and Federal Circuit Rule 28(a)(12).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 360 in Times New Roman 14 point font.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellants,*
*Baxalta Inc. and Baxalta GmbH*

Dated: June 10, 2022